1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES,<br><br>        Plaintiff,<br><br>      vs.<br><br>LIGHT FIELD LAB, INC., JON KARAFIN,<br>BRENDAN BEVENSEE, and Does 1 to 10,<br><br>        Defendant, | Case No.: 3:25-cv-5118<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **RETALIATORY TERMINATION (Ca. Lab. Code §1102.5)**<br>2. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br>3. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>4. **PROMISSORY ESTOPPEL**<br>5. **FRAUD AND DECEIT**<br>6. **VIOLATION OF PENAL CODE**<br>7. **CIVIL RICO**<br>8. **UNFAIR COMPETITION**<br>9. **BREACH OF FIDUCIARY DUTY**<br>10. **RECISSION** |

Plaintiff Alan Jones ("Plaintiff") alleges the following against Defendant Light Field Lab Inc. ("LFL"), and Does 1-10 (collectively "Defendants"):

1.  Plaintiff is an individual residing at all times mentioned in the Complaint within the State of Washington, the county in which he performed his duties under the employment contract with Defendant.

2.  Defendant is a company incorporated in Delaware and at all times mentioned in operated in the State of California.

3.  Defendant Jon Karafin is an individual employed by Defendant Light Field Lab in California.

4.  Defendant Brendan Bevensee is an individual employed by Defendant Light Field Lab in California.

5.  In addition to the Defendants named above, Plaintiff sues fictitiously Defendants Does 1 through 10, inclusive, because their names, capacities, status, or facts showing them to be liable are not presently known. Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, designated herein as Does 1 through 100, are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's damages, as herein alleged, were and are the direct and proximate result of the action of said Defendants, and each of them. Plaintiff will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

6.  Plaintiff further alleges that Defendants and Does 1-10, inclusive, are, and at all relevant times were, agents of one another and acting within the course and scope of said agency.

7.  Plaintiff reserves the right to amend his/her charges to plead agency between Defendants and Does 1-10, inclusive, and any of them, at any time that he ascertains facts and supporting agency between such Defendants.

## JURISDICTION AND VENUE

8.  Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 7 above, as well as facts currently unknown.

Case No. : 3:25-cv-5118                                              COMPLAINT FOR DAMAGES

9.   Jurisdiction over the defendants, and each of them, exists because each of the defendant entities named in this litigation are present and operating within the jurisdictional limits of the Northern District of California and each of the individual defendants named in this litigation are employed within the jurisdictional limits of the Northern District of California.  Subject matter jurisdiction within the United States District Court exists because the amount in dispute exceeds $75,000.

10. Venue is proper because the employment relationship between Plaintiffs and defendants, and each of them, that gave rise to some of the claims in this litigation existed within this judicial district and most or all of the acts and omissions complained of in this litigation took place here. Venue is also proper because most or all of the acts and omissions that occurred outside of the above employment relationship and are complained of in this litigation took place within this judicial district.

## **FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION**

11.    Mr. Jones was employed by LFL from September 30, 2019, through June 23, 2023. Mr. Jones initially worked as a Senior Pipeline Software Engineer and was promoted to Principal Engineer on July 27, 2020.

12.    As part of his onboarding, on September 9, 2019, Mr. Jones signed a Confidentiality and Proprietary Rights Agreement that purported to grant rights to patents and other works for hire to LFL.

13.    As part of Mr. Jones' onboarding, and subsequently during his employment, he was informed of the following false statements: During his initial hiring, Jon Karafin informed Mr. Jones about double trigger clauses, whereby on public listing or acquisition all options would instantly vest. Mr. Jones was also informed that the company's product would be delivered to the first theme customer, Universal, for use in a theme park in 2020/2021.  This statement was intended to provide the impression that LFL was much closer to delivery of the product than it actually was and that an early exercise of options was expected.  In reliance on these statement, Mr. Jones gave up Microsoft stock that was vesting in order to join LFL. Subsequently, there was no further discussion of Universal as a customer and no product was delivered to Universal.

14.     Further, during the discussions regarding employment and while Mr. Jones worked for LFL, Jon Karafin also claimed that the number of outstanding shares was highly valuable confidential information and refused to share it with Mr. Jones. Mr. Jones raised the issue during hiring negotiations as it made it very difficult for Mr. Jones to determine the potential value of the options.  As a security holder, Mr. Jones was entitled to books and records to assess his holdings but when he asked Jon Karafin in March 2023, in the context of a financial discussion about the company, "Understood, is there any additional information I'm entitled or required to be given access to as a shareholder?" he responded "Understood and appreciated. There are no current problems to be aware of (e-g- equity ownership and payroll) and can keep you posted- Again, not a political response, just the facts."  Books and records would classify as additional (financial) information Mr. Jones was entitled to be given access to as a shareholder.

15.     Throughout his tenure at LFL, Mr. Jones consistently received positive feedback regarding his job performance, a merit pay increase when he was promoted to Principal Engineer and periodic incentive pay bonuses. He maintained positive personal relationships with his coworkers and management.

16.     Mr. Jones was instrumental in the development of LFL's SolidLight holographic display platform. Mr. Jones worked out of LFL's office from September 30, 2019, through March 7, 2020, and thereafter he worked remotely from his residence in Seattle, WA.

17.     Mr. Jones is Type I Diabetic and suffers from a compromised immune system. Accordingly, Mr. Jones would be susceptible to severe illness and/or death if he were to contract COVID-19.

18.     When LFL management announced that all of its employees would be required to return to in-office work by May 24, 2021, Mr. Jones requested that he be permitted to continue working remotely as an accommodation of his compromised immune system, which is a disability under federal and state law.

19.     Although there does not appear to have been a formal accommodation process, LFL allowed Mr. Jones to continue working remotely and LFL management continued to provide Mr.

Case No. : 3:25-cv-5118                                                    COMPLAINT FOR DAMAGES

Jones with positive feedback regarding his job performance. At no time did anyone in LFL management indicate that in-office work was an essential function of Mr. Jones' job duties.

20.     In December 2022-January 2023, Mr. Jones' supervisor, Mr. Trevor Berninger, Director of Software, began having discussions with Mr. Jones to stop working remotely and return to in-office work at LFL. Mr. Jones was surprised because he had been working remotely since March 7, 2020, and there had been no complaints about his job performance.

21.     When Mr. Jones asked if there were performance issues that would give rise to the request that he return to in-office work, Mr. Berninger indicated that LFL did not have any issues with his job performance. When asked if there was a particular reason as to why LFL wanted him to return to in-office work, Mr. Berninger was very vague and unspecific and indicated that "it would just be better." Again, at no time did anyone at LFL indicate that working in-office was an essential job function of Mr. Jones' position.

22.     Although Mr. Jones was open for discussion as to what would be reasonable accommodations for his return to in-office work, LFL did not engage in an interactive dialogue in this regard. In fact, Mr. Jones made repeated suggestions regarding masking protocol, testing protocol, social distancing and ventilation, but LFL did not respond to Mr. Jones' suggestions.

23.     Mr. Jones understandably began to feel very marginalized by LFL management. He understood that LFL management wanted him to return to in-office work, but management was unwilling to implement a reasonable protocol to minimize his risk of exposure to COVID-19. Mr. Jones sensed that his relationships with LFL management were becoming strained, when he had previously enjoyed very positive relationships with leadership.

24.     In January 2023, Mr. Jones was assigned to work on masking interference for Wavetracing Optics to improve image quality. Mr. Jones was working closely with LFL's CEO Mr. Jon Karafin who was the subject matter expert in this area; Mr. Karafin defined the scope of work and methodology of the work. In March 2023, Mr. Jones advised Mr. Karafin that the methodology was unworkable and was unlikely to result in improved image quality. Mr. Jones suggested a number of alternative approaches to improve image quality, but Mr. Karafin insisted that Mr. Jones continue with the methodology he himself had prescribed.

**Case No. : 3:25-cv-5118**                                        **COMPLAINT FOR DAMAGES**

25.     The matter came to a head on April 6, 2023, when Mr. Karafin made disparaging remarks regarding Mr. Jones' work on the Wavetracing Optics during a Software Team meeting that was attended by the entire software team of approximately 10 people. Mr. Karafin stated that it had been nearly six months and that Mr. Jones had failed to generate an image and indicated that it was unlikely that Mr. Jones' work would result in improved image quality.

26.     Mr. Jones was absolutely dismayed that Mr. Karafin would publicly trivialize and disparage his work in such an aggressive manner in front of his coworkers. First, Mr. Karafin's statement was untrue; Mr. Jones had in fact generated images in January 2023. It was Mr. Karafin's own methodology that was unworkable, and Mr. Jones had advised Mr. Karafin that the methodology was unlikely to result in substantial image improvement in early March, 2023. Despite Mr. Karafin's knowledge that the methodology he prescribed was unworkable, he refused to change course. Instead, he scapegoated Mr. Jones and implied that the lack of progress in image improvement was due to Mr. Jones work performance, when he was well aware that the lack of progress was due to the fact that his own methodology had proved to be unworkable.  On April 9, 2023, Mr. Jones submitted a rebuttal of Mr. Karafin's disparaging comments and a complaint of hostile work environment.

27.     LFL conducted an investigation of Mr. Jones' hostile work environment complaint. When Mr. Jones was interviewed by the investigator, he explained that he believed that Mr. Karafin's animosity towards him was due to the fact that he was working remotely because of his disability. Mr. Jones also explained that he had been under increased pressure from LFL to return to in-office work, despite his disability.

28.     Mr. Jones continued working on interference masking on the Wavetracing Optics and upon implementation of Mr. Karafin's methodology, it became apparent to LFL that the methodology did not result in substantial image improvement and, in fact resulted in a substantial reduction in the field of view. The technical concerns that Mr. Jones outlined in his complaint of April 9, 2023, were substantiated.

Case No. : 3:25-cv-5118                                                                COMPLAINT FOR DAMAGES

29.     On June 16, 2023, Mr. Jones received an email indicating that the investigation had been concluded and that his claim of illegal hostile work environment based on disability had not been substantiated.

30.     On June 23, 2023, Mr. Jones' employment was terminated.  During the conference call it was indicated that "things aren't working out" and with the conclusion of the investigation, LFL was terminating Mr. Jones employment. There was no indication in the phone conference that LFL was terminating Mr. Jones for poor performance or unprofessional behavior.  Rather, LFL was clearly terminating Mr. Jones for requesting accommodation and then making a complaint about illegal retaliation related to that request.

31.     Later in the day on June 23, 2023, Mr. Jones received a letter of termination which stated that his employment was being terminated for poor performance and unprofessional behavior. Mr. Jones was shocked; during his nearly four year tenure at LFL, no one had complained about poor performance or unprofessional behavior. Notably, the termination letter falsely stated that the decision to terminate Mr. Jones' employment was made prior to the initiation of his hostile work environment complaint of April 9, 2023.

32.     In this case, Mr. Jones reported conduct that he reasonably believed was motivated by unlawful discrimination. Additionally, the temporal proximity between the conclusion of the investigation on June 16, 2023, and the termination of Mr. Jones' employment a week later on June 23, 2023, indicates that LFL acted with retaliatory intent. The temporal proximity between the conclusion of the investigation and the termination of Mr. Jones employment raises a rebuttable presumption of retaliatory intent.

33.     LFL's claim that it made a decision to terminate Mr. Jones' employment prior to the submission of his hostile work environment claim of April 9, 2023 is unsupported by any evidence.

34.     LFL management never brought any job performance concerns to Mr. Jones either orally or in writing until April 6, 2023. In fact, Mr. Berninger advised Mr. Jones in December 2022, that LFL had no problems with Mr. Jones' job performance.

35.     As a result of the termination based on false representations of poor performance of unprofessional behavior, Mr. Jones was deliberately denied the benefit of vested

7

and unvested stock options which he had earned as a result of his work for Defendant. Mr. Jones has suffered the loss of 116,458 LFL shares that were vested because he could not afford to exercise those options due to tax liability and the 90-day expiry of his options. Additionally, Mr. Jones suffered the loss of 102,917 unvested shares to which he would have been entitled had LFL not wrongfully terminated his employment.

36.    In connection with Mr. Jones' employment, LFL, Jon Karafin, and Brendan Bevensee also engaged in fraud with respect to patent WO2025042476A1 and WO2024216300A2, patents that, regardless of any purported rights gained by LFL as a work for hire or on assignment pursuant to the Confidentiality and Proprietary Rights Agreement, should have included Mr. Jones' name as an inventor as they are entirely derived from Mr. Jones' work at LFL prior to his termination.

37.    Patent WO2025042476A1 and WO2024216300A2, though fully derived from Mr. Jones' work, did not include Mr. Jones as an inventor, a fact not disclosed to Mr. Jones during or after his employment by LFL.

## FIRST CAUSE OF ACTION

### (Ca. Lab. Code §1102.5)

### (Against Defendant Light Field Lab and Does 1 through 10)

38.    Plaintiff repeats and realleges para. 1 through 37, and incorporates them by reference as though fully reproduced in this cause of action.

39.    At all relevant time periods, Plaintiff was an employee of Defendant.

40.    As alleged above, Plaintiff complained to Defendant's officers, directors, and/or managing agents that certain of Defendant's activities violated the law.

41.    Defendant terminated Plaintiff, substantially motivated by Plaintiff's complaints detailed above.

42.    As a legal and proximate result of Defendants' actions, Plaintiff has suffered special and general damages in an amount to be proven, but in excess of $1,000,000.

43.    Defendants' actions were taken with malice, oppression, and fraud, such that exemplary and punitive damages should be awarded.

**Case No. : 3:25-cv-5118**                                                      **COMPLAINT FOR DAMAGES**

## SECOND CAUSE OF ACTION

### (Wrongful Termination In Violation Of Public Policy)

### (Against Defendant Light Field Lab)

Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 43 above, as well as facts currently unknown.

44.    Plaintiff alleges that Plaintiff's termination was wrongful because it was in violation of the public policy of the State of California and the United States in that Plaintiff's termination was in retaliation for Plaintiff's opposing and reporting illegal activity, as described in preceding allegations.

45.    Plaintiff further alleges that Defendant's termination of Plaintiff was in violation of the public policy as expressed in the Fair Employment and Housing Act.

46.    Plaintiff further alleges that Defendant's termination of Plaintiff was in violation of the public policy as expressed in laws and regulations prohibiting retaliation against individuals who report violations of the law, including, but not limited to, California Labor Code § 1102.5, and in addition was a violation of said statute.

47.    As a direct, foreseeable, and proximate result of defendants' violation of public policy, Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, loss of opportunity and advancement, loss of employment prospects, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount in excess of $1,000,000 the precise amount of which will be proven at trial.

48.    Plaintiff claims these amounts, together with prejudgment interest pursuant to Civil Code section 3287, Code of Civil Procedure section 685.010 and pursuant to any other provision of law providing for prejudgment interest.

49.    Because the acts taken toward Plaintiff were carried out by, condoned by and or ratified by managerial employees or managing agents acting in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

### THIRD CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

### (Against Defendant Light Field Lab)

Plaintiff hereby incorporates by reference Paragraphs 1 through 49 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

50.     As a result of the contractual relationship that existed between Plaintiff and Defendant, the expressed and implied promises made in connection with that relationship, and the acts, conduct and communications resulting in these implied promises, Defendant promised to act in good faith toward and deal fairly with Plaintiff.  These implied promises required Defendant to:

a.     Give full cooperation to Plaintiff and his performance under the agreements and to refrain from doing any act which would prevent or impede Plaintiff's enjoyment of the fruits of the agreements;

b.     Fairly, honestly and reasonably perform the terms and conditions of the agreements which Plaintiff was obliged to perform; and

c.     Refrain from engaging in any illegal, unethical or unfair activities such as misrepresentation or the conversion of patents, options, stock and monies to which Plaintiff had an interest.

51.     Defendant knowingly breached its agreements with Plaintiff for the purpose of frustrating Plaintiff's enjoyment of the benefits of the agreements.  Further, Defendant did not adhere to its express and implied promises, as highlighted above.  Accordingly, Defendant breached its implied covenant of good faith and fair dealing.

52.     As a direct, foreseeable and proximate result of Defendant's failure to comply with its obligations to Plaintiff, including those outlined above, Plaintiff has suffered and continues to suffer losses in excess of $1,000,000, in an amount to be proven at trial.

53.     Plaintiff claims these amounts, together with prejudgment interest pursuant to Civil Code section 3287, Code of Civil Procedure section 685.010 and pursuant to any other provision of law providing for prejudgment interest.

Case No. : 3:25-cv-5118                                                          COMPLAINT FOR DAMAGES

54.     Based on Defendant's conduct as alleged herein, Defendant is also liable for Plaintiff's attorneys' fees pursuant to Labor Code section 218.5 and prejudgment interest pursuant to Labor Code section 218.6.

## FOURTH CAUSE OF ACTION

### (Promissory Estoppel)

### (Against Defendant Light Field Lab)

Plaintiff hereby incorporates by reference Paragraphs 1 through 54 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

55.     Defendant breached the clear and unambiguous promises described herein.

56.     Plaintiff actually, reasonably and foreseeably relied on these promises to his detriment.

57.     As a direct, proximate and foreseeable result of Defendant's breach of these promises, Plaintiff has suffered and continues to suffer losses in an amount to be proven at trial.

58.     Injustice can only be avoided by enforcement of Defendant's promises.

59.     Plaintiff claims these amounts, together with prejudgment interest pursuant to Civil Code section 3287, Code of Civil Procedure section 685.010 and pursuant to any other provision of law providing for prejudgment interest.

## FIFTH CAUSE OF ACTION

### (Fraud and Deceit)

### (Against Light Field Lab and Jon Karafin)

Plaintiff hereby incorporates by reference Paragraphs 1 through 59 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

60.     Defendants made representations as described in paragraphs 36 to 37 above including false representations regarding Plaintiff's employment, Plaintiff's stock options, and regarding inventorship of Patent WO2025042476A1 and WO2024216300A2.

61.     In connection with Mr. Jones' employment, LFL, Jon Karafin, and Brendan Bevensee engaged in fraud with respect to patent WO2025042476A1 and WO2024216300A2, patents that, regardless of any purported rights gained by LFL as a work for hire or on assignment pursuant to the

Confidentiality and Proprietary Rights Agreement, should have included Mr. Jones' name as an inventor as they are entirely derived from Mr. Jones' work at LFL prior to his termination.

62.     Patent WO2025042476A1 and WO2024216300A2, though fully derived from Mr. Jones' work, did not include Mr. Jones as an inventor, a fact not disclosed to Mr. Jones during or after his employment by LFL.

63.     Further, representations regarding the value of Plaintiff's stock and options were false, and the true information regarding the value of Plaintiff's stock and options was concealed, as identified in paragraphs 13 and 14, Defendants used the misrepresentations to induce Plaintiff to continue his employment, a result Defendants could not have achieved truthfully.

64.     Defendants knew said representations to be false and intended to conceal the true facts from Plaintiff to unlawfully persuade Plaintiff, to his detriment.

65.     Plaintiff relied upon the misrepresentations made to him, and did not know the true facts concealed from him, to his detriment.

66.     Further, Defendants, including Defendant Karafin, had a duty to disclose facts regarding Plaintiff's compensation and possible loss of that compensation as part of the employer employee relationship.

67.     Defendants, including Defendant Karafin, had a duty to disclose that while they were providing stock options as compensation for Plaintiff's services, those stock options could be taken away by denying Plaintiff the ability to exercise those options.

68.     Instead, Defendants, including Defendant Karafin, concealed facts regarding Plaintiff's compensation and possible loss of that compensation, including denying Plaintiff the ability to exercise his earned stock options.

69.     Plaintiff did not discover the fraud and deceit practiced upon him as set forth herein until he started his employment with defendants, attempted to fulfill his responsibilities, continued to provide Defendants with valuable intellectual information (which they kept for themselves), was terminated, and thereby realized that Defendants' representations were false and that Defendants had concealed their true intent, including the intent to misappropriate his intellectual information.

**Case No. : 3:25-cv-5118**                                                      **COMPLAINT FOR DAMAGES**

70.     As a proximate result of the representations of Defendants to Plaintiff as set forth herein, Plaintiff has suffered and continues to suffer the loss of stock, wages and benefits in an amount to be proven at trial, as well as stock options, the precise amount of which will be proven at trial.

71.     As a further direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered extreme anguish, humiliation, and emotional distress, the extent of which will be proven at trial.

72.     Because the acts taken toward Plaintiff were carried out by, condoned by and or ratified by managerial employees or managing agents acting in a deliberate, cold, callous, fraudulent, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

73.     As a result of the facts above, Plaintiff is entitled to injunctive relief to invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all intellectual property related to WO2025042476A1 and WO2024216300A2 created by Plaintiff to Plaintiff.

74.     WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SIXTH CAUSE OF ACTION

### (Violation of Penal Code Sections 484 & 496)

### (Against Defendant Light Field Lab, Jon Karafin, Brendan Bevensee, and Does 1 through 10)

Plaintiff hereby incorporates by reference Paragraphs 1 through 74 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

75.     Defendants' misrepresentations to Plaintiff, including fraudulent statements regarding stock options, stock, and inventorship of Patent WO2025042476A1 and WO2024216300A2, constituted theft of personal property, in the form of Plaintiff's right to inventorship of those patents, under Penal Code section 484 insofar as Defendants have "knowingly and designedly, by…false or fraudulent representation or pretense, defraud[ed][Plaintiff] of…personal property."

76.     Defendants' misrepresentations to Plaintiff including fraudulent statements regarding stock options, stock, and inventorship of Patent WO2025042476A1 and WO2024216300A2 constituted

theft under Penal Code section 484 insofar as Defendants have "knowingly and designedly, by…false or fraudulent representation or pretense, defraud[ed][Plaintiff] of money…."

77.     Defendants have retained stock options that should have been provided to Plaintiff.

78.     Defendants have retained inventorship of Patent WO2025042476A1 and WO2024216300A2 that should have been provided to Plaintiff.

79.     In so doing, Defendants have knowingly received and deliberately withheld stock options and patent rights from Plaintiff, knowing that Defendants have no right, title, or interest in the stock options or patent rights and that said stock options and patent rights have been stolen from Plaintiff and/or obtained in a manner constituting theft.

80.     As a direct, foreseeable, and proximate result of Defendants' theft, Plaintiff has suffered and continues to suffer a loss of the value of his inventorship, the precise amount of which will be proven at trial.

81.     Plaintiff has been damaged as a result of the theft of his personal property and is entitled to treble damages pursuant to Penal Code section 496(c).

82.     As a result of the acts described above, Plaintiff is entitled to injunctive relief to invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all intellectual property related to WO2025042476A1 and WO2024216300A2 created by Plaintiff to Plaintiff.

83.     WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION

### (Civil RICO)

**(Against Defendants Light Field Lab Jon Karafin, Brendan Bevensee, and Does 1 through 10)**

Plaintiff hereby incorporates by reference Paragraphs 1 through 83 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

84.     Defendant Light Field Lab is an enterprise engaged in and the activities of which affect interstate commerce, to wit: a corporation incorporated under the laws of the State of Delaware.

85.     Defendant Jon Karafin, as a person within the meaning of 18 U.S.C.A. § 1961(3), and as a person employed by said enterprise, conducted and participated, directly and indirectly, in the conduct

COMPLAINT FOR DAMAGES

of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c).

86.     Defendant Brendan Bevensee, as a person within the meaning of 18 U.S.C.A. § 1961(3), and as a person employed by said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c).

87.     The predicate acts which constitute this pattern of racketeering activity are: fraudulent communications regarding Patent WO2025042476A1 and WO2024216300A2 using means of interstate communication, including electronic filing, mail and email.

88.     These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. § 1961(5).

89.     Plaintiff was injured in his property by reason of this violation of 18 U.S.C.A. § 1962, in that, as a direct and proximate result of Defendant's complained of acts, Plaintiff suffered damages, including loss of money.

90.     By reason of the Defendants' violation of 18 U.S.C.A. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. § 1964(c), to threefold the damages sustained, with interest thereof at 10% per annum, and a reasonable attorney's fee in connection herewith.

91.     As a result of the acts described above, Plaintiff is entitled to injunctive relief to invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all intellectual property related to WO2025042476A1 and WO2024216300A2 created by Plaintiff to Plaintiff.

### EIGHTH CAUSE OF ACTION

### (For Unfair Competition)

### (Business & Professions Code § 17200 et seq.)

### (Against Defendant Light Field Lab)

Plaintiff hereby incorporates by reference Paragraphs 1 through 91 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

15

92.    Defendants' violations of laws and regulations as alleged by this complaint, within the last four years, constitute unfair business practices in violation of the Unfair Competition Law, Business & Professions Code § 17200, et seq.

93.    As a result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Plaintiff, and members of the public. Defendants' utilization of such unfair business practices constitutes unfair competition and provides an unfair advantage over Defendants' competitors. Defendants should be made to disgorge their ill-gotten gains and restore such monies to Plaintiff.

94.    Defendants' unfair business practices entitle Plaintiff to seek preliminary and permanent injunctive relief, including but not limited to orders that the Defendants account for, disgorge and restore to Plaintiff the compensation unlawfully withheld from them and for which they were unjustly enriched. As a result of the acts described above, Plaintiff is entitled to injunctive relief to invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all intellectual property related to WO2025042476A1 and WO2024216300A2 created by Plaintiff to Plaintiff.

**NINTH CAUSE OF ACTION**

**(Breach of Fiduciary Duty)**

**(Against Defendant Light Field Lab)**

Plaintiff hereby incorporates by reference Paragraphs 1 through 94 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

95.     Plaintiff is, and at all times relevant to this amended complaint, was a minority option and share holder of Defendant LFL.

96.    Defendant LFL improperly failed to provide necessary information to Plaintiff as an option and share holder.

97.    As a result of the acts of Defendant LFL, Plaintiff was prevented from converting and selling his shares.

Case No. : 3:25-cv-5118                                                    COMPLAINT FOR DAMAGES

98.    As a proximate result of the wrongful acts and omissions of Defendant LFL to Plaintiff as set forth herein, Plaintiff has suffered and continues to suffer the loss of value of his stock, the precise amount of which will be proven at trial.

99.    Defendant LFL committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights, justifying the imposition of punitive damages.

## TENTH CAUSE OF ACTION

### (Rescission)

### (Against Defendant Light Field Lab)

Plaintiff hereby incorporates by reference Paragraphs 1 through 94 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

100.    Prior to September 9, 2019, Plaintiff and Defendant LFL began negotiations concerning an employment contract. During negotiations, Plaintiff and Defendant LFL agreed that Plaintiff would provide his knowledge and skills to Defendant in return for compensation including equity.

101.    On or about September 9, 2019, Plaintiff and Defendant LFL reduced their negotiations to a written agreement which included an assignment of Plaintiff's intellectual property.

102.    The assignment of Plaintiff's intellectual property fails to represent the true intentions of Plaintiff and Defendant, including, but not limited to, whether Plaintiff agreed to assignment of all of Plaintiff's intellectual property to Defendant LFL to the extent that he was denied inventorship of Patent WO2025042476A1 and WO2024216300A2.

103.    This mistake in the purported agreement was the result of fraudulent statements on the part of Defendant to deny Plaintiff inventorship of Patent WO2025042476A1 and WO2024216300A2, and be fully compensated for his contributions to Defendants.

104.    As a result of the mistake in the written agreement, plaintiff is entitled to rescission of the Confidential Agreement and Invention Assignment Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    For general damages according to proof;

2.    For special and compensatory damages, including put not limited to, loss of wages, salary, benefits, back pay, front pay, future lost income and benefits, and other economic losses, in an amount according to proof at trial;

3.    For treble damages;

4.    For an award of punitive damages, according to proof;

5.    For attorneys' fees and costs of suit;

6.    For rescission of a contract;

7.    For injunctive relief;

8.    For pre-judgment and post-judgment interest pursuant to Civil Code Sections 3287 and 3289, Code of Civil Procedure Section 685.010 and pursuant to any other provision of law providing for interest;

9.    For such other and further relief that the Court may deem just and proper.

Dated: June 17, 2025

HENRY | LACEY PC

By /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff


Plaintiff demands trial by jury in this action.

Dated: June 17, 2025

HENRY | LACEY PC

By /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff

Case No. : 3:25-cv-5118                                                      COMPLAINT FOR DAMAGES