**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ALAN JONES,

       Plaintiff,

    vs.

LIGHT FIELD LAB, INC., JON KARAFIN,
BRENDAN BEVENSEE, and Does 1 to 10,

      Defendant,

Case No.: 3:25-cv-05118-MMC

**AMENDED COMPLAINT FOR DAMAGES**

1. **RETALIATORY TERMINATION (Ca. Lab. Code §1102.5)**
2. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
3. **FRAUD AND DECEIT**
4. **VIOLATION OF PENAL CODE**
5. **UNFAIR COMPETITION**
6. **BREACH OF FIDUCIARY DUTY**

Plaintiff Alan Jones ("Plaintiff") alleges the following against Defendant Light Field Lab Inc. ("LFL"), and Does 1-10 (collectively "Defendants"):

1.    Plaintiff is an individual residing at all times mentioned in the Complaint within the State of Washington, the county in which he performed his duties under the employment contract with Defendant.

2.    Defendant is a company incorporated in Delaware and at all times mentioned in operated in the State of California.

3.    Defendant Jon Karafin is an individual employed by Defendant Light Field Lab in California.

4.    Defendant Brendan Bevensee is an individual employed by Defendant Light Field Lab in California.

5.    In addition to the Defendants named above, Plaintiff sues fictitiously Defendants Does 1 through 10, inclusive, including executives and members of the Board of Directors of Light Field Lab with constructive knowledge of the allegations below, because their names, capacities, status, or facts showing them to be liable are not presently known. Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, designated herein as Does 1 through 10, are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's damages, as herein alleged, were and are the direct and proximate result of the action of said Defendants, and each of them. Plaintiff will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

6.    Plaintiff further alleges that Defendants and Does 1-10, inclusive, are, and at all relevant times were, agents of one another and acting within the course and scope of said agency.

7.    Plaintiff reserves the right to amend his/her charges to plead agency between Defendants and Does 1-10, inclusive, and any of them, at any time that he ascertains facts and supporting agency between such Defendants.

## JURISDICTION AND VENUE

8.   Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 7 above, as well as facts currently unknown.

9.   Jurisdiction over the defendants, and each of them, exists because each of the defendant entities named in this litigation are present and operating within the jurisdictional limits of the Northern District of California and each of the individual defendants named in this litigation are employed within the jurisdictional limits of the Northern District of California.  Subject matter jurisdiction within the United States District Court exists because the amount in dispute exceeds $75,000.

10. Venue is proper because the employment relationship between Plaintiffs and defendants, and each of them, that gave rise to some of the claims in this litigation existed within this judicial district and most or all of the acts and omissions complained of in this litigation took place here. Venue is also proper because most or all of the acts and omissions that occurred outside of the above employment relationship and are complained of in this litigation took place within this judicial district.

## FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION

11.    Mr. Jones was employed by LFL from September 30, 2019, through June 23, 2023. Mr. Jones initially worked as a Senior Pipeline Software Engineer and was promoted to Principal Engineer on July 27, 2020.

### REPRESENTATIONS AND CONCEALMENT TO INDUCE INITIAL AND CONTINUED EMPLOYMENT

12.    As part of Mr. Jones' interviews on August 28 and 29, 2019. Karafin stated that the company had hundreds of patents and in addition to manufacturing displays their business model relied heavily on comprehensive patent coverage of the holographic space, allowing them to both manufacture displays and license the technology.

13.    On August 28th and 29th, Karafin also stated that Light Field Lab had a large theme park customer, ultimately revealed to be Universal Studios. Karafin stated that Light Field Lab

would have the displays out to market the following year (2020) and it would be in the theme park in that timeframe or soon after.

14.     These statements of alleged but untrue facts regarding the company's intellectual property and customers were intended to provide, and justifiably led to the conclusion that LFL was much closer to delivery of the product than it actually was and that an early exercise of options was expected.  In reliance on these statement, Mr. Jones gave up Microsoft stock that was vesting in order to join LFL. Subsequently, there was no further discussion of Universal Studios as a customer and no product was delivered to Universal Studios.

15.     During the discussions on August 28 and 29, 2019, Karafin also discussed an options double trigger event on which all options would vest if the company was publicly listed or acquired. Upon Mr. Jones' inquiry about the number and value of the options at issue, Karafin concealed that information on the basis that it was highly confidential.

16.      Mr. Jones questioned the lack of disclosure of important information about Light Field Labs' stock and stock options during hiring negotiations, as it made it very difficult for Mr. Jones to determine the potential value of the options, but was refused.

17.     Subsequently, after Mr. Jones became an owner of shares of Light Field Lab, Mr. Jones was entitled to review books and records to assess his holdings but when he asked Jon Karafin in March 2023, in the context of a financial discussion about the company, "… is there any additional information I'm entitled or required to be given access to as a shareholder?" Karafin responded "Understood and appreciated. There are no current problems to be aware of (e-g- equity ownership and payroll) and can keep you posted- Again, not a political response, just the facts." Books and records would classify as additional (financial) information Mr. Jones was entitled to be given access to as a shareholder.  Mr. Karafin continued to refuse to provide, and concealed, the information to Mr. Jones, a stock holder.

18.     As part of his onboarding, on September 9, 2019, Mr. Jones signed a Confidentiality and Proprietary Rights Agreement that purported to grant rights to patents and other works for hire to LFL.  This Agreement was signed without the knowledge of misrepresented and concealed facts,

unknown to Mr. Jones at the time, but which if known, would have dissuaded him from joining Light Filed Lab, providing his source code and other knowledge, and signing the agreements.

19.    Subsequently, in August 2025, Mr. Jones learned that Light Field Lab's foundational patents had been developed while Karafin and Bevnensee worked for a prior employer, Lytro, and were not valid patents held by Light Field Lab but, in fact, were the property of Lytro.  While employed by Lytro, Inc., Mr. Karafin and Mr. Bevensee concealed their patent filing activities that were material to Jones' employment decision. Specifically:

a. Lytro filed U.S. Provisional Application 62/200,804 for "Light Guided Image Plane Tiled Arrays with Dense Fiber Optic Bundles for Light-Field Display" on August 4, 2015, while Karafin and Bevensee were employed there and are named inventors on Lytro patent US10565734 which references that provisional application;

b. Karafin and Bevensee filed provisional applications for the benefit of Light Field Lab while still employed at Lytro (62/362,602 on July 15, 2016; 62/366,076 on July 24, 2016), which are referenced in Light Field Lab's US10488584 and contained substantially identical inventions to patents they filed for Lytro and on which they are named inventors. Most of Light Field Lab's patent portfolio is tied to these provisional applications either directly or indirectly; and

c. Karafin and Bevensee incorporated Light Field Lab on November 22, 2016, while still employed at Lytro, creating a competing company using technology concepts from patents filed during their Lytro employment.

d. In patent applications for the benefit of Light Field Lab, including those related to US10488584, Karafin and Bevensee omitted relevant prior art of their Lytro patent filing activities from their disclosures to the USPTO.

e. Where identical concepts and components existed in both, throughout Light Field Lab's entire patent portfolio's filings Karafin and Bevensee carefully avoided using the same terminology as in Lytro's filings.

These concealed facts were material to Mr. Jones' decision to accept employment and to execute comprehensive IP-assignment agreements. Had Mr. Jones been aware of these material facts, he

would not have joined the Company, nor would he have transferred his own source-code and related inventions. These concealed facts were also material to Mr. Jones' decision to exercise stock options, expending money to do so.

**EMPLOYMENT, FAILURE TO ACCOMMODATE AND MR. JONES' COMPLAINT**

20.     Throughout his tenure at LFL, Mr. Jones consistently received positive feedback regarding his job performance, a merit pay increase when he was promoted to Principal Engineer and periodic incentive pay bonuses. He maintained positive personal relationships with his coworkers and management.

21.     Mr. Jones was instrumental in the development of LFL's SolidLight holographic display platform. Mr. Jones worked out of LFL's office from September 30, 2019, through March 7, 2020, and thereafter he worked remotely from his residence in Seattle, WA.

22.     Mr. Jones is Type I Diabetic and suffers from a compromised immune system. Accordingly, Mr. Jones would be susceptible to severe illness and/or death if he were to contract COVID-19.

23.     When LFL management announced that all of its employees would be required to return to in-office work by May 24, 2021, Mr. Jones requested that he be permitted to continue working remotely as an accommodation of his compromised immune system, which is a disability under federal and state law.

24.     Although there does not appear to have been a formal accommodation process, LFL allowed Mr. Jones to continue working remotely and LFL management continued to provide Mr. Jones with positive feedback regarding his job performance. At no time did anyone in LFL management indicate that in-office work was an essential function of Mr. Jones' job duties.

25.     In December 2022-January 2023, Mr. Jones' supervisor, Mr. Trevor Berninger, Director of Software, began having discussions with Mr. Jones to stop working remotely and return to in-office work at LFL. Mr. Jones was surprised because he had been working remotely since March 7, 2020, and there had been no complaints about his job performance.

26.     When Mr. Jones asked if there were performance issues that would give rise to the request that he return to in-office work, Mr. Berninger indicated that LFL did not have any issues with his job performance. When asked if there was a particular reason as to why LFL wanted him to return to in-office work, Mr. Berninger was very vague and unspecific and indicated that "it would just be better." Again, at no time did anyone at LFL indicate that working in-office was an essential job function of Mr. Jones' position.

27.     Although Mr. Jones was open for discussion as to what would be reasonable accommodations for his return to in-office work, LFL did not engage in an interactive dialogue in this regard. In fact, Mr. Jones made repeated suggestions regarding masking protocol, testing protocol, social distancing and ventilation, but LFL did not respond to Mr. Jones' suggestions.

28.     Mr. Jones understandably began to feel very marginalized by LFL management. He understood that LFL management wanted him to return to in-office work, but management was unwilling to implement a reasonable protocol to minimize his risk of exposure to COVID-19. Mr. Jones sensed that his relationships with LFL management were becoming strained, when he had previously enjoyed very positive relationships with leadership.

29.     In January 2023, Mr. Jones was assigned to work on masking interference for Wavetracing Optics to improve image quality. Mr. Jones was working closely with LFL's CEO Mr. Jon Karafin who was the subject matter expert in this area; Mr. Karafin defined the scope of work and methodology of the work. In March 2023, Mr. Jones advised Mr. Karafin that the methodology was unworkable and was unlikely to result in improved image quality. Mr. Jones suggested a number of alternative approaches to improve image quality, but Mr. Karafin insisted that Mr. Jones continue with the methodology he himself had prescribed.

30.     The matter came to a head on April 6, 2023, when Mr. Karafin made disparaging remarks regarding Mr. Jones' work on the Wavetracing Optics during a Software Team meeting that was attended by the entire software team of approximately 10 people. Mr. Karafin stated that it had been nearly six months and that Mr. Jones had failed to generate an image and indicated that it was unlikely that Mr. Jones' work would result in improved image quality.

31.     Mr. Jones was absolutely dismayed that Mr. Karafin would publicly trivialize and disparage his work in such an aggressive manner in front of his coworkers. First, Mr. Karafin's statement was untrue; Mr. Jones had in fact generated images in January 2023. It was Mr. Karafin's own methodology that was unworkable, and Mr. Jones had advised Mr. Karafin that the methodology was unlikely to result in substantial image improvement in early March, 2023. Despite Mr. Karafin's knowledge that the methodology he prescribed was unworkable, he refused to change course. Instead, he scapegoated Mr. Jones and implied that the lack of progress in image improvement was due to Mr. Jones work performance, when he was well aware that the lack of progress was due to the fact that his own methodology had proved to be unworkable.  On April 9, 2023, Mr. Jones submitted a rebuttal of Mr. Karafin's disparaging comments and a complaint of hostile work environment.  Mr. Jones observed that he had proven a viable solution to the problem described above, work which was later used in subsequent patents without his knowledge and without attribution.

32.     LFL conducted an investigation of Mr. Jones' hostile work environment complaint. When Mr. Jones was interviewed by the investigator, he explained that he believed that Mr. Karafin's animosity towards him was due to the fact that he was working remotely because of his disability. Mr. Jones also explained that he had been under increased pressure from LFL to return to in-office work, despite his disability.

33.     Mr. Jones continued working on interference masking on the Wavetracing Optics and upon implementation of Mr. Karafin's methodology, it became apparent to LFL that the methodology did not result in substantial image improvement and, in fact resulted in a substantial reduction in the field of view. The technical concerns that Mr. Jones outlined in his complaint of April 9, 2023, were substantiated.

34.     On June 16, 2023, Mr. Jones received an email indicating that the investigation had been concluded and that his claim of illegal hostile work environment based on disability had not been substantiated.

Case No.: 3:25-cv-05118-MMC                                          AMENDED COMPLAINT

**TERMINATION**

35.     On June 23, 2023, Mr. Jones' employment was terminated.  During the conference call it was indicated that "things aren't working out" and with the conclusion of the investigation, LFL was terminating Mr. Jones employment. There was no indication in the phone conference that LFL was terminating Mr. Jones for poor performance or unprofessional behavior.  Rather, LFL was clearly terminating Mr. Jones for requesting accommodation and then making a complaint about illegal retaliation related to that request.

36.     Later in the day on June 23, 2023, Mr. Jones received a letter of termination which stated that his employment was being terminated for poor performance and unprofessional behavior. Mr. Jones was shocked; during his nearly four year tenure at LFL, no one had complained about poor performance or unprofessional behavior. Notably, the termination letter falsely stated that the decision to terminate Mr. Jones' employment was made prior to the initiation of his hostile work environment complaint of April 9, 2023.

37.     In this case, Mr. Jones reported conduct that he reasonably believed was motivated by unlawful discrimination. Additionally, the temporal proximity between the conclusion of the investigation on June 16, 2023, and the termination of Mr. Jones' employment a week later on June 23, 2023, indicates that LFL acted with retaliatory intent. The temporal proximity between the conclusion of the investigation and the termination of Mr. Jones employment raises a rebuttable presumption of retaliatory intent.

38.     LFL's claim that it made a decision to terminate Mr. Jones' employment prior to the submission of his hostile work environment claim of April 9, 2023 is unsupported by any evidence.

39.     LFL management never brought any job performance concerns to Mr. Jones either orally or in writing until April 6, 2023. In fact, Mr. Berninger advised Mr. Jones in December 2022, that LFL had no problems with Mr. Jones' job performance.

**FAILURE TO NAME JONES AS INVENTOR**

40.     Patent WO2025042476A1 and WO2024216300A2, though fully derived from Mr. Jones' work, did not include Mr. Jones as an inventor, a fact not disclosed to, and concealed from, Mr. Jones by Jon Karafin and Brendan Bevensee during his employment by LFL.

## FIRST CAUSE OF ACTION

### (Ca. Lab. Code §1102.5)

### (Against Defendant Light Field Lab, Jon Karafin, Brendan Bevensee, and Does 1 through 10)

41.     Plaintiff repeats and realleges para. 1 through 40, and incorporates them by reference as though fully reproduced in this cause of action.

42.     At all relevant time periods, Plaintiff was an employee of Defendant Light Field Lab.

43.     As alleged above, Plaintiff complained to Defendant's officers, directors, and/or managing agents that certain of Defendant's activities violated the law.

44.     Defendants Light Field Lab, Karafin and Bevensee terminated Plaintiff, substantially motivated by Plaintiff's complaints detailed above.

45.     As a legal and proximate result of Defendants' actions, Plaintiff has suffered special and general damages in an amount to be proven, but in excess of $1,000,000.

46.      Defendants' actions were taken with malice, oppression, and fraud, such that exemplary and punitive damages should be awarded.

## SECOND CAUSE OF ACTION

### (Wrongful Termination In Violation Of Public Policy)

### (Against Defendant Light Field Lab)

Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 46 above, as well as facts currently unknown.

47.     Plaintiff alleges that Plaintiff's termination was wrongful because it was in violation of the public policy of the State of California and the United States in that Plaintiff's termination was in retaliation for Plaintiff's opposing and reporting illegal activity, as described in preceding allegations.

48.     Plaintiff further alleges that Defendant's termination of Plaintiff was in violation of the public policy as expressed in the Fair Employment and Housing Act.

49.     Plaintiff further alleges that Defendant's termination of Plaintiff was in violation of the public policy as expressed in laws and regulations prohibiting retaliation against individuals who report violations of the law, including, but not limited to, California Labor Code § 1102.5, and in addition was a violation of said statute.

50.    As a direct, foreseeable, and proximate result of defendants' violation of public policy, Plaintiff has suffered and continues to suffer substantial losses in earnings and job benefits, loss of opportunity and advancement, loss of employment prospects, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount in excess of $1,000,000 the precise amount of which will be proven at trial.

51.    Plaintiff claims these amounts, together with prejudgment interest pursuant to Civil Code section 3287, Code of Civil Procedure section 685.010 and pursuant to any other provision of law providing for prejudgment interest.

52.    Because the acts taken toward Plaintiff were carried out by, condoned by and or ratified by managerial employees or managing agents acting in a deliberate, cold, callous, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

**THIRD CAUSE OF ACTION**

**(Fraud and Deceit)**

**(Against Light Field Lab, Jon Karafin, and Brendan Bevensee)**

Plaintiff hereby incorporates by reference Paragraphs 1 through 52 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

53.    Defendants made representations as described in paragraphs 12 to 19 above including false representations as to the commercial application and viability of Defendant's product and concealed information about the financial viability of Light Field Lab.

54.    Defendants made representations as described in paragraphs 12 to 19 regarding ownership of the patents on which the business was reliant and concealed the true ownership of those patents.

55.    Defendants concealed information as described in paragraphs 40 above regarding inventorship of Patent WO2025042476A1 and WO2024216300A2.  Patent WO2025042476A1 and WO2024216300A2, though fully derived from Mr. Jones' work, did not include Mr. Jones as an inventor, a fact not disclosed to Mr. Jones during or after his employment by LFL.

56.     Further, Defendants, including Defendant Karafin, Brendan Bevensee and all corporate officers and board members, though constructive or actual knowledge, had a duty to disclose facts regarding ownership of patents on which the business, and Plaintiff's employment, were based, as part of the employer employee relationship.

57.     Representations regarding the commercial viability of Defendants' product were false as identified above, and the true information regarding the value of Plaintiff's stock was concealed, Defendants used the concealment and misrepresentations to induce Plaintiff to accept and continue his employment, a result Defendants could not have achieved truthfully.

58.     Further, representations regarding the financial stability of Defendant were false as identified above, and the true information regarding the value of Plaintiff's stock was concealed. Defendants used the concealment and misrepresentations to induce Plaintiff to accept and continue his employment, a result Defendants could not have achieved truthfully.

59.     Further, representations regarding the specific value of Plaintiff's stock was concealed as identified above.  Defendants used the concealment and misrepresentations to induce Plaintiff to continue his employment to his detriment, a result Defendants could not have achieved truthfully.

60.     Further, representations regarding the valid ownership of patents by Light Field Lab was concealed as identified above.  Defendants used the concealment and misrepresentations to induce Plaintiff to continue his employment, and to purchase stock options to his detriment, a result Defendants could not have achieved truthfully.

61.     Defendants knew said representations to be false and intended to conceal the true facts from Plaintiff to unlawfully persuade Plaintiff to accept and maintain employment with Defendant, to his detriment.

62.     Plaintiff justifiably relied upon the misrepresentations made to him, and did not know the true facts concealed from him, to his detriment.

63.     Plaintiff did not discover the fraud and deceit practiced upon him as set forth herein until he started his employment with defendants, attempted to fulfill his responsibilities, continued to provide Defendants with valuable intellectual information (which they kept for themselves), was terminated, investigated Defendants' representations and the true fact, and thereby realized that Defendants'

representations were false and that Defendants had concealed their true intent, including the intent to misappropriate his intellectual information.

64.    As a proximate result of the concealment and representations of Defendants to Plaintiff as set forth herein, Plaintiff has suffered and continues to suffer the loss of value of owned stock, wages and benefits, as well as stock options from his prior employment with Microsoft in an amount to be proven at trial.

65.    As a proximate result of the concealment and representations of Defendants to Plaintiff as set forth herein, Plaintiff has suffered the loss of the cost of stock options, now worthless, in an amount to be proven at trial.

66.    As a further direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered extreme anguish, humiliation, and emotional distress, the extent of which will be proven at trial.

67.    Because the acts taken toward Plaintiff were carried out by, condoned by and or ratified by managerial employees or managing agents acting in a deliberate, cold, callous, fraudulent, malicious, oppressive, and intentional manner in order to injure and damage Plaintiff, Plaintiff requests the assessment of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

68.    As a result of the facts above, and the fact that Confidential Information and Inventions Assignment Agreement was obtained through fraud, Plaintiff is entitled to injunctive relief to rescind the Confidential Information and Inventions Assignment Agreement and invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all intellectual property, including but not limited to that related to WO2025042476A1 and WO2024216300A2, created by Plaintiff, or derived from Plaintiff's work product, to Plaintiff.

69.    WHEREFORE, Plaintiff requests relief as hereinafter provided.

**FOURTH CAUSE OF ACTION**

**(Violation of Penal Code Sections 484 & 496)**

**(Against Defendant Light Field Lab, Jon Karafin, Brendan Bevensee, and Does 1 through 10)**

Plaintiff hereby incorporates by reference Paragraphs 1 through 68 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

13

70.    Defendants' misrepresentations to Plaintiff, including fraudulent statements regarding inventorship of Patent WO2025042476A1 and WO2024216300A2, constituted theft of personal property, in the form of Plaintiff's right to inventorship of those patents, under Penal Code section 484 insofar as Defendants have "knowingly and designedly, by…false or fraudulent representation or pretense, defraud[ed][Plaintiff] of…personal property."

71.    Defendants' misrepresentations to Plaintiff and others regarding the development and invention of the concepts underlying Patent WO2025042476A1 and WO2024216300A2, made at the time that Defendants Karafin and Bevensee applied for the patents, constituted theft under Penal Code section 484 insofar as Defendants have "knowingly and designedly, by…false or fraudulent representation or pretense, defraud[ed][Plaintiff] of" property at the time that property was denied to Plaintiff.

72.    Defendant Light Field Lab has retained ownership and Karafin and Bevensee have retained inventorship of Patent WO2025042476A1 and WO2024216300A2 that should have been provided to Plaintiff.

73.    In so doing, Defendant Light Field Lab have knowingly received and deliberately withheld patent rights from Plaintiff, knowing that it has no exclusive rights, title, or interest in patent rights and that said patent rights have been stolen from Plaintiff and/or obtained in a manner constituting theft.

74.    As a direct, foreseeable, and proximate result of Defendants' theft, Plaintiff has suffered and continues to suffer a loss of the value of his inventorship, as well as a loss of the rights to licensing revenue, the precise amount of which will be proven at trial.

75.    Plaintiff has been damaged as a result of the theft of his personal property and is entitled to treble damages pursuant to Penal Code section 496(c).

76.    As a result of the facts above, and the fact that Confidential Information and Inventions Assignment Agreement was obtained through fraud, Plaintiff is entitled to injunctive relief to rescind the Confidential Information and Inventions Assignment Agreement and invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all

intellectual property, including but not limited to that related to WO2025042476A1 and WO2024216300A2, created by Plaintiff, or derived from Plaintiff's work product, to Plaintiff.

77.    WHEREFORE, Plaintiff requests relief as hereinafter provided.

## FIFTH CAUSE OF ACTION

### (Civil RICO)

**(Against Defendants Light Field Lab Jon Karafin, Brendan Bevensee, and Does 1 through 10)**

Plaintiff hereby incorporates by reference Paragraphs 1 through 76 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

78.    Defendant Light Field Lab is an enterprise engaged in and the activities of which affect interstate commerce, to wit: a corporation incorporated under the laws of the State of Delaware.

79.    Defendant Jon Karafin, as a person within the meaning of 18 U.S.C.A. § 1961(3), and as a person employed by said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c).

80.    Defendant Brendan Bevensee, as a person within the meaning of 18 U.S.C.A. § 1961(3), and as a person employed by said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c).

81.    The predicate acts which constitute this pattern of racketeering activity are: multiple fraudulent communications regarding Patent WO2025042476A1 and WO2024216300A2 using means of interstate communication, including electronic filing, mail and email.

82.    These acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. § 1961(5).

83.    Plaintiff was injured in his property by reason of this violation of 18 U.S.C.A. § 1962, in that, as a direct and proximate result of Defendant's complained of acts, Plaintiff suffered damages, including loss of money.

84.    By reason of the Defendants' violation of 18 U.S.C.A. § 1962, Plaintiff is entitled, pursuant to 18 U.S.C.A. § 1964(c), to threefold the damages sustained, with interest thereof at 10% per annum, and a reasonable attorney's fee in connection herewith.

85.    As a result of the facts above, and the fact that Confidential Information and Inventions Assignment Agreement was obtained through fraud, Plaintiff is entitled to injunctive relief to rescind the Confidential Information and Inventions Assignment Agreement and invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all intellectual property, including but not limited to that related to WO2025042476A1 and WO2024216300A2, created by Plaintiff, or derived from Plaintiff's work product, to Plaintiff.

## SIXTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### (Against Defendant Light Field Lab and Jon Karafin)

Plaintiff hereby incorporates by reference Paragraphs 1 through 85 of this Complaint as is fully set forth herein and for a cause of action alleges as follows:

86.    Plaintiff is, and at all times relevant to this amended complaint, was a minority share holder of Defendant LFL.

87.    Defendant LFL and Jon Karafin improperly failed and refused to provide necessary information to Plaintiff as a share holder.

88.    As a result of the acts of Defendant LFL and Jon Karafin, Plaintiff was prevented from gaining the knowledge necessary to convert and sell his owned shares.

89.    As a proximate result of the wrongful acts and omissions of Defendant LFL and Jon Karafin to Plaintiff as set forth herein, Plaintiff has suffered and continues to suffer the loss of value of his owned stock, the precise amount of which will be proven at trial.

90.    Defendant LFL committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights, justifying the imposition of punitive damages.

**SEVENTH CAUSE OF ACTION**

**(Violation of Uniform Fraudulent Transfer Act)**

**(Civil Code § 3439.04(a)(1))**

**(Against Light Field Lab and Does 1 to 10)**

91.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 90 of Plaintiff's Complaint with the same force and effect as though fully set forth herein.

92.    California Civil Code Section 3439.04(a)(1) provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor … if the debtor made the transfer or incurred the obligation … [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."

93.    Defendants, and each of them, violated Section 3439.04(a)(1), inasmuch as Defendant Light Field Lab transferred the assets of Light Field Lab to CMBG FBC-Light Field Lab LLC, Assignee for the Benefit of Creditors of Light Field Lab, Inc. at a time when Defendant had been threatened with Plaintiff's lawsuit and had in fact been sued by Plaintiff.

94.    Plaintiff is further informed and believes that Defendant retained use and control of the assets, including but not limited to the intellectual property at issue in this lawsuit, after the transfer and that reasonably equivalent value was not paid for the property.

95.    At the time of the transfer, Defendant knew it may be obligated to pay Plaintiff a debt as well as turn over certain intellectual property at issue in this lawsuit. As a result of the transfer, Defendant Light Field Lab was left with insufficient assets to satisfy the potential debt and judgment.

96.    The intellectual property transferred Defendant's principal asset.

97.    As a result of the foregoing, Plaintiff is entitled to the remedies set forth in Civil Code Section 3439.07, including an order setting aside the transfer of the intellectual property and other assets from Defendant Light Field Lab to CMBG FBC-Light Field Lab LLC, Assignee for the Benefit of Creditors of Light Field Lab, Inc.

98.    WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

99.    A declaration that the transfer of the intellectual property and other assets is void and will be set aside; in the alternative, a right of attachment or provisional remedy against the intellectual

property and other assets; injunctive relief; and/or for lawful interest according to proof at the time of trial;

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.    For general damages according to proof;

2.    For special and compensatory damages, including put not limited to, loss of wages, salary, benefits, back pay, front pay, future lost income and benefits, and other economic losses, in an amount according to proof at trial;

3.    For treble damages;

4.    For an award of punitive damages, according to proof;

5.    For attorneys' fees and costs of suit;

6.    For rescission of a contract;

7.    For a right of attachment;

8.    For declaratory relief;

9.    For injunctive relief;

10.    For pre-judgment and post-judgment interest pursuant to Civil Code Sections 3287 and 3289, Code of Civil Procedure Section 685.010 and pursuant to any other provision of law providing for interest;

11.    For such other and further relief that the Court may deem just and proper.

Dated: September 3, 2025

HENRY | LACEY PC

By /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff

Plaintiff demands trial by jury in this action.

Dated: September 3, 2025

HENRY | LACEY PC

By /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff

**AMENDED COMPLAINT**