STEPHEN F. HENRY, ESQ.
HENRY | LACEY PC
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES,<br><br>           Plaintiff,<br><br>     vs.<br><br>LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,<br><br>           Defendant, | Case No.: 3:25-cv-5118<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date: December 19, 2025<br>Time: 9 a.m.<br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7<br><br><br>Complaint Filed: June 17, 2025<br>Am. Complaint Filed: Sept. 3, 2025 |

1
**Plaintiff's Opposition To Motion To Dismiss**

**Case No. : 3:25-cv-5118**

Table of Contents

I.     INTRODUCTION ............................................................................................................ 4

II.    FACTUAL BACKGROUND ......................................................................................... 7

III.   ARGUMENT ................................................................................................................... 9

  A.   Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh Causes of Action Are Not Barred by the Patent Act, Plaintiff's Lack of Standing, and/or Estoppel Doctrines ................................................. 9

    1.   The Patent Act Does Not Preclude Mr. Jones' Claims. ..................................................... 9

    2.   Mr. Jones Has Standing To Assert His Claims. ................................................................ 10

    3.   Mr. Jones' Claims Are Unrelated To The Prior Litigation. .............................................. 11

  B.   Plaintiff's Cause of Action for Fraud and Deceit Meet the Heightened Specificity and Particularity Requirements for Fraud ................................................................................................ 12

  C.   Plaintiff's Cause of Action for Violation of Penal Code Sections 484 and 496 Meets the Heightened Specificity and Particularity Requirements for the Fraud Component of the Relevant Crimes ...................................................................................................................... 14

  D.   Plaintiff's Cause of Action for Civil RICO Is Sufficiently Pled ............................................. 15

  E.   Plaintiff's Cause of Action for Breach of Fiduciary Duty Pleads Facts that Indicate Information Was Concealed ................................................................................................ 16

  F.   Plaintiff's Seventh Cause of Action Is Correctly Pled ............................................................ 17

  G.   LFL's Request For Dismissal of Brendan Bevensee Is Inappropriate ................................... 14

IV.    CONCLUSION AND REQUEST FOR LEAVE TO AMEND ..................................... 18

# Table of Authorities

**Cases**

*Certicable Inc. v. Point 2 Point Commc'ns Corp.*, (E.D.N.Y. Feb. 26, 2025) No. 2:23-CV-5322 (NJC) (SIL), 2025 WL 622547 .................................................................................................... 10

*Doan v. Singh* (9th Cir. 2015) 617 F.App'x 684 .......................................................................... 16

*Doe v. United States Dept. of Justice.* (D.C.Cir.1985) 753 F.2d 1092 ........................................ 7

*Doss v. South Central Bell Telephone Co.* (5th Cir.1987) 834 F.2d 421 ..................................... 6

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,* (Fed. Cir. 1998) 153 F.3d 1318 ....................... 9

*Lazar v. Superior Court* (1996) 12 Cal.4th 631 ......................................................................... 13

*Murphy v. BDO Seidman, LLP* (2003) 113 Cal. App. 4th 687 ................................................... 13

*Pac. Recovery Sols. v. United Behav. Health* (N.D. Cal. 2020) 481 F. Supp. 3d 1011 ............. 16

*Shah v. Skillz, Inc.,* (2024) 101 Cal. App. 5th 285 ....................................................................... 6

*Siry Investment, L.P. v. Saeed Farkhondehpour, et al* (2022) 13 Cal.5th 333 .......................... 14

*Trireme Med., LLC v. AngioScore, Inc.* (Fed. Cir. 2016) 812 F.3d 1050 ................................... 10

*United States v. Corinthian Colleges* (9th Cir. 2011) 655 F3d 984 ............................................ 5

*Vaughan v. Wardhaugh* (N.D. Cal. May 10, 2024) No. 23-CV-02879-RFL, 2024 WL 2853972 ........... 16

**Treatises**

*Civil Procedure Before Trial* § 9:230 .......................................................................................... 7

## I. INTRODUCTION

The gravamen of Alan Jones' complaint against Light Field Lab ("LFL"), Brendan Bevensee, and Jon Karafin is (a) he was induced to join LFL, and leave behind millions of dollars of Microsoft stock options, by false statements and concealment of true facts by defendants Bevensee and Karafin; (b) but for that fraudulent inducement he would never have provided his intellectual property (i.e., his "source codes") to LFL; and (c) his source code were stolen through false pretense.[1]

LFL's Motion to Dismiss erroneously reads Mr. Jones' complaint to seek the company's patents. That is wrong.  Equally erroneous is LFL's argument that Mr. Jones is seeking stock options to purchase LFL stock. Mr. Jones is seeking neither because he understands both to be worthless.[2] What Mr. Jones seeks is ownership of his intellectual property (*i.e.,* his original source code), compensation for the loss of *Microsoft* stock grants (forfeited as a result of joining LFL), and losses related to LFL stock (including the cost of the stock he purchased while employed at LFL) — all of which are damages attributable to LFL's fraud.

The claim for the source code is stated in Causes of Action Three, Four, and Five:

*As a result of the facts above, and the fact that Confidential Information and Inventions Assignment Agreement was obtained through fraud, Plaintiff is entitled to injunctive relief to rescind the Confidential Information and Inventions Assignment Agreement and invalidate WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual property, and the transfer of all intellectual property, including but not limited to that related to WO2025042476A1 and WO2024216300A2, created by Plaintiff, or derived from Plaintiff's work product, to Plaintiff.*

---

[1] Mr. Jones also alleges that officers of LFL breached their fiduciary duties towards him as a shareholder and that LFL is fraudulently transferring assets, including the source code he seeks, through an Assignment For Benefit of Creditors.

[2] As noted in footnote 4 below, LFL also appears to be reading the wrong complaint.  An effort by LFL to meet and confer prior to filing its Motion To Dismiss would have saved counsel and the Court quite a bit of time addressing some of the issues raised.

In other words, Jones seeks rescission of the Confidential Information and Inventions Assignment Agreement through which he transferred his work product (his source code), and ownership of that source code. To the extent there is confusion regarding the fact that Plaintiff seeks the return of his source code in its completed form —and *not* the patents themselves — the complaint is properly amended to make this clarification.[3]

With regard to Mr. Jones' claim for loss of stock value, an objective reading of the complaint confirms that Mr. Jones is not seeking to obtain stock options, *i.e.,* options to purchase LFL stock — which was the issue Defendant references as previously litigated, nor is he seeking to obtain LFL stock.[4] To the contrary, the Amended Complaint seeks compensatory damages related to *loss of stock value* on three independent bases. Moreover, one component of the loss is unassailably *not* related to LFL stock value. Specifically, Mr. Jones seeks the loss of value of stock grants "from his prior employment with

---

[3] In particular, if it is appropriate in this action to determine who properly owns the source code that was used in LFL's patents to prove an element of his damages claim, an additional cause of action for declaratory relief regarding the validity of the patents, as well as rescission of the Confidential Information and Inventions Assignment Agreement, can be added to this complaint — which is entirely appropriate for this Court to resolve. Additionally, as also noted in the Legal Argument section of this brief, Plaintiff will be seeking leave to amend the Fourth Cause of Action for Violation of Penal Code Sections 484 & 496 to confirm the true remedy sought in that cause of action is likewise limited to the source code underlying the patents, not the patents themselves. This correction (as well as numbering and corrections to labeling causes of action) will be addressed in a Second Amended Complaint if the Court grants leave to amend. FRCP 15(a) states the court "should freely give leave when justice so requires." See also *United States v. Corinthian Colleges* (9th Cir. 2011) 655 F3d 984, 995 (standard for granting leave to amend is "generous.")

[4] LFL makes this claim in apparent reliance on a complaint that is no longer operative. Specifically, LFL asserts that Jones alleges "he has the right to vested and unvested stock options in LFL's stocks despite contractual language to the contrary, as part of the following causes of action: Third (¶¶ 57-60, 65), Sixth (¶ 89), and Seventh (¶¶ 97, 99). It is possible that Plaintiff also asserts the stock options claims in the Fourth (¶ 93) and Fifth (¶100) causes of action, though it is not stated explicitly." Opening Brief, page 18, lines 14-18. This is not only false but the Seventh Cause of Action makes no mention of the stock at all and there is no ¶100.

LFL also argues at page 18 to 19 that "lack of specificity [of a contract] is a separate, additional grounds for dismissal." There are no contract claims in the Amended Complaint. As a result, because LFL's Motion rests on an earlier, no longer operative complaint, it is procedurally infirm, and properly dismissed on that basis alone.

Microsoft" on the basis that he was fraudulently induced to leave his prior employment to join LFL. Amended Complaint para. 65. Because this loss is unchallenged in Defendant's Motion to Dismiss, its Motion fails on that basis alone. *Doss v. South Central Bell Telephone Co.* (5th Cir.1987) 834 F.2d 421, 425 (demand for improper remedy not fatal if claim shows plaintiff entitled to different form of relief).

Separately, Mr. Jones seeks additional damages for the "the loss of <u>value</u>" of LFL stock Mr. Jones owned; as well as the loss of money Mr. Jones paid to purchase LFL "stock options, now worthless…." Amended Complaint para. 64, 89. The prior litigation in which LFL sought declaratory relief was, as stated by Defendants, to establish that "Jones never earned any right to Light Field Lab's stock equity interest…and that the alleged vested stock options to Jones expired three months after his employment at Light Field Lab ended." Motion to Dismiss, p. 11-12. More precisely, LFL — which at the time was a viable company — sought a ruling that Mr. Jones was not entitled to be issued any stock options or stock because, according to the company, any right to such options or stock had expired following his termination under the terms of his contract. Mr. Jones did not dispute those contract terms, and here, he does not seek LFL's worthless stock equity interest. That does not mean Mr. Jones does not have viable claims against the company that give rise to damages unrelated to the prior litigation. Indeed, Mr. Jones has a wrongful termination claim against LFL — which will unquestionably proceed in the Court because it is unchallenged by Defendants —and if that cause of action is proved, he is entitled to damages comprising the value of his stock at the time he was wrongfully terminated. *See Shah v. Skillz, Inc.,* (2024) 101 Cal. App. 5th 285, 299, 302 (addressing loss of stock options in a wrongful termination case, and recognizing the flexible nature of damages is to "put the injured party in as good a position as he would have been" but for the actionable conduct). Additionally, Mr. Jones seeks compensation for losses resulting from fraud, concealment, theft, and breach of fiduciary duty. These losses, like the damages arising from his wrongful termination claim, are distinct from the "source code" losses upon which LFL focuses its Motion. As a result, because claims for fraud and concealment, violation of the Penal Code, and breach of fiduciary, as well as the damages resulting from those claims, are undeniably properly litigated in this Court, Defendants argument that this lawsuit belongs elsewhere lacks merit as a matter of law and common sense. Further, pursuing

6
**Plaintiff's Opposition To Motion To Dismiss**
Case No. : 3:25-cv-5118

these claims under the Patent Act would not afford Mr. Jones' recourse against individuals, including Mr. Bevensee and Mr. Karafin (as well as directors and other executives to be added upon discovery).

In sum, it is apparent that the damages Mr. Jones suffered are not limited solely to recovery of his source code, and thus Defendant's Motion to Dismiss must be denied. A Rule 12(b) (6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." Schwarzer, et al., *Civil Procedure Before Trial* § 9:230. "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice.* (D.C.Cir.1985) 753 F.2d 1092, 1104; *see also Doss, supra,* 834 F.2d at 425. Moreover, as previously noted (*see* fn 3), to the extent a separate determination of the validity of the patents and who owns the source code is a necessary predicate for Mr. Jones to recover his source code, that claim too can be properly litigated in this action — further confirming the Motion to Dismiss is properly denied.

## II.     FACTUAL BACKGROUND

The facts stated in the Amended Complaint ("AC") establish that Mr. Jones joined LFL as a Senior Pipeline Software Engineer and was promoted to Principal Engineer. AC para. 11. His job was to develop LFL's SolidLight holographic display platform. AC para. 21. As part of this role, Mr. Jones contributed valuable intellectual property to the development of LFL's products (including but not limited to patents and patented products) based on false statements and concealment by LFL's officers, Karafin and Bevensee. LFL then filed patents based upon those innovations claiming them as the inventions of Karafin and Bevensee. Also, as part of his employment with LFL, Jones gave up stock grants, bonuses, annual raises, and career prospects from his prior employment with Microsoft, and he instead received stock options from LFL as a portion of his compensation (and exercised some of those options), based on misrepresentations and concealment by LFL's officers, Karafin and Bevensee, all to his detriment.

Mr. Jones' position in this lawsuit is quite different from the narrative presented by LFL. Mr. Jones contends that LFL's officers lied to him about the viability and marketability of their product as well as the original source of their intellectual property. LFL's officers also concealed information about the valuation of the stock options being offered to him. Based on the

misrepresentations made to him, and the lack of knowledge of the true facts, he joined LFL, giving up stock grants at his prior employer, Microsoft, and agreeing to develop and provide source code for LFL's products under a Confidential Information and Inventions Assignment Agreement.

While working for LFL, Mr. Jones' was discriminated against and retaliated against on the basis of a disability, ultimately leading to his termination. After his termination, LFL sued him for declaratory relief regarding a claim that he wanted equity in the company. After some litigation of this issue, including the filing of a Request for Judicial Notice, Mr. Jones established that no such demand ever occurred. Mr. Jones provided a declaration stating that at no time did he authorize or make a claim for stock options under his contract. (LFL's Request For Judicial Notice, Exhibit 5, page 3-4). Although LFL could have amended its complaint to accurately state the facts, it declined to do so, and the case was dismissed. Nonetheless, in this action, LFL seeks to broadly interpret its complaint for declaratory relief beyond the issues it raised. This clarification is important to ensure an accurate record, but, as a legal matter, even if LFL's broad interpretation was factually supported, it still does not support dismissal of the instant action for the reasons summarized in the Introduction (above) and as further discussed below.

Following dismissal of LFL's declaratory relief action, Mr. Jones discovered that the basis for LFL's technology and patents was fraudulently obtained from another company, offering further factual support to demonstrate the broad nature of the fraud in which Defendants were engaged, highlighting the misrepresentations made to him to induce him to join the company in the first place. The discovery of how LFL came to develop its initial patents also revealed fraud on the Patent Office, forming the basis for a Civil RICO claim.[5]

Subsequent to the filing of Mr. Jones' initial complaint in this Court, he also discovered that LFL was attempting to dispose of its assets, including intellectual property, and specifically including the source code Mr. Jones seeks to recover as one element of his damage claim. On that

---

[5] To be specific, there are two categories of patents discussed in this case: 1) those which derive from Mr. Jones' innovations (it is these for which he has standing, and seeks, to invalidate), and those which stem from filings made by Karafin and Bevensee while employed at Lytro (which were concealed material information and relevant to his fraudulent inducement claims).

basis, Mr. Jones amended his complaint to add a claim for Fraudulent Transfer against LFL to prevent the transfer of the assets he seeks to third parties.

As discussed in the Introduction above, and the Legal Argument below, Mr. Jones does not seek ownership of patents. Rather, Plaintiff seeks the return of his intellectual property (*i.e.,* his source code), as well as compensation for the economic losses suffered as a result of Defendants' fraud, concealment, theft, and breach of fiduciary.

### III. ARGUMENT

#### A. Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh Causes of Action Are Not Barred by the Patent Act, Plaintiff's Lack of Standing, and/or Estoppel Doctrines

LFL's arguments regarding the application of the Patent Act, lack of standing, and estoppel do not apply to the claims that Mr. Jones is asserting. Mr. Jones is asserting a right to source code, not patents; and it is indisputable that Mr. Jones has standing to pursue return of his source code. Further, the prior litigation between LFL and Mr. Jones did not apply to any of the claims being made by Mr. Jones in the Amended Complaint.

##### 1. The Patent Act Does Not Preclude Mr. Jones' Claims.

As noted in the Introduction above, Mr. Jones does not seek the remedy that LFL claims, and, therefore, the instant litigation does not run afoul of the Patent Act. LFL contends that "Plaintiff's claims are dependent upon a determination that Plaintiff was an inventor and that LFL is not a rightful owner of the patents" but this is incorrect. Mr. Jones seeks remedies not covered by the Patent Act, and in particular, invalidation of the Confidential Information and Inventions Assignment Agreement raises contract issues that do not require resolution under the Patent Act. Similarly, claims for fraudulent inducement, and fraud in relation to securing Mr. Jones' source code, do not require resolution under the Patent Act. Federal Circuit precedent establishes that state law fraud claims are not preempted when based on conduct "separate from and in addition to" patent rights themselves. *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* (Fed. Cir. 1998) 153 F.3d 1318, 1335 (overruled on other grounds) ("To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If

a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted.")  The cases cited by LFL each determined that a remedy for the state law claim could not be provided without resort to federal patent law regarding inventorship or ownership of the patent itself.  Here, remedies for each of the state law causes of action attacked by LFL, such as reliance damages, can be determined without resort to patent law as they hinge on the tortious conduct committed by LFL, not patent validity or ownership.

2. <u>Mr. Jones Has Standing To Assert His Claims</u>.

LFL's motion incorrectly assumes the validity of the Confidential Information and Inventions Assignment Agreement which Mr. Jones signed on the basis of representations that were false and based on the concealment of true facts.  Included in his statement of remedy is the invalidation of that Confidential Information and Inventions Assignment Agreement.  Upon the invalidation of that document, the source code that Mr. Jones seeks would revert to him as the original creator and owner. *Trireme Med., LLC v. AngioScore, Inc.* (Fed. Cir. 2016) 812 F.3d 1050, 1053, cited by LFL, is instructive on this point.  While the Court in *Trireme Med* did state "[w]hen the owner of a patent assigns away all rights to the patent, neither he nor his later assignee has a 'concrete financial interest in the patent' that would support standing in a correction of inventorship action. (citations omitted by counsel)," the Court went on to state "the question is whether such an assignment to AngioScore occurred here" (*Id*.) and went on to determine that the assignment could not be determined on a Motion to Dismiss and remanded the case for determination of factual issues. *Id*. at 1056.  The other case cited by LFL, *Certicable Inc. v. Point 2 Point Commc'ns Corp.*, (E.D.N.Y. Feb. 26, 2025) No. 2:23-CV-5322 (NJC) (SIL), 2025 WL 622547, quotes the *Trireme Med*. decision but is otherwise wholly inapposite in application.

At bottom, if Mr. Jones is successful in invalidating the Confidential Information and Inventions Assignment Agreement on the grounds of fraudulent inducement, the issue of patent assignment is moot.  Therefore, the issue of standing with respect to the Confidential Information and Inventions Assignment Agreement cannot be decided on a Motion to Dismiss.

         3.     <u>Mr. Jones' Claims Are Unrelated To The Prior Litigation</u>.

LFL brought a declaratory relief action against Mr. Jones seeking a declaration that he was not entitled to equity interest in LFL. Mr. Jones doesn't want equity interest in LFL, either in the form of stock or stock options. Moreover, as emphasized in the Introduction, the prior lawsuit LFL brought against Mr. Jones raised entirely different issues than those presented in the instant action. LFL sought a declaration that Mr. Jones was not entitled to any stock or stock options following his termination based on contract provisions that are irrelevant to the claims here. Rather, Mr. Jones seeks damages related to being fraudulently induced to leave Microsoft (resulting in the loss of his Microsoft stock), and additionally seeks to recover the money he expended in purchasing LFL stock based on fraudulent misrepresentations and concealment by Defendants. Thus, there can be no preclusion based on Judicial Estoppel, Claim Preclusion and Issue Preclusion for the straightforward reason that the same claims and issues raised in the prior declaratory relief action are not presented here. Specifically, and contrary to LFL's argument, the transactional facts in the instant case are Plaintiff's employment at LFL, but <u>are not</u> the contracts between the parties, <u>are not</u> Plaintiff's alleged rights as a shareholder, and <u>are not</u> his claims to stock options.

With regard to LFL's argument that Mr. Jones is equitably estopped from asserting claims related to the value of stock options (1) the position Mr. Jones has asserted in this lawsuit is not "clearly inconsistent" with the position he took in the prior declaratory relief action because the damages asserted here have nothing to do with whether he had a contractual right to own stock or exercise stock options following his termination; (2) none of the remedies sought by Mr. Jones in this lawsuit were asserted in the prior declaratory relief litigation, so (as a matter of fundamental logic) he could not have been successful in persuading the earlier court to adopt a finding that he now claims was incorrect (nor was the earlier court misled into any finding); and (3) Mr. Jones will not derive an unfair advantage or impose an unfair detriment if not estopped because he is pursuing unrelated claims and seeking unrelated remedies.

LFL's argument that Mr. Jones' claim for the value of stock and stock options may be dismissed under the doctrine of claim preclusion fails for similar reasons: (1) there is no identity of claims, particularly the value of stock he would have exercised at Microsoft if he had not been

fraudulently induced to join LFL, and (2) a final judgment on the merits of Mr. Jones' new claims has never occurred.

And, finally, with regard to LFL's argument that issue preclusion justifies dismissal of Mr. Jones' claims related to the value of stock options: (1) there was no full and fair opportunity to litigate the issues raised in this lawsuit in the prior declaratory action because that action had nothing to do with the present claims; (2) the issues raised here were not previously litigated because it would not have been appropriate to litigate them in LFL's declaratory relief action; and consequently, (3) no final judgment on the instant claims and remedies resulted.

### B. Plaintiff's Cause of Action for Fraud and Deceit Meet the Heightened Specificity and Particularity Requirements for Fraud

Mr. Jones has pled facts sufficient to assert misrepresentation and concealment of facts. Specifically, the complaint sets forth who made the statements, who engaged in the concealment, what was misrepresented, what was concealed, when the misrepresentations were made and the concealment occurred, as well as how misrepresentations were made and how the concealment occurred. Those claims are summarized here: As part of Mr. Jones' interviews on August 28 and 29, 2019, Karafin stated that the company had hundreds of patents and in addition to manufacturing displays their business model relied heavily on comprehensive patent coverage of the holographic space, allowing them to both manufacture displays and license the technology. Amended Complaint para. 12. On August 28th and 29th, Karafin also stated that Light Field Lab had a large theme park customer, ultimately revealed to be Universal Studios. Karafin stated that Light Field Lab would have the displays out to market the following year (2020) and it would be in the theme park in that timeframe or soon after. Amended Complaint para. 13. These statements of alleged but untrue facts regarding the company's intellectual property and customers were intended to provide, and justifiably led to the conclusion that LFL was much closer to delivery of the product than it actually was and that an early vesting and exercise of options was expected. In reliance on these statement, Mr. Jones gave up Microsoft stock that was vesting in order to join LFL. Subsequently, there was no further discussion of Universal Studios as a customer and no product was delivered to Universal Studios. Amended Complaint para. 14. During the discussions on August 28 and 29, 2019, Karafin

also discussed an options double trigger event on which all options would vest if the company was publicly listed or acquired. Upon Mr. Jones' inquiry about the number and value of the options at issue, Karafin concealed that information on the basis that it was highly confidential. Amended Complaint para. 15. Mr. Jones questioned the lack of disclosure of important information about Light Field Labs' stock and stock options during hiring negotiations, as it made it very difficult for Mr. Jones to determine the potential value of the options, but was refused. Subsequently, after Mr. Jones became an owner of shares of Light Field Lab, Mr. Jones was entitled to review books and records to assess his holdings but when he asked Jon Karafin in March 2023, in the context of a financial discussion about the company, "… is there any additional information I'm entitled or required to be given access to as a shareholder?" Karafin responded "Understood and appreciated. There are no current problems to be aware of (e-g- equity ownership and payroll) and can keep you posted- Again, not a political response, just the facts." Books and records would classify as additional (financial) information Mr. Jones was entitled to be given access to as a shareholder. Mr. Karafin continued to refuse to provide, and concealed, the information to Mr. Jones, a stock holder. Amended Complaint para. 17.

     Subsequently, in August 2025, Mr. Jones learned that LFL' core patents had been developed while Karafin and Bevnensee worked for a prior employer, Lytro, and were not valid patents held by Light Field Lab but, in fact, were the property of Lytro. While employed by Lytro, Inc., Mr. Karafin and Mr. Bevensee concealed their patent filing activities that were material to Jones' employment decision. Amended Complaint para. 19.

     These allegations are more than sufficient to meet the requirement for a fraud claim because, as discussed in *Murphy v. BDO Seidman, LLP* (2003) 113 Cal. App. 4th 687, 692, the allegations are specific enough to put a defendant on notice as to the falsehoods they will be required to defend against. The allegations identify who made the misrepresentations, who concealed facts, their position of authority requiring disclosure of true facts, when and how the misrepresentations and concealment occurred, and under what circumstances the misrepresentations and concealment occurred. See e.g. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the

representations were tendered.")  Nevertheless, if the Court determines that the facts pled are insufficient to meet the heightened pleading standard, Mr. Jones requests leave to amend to provide more details of the communications, as well as the information that was intentionally withheld from him by officers of the company.

Without citation, LFL also claims that "these purported 'facts' are preempted by federal law and the Patent Act, and Plaintiff has no standing to assert them.  While claims can be preempted (but are not in this case), facts cannot be preempted nor does any purported lack of standing apply to the assertion of facts.  LFL's failure to cite authority to support its position is unsurprising.  There is no such law.

1. <u>LFL's Request For Dismissal of Brendan Bevensee Is Inappropriate</u>

As an initial matter, it is important to emphasize that LFL's request to dismiss claims against Brendan Bevensee is procedurally improper, since LFL does not represent him.  Further, nothing in the Motion to Dismiss indicates it is being filed on behalf of any Defendant other than LFL.

Additionally, and leaving aside the inappropriate attempt to request dismissal of another party, the substantive argument advanced by LFL (if the Court reaches it) is also without merit.  As discussed above, the complaint sets forth specific allegations against Mr. Bevensee — specifically with regard to the concealment of his and Karafin's activities in relation to Light Field Lab and its founding intellectual property while they were both employed at Lytro, which formed the core of their fraudulent inducement of Mr. Jones.  Amended Complaint para. 19.

**C. Plaintiff's Cause of Action for Violation of Penal Code Sections 484 and 496 Meets the Heightened Specificity and Particularity Requirements for the Fraud Component of the Relevant Crimes**

Likewise, Mr. Jones has pled facts sufficient to assert false or fraudulent representation or pretense as a prerequisite to his claim that Bevensee and Karafin used these false pretenses to steal his source code and that LFL retained it for its own purposes.

These facts demonstrate that because Mr. Jones' work product was taken from him under false pretenses, the required elements of Penal Code Section § 496 are met.  As stated in *Siry Investment, L.P. v. Saeed Farkhondehpour, et al* (2022) 13 Cal.5th 333, the factors necessary to state a claim under the

Penal Code are: (i) that Defendant obtained property [source code] belonging to Plaintiff, and withheld that property through a means of theft, as defined in Penal Code §484, namely false pretense; (ii) Defendant knew the property was obtained by false pretense at the time they withheld the property from Plaintiff; and (iii) Defendant's violation of section 496(a) caused Plaintiff to suffer actual damage, loss, or harm. *Siry, supra,* 13 Cal. 5th at 361. Each of those elements are met here.

Nevertheless, Mr. Jones will seek leave to amend his complaint to a) clarify the description of what was stolen through false pretense, i.e. his source code, b) clarify that Bevensee and Karafin acted with fraudulent intent at the time they made false statements and concealed true information, and c) clarify that LFL retained the product of the theft, i.e. the source code.

### D. Plaintiff's Cause of Action for Civil RICO Is Sufficiently Pled

While not contained within the cause of action for Civil RICO, the following allegations in the Fact section of the Amended Complaint (which is incorporated into the cause of action) establish the acts of wire fraud or mail fraud necessary to establish the claim:

a. Lytro filed U.S. Provisional Application 62/200,804 for "Light Guided Image Plane Tiled Arrays with Dense Fiber Optic Bundles for Light-Field Display" on August 4, 2015, while Karafin and Bevensee were employed there and are named inventors on Lytro patent US10565734 which references that provisional application;

b. Karafin and Bevensee filed provisional applications for the benefit of Light Field Lab while still employed at Lytro (62/362,602 on July 15, 2016; 62/366,076 on July 24, 2016), which are referenced in Light Field Lab's US10488584 and contained substantially identical inventions to patents they filed for Lytro and on which they are named inventors. Most of Light Field Lab's patent portfolio is tied to these provisional applications either directly or indirectly; and

c. Karafin and Bevensee incorporated Light Field Lab on November 22, 2016, while still employed at Lytro, creating a competing company using technology concepts from patents filed during their Lytro employment.

    d. In patent applications for the benefit of Light Field Lab, including those related to US10488584, Karafin and Bevensee omitted relevant prior art of their Lytro patent filing activities from their disclosures to the USPTO.

    e. Where identical concepts and components existed in both, throughout Light Field Lab's entire patent portfolio's filings Karafin and Bevensee carefully avoided using the same terminology as in Lytro's filings.

These acts constitute "[t]he predicate acts which constitute this pattern of racketeering activity are: multiple fraudulent communications…using means of interstate communication, including electronic filing, mail and email," referred to in paragraph 81 of the Amended Complaint.

The allegations above plead the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Pac. Recovery Sols. v. United Behav. Health* (N.D. Cal. 2020) 481 F. Supp. 3d 1011, 1028.  The allegations above plead allege the requisite two predicate acts for each defendant. *Vaughan v. Wardhaugh* (N.D. Cal. May 10, 2024) No. 23-CV-02879-RFL, 2024 WL 2853972.  The allegations above state "what each individual did, when they did it, or how they functioned together as a continuing unit." *Doan v. Singh* (9th Cir. 2015) 617 F.App'x 684, 686.  The alleged fraudulent communications of "electronic filing, mail and email" are pleaded with particularity as Rule 9 demands.

Nevertheless, if the Court determines that the facts pled are insufficient to meet the pleading standard for Civil RICO, Mr. Jones requests leave to amend to provide more details of the fraudulent communications to the US PTO and the conspiracy between Karafin and Bevensee to make these fraudulent commnications, as well as the information that was intentionally withheld from him by officers of the company.

### E.  Plaintiff's Cause of Action for Breach of Fiduciary Duty Pleads Facts that Indicate Information Was Concealed

Contrary to LFL's claim that specific allegations of breach of LFL's and Jon Karafin's fiduciary duty are not alleged, Mr. Jones alleges:

    11.    During the discussions on August 28 and 29, 2019, Karafin also discussed an options

double trigger event on which all options would vest if the company was publicly listed or acquired.  Upon Mr. Jones' inquiry about the number and value of the options at issue, Karafin concealed that information on the basis that it was highly confidential.

12.  Mr. Jones questioned the lack of disclosure of important information about Light Field Labs' stock and stock options during hiring negotiations, as it made it very difficult for Mr. Jones to determine the potential value of the options, but was refused.

13.  Subsequently, after Mr. Jones became an owner of shares of Light Field Lab, Mr. Jones was entitled to review books and records to assess his holdings but when he asked Jon Karafin in March 2023, in the context of a financial discussion about the company, "… is there any additional information I'm entitled or required to be given access to as a shareholder?" Karafin responded "Understood and appreciated. There are no current problems to be aware of (e-g- equity ownership and payroll) and can keep you posted- Again, not a political response, just the facts."  Books and records would classify as additional (financial) information Mr. Jones was entitled to be given access to as a shareholder.  Mr. Karafin continued to refuse to provide, and concealed, the information to Mr. Jones, a stock holder

 Because an objective reading of the allegations set forth above confirms that LFL refused to provide any books and records despite Mr. Jones' request for the information, Plaintiff has stated a viable claim for breach of his fiduciary duty towards Mr. Jones.

### F.    Plaintiff's Seventh Cause of Action Is Correctly Pled

Contrary to LFL's argument, Mr. Jones' cause of action for fraudulent transfer is directed at LFL for fraudulently transferring specific assets, intellectual property, including the source code sought by Mr. Jones, to another to avoid providing it to Mr. Jones as part of the remedy in this lawsuit.  LFL provides no authority that such a prophylactic measure cannot be taken to avoid dissipation of the assets sought.  Therefore, LFL's complaint that the cause of action interferes with the general assignment of assets or impedes the assignee is both wrong and legally unsupported.

IV. **CONCLUSION AND REQUEST FOR LEAVE TO AMEND**

For the reasons stated above, LFL's Motion to Dismiss should be denied. However, to the extent that the Court finds deficiencies in the pleading of the Amended Complaint, Plaintiff requests leave to amend to provide any missing factual bases for the claims.

Dated: October 24, 2025

                                              HENRY | LACEY PC

                                              By /s/ Stephen Henry
                                              STEPHEN F. HENRY
                                              Attorney for Plaintiff