1

**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                                  FOR THE

10                    NORTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| ALAN JONES, | ) Case No.: 3:25-cv-5118 MMC |
| Plaintiff, | ) |
| | ) **PLAINTIFF'S OPPOSITION TO** |
| vs. | ) **KARAFIN AND BEVENSEE'S** |
| | ) **MOTION TO DISMISS** |
| LIGHT FIELD LAB, INC., JON KARAFIN, | ) |
| BRENDAN BEVENSEE, and Does 1 to 10, | ) |
| Defendant, | ) |
| | )  Date: January 9, 2026 |
| | ) Time: 9 a.m. |
| | ) Judge: Hon. Maxine M. Chesney |
| | ) Courtroom: 7 |
| | ) |
| | ) Complaint Filed: June 17, 2025 |
| | ) Am. Complaint Filed: Sept. 3, 2025 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

25  _____

26

27

28

Case No.: 3:25-cv-5118 MMC                    Plaintiff's Opposition To
                                              Motion to Dismiss

## Table of Contents

I.    INTRODUCTION ...................................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................................... 2

III.    ARGUMENT ............................................................................................................. 3

  A.    Individual Liability May Be Asserted Under Labor Code 1102.5 ........................... 3

    1.    Statutory Interpretation Supports Individual Liability ......................................... 4

    2.    California's Expansion Of Protections Supports Individual Liability. ................. 6

  B.    Jones's Claim For Violation of California's Penal Code Is Properly Pled ............... 6

    1.    Plaintiff's Causes of Action Are Not Barred by the Patent Act. ......................... 7

  C.    Plaintiff's Cause of Action for Fraud and Deceit Meets the Heightened Specificity and Particularity Requirements. ............................................................. 8

    1.    The Statements Concerning Patent Filings Support a Fraud Claim. ................. 11

    2.    The Interview Communications Support a Fraud Claim. ................................... 11

    3.    Jones' Reliance Was Reasonable. ..................................................................... 12

    4.    Jones's Text Messages Allege Facts Supporting a Claim for Fraud. ................ 13

  D.    Plaintiff's Cause of Action for Breach of Fiduciary Duty Pleads Facts That Indicate Information Was Concealed. ....................................................................... 15

    1.    The Business Judgment Rule Does Not Insulate Failure of Candor. ............... 16

    2.    Jones Made Sufficient Requests For Information. ............................................ 16

    3.    Jones Satisfies The Framework In *Miele*. ....................................................... 18

    4.    Resolution of SVB Situation Does Not Insulate Defendants. .......................... 19

  E.    Plaintiff's Cause of Action for Civil RICO Is Sufficiently Pled ............................ 20

    1.    Semiconductor Energy Laboratory Does Not Bar Jones's RICO Claim ........... 21

**2.** *Bridge v. Phoenix Bond* **Confirms Jones's Theory**................................................. 22

**3.** **Trade Secret Theft Is an Enumerated RICO Predicate**........................................... 22

**4.** **The 2016 DTSA Amendment Strengthened This Theory**........................................ 23

**5.** **Jones Has Cognizable "Business or Property" Injury**............................................ 23

**6.** **Jones's Property Right to File Patents Was Destroyed**.......................................... 24

**7.** **Jones Has Alleged a Pattern of Racketeering Activity**........................................ 24

**8.** **Individual Defendants Are Personally Liable**....................................................... 25

**IV.** **CONCLUSION AND REQUEST FOR LEAVE TO AMEND**.................................... 25

# Table of Authorities

**Cases**

*De La Torre v. Progress Rail Servs. Corp.,* 2015 WL 4607730 ................................................ 4

*Lewis v. Wells Fargo Bank, N.A.* 2016 WL 7107760 ................................................ 4

*Turner v. City & Cnty. of San Francisco* (N.D. Cal. 2012) 892 F. Supp. 2d 1188 .................... 4

*Allwaste, Inc. v. Hecht* (9th Cir. 1995) 65 F.3d 1523 ................................................ 24

*Arnold v. Society for Savings Bancorp* (Del 1994) 650 A.2d 1270 ................................ 18

*Arnold v. Society for Savings Bancorp* (Del. 1994) 650 A.2d 1270 ................................ 13

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 ................................................ 19

*Atempa v. Pedrazzani,* (2018) 27 Cal. App. 5th 809 ................................................ 6

*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257 ................................ 4

*Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744 ................................................ 12

*Baker v. Superior Court* (1983) 150 Cal. App. 3d 140 ................................................ 14

*Bridge v. Phoenix Bond & Indemnity Co.* (2008) 553 U.S. 639 ................................ 22

*Cede & Co. v. Technicolor, Inc.* (Del. 1993) 634 A.2d 345 ................................ 18

*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478 ................................ 4

*Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913 ................................ 6

*Doan v. Singh* (9th Cir. 2015) 617 F.App'x 684 ................................................ 20

*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal. 5th 858 ................................ 5

*Frances T. v. Village Green* (1986) 42 Cal. 3d 490 ................................................ 25

*Gantler v. Stephens* (Del. 2009) 965 A.2d 695 ................................................ 17

*H.J. Inc. v. Northwestern Bell Telephone Co.* (1989) 492 U.S. 229 ................................ 24

*Hager v. Los Angeles* (2014) 228 Cal.App.4th 1538 ................................................ 5

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,* (Fed. Cir. 1998) 153 F.3d 1318 ................ 8

In *Cordell v. PICC Lines Plus LLC,* 2016 WL 4702654 ................................................ 4

in *Noe v. Superior Court* (2015) 237 Cal.App.4th 316 ................................................ 5

*In re Walt Disney Co. Derivative Litig.* (Del. 2006) 906 A.2d 27 ................................ 16

*Jackson v. Dollar Tree Distribution, Inc.,* 2018 WL 2355983 ................................ 4


*Kewanee Oil Co. v. Bicron Corp*. (1974) 416 U.S. 470 ........................................................ 22

*Kremen v. Cohen* (9th Cir. 2003) 325 F.3d 1035................................................................. 24

*Lazar v. Superior Court* (1996) 12 Cal.4th 631 ................................................................ 10

*Malone v. Brincat* (Del. 1998) 722 A.2d 5 .............................................................. 13, 16

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp*. (1992) 6 Cal.App.4th 603........................ 11

*Miele v. Franklin Resources, Inc*. (N.D. Cal. ................................................................ 18

*Murphy v. BDO Seidman, LLP* (2003) 113 Cal. App. 4th 687 ........................................... 10

*OCM Principal Opportunities Fund v. CIBC World Markets Corp* (2007) 157 Cal.App.4th 835 .......... 12

*Pac. Recovery Sols. v. United Behav. Health* (N.D. Cal. 2020) 481 F. Supp. 3d 1011 ........................... 20

*People ex rel. Garcia-Brower v. Kolla's, Inc.* (2003) 14 Cal. 5th 719 ..................................... 5

*Semiconductor Energy Laboratory Co. v. Samsung Electronics Co*. (Fed. Cir. 2000) 204 F.3d 1368 .... 21

*Siry Investment, L.P. v. Saeed Farkhondehpour, et al* (2022) 13 Cal.5th 333 ........................... 7

*Small v. Fritz Companies* (2003) 30 Cal.4th 167........................................................... 15

*Stone v. Ritter* (Del. 2006) 911 A.2d 362 ................................................................. 16

*Thrifty-Tell v Bezenek* (1997) 46 Cal.App.4th 1559 ..................................................... 12

*United States v. Corinthian Colleges* (9th Cir. 2011) 655 F3d 984.......................................... 2

*Vaughan v. Wardhaugh* (N.D. Cal. May 10, 2024) No. 23-CV-02879-RFL, 2024 WL 2853972 .......... 20

*Woosley v. State of California* (1992) 3 Cal.4th 758 ...................................................... 4

**Statutes**

18 U.S.C. § 1961(1)(B) ................................................................................. 22

18 U.S.C. § 1964(c) .................................................................................... 23

California Civil Code § 1710(3) ........................................................................ 13

California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426) ......................................... 23

Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1832 ................................................... 22

Labor Code § 226.8........................................................................................ 5

Labor Code §1019......................................................................................... 5

Labor Code §1197.1....................................................................................... 6

Labor Code section 1102.5(b ............................................................................. 5

Labor Code section 1103 ................................................................................................. 6

## I.    INTRODUCTION

Karafin and Bevensee's Motion to Dismiss erroneously reads Mr. Jones' complaint to seek the company's patents.  That is wrong.  Alan Jones' amended complaint against Light Field Lab ("LFL") sets forth the following claims: (a) he was induced to join LFL, and leave behind millions of dollars of Microsoft stock, by false statements and concealment of true facts by defendants Karafin and Bevensee; (b) but for that fraudulent inducement he would never have provided his intellectual property (i.e., his "source code") to LFL; and (c) his source code were stolen through false pretense. Mr. Jones also alleges that officers of LFL breached their fiduciary duties towards him as a shareholder and that LFL is fraudulently transferring assets, including the source code he seeks, through an Assignment For Benefit of Creditors.

Despite these straightforward allegations, Karafin and Bevensee erroneously claim that Jones' "core allegation is that his employer should have named him as an inventor when it filed two patent applications…." (Opening Brief, p. 1).  What Jones does allege is that Karafin and Bevensee failed to disclose that they had failed to name him in patents derived from his work.  However, what Jones <u>seeks</u> is ownership of his *intellectual property* (*i.e.,* his original source code), compensation for the loss of *Microsoft* stock grants (forfeited as a result of joining LFL), and losses related to LFL stock (including the cost of the stock he purchased while employed at LFL) — all of which are damages attributable to the fraud. The source code claim is stated in Causes of Action Three, Four, and Five:

> As a result of the facts above, and the fact that Confidential Information and Inventions
> Assignment Agreement was obtained through fraud, Plaintiff is entitled to injunctive relief to
> rescind the Confidential Information and Inventions Assignment Agreement and invalidate
> WO2025042476A1 and WO2024216300A2, prevent Defendants from using his intellectual
> property, and the transfer of all intellectual property, including but not limited to that related to
> WO2025042476A1 and WO2024216300A2, created by Plaintiff, or derived from Plaintiff's work
> product, to Plaintiff.

In other words, Jones seeks rescission of the Confidential Information and Inventions Assignment Agreement ("Agreement") through which he transferred his work product (his source

code), under false pretenses, which will reinstate his ownership right to his source code. What happens to the patents after Jones proves his state law claims and the Agreement is properly rescinded, is not an issue in this lawsuit. Nonetheless, to the extent there is confusion regarding the fact that Plaintiff seeks the return of his source code in its completed form —and *not* the patents themselves — the complaint is properly amended to make that clarification.[1]

## II.    FACTUAL BACKGROUND

The facts stated in the Amended Complaint ("FAC") establish that Jones joined LFL as a Senior Pipeline Software Engineer and was promoted to Principal Engineer. FAC para. 11. His job was to develop LFL's SolidLight holographic display platform. FAC para. 21. As part of this role, Jones contributed valuable intellectual property to the development of LFL's products (including but not limited to patents and patented products) based on false statements and concealment by LFL's officers, Karafin and Bevensee. LFL then filed patents based upon those innovations claiming them as the inventions of Karafin and Bevensee. Also, as part of his employment with LFL, Jones gave up stock grants, bonuses, annual raises, and career prospects from his prior employment with Microsoft, and he instead received stock options from LFL as a portion of his compensation (and exercised some of those options), based on misrepresentations and concealment by LFL's officers, Karafin and Bevensee, all to his detriment.

As noted above, Jones' position in this lawsuit is quite different from the narrative presented by Karafin and Bevensee. Indeed, despite the prominence of Jones' fraud allegations in his

---

[1] In particular, if this Court determines it is appropriate in this action to determine who properly owns the source code that was used in LFL's patents to prove an element of his damages claim, an additional cause of action for declaratory relief regarding the validity of the patents, as well as rescission of the Confidential Information and Inventions Assignment Agreement, can be added to this complaint — which is entirely appropriate for this Court to resolve. Additionally, Plaintiff will be seeking leave to amend the Fourth Cause of Action for Violation of Penal Code Sections 484 & 496 to confirm the true remedy sought in that cause of action is likewise limited to the source code underlying the patents, not the patents themselves. This clarification (as well as numbering and corrections to labeling causes of action) will be addressed in a Second Amended Complaint if the Court grants leave to amend. FRCP 15(a) states the court "should freely give leave when justice so requires." See also *United States v. Corinthian Colleges* (9th Cir. 2011) 655 F3d 984, 995 (standard for granting leave to amend is "generous.")

complaint, they are largely ignored in the instant motion to dismiss, and thus are properly emphasized here.  Jones contends that LFL's officers lied to him about the viability and marketability of their product as well as the original source of their intellectual property. LFL's officers also concealed information about the valuation of the stock options being offered to him. Based on the misrepresentations made to him, and the lack of knowledge of the true facts, he joined LFL, giving up stock grants at his prior employer, Microsoft, and agreeing to develop and provide source code for LFL's products under the Agreement.

Additionally, while working for LFL, Jones suffered discrimination and retaliation on the basis of a disability, ultimately leading to his termination.  After his termination, LFL sued him for declaratory relief regarding a claim that he wanted equity in the company.  Following dismissal of LFL's declaratory relief action, Jones discovered that the basis for LFL's technology and patents was fraudulently obtained by Karafin and Benvensee when they were employed at Lytro, offering further factual support to demonstrate the broad nature of the fraud, and highlighting the misrepresentations that induced him to join LFL.  The discovery of how LFL came to develop its initial patents also revealed fraud on the Patent Office, forming the basis for a Civil RICO claim.

Subsequent to the filing of Jones' initial complaint in this Court, he also discovered that LFL was attempting to dispose of its assets, including intellectual property, and specifically including the source code Jones seeks to recover as one element (among several) of his damages claim.  On that basis, Jones amended his complaint to add a claim for Fraudulent Transfer against LFL to prevent it from transferring the assets Jones seeks to third parties.

As discussed above and further explained below, Jones does not seek ownership of patents. Rather, he seeks return of his intellectual property (*i.e.,* his source code), and compensation for economic losses suffered due to fraud, concealment, theft, and breach of fiduciary duty.

### III.    ARGUMENT

#### A.  Individual Liability May Be Asserted Under Labor Code 1102.5.

While cases cited by Karafin and Bevensee find no individual liability under Labor Code §1102.5, there is a split of authority on this issue, with the better reasoned decisions finding that such liability is supported under a plain reading of the statutory language.

1.  **Statutory Interpretation Supports Individual Liability**.

In *Cordell v. PICC Lines Plus LLC,* 2016 WL 4702654, at *6, the Court found that "the plain language of the statute allows individuals acting on behalf of their employers to be held liable. If this were not true, the Legislature's amendment in 2013 adding "or any person acting on behalf of the employer" would be futile."  Specifically, Labor Code section 1102.5(a) expressly provides that: "An employer, or **any person acting on behalf of the employer**, shall not retaliate against an employee for disclosing information or because the employer believes that the employee disclosed or may disclose information…" (emphasis added).  Prior to 2013, the statute provided that "no employer" could retaliate, and the amendment expanded "employer" to add "**or any person acting on behalf of the employer.**"  Other cases, which the *Cordell* Court found persuasive, reached the same conclusion, finding individual liability under §1102.5(a).[2]

*Cordell's* holding is likewise consistent with established rules of statutory construction, recognizing that "the words of a statute [must be construed] in context, harmoniz[ing] the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole." *Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487.   And courts will avoid, if possible, a construction that renders any part of the statute meaning less or extraneous (*Woosley v. State of California* (1992) 3 Cal.4th 758, 775- 776), unconstitutional (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 548), or suggests that the Legislature "engaged in an idle act" (*Eisner v. Uveges, supra*, 34 Cal.4th at p. 935 (citations omitted).  This requires that a statute's various components be read together to achieve the overriding purpose of the legislation. *Eisner v. Uveges* (2004) 34 Cal.4th 915, 933.  Moreover, a finding of individual liability under section 1102.5 is further supported by the remedial statute canon. The Labor Code is a remedial statute, and as such should be construed liberally in favor of protecting employees. *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 639

---

[2] *See Jackson v. Dollar Tree Distribution, Inc.,* 2018 WL 2355983, at *6 (C.D. Cal. May 23, 2018) (noting the amendment and rejecting the argument that there is no individual liability); *Turner v. City & Cty. of San Francisco* (N.D. Cal. 2012) 892 F. Supp. 2d 1188, 1205 (concluding that an employee stated a claim under § 1102.5(b) against an individual employee defendant); *De La Torre v. Progress Rail Servs. Corp.,* 2015 WL 4607730, at *3 (C.D. Cal. July 31, 2015) (noting no California Court has ruled on it, thus, the court could not conclude as a matter of law that there was no liability); *Lewis v. Wells Fargo Bank, N.A.* 2016 WL 7107760, at *2(C.D. Cal., Dec. 5, 2016) (same).

1    ("When construing the Labor Code and wage orders, we adopt the construction that best gives effect to

2    the purpose of the Legislature. . . . Time and again, we have characterized that purpose as the protection

3    of employees …); *See also Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal. 5th 858, 874 (quoting

4    *Troester v. Starbucks Corp.* (2018) 5 Cal. 5th 829, 839) ("in furtherance of that purpose, we liberally

5    construe the Labor Code and wage orders to favor the protection of employees.").

6        Similarly, cases analyzing Labor Code section 1102.5(b) have also recognized that a broad

7    interpretation of the words used in the statute are properly given effect by the courts.  For example, in

8    *People ex rel. Garcia-Brower v. Kolla's, Inc.* (2003) 14 Cal. 5th 719, 729, the court rejected a narrow

9    interpretation of "disclose" under 1102.5.  As stated by the court, "the relevant committees spoke clearly

10   and repeatedly about the purposes and reasoning behind the enactment and expansion of section

11   1102.5(b): to protect workers, to encourage disclosure, and to promote compliance with employment-

12   related laws and regulations."  *See also Hager v. Los Angeles* (2014) 228 Cal.App.4th 1538, 1552

13   finding that §1102.5 "should be given a broad construction commensurate with its broad purpose." [3]

14        Lastly, the Court's analysis in *Noe v. Superior Court* (2015) 237 Cal.App.4th 316 is instructive.

15   It addressed liability under Labor Code § 226.8.  The statute states, in part, "(a) It is unlawful for any

16   person or employer to engage in any of the following activities…including willful misclassification.  The

17   trial court found a legislative intent to limit the statute to employers that made the actual decision to

18   misclassify. The Court of Appeal rejected that conclusion. It stated "[i]f the Legislature had only

19   intended to penalize employers that made the misclassification decision it could have simply made it

---

[3]  With these principles in mind, it is also important to recognize that the legislative history surrounding the amendment of section 1102.5 (as set forth in 2013 California Assembly Bill No. 263 Committee Report (dated May 14, 2013) makes clear that the rules prohibiting retaliation in "the bill also extends to persons other than employers …." Later in May, the Report notes it "Adds non-employers to the existing prohibition applicable to employers and "This bill would extend these prohibitions from employers to all persons and entities." In August 2013, the Report again notes that the bill extends liability. The September Report includes these comments from May, further clarifying that all persons can be liable and that liability was extended. The bill was presented to the Governor 10 days later.  The reports show the intent was to expand liability to individuals, and not just employers. Similarly, Labor Code §1019 states that in addition to an employer, it is unlawful for "any other person or entity" to *retaliate* against employees for reporting unfair "immigration-related practices". This was enacted via A.B. 263, the same bill which amended Labor Code §1102.5. Thus, in both these circumstances, the Legislature expressed its intent to extend liability from employers to "non-employer" individuals.

unlawful for an employer to willfully misclassify an individual as an independent contractor." It noted they had many options but made it broad and included "any person." The Court also noted that Labor Code § 2753 provides any person who advises an employer to treat an individual as a contractor is liable too. The Court talked about the broad protections for employees and intent to expand liability.

In short, as these cases confirm, when the Legislature adds words beyond "employer" to the scope of a statute's liability, it is properly extended to include "individuals" to whom the statute applies.

**2.  California's Expansion Of Protections Supports Individual Liability.**

Recently, the state legislature acted to bolster whistleblower and retaliation protections in line with California's "broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation." *Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913, 922. In *Atempa v. Pedrazzani*, (2018) 27 Cal. App. 5th 809, the appellate court examined Labor Code § 558.1 and its relation to PAGA. Labor Code section 558.1 provides that an employer "or other person acting on behalf of an employer" who violates or causes a violation of certain laws can be held liable. The appellate court noted similar individual liability under Labor Code §1197.1. The appellate court made it clear that an individual could he held liable under the phrase "other person acting on behalf of an employer." Applying that reasoning leads to only one conclusion. When the Legislature amended Labor Code section 1102.5, it intended to make individuals liable for retaliation, as the Legislature has done for other Labor Code violations. Notably, Labor Code §1102.5 is even broader than Labor Code § 558.1, which limited liability to owners, officers, and managing agents — whereas the Legislature did not include any such limitation in §1102.5. Thus, individual liability applies here.[4]

**B.  Jones's Claim For Violation of California's Penal Code Is Properly Pled.**

Jones has also pled facts sufficient to support his claims for false or fraudulent representation, or false pretense. Specifically, Karafin and Bevensee used false pretenses to steal

---

[4] *See also* Labor Code section 1103, which imposes personal liability for Labor Code violations, and further provides that an individual "person" may also be criminally liable., stating that an "employer *or* any *other person* … that violates this chapter is guilty of a misdemeanor" and "in the case of an *individual*, by imprisonment … or a fine not to exceed one thousand dollars …". Patently, it would be impossible for "any other person" and/or "an individual," to be "guilty of a misdemeanor" if liability did not extend to individuals. Again, the same principle necessarily applies here.

Jones' source code and LFL retained his source code for its own purposes.  The sequence described in the preceding sentence is critical to understanding why the arguments made in the Motion To Dismiss are misplaced and irrelevant.  While Karafin and Bevensee used false pretenses to take Jones' intellectual property (*i.e.,* his source code), it was LFL that received the stolen property. Thus, all three are liable: two of the Defendants engaged in the theft and one of the Defendants took possession of the stolen property, knowing (through its corporate officers) that the property was stolen.  This establishes the required elements of Penal Code Section § 496.  As stated in *Siry Investment, L.P. v. Saeed Farkhondehpour, et al* (2022) 13 Cal.5th 333, the factors necessary to state a claim under the Penal Code are: (i) that Defendant obtained property [here, the source code which was Jones' intellectual property] belonging to Plaintiff, and withheld that property through a means of theft, as defined in Penal Code §484: namely false pretense, which requires a showing that (ii) Defendant knew the property was obtained by false pretense at the time they withheld the property from Plaintiff; and (iii) Defendant's violation of section 496(a) caused Plaintiff to suffer actual damage, loss, or harm.  *Siry, supra,* 13 Cal. 5th at 361.  Each of those elements are met here.

Nevertheless, Jones will seek leave to amend his complaint to (a) clarify the description of what was stolen through false pretense (*i.e.*, his source code; and (b) clarify that Karafin and Bevensee acted with fraudulent intent at the time they made false statements and concealed true information, and c) further clarify that it was LFL that retained the product of the theft (*i.e.,* the source code).

Although Jones joined LFL, and assigned intellectual property over to LFL, based on false pretenses, he still owned his intellectual property, including source code he developed, at the time that he assigned it to LFL.  Jones has fully described the false statements, and concealed facts, that resulted in his joining LFL, assigning his intellectual property to LFL.  Jones has correctly alleged the intent to take Jones' property in order to use it in LFL's products.

### 1.  <u>Plaintiff's Causes of Action Are Not Barred by the Patent Act</u>.

Karafin and Bevensee's arguments regarding the application of the Patent Act do not apply to Jones's claims in this lawsuit.  Again, Jones is asserting a right to his source code, not to the patents. As noted in the Introduction, because Jones does not seek the remedy that Karafin and Bevensee disingenuously argue he is seeking, and his claims to not run afoul of the Patent Act.  The remedies

Jones seeks that are *not* covered by the Patent Act include recission of the Confidential Information and Inventions Assignment Agreement, which Jones only agreed to provide based on Karafin's and Benvensee's fraudulent inducement.  Federal Circuit precedent establishes that state law fraud claims are not preempted when based on conduct "separate from and in addition to" patent rights themselves. *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* (Fed. Cir. 1998) 153 F.3d 1318, 1335 (overruled on other grounds) ("To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted.")  The cases cited by Karafin and Bevensee are distinguishable because each determined that a remedy for the state law claim could *not* be provided without resort to federal patent law regarding inventorship or ownership of the patent itself.  Not so here.  Remedies for each of the state law causes of action identified by Karafin and Bevensee, such as reliance damages, can be determined without resort to patent law as they hinge on the tortious conduct committed.  Moreover, while Jones asserts the patents are not validly held by LFL, those factual bases will be proved by establishing the fraud perpetrated on Jones to support recission of his Agreement.  As stated above, what happens to the patents after that are not part of this lawsuit and Jones does not seek ownership of the patents.

## C.    Plaintiff's Cause of Action for Fraud and Deceit Meets the Heightened Specificity and Particularity Requirements.

Jones has also pled facts sufficient to show misrepresentation and concealment by Karafin and Benvensee.  This includes allegations in the complaint regarding (1) who made the statements or engaged in the concealment, (2) what was misrepresented or concealed (3) when and (4) how  the misrepresentations were made and concealment occurred.  Those allegations are as follows:

As part of Jones' interviews on August 28 and 29, 2019. Karafin stated that the company had hundreds of patents that allowed them to manufacture "displays," and that the company was able to successfully engage in its business by employing a model that relied heavily on comprehensive

patent coverage of the "holographic space," which not only allowed the company to manufacture displays, but also to license the technology. FAC para. 12. On August 28th and 29th, Karafin also stated that LFL had a large theme park customer, ultimately revealed to be Universal Studios. Karafin stated that LFL would have the displays out to market the following year (2020) and it would be in the theme park in that timeframe or soon after. FAC para. 13. These statements of alleged fact (which Plaintiff later learned were untrue) regarding the company's intellectual property and its current customers were intended to (and did) induce reliance by Jones. Specifically, the statements were reasonably understood by Jones to convey that LFL was much closer to delivery of the product than it actually was. This also meant that representations regarding early vesting and exercise of options was likewise false. Jones had no way of knowing the truth at the time, and in reasonable reliance on the statements made, Jones gave up Microsoft stock that was already granted in order to join LFL. After he joined LFL, there was no further discussion of Universal Studios as a customer and no product was delivered to Universal Studios. FAC para. 14. Additionally, August 28th and 29th, Karafin discussed an options double trigger event on which all options would vest if the company was publicly listed or acquired. Jones' inquired about the number and value of the options at issue, but Karafin concealed that information, stating it was highly confidential. FAC para. 15. Jones questioned the lack of disclosure of such important information about LFLs' stock and stock options during hiring negotiations, as it made it very difficult for Jones to determine the potential value of the options, but his request for the disclosures was refused. It was only later, after Jones became an owner of shares of LFL, that he was entitled to review books and records to assess his holdings and that the total number of shares in Delaware Corporations is public information. He again sought the disclosure information (in March 2023 , in the context of a financial discussion about the company), asking Karavan "is there any additional information I'm entitled or required to be given access to as a shareholder?" Karafin responded as follows: "Understood and appreciated. There are no current problems to be aware of (e-g- equity ownership and payroll) and can keep you posted- Again, not a political response, just the facts." In truth, Jones was entitled to additional financial information as a shareholder (including LFL's books and records), but he was refused that access. Stated otherwise, by refusing to provide the information requested, Karavan improperly

concealed information to which Jones was entitled.  FAC para. 17.

Unfortunately, it was not until August 2025 that Jones learned that certain patents that were critical to the work LFL was doing had been fraudulently obtained by Karafin and Benvensee.  Specifically, the patents at issue had been developed while Karafin and Benvensee worked for a prior employer, Lytro, and Karafin and Bevensee concealed from Lytro that they were applying of patents in their own names, rather than properly applying for them in the name of the company.  Under these facts, the patents belonged to Lytro, and thus were not *validly* held by LFL.  This concealment of the truth, wherein Jones understood he was joining a company that validly held the patents it was using, was clearly material to his decision to join the company.  Of course, what Lytro may decide to do if it is knowledgeable about these facts is immaterial to this lawsuit.  What matters here is that it underscores the extent of the fraud and concealment in which Karafin and Bevensee had been operating for a very long time – first when they were employed by Lytro, and then — which is material to this lawsuit — by concealing the truth from Jones of what LFL validly held.  As discussed further below, if Jones had known the truth, he would not have joined LFL, and he relied to his detriment on false representations and concealment by Karafin and Benvensee. FAC para. 19.

These allegations meet the requirement to state a claim for fraud claim because, as discussed in *Murphy v. BDO Seidman, LLP* (2003) 113 Cal. App. 4th 687, 692, the allegations are specific enough to put a defendant on notice as to the falsehoods he or she will be required to defend against.  The allegations identify who made the misrepresentations, who concealed facts, their position of authority requiring disclosure of true facts, when and how the misrepresentations and concealment occurred, and under what circumstances the misrepresentations and concealment occurred.  *See e.g. Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered.")  Nevertheless, if the Court determines that the facts pled are insufficient to meet the pleading standard, Jones requests leave to amend to provide more details of the communications, and information intentionally withheld from him by Karafin and Benvensee as officers of LFL.

**1.  The Statements Concerning Patent Filings Support a Fraud Claim.**

Had Jones known of truth about what Karafin and Bevensee had been doing, and had the true facts not been concealed from him, he would not have joined LFL.  Seeking to confuse Jones' claim, and the damages he is seeking that arise from the fraud perpetrated against him, Karafin and Bevensee argue that LFL owns the patents at issue in this lawsuit.  Tellingly, they do not contest the actual claim Jones makes — *i.e.,* that they obtained intellectual property that formed their original patents from Lytro.  Surely, if Karafin and Bevensee were able to deny Jones's claims, there would be at least a single sentence doing so, but there is none.  Instead, Karafin and Bevensee dismiss Jones's concerns as 'baseless opinions,' while studiously avoiding any affirmative assertion that the patents are validly held despite the fraudulently manner in which the intellectual property was obtained  Further, regarding Karafin and Benvensee's defense that they own the patents, it is necessary to emphasize again that "ownership" is not being contested by Jones. Clearly, ownership does not establish validity, and — in any event — Jones has no interest in contesting the patents. *See Opposition to LFL's Motion to Dismiss*, and footnote 1, *supra,* at p. 2.   Stated otherwise, what Jones seeks in this lawsuit are the damages resulting from Karafin's and Benvensee's material false representations and concealment, including recission of his Agreement and return of the source code that was obtained under false pretenses —all of which is properly resolved under the state law claims asserted.

**2.  The Interview Communications Support a Fraud Claim.**

During Jones' interview process and subsequent contracts and communications the company's viability, patent portfolio, options, and technology were discussed, and Karafin and Bevensee both had a duty to disclose all relevant material.  "But the rule has long been settled in this state that although one may be under no duty to speak as to a matter, 'if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure.'" *Marketing West, Inc. v. Sanyo Fisher (USA) Corp*. (1992) 6 Cal.App.4th 603, 613 (quoting *Rogers v. Warden* (1942) 20 Cal.2d 286, 289).

This duty was triggered through multiple means:

Disclosure of Patent Portfolio: Karafin voluntarily discussed LFL's patent portfolio. Defendants admit that these statements were made by defending them as true. By speaking about patents, Defendants were under a duty to disclose material information about them, including how that intellectual property was obtained and risks to the portfolio based on those actions (as described above).

Securities Offered as Compensation: LFL offered stock options in its employment contracts, which is perfectly acceptable. What LFL was *not* privileged to do was what it did: it cannot offer securities as compensation while concealing material risks to the company's value, including risks to its patents' validity. Jones was entitled to assess that risk before accepting equity compensation.

Employer-Employee Relationship Discussion: Karafin and Bevensee discussed LFL as a potential employer with Jones and the viability of the employer is material to any employment decision.

Technology Demonstrations: Karafin and Bevensee demonstrated LFL's light field technology to Jones during his recruitment. Demonstrating technology as proprietary and innovative triggers a duty to disclose its true origins. Both Defendants personally knew the technology they were describing was derived from Lytro concepts (as they filed both patent sets while employed at Lytro). Showcasing a technology while concealing it was developed elsewhere under circumstances impacting its validity is fraud by conduct. *Thrifty-Tell v Bezenek* (1997) 46 Cal.App.4th 1559, 1567.

### 3. **Jones' Reliance Was Reasonable**.

Further, even if Jones had reviewed LFL's patents, he would have no reason to question what had occurred when Karafin and Benvensee worked at Lytro — as that was being affirmatively concealed. Relatedly, Karafin and Benvensee offer the circular argument that Jones should have discovered the fraud by independently discovering the fraud. Jones could not possibly have investigated the truth of facts concealed from him. The connection between LFL and Lytro patents was not public knowledge— it was exclusively known to Karafin and Bevensee, who personally filed both sets of patents. *See OCM Principal Opportunities Fund v. CIBC World Markets Corp* (2007) 157 Cal.App.4th 835, footnote 19 (recognizing "Respondents' failure to examine the IRI report, and their concomitant confidence in the offering memorandum, registration statement, and investment opinions, could not relieve CIBC of liability for intentional concealment unless respondents were aware that the representations in these publications were suspect"); *Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744, 748 ("An independent

12

Plaintiff's Opposition To
Motion to Dismiss

investigation or an examination of property does not preclude reliance on representations where the falsity of the statement is not apparent from an inspection, or the person making the representations has a superior knowledge, or the party relying thereon is not competent to judge the facts without expert assistance."

### 4. <u>Jones's Text Messages Allege Facts Supporting a Claim for Fraud</u>.

Karafin and Benvensee claim that the March 2023 text exchange relied on by Jones cannot meet the requirements to show fraudulent representations or concealment, but this is wrong because:

1. Jones was a shareholder;

2. Karafin, as CEO, had a fiduciary duty to shareholders;

3. Karafin did not disclose the existence of Del. C. §220 inspection rights to Jones;

4. Karafin was bound to make that disclosure under his duty of candor;

5. CA Civ Code 1709 and 1710(3) makes the suppression of a fact one is bound to disclose confer liability upon the one who concealed it.

Under California Civil Code § 1710(3), fraud by omission requires suppression of a fact "by one who is bound to disclose it." Delaware's fiduciary duty of candor is precisely what bound Karafin to disclose information. *See Malone v. Brincat* (Del. 1998) 722 A.2d 5 (duty of candor applies "whenever directors communicate publicly or directly with shareholders about the corporation's affairs"). When Jones directly asked about his shareholder rights and Karafin responded, he had a duty under *Malone* to answer honestly; and under *Arnold v. Society for Savings Bancorp* (Del. 1994) 650 A.2d 1270, he had an obligation to make a complete disclosure. Karafin's concealment of Jones's Del. C. §220 inspection rights breached his fiduciary duty of candor—and that breach establishes fraud. The same conduct supports both claims because one (fiduciary duty) creates the legal obligation that makes the other (fraud) actionable.

Defendants characterize the March 2023 exchange as being "about the collapse of Silicon Valley Bank ("SVB"), where LFL banked." This is disingenuous. Jones explicitly asked to be "run through the level of exposure" and "what steps are being taken to mitigate" questions about LFL's entire financial position. Jones specifically asked "is there any additional information I'm entitled or required to be given access to as a shareholder?"—a direct invocation of his inspection rights. And

Jones explained his concern: "I have my career and close to half my life savings invested in the company." This was not a narrow inquiry about one bank—it was a shareholder seeking to understand the financial health of the company in which he had invested his career and savings. Jones even called out Karafin's evasiveness: "you're giving me political managed answers that avoid the meat of the question." For these reasons, any attempt by Karafin and Benvensee to restrict this exchange as being about nothing more that SVB ignores the plain text of Jones's questions.

Moreover, even if Karafin viewed it as purely about SVB, a reasonable interpretation of the plain text (underscored by Karafin's evasiveness) shows the concerns tie directly to LFL's finances:

1. SVB was LFL's bank;

2. Banking is about finances;

3. A company's books and records track those finances;

4. Jones was asking about the company's financial exposure;

5. This is exactly the kind of information Del. C. § 220 provides access to.

The March 2023 concealment caused two distinct harms. First, it prevented Jones from making an informed exercise decision before his options expired on September 23, 2023—that value was lost when the options expired. Second, it prevented Jones from selling his shares while they still had value—and that value was destroyed when defendants filed an ABC on August 15, 2025. These facts establish that the harm is not that Jones held "worthless" equity; the harm is that defendants' concealment prevented Jones from realizing value at two critical junctures, and each loss traces directly to the March 2023 fraud. This harm and associated acts are sufficiently present, though not fully articulated, in the FAC because Jones intends to seek rescission. But California law entitles him to plead both. See Cal. Civ. Code § 1692 ("A claim for damages is not inconsistent with a claim for relief based upon rescission"); *Baker v. Superior Court* (1983) 150 Cal. App. 3d 140 (election doctrine inapplicable to claims involving "different operative facts" at "different points in time"). Further, even if defendants had never fraudulently induced Jones to accept employment in 2019, the claims arising from the March 2023 exchange is separately valid. It caused standalone harm, which is independent from the inducement fraud. Put differently, Jones's complaint presents separate acts of concealment, causing separate injuries, at separate times. And caselaw confirms that

the March 2023 concealment is independently actionable,  *See Small v. Fritz Companies* (2003) 30

Cal.4th 167 (recognizing "holder" claims where fraud induces stock retention rather than sale).[5]

### D.    Plaintiff's Cause of Action for Breach of Fiduciary Duty Pleads Facts That Indicate Information Was Concealed.

Contrary to Karafin's and Benvensee's  claim, Jones's complaint alleges the facts required to

state a claim for fiduciary duty.  It does so in the following paragraphs:

11.    During the discussions on August 28 and 29, 2019, Karafin also discussed an options

double trigger event on which all options would vest if the company was publicly listed or

acquired.  Upon Mr. Jones' inquiry about the number and value of the options at issue,

Karafin concealed that information on the basis that it was highly confidential.

12.    Mr. Jones questioned the lack of disclosure of important information about Light

Field Labs' stock and stock options during hiring negotiations, as it made it very difficult for

Mr. Jones to determine the potential value of the options, but was refused.

13.    Subsequently, after Mr. Jones became an owner of shares of Light Field Lab, Mr. Jones

was entitled to review books and records to assess his holdings but when he asked Jon Karafin in

March 2023, in the context of a financial discussion about the company, "… is there any

additional information I'm entitled or required to be given access to as a shareholder?" Karafin

responded "Understood and appreciated. There are no current problems to be aware of (e-g-

equity ownership and payroll) and can keep you posted- Again, not a political response, just the

facts."  Books and records would classify as additional (financial) information Mr. Jones was

---

[5]  Karafin and Benvensee point to the fact that Jones waited two years to sue, but this gets them nowhere because it is not a legal defense to the claims, and the delay is understandable.  As noted above, Jones was prevented from recognizing the fraud that had been perpetrated based on Karafin and Benvensee's concealment, and they cannot escape liability by pointing to consequences their fraud was designed to produce.  Additionally, Jones lost his job at LFL, as a result of discriminatory animus, and was not at LFL, effective June 2023; and it was not until August 15, 2025, when he received an Assignment for Benefit of Creditor's (ABC) notice that he realized his shares had no value.  As also noted above, had Jones known his rights in March 2023, he could have demanded the financial information that was being withheld from him, and assessed the value of his shares at that time.

entitled to be given access to as a shareholder.  Mr. Karafin continued to refuse to provide, and concealed, the information to Mr. Jones, a stock holder

These allegations, which confirm that Jones was denied access to the books and records he requested, and to which he was entitled as a stockholder, establish a breach of the fiduciary duty owed to him.

### 1.  <u>The Business Judgment Rule Does Not Insulate Failure of Candor</u>.

Karafin and Benvensee invoke *In re Walt Disney Co. Derivative Litig*. (Del. 2006) 906 A.2d 27, for the proposition that directors are presumed to act in good faith and that Jones bears the burden of rebutting this presumption. However, the business judgment rule protects business decisions—not breaches of the duty of candor in communications with shareholders.  The Delaware Supreme Court has been explicit: "Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty." *Malone v. Brincat* (Del. 1998) 722 A.2d 5, 10. This duty exists independent of any business decision.

Jones does not challenge a business decision.  He alleges Karafin breached the duty of candor by concealing Jones's § 220 inspection rights when Jones directly asked about his shareholder rights. This is not a matter protected by business judgment—it is a communication with a shareholder that Delaware law requires to be honest.

Furthermore, the business judgment presumption is rebutted where bad faith is alleged.  *Stone v. Ritter* (Del. 2006) 911 A.2d 362, 370 ("a failure to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care").  Jones alleges intentional concealment over six years—from July 2019 through August 2025—including ignoring cap table requests, and stonewalling formal demands under Delaware Code § 220. This pattern of deliberate obstruction rebuts any presumption of good faith.

### 2.  <u>Jones Made Sufficient Requests For Information</u>.

Karafin and Benvensee argue Jones "failed to make a specific request or written demand to the company" and that Jones "only asked Karafin, an individual." This argument fails for three independent reasons.

First, the duty of candor is triggered by communication with a shareholder, not by formal demand. When Jones directly asked Karafin "is there any additional information I'm entitled or required to be given access to as a shareholder?", Malone required honesty. The failure to disclose § 220 rights breached that duty regardless of whether Jones filed a formal written demand.

Jones is not alleging Karafin was required to provide financial information. Jones alleges Karafin was required to disclose the existence of section 220 rights—a shareholder's statutory right to inspect books and records. Defendants' citation to *Malone*'s statement that directors need not "furnish shareholders with information concerning the finances or affairs of the corporation" absent a request for shareholder action is therefore inapposite. The breach is not the failure to provide information; it is the concealment of the right to demand that information.

Second, Karafin is the representative of the company for purposes of fiduciary duty. As CEO, Karafin's communications with shareholders are corporate communications. *Gantler v. Stephens* (Del. 2009) 965 A.2d 695, 705 ("corporate officers owe fiduciary duties that are identical to those owed by corporate directors"). Defendants cannot hide behind corporate formalism when Karafin personally concealed information from a shareholder.

Third, Jones did make subsequent formal demands to the company—and they were systematically ignored:

September 2024: Jones cap table request via Carta was ignored.

December 11, 2024: Jones' email to COO John Dohm was acknowledged ("I'll send this request to the appropriate folks for review") but never fulfilled.

December 19, 2024: Jones' follow-up asking for timeframe was ignored.

February 25, 2025: Jones notified LFL he would "operate under the assumption that Light Field Lab is choosing not to honor my rights as a shareholder."

August 1, 2025: Jones' formal § 220 demand letter via email and certified mail was stonewalled.

August 15, 2025: The ABC was filed, two weeks after formal demand.

Karafin and Benvensee's argument proves Jones's case: the same concealment that Karafin practiced personally in March 2023 continued at the corporate level through August 2025. The written

demand formalism urged by Karafin and Benvensee is nothing more than a post-hoc rationalization for a six-year pattern of obstruction, and is properly rejected.

### 3. Jones Satisfies The Framework In *Miele*.

Karafin and Benvensee cite *Miele v. Franklin Resources, Inc*. (N.D. Cal. Aug. 18, 2015) No. 15-199, 2015 WL 4934071, for Delaware's fiduciary duty requirements. Jones's allegations satisfy this framework.  Under Delaware law, the duty of loyalty encompasses the duty of candor—"the duty to disclose fully and fairly all material information within the board's control." *Arnold v. Society for Savings Bancorp* (Del 1994) 650 A.2d 1270, 1280.  A fiduciary breaches this duty by making "partial disclosures" that mislead shareholders. *Id*. ("once defendants traveled down the road of partial disclosure... they had an obligation to provide the stockholders with an accurate, full, and fair characterization").

Jones alleges:

1. Partial disclosure triggering full disclosure duty: Karafin responded to Jones's shareholder inquiry with "Understood and appreciated"—a non-answer that failed to disclose Jones's § 220 rights.

2. Knowledge of materiality: Karafin knew Jones was asking about his rights as a shareholder ("is there any additional information I'm entitled or required to be given access to as a shareholder?").

3. Scienter: Jones had already called out Karafin's evasiveness ("you're giving me political managed answers"); Karafin was thus on notice Jones perceived concealment, yet continued to conceal.

4. Resulting harm: The concealment prevented Jones from exercising options before expiration (September 2023) and selling shares before the ABC destroyed their value (August 2025).

These allegations state a claim for breach of the duty of candor under Delaware law. The duty of candor is a component of the duty of loyalty, and breach of loyalty requires no showing of business judgment deference. See *Cede & Co. v. Technicolor, Inc*. (Del. 1993) 634 A.2d 345, 361 (duty of loyalty is not subject to business judgment protection).

The FAC plainly alleges damages from the breach of fiduciary duty including FAC ¶89, Prayer for Relief ¶1 and ¶2.

**4.  <u>Resolution of SVB Situation Does Not Insulate Defendants</u>**.

Karafin and Benvensee argue "the Silicon Valley Bank situation was resolved shortly after the May 2023 text exchange." This argument fails at every level: it is procedurally improper, substantively irrelevant, and supports Jones's claim.

i.    <u>This Is a Factual Dispute Improper for Rule 12(b)(6)</u>.

Karafin and Benvensee improperly ask the Court to resolve factual disputes at the pleading stage. On a Rule 12(b)(6) motion, the Court must accept Jones's well-pleaded allegations as true. *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678. Jones alleges he suffered loss of stock value due to Karafin's concealment. Defendants' contrary assertion—that LFL resolved its banking issues and therefore Jones suffered no harm—invites the Court to weigh evidence. That may be appropriate for summary judgment on undisputed evidence, but it is procedurally improper in a motion to dismiss.

ii.    <u>LFL's Banking Resolution Is Wholly Inapposite to Jones's Harm</u>.

Even setting aside the procedural impropriety, Karafin and Benvensee fundamentally misunderstand the nature of Jones's claim. Jones does not allege he was harmed by SVB's collapse or LFL's resulting banking crisis. Jones alleges he was harmed by Karafin's refusal to provide the information he requested and concealment of his Delaware § 220 inspection rights—rights that would have allowed him to evaluate his investment and make informed decisions about his shares. Whether LFL resolved its banking issues after SVB's collapse has little to do with whether Karafin's concealment caused Jones harm. The concealment prevented Jones from being aware of what he was entitled to, and therefore preventing him from accessing financial information about LFL—a harm independent of any external banking events.

iii.    <u>LFL's Banking Resolution Actually Proves Value Existed to Be Lost</u>.

Karafin and Benvensee's factual assertion that it resolved its banking issues defeats their argument.  SVB collapsed the day after the March 2023 text exchange. Had LFL not stabilized its

banking situation in the aftermath, Jones's shares would have become worthless immediately— before Jones would have had any opportunity to exercise § 220 rights, evaluate his investment, or take any protective action.  But that is not what happened.  Instead, LFL's resolved its banking issues, and thereby preserved value that Jones subsequently lost due to Karafin's ongoing concealment.  As a result, by stabilizing its finances, LFL ensured there was value to be lost. Thus, Karafin and Benvensee's factual allegation is useful to prove there was value to Jones's shares, thereby supporting Jones's claim of damages resulting from Karafin's fraudulent conduct.

### E.  Plaintiff's Cause of Action for Civil RICO Is Sufficiently Pled

Karafin and Benvensee's final legal argument claims Jones's RICO claim under 18 U.S.C. § 1962(c) fails as a matter of law., based on six distinct arguments: (1) that USPTO communications cannot be RICO "predicate acts" under Semiconductor Energy Laboratory; (2) that Jones lacks cognizable injury; (3) that Jones's assignment agreement bars property claims; (4) that Jones has not alleged a pattern of racketeering; (5) that individual defendants cannot be liable; and (6) that Jones has not met Rule 9's heightened pleading standard. Each argument fails.

While not contained within the cause of action for Civil RICO, the allegations in paragraph 19 of the Fact section of the Amended Complaint (which is incorporated into the cause of action) establish the acts of wire fraud or mail fraud necessary to establish the claim. These acts constitute "[t]he predicate acts which constitute this pattern of racketeering activity are: multiple fraudulent communications…using means of interstate communication, including electronic filing, mail and email," referred to in paragraph 81 of the Amended Complaint.

The allegations above plead the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Pac. Recovery Sols. v. United Behav. Health* (N.D. Cal. 2020) 481 F. Supp. 3d 1011, 1028.  The allegations above plead allege the requisite two predicate acts for each defendant. *Vaughan v. Wardhaugh* (N.D. Cal. May 10, 2024) No. 23-CV-02879-RFL, 2024 WL 2853972.  The allegations above state "what each individual did, when they did it, or how they functioned together as a continuing unit." *Doan v. Singh* (9th Cir. 2015) 617 F.App'x 684, 686.  The alleged fraudulent communications of "electronic filing, mail and email" are pleaded with particularity as Rule 9 demands.

1    **1.  <u>Semiconductor Energy Laboratory Does Not Bar Jones's RICO Claim</u>**.

2        Karafin and Benvensee rely heavily on *Semiconductor Energy Laboratory Co. v. Samsung*

3    *Electronics Co*. (Fed. Cir. 2000) 204 F.3d 1368, for the proposition that "statements made during the

4    patent application process before the PTO cannot qualify as an act of mail fraud or wire fraud for

5    purposes of RICO's predicate act requirement." This reliance is misplaced because *Semiconductor*

6    *Energy* has a narrow holding that does not apply to Jones's claims.  In *Semiconductor Energy*, Samsung

7    alleged that SEL committed inequitable conduct during patent prosecution by misrepresenting prior art

8    to the USPTO. Critically, Samsung "conceded 'the direct fraud was perpetrated upon the PTO.'" *Id*. at

9    1378. The Federal Circuit held that such fraud directed at the USPTO could not constitute mail/wire

10    fraud because a patent right is "never held by the sovereign"—there is no government property to

11    defraud. *Id*. at 1378-80. That is because mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. §

12    1343) prohibit using mail or wire communications to execute any "scheme or artifice to defraud, or for

13    obtaining money or property by means of false or fraudulent pretenses, representations, or promises"

14    and the government had no property and, as such, could not be deprived of it. Therefore, that fraud could

15    not apply as a RICO predicate. "By contrast, the patent right to exclude a party from practicing a

16    particular invention is never held by the sovereign, but only by the patentee after issuance." "In short,

17    Samsung has failed to satisfy the predicate act requirement for its federal RICO counterclaims, as SEL's

18    inequitable conduct did not "defraud" the government of any "property" under either the federal mail or

19    wire fraud statutes." *Id*..

20        While Jones does allege fraudulent statements made to the USPTO, he does not allege that it is

21    directed at the USPTO, though that is also true.  It is the fraudulent statements that deprived Jones of

22    property, and it is the theft through fraud of Jones' intellectual property that forms the basis of his claim.

23    In other words, the patent filing is evidence and, because it was part of a scheme to defraud Jones of his

24    property, it is a valid predicate act.

25        Patents provide government-granted exclusive rights to practice inventions. When Defendants

26    filed patents on Jones's trade secrets, they obtained the legal right to exclude Jones from practicing his

27    own inventions. This is not abstract harm—it is concrete property deprivation. If Jones attempts to

28    commercialize his intellectual property, defendants could sue him for patent infringement on patents that

exist only because they stole his work. The fraudulent patents are effectively a deed to stolen property, recorded with the federal government.

In an analogous context, the Supreme Court in *Kewanee Oil Co. v. Bicron Corp*. (1974) 416 U.S. 470, held that "patent law does not pre-empt trade secret law." This means defendants cannot use their fraudulently obtained patents as a shield against Jones's property claims—the very theory Defendants advance through their misapplication of BearBox. Unlike in *Semiconductor*, Jones is the owner of the property being stolen and has been defrauded of it through both the patent filings and other predicate acts. This holds true for the property conferred by the Light Field Lab patent policy as well.

### 2. ***Bridge v. Phoenix Bond* Confirms Jones's Theory**.

The Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity Co*. (2008) 553 U.S. 639 confirms that RICO plaintiffs need not be the direct recipients of fraudulent communications—they need only be injured by reason of the racketeering activity. "A plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."  In *Bridge*, defendants made false statements to Cook County (not to the plaintiffs), yet plaintiffs—who lost tax lien auctions as a result— had standing to sue. Id. at 649-50. Similarly, even if Karafin and Bevensee's false inventorship declarations were directed at the USPTO, Jones was injured when the USPTO relied on those declarations and issued patents omitting Jones's name—just as the *Bridge* plaintiffs were injured when the County relied on false auction attestations.

### 3. **Trade Secret Theft Is an Enumerated RICO Predicate**.

Independent of mail and wire fraud, Jones alleges trade secret misappropriation under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1832. Trade secret theft is an enumerated RICO predicate offense. 18 U.S.C. § 1961(1)(B). *Semiconductor Energy* addresses only mail/wire fraud predicates based on USPTO filings—it does not address trade secret predicates at all.  The Federal Judicial Center's Trade Secret Case Management Guide confirms that "violations of the DTSA may serve as predicate offenses for RICO claims." Www.fjc.gov/sites/default/files/materials/08/Trade%20Secret%20final.pdf.

Jones alleges that Defendants misappropriated his technical contributions—including viewer dependent

22

Plaintiff's Opposition To
Motion to Dismiss

light field rendering techniques and acuity enhancement—and incorporated them into patent applications without attribution. This constitutes trade secret misappropriation independent of any USPTO filing.

### 4. <u>The 2016 DTSA Amendment Strengthened This Theory</u>.

The Defend Trade Secrets Act of 2016 explicitly added trade secret violations (18 U.S.C. §§ 1831, 1832) to the list of RICO predicates. 18 U.S.C. § 1961(1)(B). This was a deliberate Congressional choice to provide RICO's enhanced remedies—including treble damages—for trade secret schemes. *Semiconductor Energy* was decided in 2000, sixteen years before Congress expanded RICO to explicitly include trade secret theft. The Federal Circuit's concern that patent prosecution communications could become RICO predicates was mooted by Congress's affirmative decision to make trade secret theft a predicate. If Congress wanted trade secret-based patent schemes excluded from RICO, it would not have added §§ 1831-1832 to § 1961. Further, 18 U.S.C. § 1838 contains a savings clause: "this chapter shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by United States Federal, State, commonwealth, possession, or territory law for the misappropriation of a trade secret." This confirms that DTSA operates alongside other federal remedies—including RICO. The savings clause defeats any argument that patent law displaces Jones's RICO claims based on trade secret predicates.

### 5. <u>Jones Has Cognizable "Business or Property" Injury</u>.

Karafin and Benvensee focus exclusively on whether employment constitutes "business," while the statute provides for injury to "business or property." 18 U.S.C. § 1964(c). This is textual blindness. Even if the Court were to reject the concept of employment as "business" (which no Circuit, including the Ninth Circuit has done), Jones's property injuries—trade secrets, stock options, patent royalty rights, inventorship interests—are independently cognizable. Jones need not establish employment = business because he has direct, concrete property injuries: Jones's source code, algorithms, and technical innovations constitute trade secrets under both California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426) and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836. Misappropriation of trade secrets is injury to property. These are not derivative claims—Jones's work product was stolen.

### 6. <u>Jones's Property Right to File Patents Was Destroyed</u>.

Beyond his trade secrets and other property interests, Defendants' scheme destroyed a separate, cognizable property right: Jones's ability to seek patent protection for his own inventions.  In *Kremen v. Cohen* (9th Cir. 2003) 325 F.3d 1035, the Ninth Circuit held that intangible property rights—there, a domain name—are subject to conversion. "Kremen's domain name was a species of intangible property... Property encompasses every intangible benefit susceptible of possession or disposition." *Id*. at 1047-49.  The right to file for and obtain patent protection is precisely this type of intangible property right. Patent applications are assignable and mortgageable under 35 U.S.C. § 261 —indicia of property rights. The Fifth Amendment Takings Clause protects patents with the "same constitutional protection as real property."

### 7. <u>Jones Has Alleged a Pattern of Racketeering Activity</u>.

Karafin and Bevensee argue Jones has not alleged "a series of related predicates extending over a substantial period of time" or a "credible threat of future criminal conduct." This argument ignores six years of continuous fraudulent conduct. The Supreme Court established in *H.J. Inc. v. Northwestern Bell Telephone Co*. (1989) 492 U.S. 229 that RICO's pattern requirement has two elements: (1) relationship between predicate acts, and (2) continuity—either over a substantial period or with threat of future activity.  The Supreme Court found that six years of bribery (1980-1986) "may be sufficient to satisfy the continuity requirement." *Id*. Jones alleges fraudulent conduct spanning 2019 to 2025, matching the H.J. Inc. benchmark.  The Ninth Circuit has indicated that periods as short as 13 months can satisfy the substantial period requirement. *Allwaste, Inc. v. Hecht* (9th Cir. 1995) 65 F.3d 1523.

Further, Jones was in Washington State when he received the employment offer and signed contracts electronically. He worked in-person at LFL's San Jose office from September 30, 2019 through March 7, 2020, then worked remotely from Washington for over three years until his termination on June 23, 2023. Every electronic communication sent to Jones in Washington—including the original offer, all remote-period emails and texts (March 2020 - June 2023), the March 2023 text exchange, and DocuSign contract documents—constitutes use of interstate wires under 18 U.S.C. § 1343.

**8.  <u>Individual Defendants Are Personally Liable</u>.**

Karafin and Benvensee argue that "the public patent filings indisputably list LFL, not Karafin or Bevensee, as the applicant." This corporate shield argument fails for reasons already established:

<u>Corporate Officer Liability</u>: As detailed above, corporate officers are personally liable for torts in which they personally participate. *Frances T. v. Village Green* (1986) 42 Cal. 3d 490, 504-05. This liability "does not depend on... 'piercing the corporate veil'" but on "personal participation."

<u>Inventor's Oaths Are Personal Acts</u>: As detailed above, Karafin and Bevensee personally signed inventor declarations under 35 U.S.C. § 115. The duty of candor under 37 C.F.R. § 1.56 is personal to each inventor—it cannot be delegated to the corporation. These were individual acts creating individual liability.

<u>Personal Participation</u>: Karafin personally made fraudulent material omissions, personally concealed Jones's § 220 rights, and personally signed false patent declarations. Bevensee personally was responsible for fraudulent material omissions, personally supervised Jones, personally conducted technology demonstrations, and personally signed false patent declarations. LFL being the nominal applicant does not shield individuals who personally committed the underlying acts.

**IV. CONCLUSION AND REQUEST FOR LEAVE TO AMEND**

For the reasons stated above, Karafin and Benvensee's Motion to Dismiss should be denied. However, to the extent that the Court finds deficiencies in the pleading of the Amended Complaint, Plaintiff requests leave to amend to provide any missing factual bases for the claims.

Dated: December 2, 2025

                    HENRY | LACEY PC

                    By /s/ Stephen Henry_____
                    STEPHEN F. HENRY
                    Attorney for Plaintiff