1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ALAN JONES,

            Plaintiff,

vs.

LIGHT FIELD LAB, INC., JON KARAFIN,
BRENDAN BEVENSEE, and Does 1 to 10,

            Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:25-cv-5118 MMC

**PLAINTIFF'S OPPOSITION TO
KARAFIN AND BEVENSEE'S
MOTION TO STRIKE**

 Date: January 9, 2026
Time: 9 a.m.
Judge: Hon. Maxine M. Chesney
Courtroom: 7

Complaint Filed: June 17, 2025
Am. Complaint Filed: Sept. 3, 2025

Case No.: 3:25-cv-5118 MMC

Plaintiff's Opposition To
Motion to Strike

**Table of Contents**

I.    INTRODUCTION ..................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 1

III.    ARGUMENT ........................................................................................................... 2

  A.    Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh Causes of Action Are Not Seeking Any Remedy Based On Protected Petitioning. ............................................ 2

    1.    The Conduct Jones Complains Of Is Not Petitioning ................................... 3

    2.    The Baral Surgical Approach Is Also Not Applicable .................................. 6

    3.    Criminal Acts Are Not Protected by California's Anti-SLAPP. .................. 8

    4.    The Patent Act Does Not Preclude Mr. Jones' Claims ................................ 8

    5.    BearBox LLC v. Lancium LLC Is Distinguishable. ................................... 10

  B.    Jones Can Show Probability of Prevailing on Fraud Claims. ............................ 11

    1.    Fraudulent Inducement During 2019 Hiring ............................................... 12

    2.    Breach of Fiduciary Duty of Candor (Section 220 Rights Concealment) .......... 14

    3.    Jones Does Not Allege Mere "Opinions." ................................................... 16

    4.    Patent Invalidity Flows from Facts as a Matter of Law. ............................. 17

    5.    The USPTO Was Deceived, Not Consulted. ............................................... 17

    6.    Jones Can Show Probability of Prevailing on Penal Code Claim. .............. 19

    7.    The Obstruction Timeline Proves Both Knowledge And Intent. ................ 20

    8.    Personal Acts Cannot Be Delegated. ........................................................... 21

  C.    Jones Is Entitled to Mandatory Fee Award Under § 425.16(c). ........................ 21

    1.    Objective Standard for Frivolousness .......................................................... 22

    2.    Mandatory Fee Award Under § 425.16(c)(1). ............................................ 23

IV.    CONCLUSION ..................................................................................................... 23

# Table of Authorities

## Cases

*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226 ................................................................. 18

*Aronson v. Quick Point Pencil Co* (1979) 440 U.S. 257 ................................................................. 9

*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1 ................................................................. 9

*Avid Identification Systems, Inc. v. Crystal Import Corp.* (2011) 603 F.3d 967 ................................... 13

*Bagdasarian v. Gragnon*, (1948) 31 Cal.2d 744 ................................................................. 18

*Baral v. Schnitt*,(2016) 1 Cal.5th 376 ................................................................. 6

*BearBox LLC v. Lancium LLC* (2025) 125 F4th 1101................................................................. 10

*Bridge v. Phoenix Bond & Indemnity Co.* (2008) 553 U.S. 639 ................................................................. 15

*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal. 4th 1106 ............................................ 5

*Cabral v. Martins* (2009) 177 Cal. App. 4th 471................................................................. 5

*Capers v. NorthPro Prop. Mgmt., LLC* (La. App. 2 Cir. 2021) 321 So. 3d 502 ................................... 11

*City of Cotati v. Cashman* (2002) 29 Cal. 4th 69................................................................. 3

*Engalla v. Permanente Med. Grp.* (1997) 15 Cal.4th 951 ................................................................. 16

*Ethicon, Inc. v. U.S. Surgical Corp.* (Fed. Cir. 1998) 135 F.3d 1456................................................................. 20

*Flatley v. Mauro* (2006) 39 Cal. 4th 299 ................................................................. 1, 8, 22

*Freeman v. Schack* (2007) 154 Cal. App. 4th 719 ................................................................. 6

*Gantler v. Stephens* (Del. 2009) 965 A.2d 695 ................................................................. 14

*Hartong v. The Partake Grp.* (2023) 90 Cal. App. 5th 123 ................................................................. 15

*Hastings College Conservation Committee v. Faigman* (2023) 92 Cal. App. 5th 323 ............................ 3

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,* (Fed. Cir. 1998) 153 F.3d 1318 ................................ 9

*IQE PLC v. Newport Fab LLC* (2023) 2023 WL 10946752................................................................. 1, 3

*Kewanee Oil Co. v. Bicron Corp.* (1974) 416 U.S. 470 ................................................................. 9, 11

*Lantz Ret. Invs., LLC v. Glover*, No. 19-379, 2021 WL 6118182, at *8 (E.D. Cal. Dec. 27, 2021) ........ 18

*Lazar v. Superior Court*, (1996) 12 Cal. 4th 631 ................................................................. 11, 17

*Malone v. Brincat* (Del. 1998) 722 A.2d 5 ................................................................. 14

*Marketing West, Inc. v. Sanyo Fisher(USA) Corp.* (1992) 6 Cal.App.4th 603................................... 12, 13

*Mindys Cosmetics v. Dakar* (2010) 611 F.3d 590 ................................................................. 1

1  *Navellier v. Sletten* (2002) 29 Cal. 4th 82.............................................................................. 3

2  *OCM Principal Opportunities Fund v. CIBC World Markets Corp*. (2007) 157 Cal. App. 4th 835 ....... 18

3  *Orthokinetics, Inc. v. Safety Travel Chairs, Inc*. (Fed. Cir. 1986) 806 F.2d 1565.................................. 13

4  *Park v. Board of Trustees* (2017) 2 Cal. 5th 1057 ............................................................... 1, 3

5  *People v. Allen* (1978) 21 Cal. 3d 846 .................................................................................. 20

6  *People v. Anderson* (1989) 210 Cal. App. 3d 414 ............................................................... 20

7  *People v. Kozlowski* (2002) 96 Cal. App. 4th 853 ............................................................... 19

8  *Seeger v. Odell* (1941) 18 Cal.2d 409 ................................................................................ 19

9  *SemiconductorEnergy Lab'y Co. v. Samsung Elecs. Co.* (2000) 204 F.3d 1368................................. 19

10  *Silvaco Data Systems v. Intel Corp*. (2010) 184 Cal.App.4th 210..................................................... 9

11  *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal. 5th 333 ...................................................... 6

12  *Small v. Fritz Companies* (2003) 30 Cal.4th 167 .................................................................. 15

13  *Therasense, Inc. v. Becton, Dickinson & Co*.(2011) 649 F.3d 1276 ................................................... 17

14  *Ultra-Precision Mfg., Ltd. v. Ford Motor Co*. (2005) 411 F.3d 1369 ...................................... 9

**Statutes**

18 U.S.C. § 1001 ............................................................................................................... 1

35 U.S.C. § 115(i) ............................................................................................................ 1

Cal. Code Civ. Proc. § 425.16(e)(2) .................................................................................. 5

**Regulations**

37 CFR § 1.56 .................................................................................................................. 18

## I.    INTRODUCTION

Alan Jones' claims against Karafin and Benvensee arise from defendants' 2019 fraudulent inducement in hiring Jones, as well as the systematic theft of his work product from 2019-2023. Jones' claims do not, as Karafin and Benvensee assert, arise from Light Field Lab, Inc.'s ("LFL") 2023 patent filings. Indeed, the timeline is undisputable: the fraud occurred four years before a single patent application derived from Jones' work was filed.  Here, the patent filings are "evidence of liability," not "the wrong complained of." *Park v. Board of Trustees* (2017) 2 Cal. 5th 1057, 1063.

Karafin's and Benvensee's reliance on *IQE PLC v. Newport Fab LLC* (2023) 2023 WL 10946752, is equally misplaced. The Court in *IQE* did not did not grant defendant's anti-SLAPP motion.  Instead, it remanded for the district court to provide the Two Step analysis set forth by the Court — first determining whether there is "protected activity" at Step One, and if so, moving to Step Two, to determine whether plaintiff is able to demonstrate a probability of prevailing on the merits.  *IQE* provides a roadmap for the analysis here, and, as further discussed below, Jones will be able to show that the Court need not reach Step Two because there is no protected activity under the meaning of the anti-SLAPP statute.  *See Park, supra* at 1063.  But, even if this Court finds protected activity, and moves to Step Two, Jones can easily show a "reasonable probability" of prevailing on the merits.  *Mindys Cosmetics v. Dakar* (2010) 611 F.3d 590 (court found protected activity, but affirmed denial of anti-SLAPP based on plaintiff's "reasonable probability" within the meaning of the anti- SLAPP statute of prevailing on its tort claims).  Here, Jones has more than a reasonable probability of prevailing on (a) two independent fraud theories, (b) three independent forms of stolen property, and (c) systematic obstruction for over two years, and evidencing consciousness of guilt.

Separately, Karafin and Benvensee cannot claim protection under the anti-SLAPP statute, because they committed crimes (as a matter of law) by filing knowingly false inventor declarations under penalty of perjury, violating 18 U.S.C. § 1001 and 35 U.S.C. § 115(i). *See Flatley v. Mauro* (2006) 39 Cal. 4th 299, 317 (criminal conduct strips all anti-SLAPP protection and bars fee shifting).

## II.    FACTUAL BACKGROUND

The facts stated in the Amended Complaint ("FAC") establish that Plaintiff, Alan Jones, joined LFL as a Senior Pipeline Software Engineer and was promoted to Principal Engineer.  FAC

para. 11. His job was to develop LFL's SolidLight holographic display platform. FAC para. 21. As part of this role, Jones contributed valuable intellectual property to the development of LFL's products (including but not limited to patents and patented products) based on false statements and concealment by LFL's officers, Karafin and Bevensee. LFL then filed patents based upon those innovations claiming them as the inventions of Karafin and Bevensee. Also, as part of his employment with LFL, Jones gave up stock grants, bonuses, annual raises, and career prospects from his prior employment with Microsoft, all to his detriment. Instead, based on misrepresentations and concealment by LFL's officers, Karafin and Bevensee, he received stock options from LFL as a portion of his compensation, resulting in damages as set forth in his complaint.

As discussed in the Introduction above, and the Legal Argument below, Mr. Jones does not seek ownership of any patents. and his complaint does not arise from protected activity on the part of Karafin and/or Bevensee. Rather, Plaintiff seeks the return of his intellectual property (*i.e.,* his source code), through rescission of an agreement he was fraudulently induced to sign, as well as compensation for the economic losses suffered as a result of Karafin and Bevensee's fraud, concealment, theft, and breach of fiduciary.

## III.    ARGUMENT

### A.    Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh Causes of Action Are Not Seeking Any Remedy Based On Protected Petitioning.

Bevensee and Karafin's arguments seeking application of the Patent Act do not apply to the claims Jones is asserting. Jones is asserting a right to the source code he developed, not patents. Seeking to confuse the facts, Bevensee and Karafin claim that "[t]he specific communications challenged here—alleged omissions of prior art, altered terminology, misdesignation of inventorship, and "fraudulent communications" during patent prosecution—are also protected because they are inseparable from the act of petitioning," This misconstrues the issues raised in the complaint, which address fraudulent communications to (and concealment from) Jones, *not the Patent Office.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.  <u>The Conduct Jones Complains Of Is Not Petitioning</u>.

The anti-SLAPP statute is available if the "defendant's conduct underlying the plaintiff's cause of action" was "itself" an "act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman* (2002) 29 Cal. 4th 69, 78.  Here, the fraudulent statements and concealment that Jones asserts in the Third and Fourth Causes of Action are not alleged to have been made to any patent issuer but, rather, to Jones himself.  As stated in *Navellier v. Sletten* (2002) 29 Cal. 4th 82, 89, "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."  Karafin and Benvensee's *activity* that gives rise to their liability in the instant action is fraud and theft, not applying for a patent.  In that regard, *Park v. Board of Trustees of California State University* (2017) 2 Cal. 5th 1057 is instructive. In *Park*, the California Supreme Court determined that a discrimination claim under the Fair Employment and Housing Act (FEHA) brought by a tenure-track assistant professor was not subject to an anti-SLAPP motion because — although the decision to deny him tenure and to terminate his employment "contest[ed] an action or decision that was arrived at following speech or petitioning activity" — the anti-SLAPP statute was only available if the "speech or petitioning activity itself is the wrong complained of." *Id*. at 1062-1073; see also *Hastings College Conservation Committee v. Faigman* (2023) 92 Cal. App. 5th 323 (citing Park, and holding that anti-SLAPP was not triggered by lawsuit challenging the constitutionality of AB 1936 (which required changing the name of what was formerly known as "Hastings College of the Law" to "College of the Law, San Francisco)" because plaintiffs' causes of action were based on the Legislature's enactment of AB 1936, not on the College's speech or petitioning activity that proceeded it).

Notwithstanding this directly applicable authority, Karafin and Benvensee rely on *IQE PLC v. Newport Fab, LLC*, No. 24-1124, 2025 WL 2922441, at *6 (Fed. Cir. Oct. 15, 2025), but they mischaracterize the case.  The Federal Circuit did not grant the anti-SLAPP motion. Rather, the court vacated the district court's denial and remanded for proper analysis because the district court improperly considered the merits of the trade secrets claim in Step One.   The Federal Circuit held that the district court conflated Step One and Step Two, and remanded for the district court to conduct a separate Step Two analysis—evaluating whether plaintiff demonstrated a probability of prevailing on the merits.

Thus, as further discussed below, even if the act of the patent filing means there is protected activity to trigger anti-SLAPP protections for Karafin and Bevensee's fraud (and despite the fact that Jones' claims are based on state law tort violations), the Court will proceed to the Step Two analysis, and Jones will be able to meet the requirement of demonstrating a "reasonable probability" of prevailing on his claims.

With regard to the facts of *IQE,* they are distinct from those here. *IQE* involved allegations that defendants disclosed trade secrets within the patent applications themselves, and therefore the patent filing was the vehicle of the harm alleged. In Jones' case, the harm occurred before the patent filing. First, it occurred in 2019 when Jones was fraudulent inducement to join LFL, and second, from 2019 to 2023 when he was fraudulently induced to provide his work product, including giving LFL his source code through an agreement which he seeks to rescind. The patent filings are merely evidence that Karafin and Benvensee misappropriated intellectual property, but the patent filings themselves are not the mechanism of the theft of his property. Put differently, and as stated in *Park*, the patents are "evidence of liability," not "the wrong complained of." 2 Cal. 5th at 1063.

Karafin and Bevensee also rely on *Mindys Cosmetics, Inc. v. Dakar* (2010) 611 F.3d 590 with regard to the Step One analysis, emphasizing the Court's finding that a trademark filing is protected activity under § 425.16(e). But, as in *IQE,* the facts in *Mindys* are not controlling because Jones can show that "the wrong he complained of" occurred long before the patent filing. Indeed, the temporal gap between the wrong for which Jones basis his complaint, and the timing of the patent filings is stark, as shown in the following timeline:

**a**. 2019 (Fraudulent Inducement To Join The Company)

Defendants fraudulently induced Jones to join LFL in 2019, over three years before filing any patent application. Not only did Karafin and Bevensee make material misrepresentations during the hiring negotiations, but they withheld material information about LFL's IP practices, attribution policies, and intent to claim Jones' work without compensation. (FAC ¶¶ 26-32). Clearly, neither the misrepresentations nor the concealment were "in furtherance of" their petitioning activity, nor could it be as that activity was already completed, and as such has no "connection" to it. Jones accepted employment based on these representations and omissions (FAC ¶ 26), and the fraudulent inducement was complete when Jones accepted employment in 2019.

**<u>b</u>.** 2019-2023 Period (Theft of Work Product):

Jones created viewer-dependent light field technology and acuity enhancement algorithms (FAC ¶ 27).  Defendants systematically misappropriated this work as trade secrets during confidential employment relationship.  The theft occurred continuously from 2019-2023, predating any patent filings.

**<u>c</u>.** 2023 Period (Patents as Evidence of Liability, Not the Wrong Complained Of)

April 9, 2023: Jones filed a complaint referencing and detailing contributions (FAC ¶¶ 54-56);

April 13, 2023: Defendants filed a patent four days later (FAC ¶ 19(d));

June 23, 2023: Termination occurred on the same day as second patent filing (FAC ¶ 11).
In short, the patents revealed the completed theft; they did not constitute the theft itself.

Applying these facts to *Park*'s "arising from" test, it is clear that Jones' claims arise from the pre-filing 2019 fraud, not from the 2023 patent filings. The filings merely evidence the fraud that had already occurred.  *Cabral v. Martins* (2009) 177 Cal. App. 4th 471, 482 (claims arise from conduct predating protected activity).  Similarly, Section 425.16(e)(2) protects only activity "in connection with" an official proceeding.  And as stated in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal. 4th 1106, 1123, "Connection" requires that activity be "in furtherance of" the proceeding. *Id*. Under *Park*, the critical inquiry is the gravamen of plaintiff's claims—what is the actual wrong?  *Park v. Board of Trustees*, 2 Cal. 5th *supra* at 1063. When the wrong is complete before petitioning activity begins, there is no "connection" under Cal. Code Civ. Proc. § 425.16(e)(2).  *Park* distinguishes between activity that constitutes "the wrong complained of" versus activity that is merely "evidence of liability or a step leading to some different act." When petitioning activity serves as evidence of a pre-existing wrong, the claims do not arise "in connection with" that activity. The temporal sequence controls: if the wrong was complete before petitioning began, petitioning cannot be the basis for liability.

In sum, and to put a point on it, Jones' claims would exist even if defendants never filed patents. This is evident from the damages Jones seeks: specifically, return of his source code in defendants' possession (FAC ¶¶ 27, 70-77) through recission of the agreement he was fraudulently induced to sign — which undeniably does not depend on the existence of patents. The theft was complete when

defendants took Jones' work product during 2019-2023 employment. The fraud was perpetrated when defendants induced Jones in 2019 through material omissions. Patents merely evidence that defendants used the stolen work.

In *Briggs*, challenged statements were made to advance defendant's position before city council—activity was "in furtherance of" the official proceeding. *Briggs*, *supra*, 19 Cal. 4th at 1123. Here, the wrong (2019 fraudulent inducement and 2019-2023 theft) predated and was independent of USPTO proceedings (2023 patent filings). The fraud was not "in furtherance of" patent filings; rather, patent filings evidenced previously completed fraud.

There is no "connection" between pre-filing fraud/theft (2019-2023) and either the 2023 USPTO proceedings or LFL's foundational patent proceedings. Section 425.16(e)(2) is inapplicable. Under *Park*, the gravamen is prefiling conduct; patents are merely evidence. *Freeman v. Schack* (2007) 154 Cal. App. 4th 719, 733 (claims do not arise from protected activity when gravamen is separate wrong).

Even if defendants never filed the patents, Jones can establish theft of:

Source code Defendants possess (independent of patents);

Trade secrets misappropriated during employment (independent of patents); and

The Penal Code claim does not arise from patent filings. It arises from defendants' receipt, concealment, and withholding of property during and after employment. Under *Park* and *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal. 5th 333, 345, Jones' Penal Code § 496 claim is based on theft of tangible property and contractual rights, not on USPTO petitioning activity.

## 2. The Baral Surgical Approach Is Also Not Applicable.

Defendants misapply *Baral v. Schnitt* (2016) 1 Cal.5th 376. Under Baral's surgical approach, courts focus on "the defendant's activity that gives rise to his or her asserted liability." The activity giving rise to liability is unprotected pre-filing fraud and theft, not patent filings. Under *Baral* when a claim involves both protected and unprotected activity, courts must "distinguish between allegations of protected activity and unprotected activity," striking only allegations based on protected activity. 1 Cal. 5th at 395. The critical inquiry is "the defendant's activity that gives rise to his or her asserted liability"—not the form of plaintiff's cause of action. *Id*. at 394 (quoting *Navellier*, 29 Cal. 4th at 92). Courts apply a "principal thrust" or "gravamen" test to identify the actual wrong.

*Baral* requires identifying which defendant conduct caused plaintiff's harm. When the gravamen is unprotected activity, incidental references to protected activity do not subject the claim to anti-SLAPP. The focus is temporal and causal: what conduct created the liability?

*a. Fraudulent Inducement During 2019 Hiring (Unprotected)*:

During hiring negotiations, Defendants withheld material information about LFL's intellectual property practices and intent to claim employee contributions without attribution or compensation. Defendants published a Patent Award Policy promising compensation for inventorship, impliedly representing they would honor those terms and Jones accepted employment based on these omissions and representations. This is pre-filing, pre-USPTO employment fraud and entirely unprotected activity.

*b. Theft of Source Code and Trade Secrets During 2019-2023 Employment (Unprotected):*

Jones created proprietary technology and source code during employment and Defendants systematically misappropriated this work as trade secrets. Trade secret misappropriation during confidential employment relationship is not protected petitioning. *Silvaco Data Systems v. Intel Corp.* (2010) 184 Cal.App.4th 210 (trade secrets are state-law property).

*c. Fraudulent Concealment of Patent Porfolio Origins (Unprotected)*:

Concealment of material facts during fiduciary relationship is fraud, not protected speech.

*d. Systematic Obstruction July 2023-August 2025 (Unprotected)*:

Over two years of obstruction: denial of production of personnel file denial, coerced attempts to obtain a release, denial of production of cap table, Section 220 obstruction, and the ABC filing. Obstruction of information and shareholder rights is not protected petitioning. Each obstruction event evidenced consciousness of guilt and intent to conceal the underlying fraud.

Even if FAC ¶¶ 54-56 reference patent filing activity (which merely evidences fraud under *Park*), the fraud allegations ultimately concern unprotected pre-filing and post-filing conduct:

- 2019 hiring fraud (unprotected);

- Fraudulent inducement and concealment (unprotected);

- Trade secret theft during employment (unprotected);

- Obstruction timeline: Systematic concealment post-termination (unprotected).

Under *Baral*'s surgical approach, these unprotected allegations must survive even if specific

references to patent filings are stricken, though there exists no grounds upon which to strike them.

Further, Defendants misunderstand *Baral*. The California Supreme Court held that courts must preserve claims based on unprotected activity while striking only allegations based on protected activity. Here, the gravamen is pre-filing fraud and theft. Even if some allegations mention patents as evidence of fraud, Baral preserves the fraud and theft claims based on pre-filing conduct. Under *Baral*, the "activity that gives rise to liability" is 2019 fraudulent inducement, 2019-2023 theft, and obstruction— all unprotected. Even if incidental references to patent filings relate to protected activity, Baral's surgical approach preserves claims based on the gravamen of unprotected conduct.

### 3. <u>Criminal Acts Are Not Protected by California's Anti-SLAPP</u>.

Further, there is evidence of criminal conduct establishing a *Flatley* exception to protected conduct based on Karafin's and Bevensee's violations of 18 U.S.C. § 1001, 35 U.S.C. § 115(i)). Even if the Court finds that some allegations relate to patent filing activity at Step One (they do not), the *Flatley* exception provides an independent threshold ground for denying the motion and barring fee shifting. Defendants committed federal crimes as a matter of law. Defendants' conduct was illegal as a matter of law, stripping all anti-SLAPP protection. Under *Flatley v. Mauro*, (2006) 39 Cal.4th 299 "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law, and therefore unprotected by constitutional guarantees of free speech and petition, cannot use the anti-SLAPP statute to strike the plaintiff's complaint." *Id*. at 333. When conduct violates criminal statutes, it receives no First Amendment protection and no anti-SLAPP protection. Critically, *Flatley* also bars fee shifting under § 425.16(c) because illegal conduct is not protected activity.

### 4. <u>The Patent Act Does Not Preclude Mr. Jones' Claims</u>.

As noted in the Introduction above, Mr. Jones does not seek the remedy that Bevensee and Karafin pretend he does and, therefore, does not run afoul of the Patent Act. Mr. Jones seeks remedies not covered by the Patent Act including invalidation of the Confidential Information and Inventions Assignment Agreement as a result of fraudulent inducement and ownership of the source code.

Defendants mischaracterize Jones' claims. Jones does not seek inventorship status or

Case No.: 3:25-cv-5118 MMC                    8                    Plaintiff's Opposition To
                                                                   Motion to Strike

patent-like protection. Jones seeks traditional state-law remedies for theft of property and breach of contract. *Ultra-Precision Mfg., Ltd. v. Ford Motor Co*. (2005) 411 F.3d 1369, 1377 is inapplicable. Federal patent law preempts only state claims that provide "patent-like protection"—exclusive rights to make, use, or sell patented inventions.  Federal Circuit precedent establishes that state law fraud claims are not preempted when based on conduct "separate from and in addition to" patent rights themselves. *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* (Fed. Cir. 1998) 153 F.3d 1318, 1335 (overruled on other grounds) ("To determine whether these state law torts are in conflict with federal patent law and accordingly preempted, we assess a defendant's allegedly tortious conduct. If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted.")   Here, remedies for each of the state law causes of action attacked by Defendants, such as reliance damages, can be determined without resort to communications with the Patent Office, as they primarily hinge on the tortious conduct committed by Defendants, not patent validity or ownership.

California law firmly establishes that source code and trade secrets are property independent of patent status. *Silvaco Data Systems v. Intel Corp*. (2010) 184 Cal.App.4th 210.  Jones created viewer-dependent light field technology source code during employment. This constitutes trade secrets protectable under California law. *Kewanee Oil Co. v. Bicron Corp*. (1974) 416 U.S. 470 (trade secrets remain state-law property pre-patent).  During the four-year gap between theft (2019-2023) and patent filings (2023), Jones' work remained trade secrets. Trade secret misappropriation claims are not preempted. Hunter Douglas, 153 F.3d at 1335.

LFL's Patent Award Policy promises "$2,500 for each lead inventor... at the time of utility patent filing; 1,000 shares of LFL stock options... at the time of patent issuance."  This creates enforceable contractual rights. *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 10-11. This is a breach of contract claim, not a patent claim. Contract claims are not preempted. *Aronson v. Quick Point Pencil Co* (1979) 440 U.S. 257, 262.

Critically, the Patent Award Policy is LFL's own admission that inventorship confers valuable, compensable property rights. Defendants cannot simultaneously argue: (a) Inventorship is valuable enough to steal via false declarations, and (b) Inventorship is not property under state law This is estoppel-level contradiction. Jones' claims seek traditional state-law remedies (property return, trade secret protection, contract damages, employment fraud damages), not patent-like protection. *Ultra-Precision* is inapplicable. *Hunter Douglas* and *Kewanee Oil* confirm state-law protection for trade secrets and contractual rights independent of patent law.

### 5. <u>**BearBox LLC v. Lancium LLC Is Distinguishable**</u>.

Jones's intellectual property was stolen, not publicly disclosed. BearBox sought monopoly control over technology already in the public domain — that requires patent-like protection because once disclosed, only patents can provide exclusionary rights.  Jones seeks restoration of his trade secret rights in confidential property that was wrongfully taken. This is exactly what *BearBox* says is the proper measure for conversion: "the return of the property."  *BearBox LLC v. Lancium LLC* (2025) 125 F4th 1101.  Jones's trade secrets were never voluntarily disclosed—they were fraudulently obtained through inducement and remain confidential.  Trade secret protection for confidential information is a state law right that *Kewanee Oil* expressly holds is not preempted—a principle the *BearBox* court itself acknowledged. The patents are merely documents that evidence what defendants did with Jones's stolen trade secrets—the patents themselves are not Jones's property, and he seeks no patent rights. His claims are based on theft of trade secrets and fraud, not inventorship or patent law. The Federal Circuit's preemption analysis turned on specific facts that are absent here:

### i. **BearBox's technology was publicly disclosed:**

"Here, BearBox's technology is not patented, was freely shared with others, and is otherwise in the public domain." "Cocktail hour, dinner conversation, and Mr. Storms' email aside, the district court also found that Mr. Storms separately shared portions of his source code with another third-party individual. See Inventorship Decision, at *13 ¶ 83."  *BearBox*, *supra*, at fn. 2.

### ii.   BearBox sought patent-like damages, not return of property:

"The damages that BearBox seeks to recoup—"including damages, consequential damages, disgorgement of [Lancium's] ill-gotten profits . and/or all other appropriate financial relief," J.A. 1653 ¶ G—are also "patent-like" in that they seek monetary damages adequate to compensate for "[Lancium's] improper and unauthorized use." "BearBox does not just demand the return of its allegedly converted property or its value at the time of the alleged conversion, BearBox persistently pursues more—monetary damages akin to those awarded under federal patent law." *Id*. at 1113.

### iii.   The court distinguished trade secret claims:

Moreover, "federal patent law generally precludes a plaintiff from recovering a [damages] award premised on defendant's making, using, offering to sell, or selling an unpatented discovery after plaintiff makes the discovery available to the public." *Ultra-Precision*, 411 F.3d at 1380; cf. *Kewanee Oil Co. v. Bicron Corp*. (1974) 416 U.S. 470, 492 (concluding "patent law does not pre-empt trade secret law"). *Id*. at 1113.

### iv.   Louisiana conversion law provides for return of property:

"[U]nder Louisiana law, "[t]he measure of damages for wrongful conversion is the return of the property, or if it cannot be returned, the value of the property at the time of conversion." *Capers v. NorthPro Prop. Mgmt., LLC* (La. App. 2 Cir. 2021) 321 So. 3d 502, 514." *Id*. at 1111.

### B.   <u>Jones Can Show Probability of Prevailing on Fraud Claims</u>.

As described above, the inquiry does not reach Step II of the anti-SLAPP statute.  However, if the inquiry does reach this stage, Jones can show a reasonable probability of prevailing on his claims.  As a predicate, Defendants mischaracterize Jones' fraud claim. Jones asserts two independent fraud theories—fraudulent inducement during 2019 hiring and fraudulent concealment via fiduciary duty breach. Both theories are based on provably false statements and omissions, not opinions.

Fraudulent inducement requires (1) false representation or omission of material fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damages. *Lazar v. Superior Court*, (1996) 12 Cal. 4th 631, 638. Omission of material facts constitutes fraud when defendant has duty to disclose. *Marketing West, Inc. v. Sanyo Fisher(USA) Corp.* (1992) 6

Cal.App.4th 603.  In confidential employment relationships, employers have heightened duties of candor regarding compensation, intellectual property practices, and attribution.  Fraudulent concealment requires (1) concealment of material fact, (2) duty to disclose, (3) intent to defraud, (4) reliance, and (5) damages.  Fiduciary relationships create affirmative duty to disclose material facts. *Id*. at 613.

### 1.    Fraudulent Inducement During 2019 Hiring

During the 2019 hiring, Defendants withheld material information concerning two classes of intellectual property fraud, the Lytro foundational patents (AC ¶19a-e) and their history of IP misappropriation at Lytro, which made similar treatment of Jones' contributions foreseeable.  Both classes involve provably false omissions, that defendants knew from inception they would claim Jones' work without attribution or compensation, just as they had already done with Lytro's concepts.

Defendants possessed actual knowledge through five independent avenues:

First, Karafin and Bevensee personally filed patents at both Lytro and LFL—they knew they were filing overlapping patents while employed at Lytro, knew they failed to disclose the Lytro connection to Jones, and therefore knew the employment inducement was fraudulent. Obtaining property through fraud is theft; defendants were thus aware they stole Jones' work product.

Second, by March 2023, Karafin was on explicit notice that Jones perceived concealment. Jones stated: "you're giving me political managed answers." Despite this notice, when Jones then asked "is there any additional information I'm entitled or required to be given access to as a shareholder?", Karafin deflected rather than disclosed Jones' § 220 inspection rights. Karafin knew Jones was detecting evasion, yet consciously chose to continue concealing—textbook scienter.

Third, the timeline proves premeditated coordination:

April 9, 2023: Jones files an internal complaint - Defendants have full knowledge of Jones' inventive contributions.

April 13, 2023: First patent is filed (4 days later) - Reactive filing proves awareness.

June 23, 2023: Jones terminated; second patent filed same day - Coordinated termination plus filing.

The 4-day turnaround from complaint to patent filing proves premeditated misappropriation.

Fourth, the systematic concealment and obstruction pattern over six years evidences consciousness of guilt:

> 2023-2024: Personnel file requests were delayed 11+ months and the production was legally insufficient.
>
> Sept 2024: Jones' request for a cap table request via Carta was ignored.
>
> Dec 2024: John Dohm acknowledged the request, it was never fulfilled and Jones' follow-up was ignored.
>
> Aug 1, 2025: Jones' formal § 220 demand was stonewalled; Yang (bar license inactive since Nov 2024) claimed to be counsel; Dohm stated that he had "been directed to limit responses."
>
> Aug 15, 2025: Assignment For Benefit of Creditors was filed two weeks after formal demand.

This was not a single careless omission—it was a sustained campaign of concealment from 2019 through 2025.

Fifth, Defendants signed false inventor declarations under penalty of perjury (35 U.S.C. § 115) knowing Jones was an inventor. The duty to disclose all inventors is personal, not corporate. See *Avid Identification Systems, Inc. v. Crystal Import Corp*. (2011) 603 F.3d 967, 974 (PTO Rule 56 duty of candor). Corporate officers are personally liable for tortious conduct they directed. See *Orthokinetics, Inc. v. Safety Travel Chairs, Inc*. (Fed. Cir. 1986) 806 F.2d 1565, 1578-1579.

Each avenue independently establishes scienter; together, they demonstrate a deliberate six-year scheme to defraud Jones of his intellectual property.

Defendants had an intent to induce reliance. The purpose of hiring Jones was to obtain his specialized technical expertise in rendering. Defendants needed Jones' skills to develop patentable technology. The hiring was specifically to induce Jones to contribute work product Defendants could claim. Jones reasonably relied on LFL's representations about IP practices when accepting employment. Employee reliance on employer representations is presumptively reasonable in confidential employment relationships. *Marketing West, Inc., supra*, 6 Cal.App.4th at 613. Finally,

Jones suffered damages across multiple categories including opportunity cost (Jones left Microsoft to join LFL based on defendants' fraud, forfeiting Microsoft equity, earnings, and career trajectory that cannot be restored.); Jones' intellectual property was permanently taken - trade secrets, source code, and work product were fraudulently obtained and remain in defendants' possession. This property cannot be restored through any patent correction mechanism and Jones is permanently deprived of it.  The value of Jones' LFL equity was eliminated- Jones's LFL options expired as worthless on September 23, 2023. His LFL shares became worthless on August 15, 2025 when LFL filed an ABC—two weeks after stonewalling his formal § 220 demand.  Jones lost $5,000 cash plus 2,000 stock options for two patents derived from his work.

### 2.    Breach of Fiduciary Duty of Candor (Section 220 Rights Concealment)

In March 2023, Jones directly asked Karafin: "is there any additional information I'm entitled or required to be given access to as a shareholder?" Karafin responded with "Understood and appreciated"—a deliberate non-answer that concealed Jones's statutory right under Delaware General Corporation Law § 220 to inspect corporate books and records. Jones was not asking for financial information (which would require a formal demand); Jones was asking whether such rights existed—and Karafin concealed that they did.

Under Delaware law, corporate officers owe shareholders a fiduciary duty of candor when communicating about corporate affairs. *Malone v. Brincat* (Del. 1998) 722 A.2d 5, 10  ("Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty... the *sine qua non* of directors' fiduciary duty to shareholders is honesty.")  *Gantler v. Stephens* (Del. 2009) 965 A.2d 695, 708-709 ("corporate officers owe fiduciary duties that are identical to those owed by corporate directors." As CEO, Karafin was bound by this duty when communicating with Jones as a shareholder.  When Jones explicitly asked about his shareholder rights, Karafin's duty of candor required honest disclosure, not evasive deflection.

Jones had already called out Karafin's evasiveness in the same exchange: "you're giving me political managed answers." Karafin was thus on explicit notice that Jones perceived concealment—yet

when Jones then directly asked about shareholder rights, Karafin continued to conceal. This sequence proves scienter: Karafin knew Jones was detecting evasion and consciously chose to continue concealing.  The pattern continued for six years from July 2019 to the present.

Jones held his shares and options based on Karafin's concealment. Delaware law entitles shareholders to rely on fiduciaries fulfilling their duty of honesty. *Malone v. Brincat, supra*: "Shareholders are entitled to rely upon the truthfulness of all information disseminated to them by the directors."  Had Karafin disclosed Jones's § 220 rights, Jones could have investigated LFL's finances and made informed decisions about exercising options or selling shares.

The concealment caused two distinct harms: (1) Jones's options expired worthless on September 23, 2023. Had he known his § 220 rights in March 2023, he could have investigated LFL's finances and made an informed exercise decision. (2) Jones's shares became worthless on August 15, 2025 when LFL filed an ABC, two weeks after stonewalling his formal § 220 demand. Had he known his rights, he could have investigated and potentially sold while the shares had value.

Under *Small v. Fritz Companies* (2003) 30 Cal.4th 167, "if the effect of a misrepresentation is to induce forbearance—to induce persons not to take action—and those persons are damaged as a result, they have a cause of action for fraud." The concealment induced Jones's inaction; the inaction caused the harm.

Further, under *Bridge v. Phoenix Bond & Indemnity Co.* (2008) 553 U.S. 639, fraud can be based on false statements to third parties when those statements harm plaintiff.  Defendants made false statements to USPTO (inventor declarations claiming sole inventorship) that directly harmed Jones by depriving him of attribution, compensation, and property. This is actionable fraud even without direct false statements to Jones. *Hartong v. The Partake Grp.* (2023) 90 Cal. App. 5th 123, 133 (applying *Bridge* framework).

Defendants may attempt to defend by arguing LFL's patents are valid. This defense fails because materiality flows through two independent chains, either of which establishes fraud regardless of patent validity.  The concealed information about patent validity is material whether the patents are ultimately valid or not.  If the patents are invalid**,** Jones was fraudulently induced to join a company built

on nothing.  The Lytro prior art invalidates LFL patents making LFL's patent portfolio worthless and leading to company equity collapsing and stock options (offered as compensation) rendered worthless. Jones was defrauded into accepting employment and securities based on a fundamentally defective patent portfolio.

Even if the patents are valid, the fraud still occurred. Materiality is measured at the time of decision, not with hindsight. *Engalla v. Permanente Med. Grp.* (1997) 15 Cal.4th 951 ("misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action'"). Here, concealed information created material including, litigation risk (patent challenges from Google/Lytro); invalidity risk (prior art could invalidate patents); ownership dispute risk (Google/Lytro superior rights claims); and enforcement risk (unclean hands defense due to undisclosed USPTO violations).  These risks affected value at time of decision: patent portfolio value discounted by risk, company equity value discounted by risk, stock option value discounted by risk, business model viability uncertain, employer financial stability uncertain. Jones was denied the ability to assess material risks before deciding whether to accept employment and securities. Whether patents ultimately found valid or invalid, defendants concealed information that a reasonable person would want to know before making an employment decision.

Further character evidence (filing patents while at Lytro, omitting USPTO disclosures, deliberate terminology changes, creating competing company) remains material because it reveals ethical character of prospective CEO/CTO. Committing a federal crime affects leadership integrity. Willfulness proves that deception is fundamental to their character, not an accident. Pattern of disloyalty to employers is material to employee considering joining them.  Defendants have not—and cannot—address this aspect of Jones' claims. Their conduct while at Lytro was material to Jones' employment decision regardless of whether LFL's subsequent patents are ultimately upheld or invalidated.

### 3.  **Jones Does Not Allege Mere "Opinions."**

Every allegation in AC ¶19 admits of empirical verification through public records—these are facts, not opinions.  The fraud is defendants' failure to disclose these material facts during hiring. Under California law, fraud includes "[t]he suppression of a fact, by one who is bound to disclose it." Cal. Civ. Code § 1710(3); *see also Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638.

Karafin and Bevensee had exclusive knowledge of (1) their Lytro employment dates and patent filing activities; (2) the overlap between LFL and Lytro patent applications; (3) what prior art they disclosed (or omitted) to the USPTO; and (4) Jones could not have known these facts without defendants' disclosure.

Civil Code §1710. A deceit, within the meaning of the last section, is either:

...

The suppression of a fact, by one who is bound to disclose it, or who gives

information of other facts which are likely to mislead for want of communication of

that fact….

Karafin and Bevensee failed to disclose material facts that they knew and Jones could not.

### 4.  <u>Patent Invalidity Flows from Facts as a Matter of Law</u>.

Jones does not offer a subjective "opinion" that the patents are invalid. Jones alleges facts that establish invalidity under black-letter patent law.  Patent applicants have an affirmative regulatory duty under 37 C.F.R. § 1.56(a) to "disclose to the Office all information known to that individual to be material to patentability". FAC ¶19(d) alleges Karafin and Bevensee "omitted relevant prior art of their Lytro patent filing activities" from USPTO disclosures. Under the Federal Circuit's en banc decision in *Therasense, Inc. v. Becton, Dickinson & Co*.(2011) 649 F.3d 1276, 1291-1292, deliberately omitting but-for material prior art with intent to deceive renders a patent unenforceable. The legal consequence of the alleged facts is invalidity—not as Jones' opinion, but as operation of law.

### 5.  <u>The USPTO Was Deceived, Not Consulted</u>.

Jones does not claim the USPTO has "designated" the patents invalid or rendered any opinion. Jones alleges the opposite: that the USPTO was not provided material information (FAC ¶19(d)). The patents may be technically "issued," but they are unenforceable as a matter of law because they were obtained through inequitable conduct—fraud on the Patent Office.  "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section." 37 CFR § 1.56 - Duty to disclose information material to patentability.

Defendants argue: "Nor does Jones plead any facts establishing justifiable reliance and causation tied to any non-privileged misrepresentation. As *Lantz* holds, reliance cannot be justifiable where the alleged truth was disclosed or publicly available, defeating the fraud claim as a matter of law. *Lantz Ret. Invs., LLC v. Glover*, No. 19-379, 2021 WL 6118182, at *8 (E.D. Cal. Dec. 27, 2021). Here, Jones's claims are non-actionable because they are based on information that was publicly verifiable before his reliance The fraud claim lacks even minimal merit." (Motion to Strike at 8)

However, *Lantz* is inapplicable to confidential employment relationships. Defendants' argument is circular: Jones should have discovered the fraud by independently discovering the fraud. Reliance was reasonable under *OCM Principal* and *Bagdasarian*. The public information bar applies only in arm's-length transactions where plaintiff has equal access to information and duty to investigate. It does not apply in confidential employment relationships where defendant has superior knowledge and fiduciary duties. *OCM Principal Opportunities Fund v. CIBC World Markets Corp.* (2007) 157 Cal. App. 4th 835, 864 (reliance justified unless plaintiff aware that representations were suspect). Under *Bagdasarian v. Gragnon*, (1948) 31 Cal.2d 744, 748-749, reliance is justified when defendant has superior knowledge, plaintiff lacks competence to judge without expert assistance, or falsity not apparent from inspection.

To verify LFL's claims during hiring, Jones would need to:

1. Identify hundreds of LFL patents (time-intensive, requires patent search expertise);

2. Discover Lytro patents exist (not publicly associated with LFL);

3. Review all LFL and Lytro patents (requires technical and legal expertise);

4. Conduct prior art analysis (specialized patent expertise);

5. Assess validity implications (requires patent bar admission);

6. Hire patent attorney (prohibitively expensive for job applicant);

This is beyond reasonable expectation. *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239-1240 (no duty to investigate absent red flags). Ensuring patent portfolio soundness is responsibility of LFL executives via fiduciary duty, not job applicant.

Further, LFL's foundational patents (FAC ¶¶19(a)-(e)) disclose technical concepts for those specific patents. However, public patents reveal nothing about (1) LFL's IP attribution practices—how

LFL determines inventorship for employee contributions; (2) LFL's intent to misappropriate future employee contributions; (3) Defendants' practice of withholding Patent Award Policy compensation Material omissions during hiring. The public information bar applies only when the specific "truth" concealed was available in public sources. Here, the concealed truth was defendants' intent and practices regarding employee IP rights—information that cannot be gleaned from reading public patents about different technology. *Seeger v. Odell* (1941) 18 Cal.2d 409, 414-415 (reliance justified when concealed facts not apparent).

     *Lantz* is inapplicable to confidential employment relationship. Under *OCM Principal* and *Bagdasarian*, reliance was justified when defendants had superior knowledge,

### 6.  <u>Jones Can Show Probability of Prevailing on Penal Code Claim</u>.

     Defendants mischaracterize Jones' claim. Jones does not claim "inventorship status" as property. As detailed above, Jones claims three independent forms of property were stolen: (1) source code and trade secrets, (2) Patent Award Policy compensation ($5,000 plus 2,000 stock options), and (3) work product ownership rights.  Each is independently sufficient to support a § 496 claim.

     Defendants' own case supports Jones' position.  Defendants cite *Silvaco* for the proposition that "information is not property unless some law makes it so." But *Silvaco* actually held that source code and trade secrets are property under California law. 184 Cal. App. 4th at 236. Defendants cite the setup, not the holding.

     LFL's Patent Award Policy is LFL's own admission that inventorship confers valuable, compensable property rights worth $2,500 per patent plus stock options.

     Defendants cite P*eople v. Kozlowski* (2002) 96 Cal. App. 4th 853.for the proposition that non-exclusive property cannot be stolen. But Jones seeks source code (exclusive tangible property) and damages, not joint inventorship rights. *Kozlowski* is inapplicable.   Defendants cite *Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.* (2000) 204 F.3d 1368, 1380 for the proposition that unapplied-for patents are not property. That case involved pre-invention speculation, not completed inventions embodied in source code and protected by trade secret law. Jones' work product existed as tangible source code from 2019-2023, before any patent filing. This is property under *Silvaco*.

     As shown above, Jones identifies three independent forms of property, each sufficient to support

a § 496 claim. Defendants' cited cases either support Jones (*Silvaco*) or are distinguishable (*Kozlowski*, *Semiconductor Energy*).

Defendants argue "Jones cannot establish that Karafin and Bevensee 'received, concealed, or withheld' his alleged 'right to inventorship.' Karafin and Bevensee were named as inventors based on their own contributions and did not acquire or receive inventorship rights from Jones. Because inventorship can be joint, their naming does not exclude Jones's ability to seek to be added as a joint inventor. See *Ethicon, Inc. v. U.S. Surgical Corp.* (Fed. Cir. 1998) 135 F.3d 1456, 1465. Furthermore, there was no concealment, as the patent applications are publicly available." (Motion to Strike at 8) But, Defendants conflate "inventorship status" with "stolen property." Jones alleges Defendants received Jones' source code during employment, concealed patent filing activities through systematic obstruction, and withheld Patent Award Policy compensation.  Each element is independently established.

Penal Code § 496 requires defendant "received, concealed, or withheld" stolen property. Any one of these verbs suffices. *People v. Allen* (1978) 21 Cal. 3d 846, 851-52.  Defendants received Jones' source code, trade secrets, and work product during employment. Their own termination letter proves possession—demanding Jones return "all work product, source code, programs, tools, notes" and asserting these as "Company Property" (FAC ¶ 27). But that property claim arose from fraudulent inducement; the property was Jones'.  Further, Defendants engaged in a two-year obstruction pattern culminating in ABC filing two weeks after Jones' Section 220 demand. *People v. Anderson* (1989) 210 Cal. App. 3d 414, 421 (systematic obstruction proves concealment).  Finally, LFL's Patent Award Policy promises $5,000 + 2,000 stock options for two patents. Defendants paid zero. This is "withholding" under § 496.

## 7.   The Obstruction Timeline Proves Both Knowledge And Intent.

Each obstruction event is consciousness of guilt evidence—proving defendants knew they stole Jones' property and intended to permanently deprive him of it. Wrongful intent under § 496 means intent to permanently deprive owner of property. *People v. Allen* (1978) 21 Cal. 3d 846, 851-52.  Intent may be proven through consciousness of guilt or conduct evidencing knowledge of wrongdoing. See Judicial Council Criminal Jury Inst. No. 371: "If the defendant tried to hide evidence or discourage someone

from testifying against (him/her), that conduct may show that (he/she) was aware of (his/her) guilt."

### 8. Personal Acts Cannot Be Delegated.

Defendants argue that LFL is the applicant, shielding the individual Defendants from liability. This argument fails because inventor declarations are personal acts:

35 U.S.C. § 115(b) requires **each inventor** to personally execute oath—cannot delegate to corporation.

37 C.F.R. § 1.56 imposes **personal** duty of candor on each individual.

Karafin and Bevensee personally signed declarations knowing Jones contributed to the patents. "[O]officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.* (Fed. Cir. 1986) 806 F.2d 1565, 1578-1579.

Defendants cite *CellLink Corp. v. Manaflex LLC, 2025 WL 1069893, at \*2* for proposition that Jones can correct inventorship under 35 U.S.C. § 256, precluding permanent deprivation. This fails because § 256 corrects inventorship on an otherwise *valid* patent. These patents are *invalid* on multiple grounds unrelated to inventorship.  Moreover, Jones cannot truthfully sign an inventor's oath for patents built on Lytro concepts—doing so would itself be a crime under 18 U.S.C. § 1001. Even if Jones were sole inventor, the patents would still be invalid due to Lytro prior art.  Finally, § 256 addresses only inventorship—it would not restore Jones' stolen trade secrets, source code, or work product, which are the actual property at issue.

### C. Jones Is Entitled to Mandatory Fee Award Under § 425.16(c).

It is Jones, not Defendants, who is entitled to mandatory fees under California Code of Civil Procedure § 425.16(c)(1). Defendants' presumptuous request for fee shifting is remarkable given their motion is objectively frivolous—doomed at the threshold on two independent grounds that any reasonable attorney would recognize.

Under *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199, when an anti-SLAPP movant fails to meet the threshold burden at prong one, the motion is frivolous and sanctions are mandatory:

"Nancy Shaw's anti-SLAPP motion was frivolous and therefore must incur sanctions. As explained, Nancy Shaw failed to meet her threshold burden of establishing the challenged causes of action arose from protected activity. The conduct by Nancy Shaw underlying Kenton's causes of action was her drafting of the termination agreement to enable George to terminate the EEM Trust prematurely. That conduct by Nancy Shaw was not an act in furtherance of the right of petition or free speech in connection with a public issue, and therefore an anti-SLAPP motion did not lie."

The court held unequivocally: **"Thus, the imposition of sanctions for a frivolous anti-SLAPP motion is mandatory."** Moore, 116 Cal.App.4th at 199.

### 1. <u>Objective Standard for Frivolousness</u>.

Whether a motion is frivolous is governed by an objective standard: "any reasonable attorney would agree it is totally and completely without merit." *Marriage of Sahafzadeh-Tasch & Tasch*, (2009) 39 Cal. App.124, 137 ("Whether an action is frivolous is governed by an objective standard: any reasonable attorney would agree it is totally and completely without merit."); Cal. Code Civ. Proc. § 128.5.

Defendants' motion fails this standard on two independent threshold grounds—either of which alone renders the motion frivolous. Together, they demonstrate bad faith filing. As demonstrated above, Jones' claims arise from 2019 fraudulent inducement during hiring and systematic theft from 2019-2023—four years before defendants filed any patent application. Under *Park v. Board of Trustees* (2017) 2 Cal. 5th 1057, 1063, patent filings are "evidence of liability," not "the wrong complained of." No reasonable attorney could conclude claims "arise from" 2023 patents when the fraud occurred in 2019.

Even if defendants could somehow establish prong one (they cannot), their motion would still fail at the threshold because criminal conduct strips all anti-SLAPP protection. *Flatley v. Mauro* (2006) 39 Cal. 4th 299, 320. Defendants filed knowingly false inventor declarations under penalty of perjury, violating 18 U.S.C. § 1001 and 35 U.S.C. § 115(i). The *Flatley* exception is not a Step Two defense—it is a threshold bar that prevents the motion from lying at all. No reasonable

attorney could file this motion without addressing Flatley.

Any competent attorney reviewing the facts would recognize that this motion fails at the threshold twice over. Filing an anti-SLAPP motion when (a) claims arise from pre-filing fraud and (b) the underlying conduct is criminal demonstrates either gross incompetence or deliberate bad faith. Given defendants' sophisticated counsel, the latter is more plausible—this motion was filed to obstruct discovery, not to vindicate First Amendment rights.

### 2.  Mandatory Fee Award Under § 425.16(c)(1).

Section 425.16(c)(1) uses the mandatory term "shall" for fee awards to a prevailing plaintiff when the motion is frivolous. Because defendants' motion is objectively frivolous under the *Moore* standard—failing at two independent thresholds and misrepresenting case authority—Jones is entitled to mandatory fee recovery when this meritless motion is denied.  "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." California Code of Civil Procedure § 425.16.

Defendants' fee request should be denied and Jones' fee request should be granted under § 425.16(c)(1). The motion is objectively frivolous under *Moore v. Shaw*—failing at two independent thresholds (prong one temporal impossibility and Flatley criminal conduct exception). Mandatory sanctions apply because criminal conduct strips all anti-SLAPP protection and the motion could not succeed on the merits.

### IV.    CONCLUSION

Defendants' special motion to strike should be denied because the motion fails at two independent thresholds before reaching the merits—and because defendants face mandatory fee sanctions under *Moore v. Shaw* for filing an objectively frivolous motion. The Court is respectfully requested to:

1. **DENY** defendants' special motion to strike in its entirety.

2. **AWARD Jones mandatory fees and costs** under *Moore v. Shaw* and § 425.16(c)(1) for defending against this objectively frivolous motion.

3. **PERMIT discovery to proceed** under *Metabolife International v. Wornick* (2001) 264 F.3d 832, 845-846, 850 (discovery stay inapplicable in federal court).

4. **DENY defendants' fee request** as the motion fails at two independent thresholds and involves criminal conduct barred under *Flatley*.

Dated: December 2, 2025

HENRY | LACEY PC

By /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff