Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-5118@cases.warrenlex.com

*Counsel for Defendants Jon Karafin and Brendan Bevensee*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALAN JONES, | Case No. 3:25-cv-05118-MMC |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | **DEFENDANTS JON KARAFIN AND BRENDAN BEVENSEES' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR DAMAGES** |
| LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10, | |
| Defendants. | Date:        February 13, 2026 Time:        9 a.m. Courtroom:   7 |

# <u>TABLE OF CONTENTS</u>

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   The Court Should Follow the Clear Majority and Dismiss Jones's Labor Code Claims . . . . . . . . 1

    A.   Jones Relies on a Small Minority of Unpersuasive Cases . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Plaintiff Stretches the Reach of Irrelevant Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.   Plaintiff's Legislative History Argument Has Been Consistently Rejected . . . . . . . . . . . 2

II.  Plaintiff's Opposition Fails to Save Count Four Under California Penal Code Section 496 . . . . . 3

    A.   Count Four Is Preempted as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Even Under Plaintiff's New Theories, He Cannot Establish the Requisite Ownership . . . 3

    C.   Jones Lacks An Exclusive Right to Possess the Property. . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.   Jones's Attempts to Amend the Complaint Fail to Demonstrate Intent. . . . . . . . . . . . . . .5

III. Plaintiff's Opposition Fails to Save Count Three for Fraud and Deceit . . . . . . . . . . . . . . . . . . . 5

    A.   The Statements Concerning Patent Filings Are True . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   Jones Concedes Statements in the FAC are Non-Actionable Puffery/Predictions . . . . . . 7

    C.   The March 2023 Text Is Not a Fraudulent Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    D.   Jones Cannot Show Reasonable Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.  Plaintiff's Opposition Fails to Save Count Six for Breach of Fiduciary Duty . . . . . . . . . . . . . . . 9

V.   Plaintiff's Opposition Fails to Save Count Five for Civil RICO . . . . . . . . . . . . . . . . . . . . . . . . .10

    A.   Jones Cannot Establish The Required Predicate Acts. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.   Jones's Theory of Fraud on the Patent Office Fails as a Matter of Law . . . . . . . . 11

        2.   Jones's Unpleaded "Trade Secret" Theory Fails as a Matter of Law . . . . . . . . . . 12

    B.   Jones Does Not Have a Cognizable RICO Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   No Pattern of Racketeering Activity Exists. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.  Further Amendment Should be Denied as Futile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

*Cases*                                                                          *Page*

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Arnold v. Society for Savings Bancorp, Inc.*,
    650 A.2d 1270 (Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Atempa v. Pedrazzani*,
    27 Cal. App. 5th 809 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Barnes v. Campbell Soup Co.*,
    No. 12-5185, 2013 WL 5530017 (N.D. Cal. July 25, 2013). . . . . . . . . . . . . . . . . . . . . . . 4, 12

*Bales v. Cnty. of El Dorado*,
    No. 18-1714, 2018 WL 4558235 (E.D. Cal. Sept. 20, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bioness Inc. v. Aretech, LLC*,
    2023 WL 6186926 (E.D. Va. Jan. 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bridge v. Phoenix Bond*,
    553 U.S. 639 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

*CBS Corp. S'holder Class Action & Derivative Litig.*,
    No. 20-111, 2021 WL 268779 (Del. Ch. Jan. 27, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cent. Laborers Pension Fund v. News Corp.*,
    45 A.3d 139 (Del. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cnty. of Marin v. Deloitte Consulting LLP*,
    836 F. Supp. 2d 1030 (N.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cordell v. PICC Lines Plus LLC*,
    No. 16-1814, 2016 WL 4702654 (N.D. Cal. Sept. 8, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*CTC Glob. Corp. v. Huang*,
    No. 17-2202, 2018 WL 4849715 (C.D. Cal. Mar. 19, 2018) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dawson v. Caregard Warranty Serv., Inc.*,
    No. 23-1139, 2024 WL 661198 (C.D. Cal. Jan. 12, 2024) . . . . . . . . . . . . . . . . . . . . . . . . 1-3

*De La Torre v. Progress Rail Servs. Corp.*,
    No. 15-4526, 2015 WL 4607730 (C.D. Cal. July 31, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 2

DEFENDANTS KARAFIN AND BEVENSEES' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

(*continued*)

Page

*Ellis v. J.P. Morgan Chase & Co.*,
No. 12-3897, 2016 WL 5815733 (N.D. Cal. Oct. 5, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Forrett v. Gourmet Nut, Inc.*,
634 F. Supp. 3d 761 (N.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9

*Garrabrants v. Erhart*,
98 Cal. App. 5th 486 (Cal. Ct. App. 2023), *review denied* (Apr. 10, 2024) . . . . . . . . . . . . . . . . . 6

*Gen. Elec. Co. v. Wilkins*,
No. 10-674, 2011 WL 1740420 (E.D. Cal. May 5, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Grinnett v. Brown*,
75 F.3d 506 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Huster v. j2 Cloud Servs., Inc.*,
No. 16-1639, 2017 WL 1160979 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jackson v. Dollar Tree Distrib., Inc.*,
No. 18-2302, 2018 WL 2355983 (C.D. Cal. May 23, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kelly v. Cnty. of Orange*,
No. 24-933, 2024 WL 5185339 (C.D. Cal. Nov. 25, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Lewis v. Wells Fargo Bank, N.A.*,
No. 16-7377, 2016 WL 7107760 (C.D. Cal., Dec. 5, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Linder v. Golden Gate Bridge, Highway & Transp. Dist.*,
No. 14-3861, 2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Malone v. Brincat*,
722 A.2d 5 (Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mewawalla v. Middleman*,
601 F. Supp. 3d 574 (N.D. Cal. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Miele v. Franklin Res., Inc.*,
No. 15-199, 2015 WL 4934071 (N.D. Cal. Aug. 18, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

(*continued*)

*Page*

*Miele v. Franklin Res., Inc.*,
No. 15-199, 2015 WL 4934071 (N.D. Cal. Aug. 18, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Miller v. Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Newton v. Bank of Am.*,
No. 16-9581, 2018 WL 6219946 (C.D. Cal. Jan. 18, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Noe v. Superior Court*,
237 Cal. App. 4th 316 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Palantir Techs., Inc. v. Abramowitz*,
No. 19-6879, 2020 WL 9553151 (N.D. Cal. July 13, 2020) . . . . . . . . . . . . . . . . . . . . . . 4, 11, 14

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
769 F. Supp. 3d 1067 (N.D. Cal. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

*Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*,
204 F.3d 1368 (Fed. Cir. 2000), *as amended* (Apr. 5, 2000) . . . . . . . . . . . . . . . . . . . . . 4, 6, 11, 13

*Serrato v. Efremsky*,
No. 95-20221, 1995 WL 415152 (N.D. Cal. June 30, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*,
144 F. Supp. 3d 1088 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (Cal. Ct. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Stone ex rel. AmSouth Bancorp. v. Ritter*,
911 A.2d 362 (Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tecnogruas v. Int'l Trans. Serv., LLC*,
No. 24-5984, 2025 WL 3029386 (C.D. Cal. May 13, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tianhai Lace Co. Ltd v. Zoetop Bus. Co. Ltd.*,
No. 22-6106, 2023 WL 3549698 (C.D. Cal. Feb. 24, 2023) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Turner v. City & City of San Francisco*,
892 F. Supp. 2d 1188 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## <u>TABLE OF AUTHORITIES</u>
(*continued*)

*Statutes*                                                                              *Page*

18 U.S.C. § 1831 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 1832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 1836 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 1839 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Penal Code § 484 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Penal Code § 496 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Del. Code Ann. § 220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Labor Code § 1102.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Other Authorities*                                                                     *Page*

*Light Field Lab v. Jones*,
  No. 23-5344, Docket No. 1 (N.D. Cal. Oct. 19, 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

DEFENDANTS KARAFIN AND BEVENSEES' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

**INTRODUCTION**

Plaintiff Alan Jones's opposition confirms that each of his five causes of action against Karafin and Bevensee fails as a matter of law and should be dismissed with prejudice.

First, Count I under Labor Code § 1102.5 cannot proceed against the individual defendants because the overwhelming post-amendment federal authority rejects individual liability, and there is no contrary California appellate decision.

Second, the Penal Code claim fails because it is preempted, and Jones cannot possibly allege "stolen property" or the required "intent" and "receiving" or "withholding" elements as to Karafin and Bevensee.

Third, the fraud claim rests on non-actionable opinions and forward-looking statements, omits a viable misrepresentation about patent ownership or option value, and cannot satisfy the reliance element.

Fourth, the fiduciary-duty claim fails under Delaware law because the rights Jones says were concealed from him were not; they were disclosed in writing and waived by Jones.

Fifth, the civil RICO claim is foreclosed by binding and persuasive authority holding that alleged misstatements to the PTO, disputes over inventorship, and a single-victim employment and intellectual property dispute do not supply cognizable predicates, "business or property" injury, or a pattern of racketeering activity.

Because these defects are legal, not factual, and Plaintiff's opposition only doubles down on theories the case law rejects, further amendment is futile.  Therefore, the claims against Karafin and Bevensee should be dismissed without leave to amend.

**LEGAL ARGUMENT**

**I.    The Court Should Follow the Clear Majority and Dismiss Jones's Labor Code Claims**

    **A.    Jones Relies on a Small Minority of Unpersuasive Cases**

Jones not only fails to contend with the authorities cited in Karafin and Bevensee's Motion to Dismiss, but his cited cases are neither controlling nor consistent with the dominant and more recent authority cited in the Motion to Dismiss.  It is well established that "in the context of Rule 12(b)(6) challenges," the "overwhelming majority of district courts addressing the merits have found that even after the amendment, § 1102.5 does not impose individual liability," warranting dismissal.  *Dawson v.*

*Caregard Warranty Serv., Inc.*, No. 23-1139, 2024 WL 661198, at *5 (C.D. Cal. Jan. 12, 2024); *see also Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 608 (N.D. Cal. 2022) (collecting cases); Mot. at 2:20-16.[1]  Plaintiff relies heavily on *Cordell v. PICC Lines Plus LLC*, No. 16-1814, 2016 WL 4702654, at *6 (N.D. Cal. Sept. 8, 2016), to argue that section 1102.5 expands individual liability under the "plain reading of the statutory language."  Opp. at 3:28.  The cursory holding in *Cordell* offers no guidance on the issue presented here.  The *Cordell* holding was recently dismissed as not "particularly helpful to [the] analysis," because like Jones's opposition, the opinion does "not mention, let alone distinguish, contrary authority."  *Dawson*, 2024 WL 661198, at *2 n.1.

### B.    Plaintiff Stretches the Reach of Irrelevant Statutes

Instead of confronting the majority position presented in the motion, Jones cites cases that interpret entirely separate sections of the Labor Code.  *See* Opp. at 5:14-6:20 (citing *Noe v. Superior Court*, 237 Cal. App. 4th 316 (2015); *Atempa v. Pedrazzani*, 27 Cal. App. 5th 809 (2018)).  These cases address statutes that are separate from section 1102.5 or use language that differs from the limited scope of section 1102.5, and cannot be read to override the numerous federal cases that specifically consider the plain meaning of section 1102.5 and the legislative history of the 2013 amendment.  *See supra* § I.A. Jones argues in passing that because Labor Code section 1103 imposes criminal "personal liability for Labor Code violations" on an "employer or any other person," an individual may be liable for damages under section 1102.5.  Opp. at 6 n.4.  This is not correct for the foregoing reasons, and the standards of proof are distinct.  *See Newton v. Bank of Am.*, No. 16-9581, 2018 WL 6219946, at *5 (C.D. Cal. Jan. 18, 2018).

---

[1] The bulk of Jones's cited authorities on this issue are in the context of motions to remand.  *See* Opp. at 4 n.2 (citing *Jackson v. Dollar Tree Distrib., Inc.*, No. 18-2302, 2018 WL 2355983, at *6 (C.D. Cal. May 23, 2018); *Lewis v. Wells Fargo Bank, N.A.*, No. 16-7377, 2016 WL 7107760, at *2 (C.D. Cal., Dec. 5, 2016); *De La Torre v. Progress Rail Servs. Corp.*, No. 15-4526, 2015 WL 4607730, at *3 (C.D. Cal. July 31, 2015)).  These opinions do not apply to the present context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Dawson*, 2024 WL 661198, at *5 (explaining the two separate bodies of caselaw).  Jones also cites *Turner v. City & City of San Francisco*, which was issued before the amendment, and where the Court dismissed in large part because the defendants made "no specific argument related to these particular statutory claims."  892 F. Supp. 2d 1188, 1205 (N.D. Cal. 2012).

### C.    Plaintiff's Legislative History Argument Has Been Consistently Rejected

Jones next argues that Labor Code section 1102.5(b) should be given a "broad interpretation," citing general principles of statutory interpretation. Opp. at 3:26-6:20. California district courts consistently conclude that based on "existing precedent, and legislative history," state courts will find that "section 1102.5 does not impose individual liability" in light of the amendment. *Bales*, 2018 WL 4558235, at *3; *see also e.g.*, *Dawson*, 2024 WL 661198, at *5-6; Mot. at 2:20-3:14; *CTC Glob. Corp. v. Huang*, No. 17-2202, 2018 WL 4849715, at *4 (C.D. Cal. Mar. 19, 2018) (same).[2] This Court should follow the majority rule and dismiss Jones's first cause of action as barred against Karafin and Bevensee as a matter of law.

The core issue is purely legal: whether the statute permits individual liability. Thus, this Court should adopt the clear majority position and dismiss this cause of action without leave to amend. *See Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015) ("granting leave to amend would be futile because this claim is barred as a matter of law.").

### II.    Plaintiff's Opposition Fails to Save Count Four Under California Penal Code Section 496

### A.    Count Four Is Preempted as a Matter of Law

Jones handwaves Karafin and Bevensee's cited authorities as "distinguishable because each determined that a remedy for the state law claim could not be provided without resort to federal patent law regarding inventorship or ownership of the patent itself." Opp. at 8:11-13. Not only are these cases responsive to the claims as alleged in the First Amended Complaint ("FAC"), which specifically seek transfer of intellectual property, but as a threshold matter of law, Jones's opposition does not—and cannot—surmount the fact that this claim is preempted, whether the issue is of inventorship or enforceability, as supported by Jones's arguments in opposition, where he "asserts the patents are not validly held by LFL." Opp. at 8:16; *see* Mot. at 7:24-9:11.

_____

[2] "Neither the California Supreme Court nor any intermediate appellate court appears to have considered whether the 2013 amendment expands liability for violations of § 1102.5 to permit claims for money damages against individual non-employers," *Dawson*, 2024 WL 661198, at *5, and defendants' counsel has not located any such case since *Dawson*. In this posture, "[w]here the California Supreme Court has not yet ruled on an issue, the Court must predict how the state court would decide the issue, using existing decisions and statutes as guidance." *Bales v. Cnty. of El Dorado*, No. 18-1714, 2018 WL 4558235, at *3 (E.D. Cal. Sept. 20, 2018). The majority rule—that no claim lies against a non-employer—is the best predictor of how the state court would decide this issue.

**B.    Even Under Plaintiff's New Theories, He Cannot Establish the Requisite Ownership**

In his opposition, Jones pivots and now claims that "Karafin and Bevensee used false pretenses to steal Jones' source code and LFL retained his source code for its own purposes," (Opp. at 6:23-7:1), but the FAC squarely pleads a "stolen inventorship" theory:  Jones pleads that the property is "his right to inventorship status for two United States patents."  FAC ¶ 70.  Jones further pleaded that Karafin and Bevensee's "retained inventorship credit on the patents" constitutes the alleged receipt or withholding to support his claim under this theory.  *Id.* ¶¶ 70, 72-76.  The Court must evaluate Count Four and Jones's theory of relief as pled.[3]  Under that theory, the Motion establishes there is no cognizable "property" under California theft law, no exclusive possessory right, and no plausible intent to support a claim of theft.  Mot. at 4:7-15 (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (Cal. Ct. App. 2010); *Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*, 204 F.3d 1368 (Fed. Cir. 2000), *as amended* (Apr. 5, 2000)); *see also Palantir Techs., Inc. v. Abramowitz*, No. 19-6879, 2020 WL 9553151, at *12 (N.D. Cal. July 13, 2020).

Even if the Court ignores Jones's patent-specific allegations and considers his source code theory, Jones cannot sustain a claim for the same property and exclusivity problems addressed in the Motion.[4]  Even under this theory, Jones acknowledges that he never owned the source code he now argues that he seeks to have returned to him:  Jones joined LFL as an engineer involved "in the development of LFL's SolidLight holographic display platform" (FAC ¶ 21); provided "intellectual information" in that role (*id.* ¶ 63); and signed a Confidential Information and Inventions Assignment Agreement assigning his inventions and work product to LFL, which he now seeks to rescind.  *Id.* ¶¶ 11, 18, 21, 68.  Under those allegations, and as affirmed by Jones's opposition, which asserts that the "intellectual property" at issue is Jones's "work product (his source code)" (Opp. at 1:28-2:1), any code he wrote in the scope of

---

[3] "Plaintiffs cannot unilaterally use their Opposition as an opportunity to amend and raise new arguments to cure deficiencies in their Complaint."  *Barnes v. Campbell Soup Co.*, No. 12-5185, 2013 WL 5530017, at *8 (N.D. Cal. July 25, 2013); *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (emphasis in original).

[4] Jones's opposition fails to respond to the Motion's defense that Jones's action under California Penal Code § 484 should be dismissed because this section does not provide for private causes of action (Mot. 3:18-25), waiving the claim.  *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 767-68 (N.D. Cal. 2022) (failure to provide a defense for a claim in opposition, waives the claim).

employment was, by contract and by default work-for-hire principles, LFL's property—not his—at the time of the alleged "theft." *Gen. Elec. Co. v. Wilkins*, No. 10-674, 2011 WL 1740420, at *10 (E.D. Cal. May 5, 2011) ("work product created by an employee belongs to the employer where the employee was hired to create such work product."). Neither Jones's patent nor source code theories can satisfy the ownership element of a claim under section 496 as a matter of law.

### C. Jones Lacks An Exclusive Right to Possess the Property

California theft law requires an "exclusive right to possess and use" the property, and joint inventorship fails that test. Mot. at 5:3-4; *see id.* at 5:1-11. The same is true of code written as an employee under an assignment agreement. *See supra.* Jones alleges that LFL owned and used the code in its business; he does not, and cannot, allege that he retained an exclusive right to possess or use it. At most, his rescission theory would, if successful, create a disputed equitable interest after the fact, which is insufficient to establish the requisite exclusivity. *See* Mot. at 5:3-4.

### D. Jones's Attempts to Amend the Complaint Fail to Demonstrate Intent

Jones now argues that Karafin and Bevensee "used false pretenses to take" the code, and then LFL "received" it. Opp. at 7:3-4. But section 496 liability here is asserted against the individuals; the FAC still does not plausibly allege that they themselves bought, received, concealed, or withheld "stolen property" from Jones, as opposed to acting as corporate officers of LFL in connection with work that, by his own pleading, was assigned to the company. *See* Mot. at 7:1-24. The FAC only pleads conclusory facts that fail to show the specific, wrongful intent to permanently deprive him of property. *See* Mot. at 7:2-5 (citing *Garrabrants v. Erhart*, 98 Cal. App. 5th 486, 504 (Cal. Ct. App. 2023), *review denied* (Apr. 10, 2024)). Instead, he simply re-labels a fraud theory as "theft." Jones's proposed amendment would not change those structural defects.[5] In short, the opposition confirms that Count Four is preempted and defective as a matter of law. It should be dismissed with prejudice.

## III. Plaintiff's Opposition Fails to Save Count Three for Fraud and Deceit

Jones's opposition asserts that his fraud allegations are "specific enough." Opp. at 17-18. But the issue is not merely a lack of specificity; the statements Jones relies on are not fraud.

---

[5] Jones effectively concedes that his claims as pleaded in the FAC are insufficient. *See, e.g.*, Opp. at 7:15 ("Jones will seek leave to amend his complaint" to "clarify" various aspects of this claim).

### A.      The Statements Concerning Patent Filings Are True

The challenged patent-related statements are true based on judicially noticeable facts and documents. *See* Mot. at 10-11.[6] Jones's reliance on the "partial disclosure" law to support his fraud claim is misplaced. Opp. at 8-15. A speaker who accurately states that it holds patents is not required to also volunteer every potential invalidity or ownership challenge that might someday be asserted, particularly where those are legal conclusions, not concrete present facts. *Ellis v. J.P. Morgan Chase & Co.*, No. 12-3897, 2016 WL 5815733, at *6 (N.D. Cal. Oct. 5, 2016) (fraud generally cannot be predicated on misrepresentations of law) (citing *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004)). Factual assumptions underlying legal opinions about patent ownership and validity do not transform the claim from one of law to fact. *Id.*[7] Jones's cases do not hold otherwise. *Marketing West* and *Rogers* involved concrete, transaction-specific half-truths about existing contractual arrangements and financial terms that directly misstated present facts. *See* Opp. at 11:22-28. Here, by contrast, the challenged statements are either true descriptions of LFL's existing patents or generalized optimism about future performance, not incomplete descriptions of a specific, contemporaneous contract or deal. These cases do not create a duty to "say more" about every conceivable patent-law or capitalization risk.

Similarly defective are Jones's allegations that defendants committed fraud by not disclosing patents that "belonged to Lytro" and were developed there, claiming this nondisclosure is actionable even if patent-filing statements were true. FAC ¶¶ 40, 55; Opp. at 10-11, 20-23. The "facts" Jones claims were concealed are, at most, disputed legal conclusions about ownership and validity, not concrete, present facts that defendants were obliged to volunteer. Whether inventions created at Lytro were owned by Lytro or by the inventors, and whether later prosecution before the USPTO involved "fraud," are questions of federal patent law resolved by reference to employment and assignment agreements, inventorship statutes, and inequitable-conduct doctrine. *See Semiconductor Energy*, 204

---

[6] Jones claims these statements were made during his August 2019 interview at LFL. FAC ¶¶ 12-13. Since Jones was neither a shareholder nor in a fiduciary relationship at that time, no duty of confidentiality existed that would exempt him from the rule.

[7] The patents are entitled to a presumption of validity and ownership that have precedence over Jones's bare allegations of invalidity and improper ownership. *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1090 (N.D. Cal. 2025) ("The presumption of patent validity does not allow a court to take as true bare allegations that this issued patent is invalid").

DEFENDANTS KARAFIN AND BEVENSEES' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

F.3d at 1374-80.  Even accepting Jones's narrative, his disagreement about who should have owned or been named on earlier Lytro-related patents is fundamentally a dispute over legal rights.  A party's undisclosed view of the law—including its belief that it validly owns and can enforce patents—is not an actionable "concealed fact" for fraud purposes.  *Tecnogruas v. Int'l Trans. Serv., LLC*, No. 24-5984, 2025 WL 3029386, at *8 (C.D. Cal. May 13, 2025) ("it is 'well settled' that fraud generally 'cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law'") (quoting *Miller*, 358 F.3d at 621).

Jones's fraud claim is nothing more than unsubstantiated, conclusory, and unwarranted opinion that Jones disagrees with the U.S. Patent Office's decision to grant patents to LFL.  As the Ninth Circuit has directed, this Court should credit the USPTO documents over plaintiff's narrative.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Jones's attempt to convert accurate statements about issued patents into an open-ended duty to disclose every arguable defect in title or validity exceeds the narrow omission doctrine and collapses the line between fraud and ordinary business risk.

### B.    Jones Concedes Statements in the FAC are Non-Actionable Puffery/Predictions

Jones's fraud claim relies on statements like "hundreds of patents," a "large theme park customer," and an optimistic 2020 deployment timeline.  FAC ¶¶ 12-13, 15.  The Individual Defendants' opening brief established that these statements are non-actionable puffery and forward-looking business predictions, not concrete misstatements of present fact.  The statements therefore cannot constitute fraud as a matter of law.  Jones offers no contrary argument or authority in opposition, ceding the point.  *Forrett*, 634 F. Supp. 3d at 767-68; *Kelly v. Cnty. of Orange*, No. 24-933, 2024 WL 5185339, at *7 (C.D. Cal. Nov. 25, 2024) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Accordingly, the Court can rule that the statements in FAC paragraphs 12, 13 and 15 do not constitute fraud as a matter of law.

### C.    The March 2023 Text Is Not a Fraudulent Statement

The opposition entirely overlooks the critical flaws in classifying the March 2023 text as a fraudulent statement; the text is too vague and indefinite to be a false statement of fact.  The text makes no mention of inspection rights, an inspection demand, much less an oath.  Attempting to reframe the

text by importing Delaware "duty of candor" concepts does not satisfy California's substantive requirements for a fraud claim. At best, the statement "there are no current problems to be aware of . . . equity ownership and payroll" is an incomplete assurance regarding a specific situation concerning LFL's bank, and is not a precise, falsifiable assertion, required for fraud.

Jones's newly minted claim that Karafin committed fraud in the March 2023 text because "he did not disclose the existence of Del. C. section 220 inspection rights to Jones" is also provably false. Opp. at 13:10. Jones signed an Exercise Agreement that *explicitly disclosed his section 220 inspection rights*. *See Light Field Lab v. Jones*, No. 23-5344, Docket No. 1 (N.D. Cal. Oct. 19, 2023), Ex. A at 39, Exercise Agreement ¶ 7.[8] Therefore, Karafin's alleged failure to inform him of these rights is not a basis for fraud, as Jones was already informed and *had waived* his inspection rights via the Agreement.[9]

Even if Jones did not waive his rights, the text failed to meet the specific procedural requirements required by Delaware's Section 220. Delaware law mandates that an inspection demand be a "written demand under oath." Del. Code Ann. tit. 8, § 220. Delaware courts require "strict adherence" to these procedural requirements. *Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 145 (Del. 2012). Since Jones's text was not under oath, it cannot be considered a "direct invocation of his inspection rights," as claimed in the opposition. Opp. at 13:28. There is simply no theory that allows the March 2023 text to constitute a fraudulent statement, no matter how Jones tries to reframe the communication.

### D.    Jones Cannot Show Reasonable Reliance

Because the statements regarding LFL's patents and their chains of title were true and publicly available, Jones cannot show any falsehood induced him to leave Microsoft, join LFL, exercise options, or hold shares. At most, Jones's contention is a disagreement with the legal consequences (who should have been named as an inventor or who should own the IP), but fraud "cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." *Ellis*, 2016 WL 5815733, at *6. Moreover, he cannot plausibly allege justifiable reliance on the non-disclosure of supposed Lytro defects, as his own account shows his inducement was based on forward-looking representations and generalized

---

[8] The Court can consider this agreement as a matter of judicial notice. *See* Docket No. 38-1.
[9] Even if Jones successfully rescinded his employment agreement, it still provided him with *notice* of his Section 220 rights.

DEFENDANTS KARAFIN AND BEVENSEES' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

1    assurances, not any specific representation that the patents were immune from future legal challenge.

2    FAC ¶¶ 12-15, 21; Opp. at 8-12.

3         Jones's alleged reliance on the interview statements also fails because his opposition neither

4    addresses the motion's case law nor contests the argument that the alleged fraudulent statements were

5    mere puffery or future projections, conceding that argument. *Forrett*, 634 F. Supp. 3d at 767-68; *Kelly*,

6    2024 WL 5185339, at *7.  Nor does he dispute the controlling case law that holds when a plaintiff

7    continues in a relationship after key projections have failed to materialize, justifiable reliance is negated.

8    Mot. at 13:8-25.  Therefore, this Court should conclude that Jones did not reasonably rely on statements

9    categorized as puffery or future projections.

10        Finally, Jones's reliance theory for the March 2023 text—that it prevented him from taking

11   additional action—is contradicted by his Exercise Agreement signature, wherein he acknowledged and

12   voluntarily waived his Section 220 rights.  *See supra* § III.C.

13   **IV.    Plaintiff's Opposition Fails to Save Count Six for Breach of Fiduciary Duty**

14        The FAC alleges that Karafin breached fiduciary duties during Jones's 2019 interview.  However,

15   Defendants' Motion to Dismiss established that no such duty could have existed at that time because

16   Jones was not yet a shareholder.  *See* Mot. at 10-12.  In response, Jones failed to offer any

17   counter-argument or legal authority supporting a pre-shareholder fiduciary duty, thereby conceding this

18   point to the Defendants.  *Forrett*, 634 F. Supp. 3d at 767-68; *Kelly*, 2024 WL 5185339, at *7.  This

19   concession is further reinforced by Jones's own cited authority, which confirms that Delaware law

20   requires a breach of fiduciary duty to be based on an "actual, existing fiduciary relationship . . . *at the

21   time of the alleged breach*."  *Miele v. Franklin Res., Inc.*, No. 15-199, 2015 WL 4934071, at *16 (N.D.

22   Cal. Aug. 18, 2015) (emphasis added).  Since all parties now agree that no fiduciary duty arose at the

23   time of Jones's interview, the interview statements pleaded in support of this claim cannot, as a matter of

24   law, give rise to a claim for breach of fiduciary duty.

25        What remains of the breach of fiduciary duty claim is exceedingly narrow.  Jones alleges that

26   after he became an LFL shareholder, Karafin failed to disclose to Jones, during a March 2023 text

27   exchange, that Jones had inspection rights under Delaware law.  Opp. at 15-19.  This claim fails as a

28   matter of law for the same reason Jones's fraud claim based on the March 2023 text exchange fails:

Jones was fully aware of his inspection rights, as they were plainly disclosed and expressly waived by him in the Exercise Agreement that he signed. *See Light Field Lab v. Jones*, No. 23-5344, Docket No. 1 (N.D. Cal. Oct. 19, 2023), Ex. A at 39, Exercise Agreement ¶ 7. Karafin was not required to repeat this information to Jones, particularly given that the context was an unrelated text message concerning a discrete issue involving Silicon Valley Bank.[10] Moreover, Jones suffered no harm from Karafin's alleged non-disclosure, as Jones was legally barred from exercising any section 220 rights in any event.

Jones's claim that a brief text exchange regarding the Silicon Valley Bank situation breached a "duty of candor" further misconstrues Delaware law. The duty of candor, as discussed in *Arnold* and *Malone*, requires full disclosure primarily when directors seek stockholder action (*e.g.*, a vote or tender decision) through formal communications like proxy statements. Delaware law does not transform such a limited, informal message into a "partial disclosure" requiring LFL's officers to restate all contractual rights and remedies in each communication, especially since Jones's inspection rights and their limits were already fully disclosed in the written Exercise Agreement he signed.

Finally, Jones's fiduciary-duty claim independently fails for lack of causation and damages. Under Delaware law, a plaintiff must plead a non-speculative causal link between the alleged breach and an actual economic loss, not merely assert that "more information" might have led him to act differently. *See In re CBS Corp. S'holder Class Action & Derivative Litig.*, No. 20-111, 2021 WL 268779, at *28-29 (Del. Ch. Jan. 27, 2021) (a fiduciary-duty plaintiff must show a causal connection between the alleged breach and economic loss, and rejecting damages theories that rest on what stockholders "might have done" with additional information as too speculative). Jones identifies no plausible mechanism by which an additional reminder of § 220 rights or more commentary in a March 2023 text would have enabled him to exercise options or sell private-company restricted stock.

---

[10] The cases Jones cites support the Defendants' position, not Jones. Each involved information required for a shareholder vote (not present here), an affirmative false statement or act (not present here), or were dismissed because the company took reasonable steps to provide information, like LFL did in the Exercise Agreement. None support Jones's claim that failure to provide a full disclosure of shareholder rights in an informal text message is actionable. *See Arnold v. Society for Savings Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994); *Malone v. Brincat*, 722 A.2d 5 (Del. 1998); *Miele*, 2015 WL 4934071, at *17; *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 373 (Del. 2006). Jones's other cases are for general propositions and do not support the unique facts he pleads.

DEFENDANTS KARAFIN AND BEVENSEES' REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT

**V.    Plaintiff's Opposition Fails to Save Count Five for Civil RICO**

The RICO claim in the FAC relies exclusively on patent filings, specifically two applications where Jones alleges defendants lied to the patent office about inventorship. FAC ¶¶ 80-81. Paragraph 85 seeks to invalidate and transfer the patents and applications. The FAC does not mention Jones's "source code" or "trade secrets," theories he now relies on in his opposition. *See supra* § II.B. The Court must decide the Motion to Dismiss based on the allegations in the FAC. *Tianhai Lace Co. Ltd v. Zoetop Bus. Co. Ltd.*, No. 22-6106, 2023 WL 3549698, at *4 (C.D. Cal. Feb. 24, 2023).

**A.    Jones Cannot Establish The Required Predicate Acts**

**1.    Jones's Theory of Fraud on the Patent Office Fails as a Matter of Law**

The predicate acts pleaded for the RICO claim are "multiple fraudulent communications regarding the patent applications." FAC ¶¶ 80-81. These are allegations of inequitable-conduct type misrepresentations, consisting of electronic filings, mail, and email directed to the USPTO during patent prosecution. *Id.* ¶¶ 19, 55, 80-81, 85; *see also* Opp. at 21-22.[11] *Semiconductor Energy* holds that inequitable-conduct type misrepresentations made to the USPTO cannot, as a matter of law, constitute mail or wire fraud predicates for RICO.[12] 204 F.3d at 1382. This is a categorical rule about the nature of the conduct—misrepresentations to the PTO about patents —not about who later alleges injury.

Jones's attempt to relabel his inequitable conduct allegations as part of a scheme to divest him of his "right to practice his invention" will not save his claim. Jones cannot avoid dismissal by claiming the fraud was 'really directed at Jones' because the only 'wire' and 'mail' acts pleaded are USPTO filings and communications, precisely the conduct *Semiconductor Energy* held cannot be repackaged as mail or wire-fraud predicates for RICO. Jones's argument that *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), renders *Semiconductor Energy* inapplicable has already been squarely rejected by this Court. *See Palantir*, 2020 WL 9553151, at *12 (considering *Bridge* and holding that under

---

[11] Jones's allegations of false statements or omitted inventorship constitute inequitable conduct. *Bioness Inc. v. Aretech, LLC*, No. 22-679, 2023 WL 6186926, at *6 (E.D. Va. Jan. 23, 2023) (dismissing inequitable conduct counterclaims based on false oaths or omitted inventorship).

[12] Jones's claim is also preempted by federal patent law. Claims based solely on bad-faith misconduct or fraud before the PTO, or identical in scope to an inequitable conduct defense, are preempted. *Semiconductor Energy*, 204 F.3d at 1382.

*Semiconductor*, "[s]tatements contained in patent applications do not constitute a predicate act for the purposes of wire fraud.").

Jones's "deed to stolen property" metaphor and reliance on *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) misstate both his own pleadings and the governing law. Opp. at 22-23. *Kewanee* is not a RICO case and it simply held that state trade-secret law is not preempted by the federal patent system; it did not transform every claim of misused know-how into a federal racketeering injury. *See Kewanee*, 416 U.S. at 492-93. Here, Jones admits that he signed an assignment transferring all inventions to LFL, eliminating any plausible "stolen property" for a RICO injury.

### 2.     Jones's Unpleaded "Trade Secret" Theory Fails as a Matter of Law

Jones's procedurally improper substitution of "source code" and "trade secrets" for the patent filings pleaded in the FAC is futile. A civil trade secret claim is not a RICO predicate act because 18 U.S.C. § 1961(1) only includes criminal trade secret offenses (18 U.S.C. §§ 1831, 1832), not the civil action under § 1836(b). To the extent that any trade secret claim could be a predicate act, the FAC fails to plead the required elements of the qualifying criminal statutes—in fact, the FAC does not mention "trade secrets" whatsoever. "New allegations contained in an opposition brief 'are irrelevant for Rule 12(b)(6) purposes.'" *Tianhai*, 2023 WL 3549698, at *3 (quoting *Schneider*, 151 F.3d at 1197 n.1); *see also Barnes*, 2013 WL 5530017, at *8. Therefore, the Court should not consider Jones's new allegations concerning his alleged "trade secrets."

Even if the Court considers Jones's new allegations in his opposition, the claim should be dismissed. A trade secret plaintiff must allege: (1) ownership of a trade secret, (2) defendant's misappropriation, and (3) resulting damage. *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). Jones cannot satisfy the ownership element because the "source code" he refers to is software he developed *for LFL as a paid employee*, and he assigned the fruits of that work to LFL as a condition of his employment. *See* Declaration of Madeline A. Woodall, Ex. A.[13] Jones disclosed his work to LFL as part of his job responsibilities, meaning neither Karafin nor Bevensee acquired or disclosed the code by improper means. *See* 18 U.S.C. § 1839(5). Jones suffered no damages because he

---

[13] This Court can take judicial notice of this agreement, *see* concurrently-filed Request for Judicial Notice.

was compensated for his work and subsequently assigned all rights to LFL.  Finally, even if Jones could assert a claim against LFL, the owner of his source code, he cannot maintain a claim against the individual defendants, who do not possess the code.

**B.      Jones Does Not Have a Cognizable RICO Injury**

Jones fails to plead a cognizable "business or property" injury under RICO because, on his own allegations and the documents incorporated by reference, the key assets he invokes are not his property. First, the FAC admits that Jones signed a "Confidential Information and Inventions Assignment Agreement" assigning to LFL "all inventions made during his employment," including the source code and technical work that underlie the asserted patents; he seeks only to rescind that agreement as a remedy.  Ex. A; FAC ¶¶ 18, 68, 76, 85; Opp. at 1-2, 23-24.  Until and unless that contract is actually rescinded, the code and related intellectual property are LFL's property, not his, so any alleged misappropriation cannot constitute injury to Jones's "business or property" within the meaning of 18 U.S.C. § 1964(c).  This is black-letter law.  Patent rights and associated intellectual property interests arise only upon issuance and in accordance with assignment agreements, and that an employee who has agreed to assign "all inventions" has no personal property right to assert in that IP for purposes of later claims.  *See*, *e.g.*, *Semiconductor Energy*, 204 F.3d at 1380 (a pending application is not "property"); *Huster v. j2 Cloud Servs., Inc.*, No. 16-1639, 2017 WL 1160979, at *3-5 (Fed. Cir. 2017) (employee who agreed to assign inventions lacked a personal property interest supporting later claims).  Jones's attempt to recharacterize this as "theft" of his own trade secrets does not cure the problem; he concedes that the agreement he signed transferred the alleged trade secrets to LFL in the first place.  FAC ¶¶ 18, 68; Opp. at 1-2, 7-8, 23-24.

Nor do Jones's other alleged harms supply the missing RICO injury.  His "property right to file patents" is expressly foreclosed by *Semiconductor Energy*, which holds that a patent application is not cognizable "property" and, more fundamentally, any such expectancy was contractually assigned to LFL when he agreed that inventions made in the course of his employment belonged to the company. FAC ¶ 18; Opp. at 23-24.  His claimed losses of Microsoft stock grants and foregone career opportunities are classic reliance or expectation damages from an employment decision and sound, if at all, in state tort law, not in civil RICO.  Finally, any alleged loss in value of his LFL equity and options is

derivative of harm to the corporation and thus does not meet RICO's direct injury requirement for the plaintiff's "business or property." *See Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975-76 (9th Cir. 2008) (construing RICO's "business or property" language to require a direct, concrete property loss); *Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1037-39 (N.D. Cal. 2011) (dismissing RICO claim where alleged harms were derivative or speculative).

### C.     No Pattern of Racketeering Activity Exists

Jones's opposition confirms he alleges at most a single, finite scheme against one victim—himself—arising from a single relationship with LFL, which is insufficient to plead a RICO pattern of racketeering. *Serrato v. Efremsky*, No. 95-20221, 1995 WL 415152, at *4 (N.D. Cal. June 30, 1995) ("A single alleged fraud with a single victim cannot constitute a 'pattern of racketeering' threatening ongoing fraud."). The acts he recasts as "multiple predicates" (recruiting statements, the assignment agreement, alleged misstatements to the USPTO, and post-employment communications) are all steps in a single, integrated employment relationship with LFL—not separate criminal episodes targeting different victims or markets. FAC ¶¶ 12-18, 40, 68-77; Opp. at 1-3, 19-21, 24; *see Canyon County*, 519 F.3d at 975-76 (rejecting RICO for a single, localized dispute); *Grimmett v. Brown*, 75 F.3d 506, 510-12 (9th Cir. 1996) (requiring more than a single fraudulent scheme with one victim); *Howard v. Am. Online Inc.*, 208 F.3d 741, 749-50 (9th Cir. 2000) (no pattern where acts formed "a single event" with a singular purpose); *Palantir*, 2020 WL 9553151, at *14-15 (same).

Nor does Jones cure the continuity defect by pointing out that his narrative spans from 2019 to August 2025. Opp. at 21, 24. As *Canyon County* and *Grimmett* explain, continuity turns on whether the racketeering conduct is open-ended or inherently terminable, not simply on the length of time over which a single, personal dispute plays out. *Canyon County*, 519 F.3d at 975-76; *Grimmett*, 75 F.3d at 510-12; *Palantir*, 2020 WL 9553151, at *12. Here, the alleged conduct is tied to a naturally limited relationship—Jones's employment that has concluded. FAC ¶¶ 11-21, 40; Opp. at 2-3, 19-21. Jones identifies no facts suggesting that Karafin or Bevensee are engaged in ongoing fraud on other engineers, other shareholders, or the market at large. The only "ongoing" feature Jones remotely invokes is defendants' continued presence as named inventors on the patents, which reflects the effects of allegedly past acts, not a present threat of repeated racketeering activity. FAC ¶¶ 40, 68-77; Opp. at 21-24.

1    Finally, the predicates Jones strings together highlight why *H.J. Inc. v. Northwestern Bell Tel.*

2  *Co.*, 492 U.S. 229, 242-44 (1989) does not save his claim.  Opp. at 24.  Jones's claimed injuries—lost

3  benefits, lost stock, and diminished equity—are paradigmatic private, localized harms (Mot. at 18-19), in

4  contrast to the multi-year public-corruption scheme affecting the broader market for telephone services,

5  and cannot be stretched to convert this single-employee, single-company dispute into a racketeering

6  enterprise.  *See Canyon County*, 519 F.3d at 975-76; *Howard*, 208 F.3d at 749-50.  Stripped of labels, the

7  opposition confirms that Jones is attempting exactly what *Canyon County* and *Howard* forbid:

8  repackaging a one-off dispute as a far-reaching RICO pattern.

9  **VI.    Further Amendment Should be Denied as Futile**

10    Leave to amend should be denied when amendment would be futile; to avoid a finding of futility,

11  a plaintiff must disclose the specific facts that would cure the deficiency.  *Linder v. Golden Gate Bridge,*

12  *Highway & Transp. Dist.*, No. 14-3861, 2015 WL 4623710, at *2 (N.D. Cal. Aug. 3, 2015) ("A plaintiff

13  may not in substance say 'trust me,' and thereby gain a license for further amendment when prior

14  opportunity to amend has been given.").

15    Jones requests leave to amend but fails to identify any specific facts he can add to cure the

16  deficiencies in his claims, and the new pleading disclosed in the opposition asserting new "source code"

17  and "trade secret" theories fails to cure.  There are no new property facts Jones can plead that would not

18  contradict his prior pleadings, and permitting a third attempt would be an abuse of the judicial process,

19  particularly given that the individual defendants are not large corporations, have lost their jobs, and are

20  incurring significant expense in motion practice due to Jones's unsupported, speculative and

21  ever-changing claims.  Jones should not be permitted to advance meritless claims in successive

22  complaints.

23    Should the Court nevertheless grant Jones leave to amend, Defendants respectfully request an

24  extension of 35 days after the amended complaint is filed to respond.  This time is necessary to consider

25  a Rule 11 motion, observe the required safe harbor period, and notice a hearing date for the Rule 11

26  motion so it can be heard concurrently with the next motion to dismiss.

27  //

28  //

Date:  December 9, 2025

Respectfully submitted.

Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-5118@cases.warrenlex.com

*Counsel for Defendants*
*Jon Karafin and Brendan Bevensee*