1  Patricia L. Peden (State Bar No. 206440)
   Madeline A. Woodall (State Bar No. 351664)
2  WARREN KASH WARREN LLP
   2261 Market Street, No. 606
3  San Francisco, California, 94114
4  +1 (415) 895-2940
   +1 (415) 895-2964 facsimile
5  25-5118@cases.warrenlex.com

6  *Counsel for Defendants Jon Karafin and Brendan Bevensee*

7

8                         UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

11

12  ALAN JONES,                          ) Case No. 3:25-cv-05118-MMC
                                         )
13       Plaintiff,                      ) **JURY TRIAL DEMANDED**
                                         )
14  v.                                   ) **DEFENDANTS JON KARAFIN AND**
                                         ) **BRENDAN BEVENSEES' REPLY IN**
15  LIGHT FIELD LAB, INC.,               ) **SUPPORT OF MOTION TO STRIKE**
    JON KARAFIN, BRENDAN BEVENSEE,       )
16  and Does 1 to 10,                    ) Date:       February 13, 2026
                                         ) Time:       9 a.m.
17       Defendants.                     ) Courtroom:  7
                                         )

18

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................ 1

LEGAL STANDARD .......................................................................... 1

I.    Step One: Jones's Causes of Action Arise From Protected Activity ........................ 2

    A.    Count Three for Fraud Arises from Protected Activity ............................. 2

    B.    Count Four for Theft Arises from Protected Activity .............................. 4

    C.    The Exceedingly Narrow "Criminal Act" Exception Does Not Apply ............... 6

II.   Step Two: The Patent-Petitioning-Based Claims Lack Minimal Merit ...................... 7

    A.    Federal Patent Law Preempts Jones's Patent-Centric State-Law Theories ............ 7

    B.    Jones Fails His Burden to Show the Fraud Claim Has Minimal Merit ................ 9

    C.    Jones Fails His Burden to Show the Theft Claim Has Minimal Merit ............... 11

III.  The Individual Defendants Are Entitled to Fees and Costs; Jones is Not ................... 14

    A.    The Court Should Grant the Motion to Award Defendants Fees and Costs .......... 14

    B.    The Anti-SLAPP Motion is Far From Frivolous .................................. 14

CONCLUSION ............................................................................ 15

# TABLE OF AUTHORITIES

*Cases*                                            *Page*

*Baral v. Schnitt*,
    1 Cal. 5th 376 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*BearBox LLC v. Lancium LLC*,
    125 F.4th 1101 (Fed. Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Flatley v. Mauro*,
    39 Cal. 4th 299 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 15

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
    153 F.3d 1318 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*IQE PLC v. Newport Fab, LLC*,
    155 F.4th 1370 (Fed. Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 14

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14

*Oneto v. Watson*,
    No. 22-5206, 2025 WL 2901666 (N.D. Cal. Oct. 10, 2025) . . . . . . . . . . . . . . . . . . . . . . . 3

*Osborne v. Pleasanton Auto. Co., LP*,
    106 Cal. App. 5th 361 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7 15

*Palantir Techs., Inc. v. Abramowitz*,
    No. 19-6879, 2020 WL 9553151 (N.D. Cal. July 13, 2020) . . . . . . . . . . . . . . . . . . . . . 3, 5

*Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*,
    204 F.3d 1368 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Silvaco Data Systems v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Ultra-Precision Manufacturing, Ltd. v. Ford Motor Co.*,
    411 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

*Uribe v. Sherman Way Gardens, LTD*,
    No. 08-4124, 2008 WL 11336669 (C.D. Cal. Nov. 24, 2008) . . . . . . . . . . . . . . . . . . . . . 7

*Wilt v. Whitehouse Indep. Sch. Dist.*,
    No. 24-375, 2025 WL 2633210 (E.D. Tex. July 22, 2025),
    *R.&R. adopted*, 2025 WL 2438799 (E.D. Tex. Aug. 25, 2025) . . . . . . . . . . . . . . . . . . . . 3

# **TABLE OF AUTHORITIES**
(*continued*)

*Statutes* *Page*

35 U.S.C. § 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

35 U.S.C. § 256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 13

California Penal Code § 496 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 4, 6-8, 11-13

Cal. Civ. Proc. Code § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

# INTRODUCTION

Defendants Jon Karafin and Brendan Bevensee submit this reply in support of their special motion to strike under California Code of Civil Procedure § 425.16. Plaintiff's opposition attempts to rewrite the pleaded claims. It does nothing to disprove that the third cause of action (Fraud and Deceit) and fourth cause of action (Penal Code § 496), as pleaded, impermissibly target patent-prosecution conduct before the United States Patent and Trademark Office ("USPTO"). That *pleaded* conduct is protected petitioning activity under the anti-SLAPP statute. Moreover, the fraud and theft claims lack even minimal merit as demonstrated in the co-filed Motion to Dismiss. California's anti-SLAPP statute applies to, and bars these claims. Defendants' anti-SLAPP motion should be granted.

# LEGAL STANDARD

The Court must apply *Baral*'s 'surgical' approach to identify and strike the portions of the First Amended Complaint ("FAC") that stem from protected petitioning activity. *Baral v. Schnitt*, 1 Cal. 5th 376, 393-96 (2016) (mandating that distinct protected "claims for relief" within broader causes of action must be identified and stricken).

There is no need to contend with Count Four using such a 'surgical' approach—the FAC's fourth cause of action for theft is entirely predicated on patent filings and inventorship in the identified patent families, and must be stricken in full. FAC ¶¶ 70-77.

The third cause of action is mixed; it includes employment-related allegations but also expressly pleads fraud "in connection with" USPTO filings and seeks the extraordinary remedy of "invalidation" of specific patent applications, relief that is inseparable from petitioning activity. *Id.* ¶¶ 19(a)-(e), 40, 53-56, 60, 63, 68. Jones objects to a *Baral* analysis, saying that none of his claims are directed to patent activity. His objection cannot withstand the clear allegations in the FAC. The FAC indisputably pleads patent-filing-based claims and remedies, repeatedly seeking to "invalidate WO2025042476A1 and WO2024216300A2" and to transfer the associated intellectual property. *Id.* ¶¶ 68, 76, 85. Furthermore, Jones bases his claims on "multiple fraudulent communications regarding Patent WO2025042476A1 and WO2024216300A2" made via filing, mail, and email. *Id.* ¶¶ 68, 70-76, 81, 85.

To the extent that Jones's claims rely on patent filings and protected petitioning activity, they should be stricken as SLAPP targets, even if other aspects of the cause of action survive. The Court should strike the entire fourth cause of action and the patent-centric "slices" of the third cause of action.

## I. Step One: Jones's Causes of Action Arise From Protected Activity

The operative question at step one is whether the "activity that gives rise" to liability is petitioning activity within the meaning of sections 425.16(e)(1) and (e)(2). *Baral*, 1 Cal. 5th at 488. The opposition attempts to re-characterize the gravamen of Jones's claims, arguing that he asserts hiring fraud, "trade secret theft," and post-employment obstruction only. The FAC tells a different story.

Jones's FAC alleges that Karafin and Bevensee "concealed the true ownership and origin of foundational patents," "omitted relevant prior art" from patent applications, and used "altered terminology" in filings with the USPTO. FAC ¶¶ 19(b), 19(d)-(e), 40, 54-56. Jones identifies two specific patent families, WO2025042476A1 and WO2024216300A2, and pleads that Defendants filed and prosecuted those applications while misrepresenting inventorship status to the USPTO. *Id.* ¶¶ 40, 54-56, 68, 70-72, 81-85. Jones's third and fourth counts, sounding in fraud and violation of California's Penal Code, arise from these protected petitioning activities.

### A. Count Three for Fraud Arises from Protected Activity

Jones alleges fraud based in part on "fraudulent communications" to the USPTO, including "omissions of prior art" and misstatements in patent filings, and seeks injunctive relief to "invalidate" those patent applications. FAC ¶¶ 55, 68-69, 81.

Jones seeks to distance himself from his own pleadings. Jones argues in opposition that the FAC is directed only at "fraudulent communications to (and concealment from) Jones, *not the Patent Office.*" Opp. at 2:25-26 (emphasis in original). This assertion is contradicted by the FAC itself, which is replete with allegations concerning Defendants' patent application filings and communications with the USPTO. The FAC pleads that Mr. Karafin and Mr. Bevensee concealed their **patent filing activities** in **patent applications** and omitted prior art in their **patent filing activities** to the USPTO. FAC ¶ 19(d)-(e). The FAC makes clear Jones's claim that patent applications WO2025042476A1 and WO2024216300A2 did not include him as an inventor, a claim directed to the information provided to the USPTO. *Id.* ¶¶ 40, 55; *see* Mot. at 4:19-6:6. The FAC alleges "[m]ultiple fraudulent communications regarding Patent

WO2025042476A1 and WO2024216300A2 using means of interstate communication, including electronic filing, mail and email." FAC ¶ 81. Given that the FAC does not plead any communications *with Jones* involving mail or email (only oral statements and text), these pleaded communications necessarily refer to the communications with the Patent Office, a fact bolstered by the FAC's overall focus on patents and patenting activity. *See* Mot. at 5:8-18.[1]

Jones's opposition proves the speciousness of his argument. On the one hand, he seeks to persuade the Court that he has pleaded no claims premised on the USPTO filings. On the other hand, he simultaneously argues against the application of the anti-SLAPP statute, asserting that the inventor declarations filed with the USPTO were false. Opp. at 1:23-25. When addressing the minimal merit prong (step two), Jones cites Karafin and Bevensee's filing activities at Lytro to argue that his fraud claim has merit. *Id.* at 12:13-16. Jones claims that the individual defendants signed false inventor declarations submitted to the patent office. *Id.* at 13:15. Jones asserts "Defendants made false statements to USPTO . . ." *Id.* at 15:19. Jones claims that the patents listed in the FAC are "invalid" as a matter of law. *Id.* at 17:12-28. Indeed—and most damning—Jones specifically alleges that the individual defendants engaged in "inequitable conduct." *Id.* at 17:24.[2]

Jones also tells the Court that the scope of his claims is "evident from the damages" he seeks. Opp. at 5:25. Defendants agree. Jones's requested relief includes a request to invalidate

---

[1] Jones cites "*Hartong v. The Partake Grp.* (2023) 90 Cal. App. 5th 123, 133" for the proposition that false statements to the USPTO constitute "actionable fraud even without direct false statements to Jones." Opp. at 15:22. However, the citation "90 Cal. App. 5th 123" actually cites to *Nickson v. Sherman, Inc.*, a case that does not involve fraud or related issues. Likewise, Defendants have not identified any case involving the named parties from 2023, which begs the question whether this is a fake case generated by artificial intelligence, as discrepancies between the name and citation "are hallmarks of AI-generated (or hallucinated) case citations." *Wilt v. Whitehouse Indep. Sch. Dist.*, No. 24-375, 2025 WL 2633210, at *8 (E.D. Tex. July 22, 2025), *R.&R. adopted*, 2025 WL 2438799 (E.D. Tex. Aug. 25, 2025). This Court has previously found that "citations to nonexistent cases, on its own, constitute a violation of FRCP 11(b)." *Oneto v. Watson*, No. 22-5206, 2025 WL 2901666, at *2 (N.D. Cal. Oct. 10, 2025) (collecting cases).

[2] Jones again argues that the patents are "technically 'issued'" (Opp. at 17:23), but as defendants' motion explained, the patent applications are pending, no patent has issued, and the patent applications do not constitute "property." *See* Mot. at 8:10-20. For this reason and the reasons explained in the motion, Jones fails to show that there has been any "fraud on the Patent Office." Opp. at 17:24; *see Palantir Techs., Inc. v. Abramowitz*, No. 19-6879, 2020 WL 9553151, at *12-13 (N.D. Cal. July 13, 2020). Regardless, Jones's claim further supports defendants' point that the patent applications are central to Jones's claims.

WO2025042476A1 and WO2024216300A2, to order the transfer of all intellectual property related to WO2025042476A1 and WO2024216300A2 to Plaintiff. FAC ¶ 68. The opposition's reliance on patenting activity, coupled with the clear assertions in the FAC, demonstrates that Jones's claims are premised on and directly tied to Defendants' patenting activities, which are protected conduct under the anti-SLAPP statute.

Jones's shifting allegations cannot save him. Contrary to the arguments in opposition, the FAC is not directed to 'source code,' 'trade secrets,' or contract rights—although the opposition references "trade secrets" twenty-nine times, Jones's FAC does not reference "trade secrets" once. *See* FAC ¶¶ 19(b), 19(d)-(e), 40, 54-56. If Jones is insistent that his fraud claim does not depend on patent application filings and communications, he should have no objection to striking these averments from his third cause of action.

**B.    Count Four for Theft Arises from Protected Activity**

Jones's Count Four, alleging "theft" under Penal Code section 496, is indisputably predicated on patenting activity. Filing a patent application constitutes protected activity for purposes of California's anti-SLAPP Statute. *See IQE PLC v. Newport Fab, LLC*, 155 F.4th 1370, 1379 (Fed. Cir. 2025) (the filing of the patent application is protected activity).[3] The entire basis of Jones's theft claim is Defendants' purported misrepresentations regarding inventorship and their subsequent "retaining inventorship" in the patents. FAC ¶ 72. The operative conduct is pleaded as the patent filings. *See id.* ¶¶ 70-76. The alleged "misrepresentations" are pleaded as the Defendants' applications and communications submitted to the USPTO. Jones argues that he does not plead filing activities in the

---

[3] Jones attempts to avoid the Federal Circuit's *IQE* holding through several forced and unsupported arguments that lack merit. *See* Opp. at 1, 3. Jones contends that *IQE* is merely a procedural ruling and that his claims involve separate, prior misconduct (like employment fraud), distinct from the patent filing itself. Factually, Jones's argument fails because the FAC far exceeds mere employment claims and clearly pleads patent office petitioning activity. Moreover, the claims are not limited to earlier misconduct, as Jones expressly pleads misconduct at the time of patent application filing. FAC ¶ 71 ("made at the time that Defendants Karafin and Bevensee applied for the patents . . ."). The argument is also legally flawed. *IQE*'s holding is broad, confirming that patent applications categorically qualify as protected activity under the first step of the anti-SLAPP analysis. No reported case has adopted Jones's limiting interpretation of *IQE*, nor have courts found that the circumstances he alleges remove this case from the categorical protection implied by the Federal Circuit. Jones cannot avoid the impact of *IQE's* holding—the patent activity he pleads in the FAC is subject to California's anti-SLAPP statute.

FAC, but he fails to explain how Defendants could have made fraudulent statements to the USPTO absent filing activity and communications with the Patent Office, both of which are protected activities.

Jones's opposition tries to remake the "who" allegations he pleaded in the FAC. Jones asks the Court to disregard the operative FAC and instead accept his argument in opposition that the FAC is limited to communications and concealments *directed at him*. *See* Opp. at 2:25-26. The FAC's scope, however, is demonstrably broader. For instance, paragraph 71 refers to: "Defendants' misrepresentations to Plaintiff *and others* regarding the development and invention of the concepts underlying Patent WO2025042476A1 and WO2024216300A2 . . ." *Id.* (emphasis added). Other claims in the FAC emphasize Jones's reliance on communications with the Patent Office. For example, the predicate acts for Jones's RICO claim are alleged to be "*multiple fraudulent communications regarding Patent WO2025042476A1 and WO2024216300A2 using means of interstate communication, including electronic filing, mail and email*." FAC ¶ 81 (emphasis added). Since the FAC alleges only oral communications and text messages with Jones—and no mail or email communications with Jones—these predicate acts are undeniably communications with the patent office. Although Jones disavows reliance on any statements made to the USPTO in opposition, he later concedes, in the same brief, that he is alleging "*inequitable conduct—fraud on the Patent Office*." Opp. at 17:24 (emphasis added). This is the clearest possible admission: Jones's fraud and theft theories hinge on his assertion that the individual defendants made false statements *to the USPTO*.

Jones also tries to remake the "when" allegations pleaded in the FAC. In a strained attempt to neutralize the FAC's clear pleading of protected activity, Jones seeks to reframe his allegations using a tenuous temporal argument. Jones now contends that his claims arise only from pre-filing fraud in 2019, "not from the 2023 patent filings." Opp. at 5:12. The FAC, however, explicitly refutes this position. *See* FAC ¶ 71 ("at the time . . . applied for the patents."); *see also id.* ¶ 40.

Jones tries to remake the "how" allegations in the FAC. Count Four requires that property be stolen, and Jones pleads this property as his "right to inventorship" of the patents. FAC ¶ 70. The inventorship right Jones pleads as "property" is created and defined by the patent office filings; they simply cannot exist without the applications filed with the USPTO. *See Palantir*, 2020 WL 9553151, at

*12. Jones offers no explanation of how these rights could have been stolen other than through communications with the patent office.

Jones cannot simply erase his patent allegations from the FAC. His new emphasis on pre-filing hiring communications, "trade secret" status, and an "obstruction timeline" is an obvious, litigation-driven attempt at reframing his vague claims in response to an unfavorable motion. The anti-SLAPP analysis must be governed by the *pleaded* claims, not by a plaintiff's belated, self-serving description of what he wishes he had alleged. Here, the asserted activity that would establish liability for the challenged portions of Counts Three and Four is the content of patent filings and related USPTO communications that identify inventors, describe the technology, and allegedly omit prior art. FAC ¶¶ 19(a)-(e), 40, 53-56, 60, 63, 68, 70-76. While Jones is free to argue for a future amendment, he should not attempt to mislead the Court about the clear meaning of the operative FAC. Jones's effort to convince the Court that his claim has nothing to do with patent filings lacks all credibility and strains the boundaries of legitimate advocacy.

Should the Court nevertheless accept Jones's position for the purpose of the anti-SLAPP analysis, the Motion to Dismiss this claim should be granted. By disclaiming reliance on the patent process, Jones effectively concedes that he holds no legally recognized property right for purposes of California Penal Code § 496.

The FAC unquestionably pleads statements "made before an official proceeding authorized by law" and "in connection with an issue under consideration or review" by such a body—namely, the USPTO. *See* Cal. Civ. Proc. Code § 425.16(e)(1)-(2). The act of filing and prosecuting patent applications with the USPTO, a federal agency, constitutes protected petitioning conduct under California's anti-SLAPP statute. *IQE*, 155 F.4th at 1379-80; *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 594-595 (9th Cir. 2010). Step one is easily met.

    **C.**    **The Exceedingly Narrow "Criminal Act" Exception Does Not Apply**

Jones's attempt to strip Defendants' petitioning activity of anti-SLAPP protection at step one by invoking the "criminal acts" exception of *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), evidences a clear misunderstanding of the anti-SLAPP law. Opp. at 8. As the California Court of Appeals explained in *Osborne v. Pleasanton Auto. Co., LP*, 106 Cal. App. 5th 361, 378 (2024), the *Flatley* exception is "very

narrow," and applies only where the defendant's conduct is "illegal as a matter of law," meaning the illegality is conclusively established on the undisputed evidence or conceded by the defendant.

Here, no such concession or conclusive evidence of criminality exists. Jones pleads only his own subjective inferences and opinions, which are insufficient to state a claim, much less establish conclusive criminality to satisfy the narrow *Flatley/Osborne* exception. The pleadings show, at most, a highly disputed civil inventorship and ownership disagreement that Jones has transparently dressed up as "theft." This factual dispute cannot be resolved at step one to declare the petitioning activity unprotected.

## II. Step Two: The Patent-Petitioning-Based Claims Lack Minimal Merit

Because Defendants have made their *prima facie* showing at step one, the burden shifts to Jones to demonstrate a probability of prevailing on the petitioning-based portions of Counts Three and Four. *Mindys*, 611 F.3d at 595. To meet this burden, Jones must show that his claims are both legally sufficient and supported by a sufficient prima facie factual showing to sustain a favorable judgment. *Uribe v. Sherman Way Gardens, LTD*, No. 08-4124, 2008 WL 11336669, at *5 (C.D. Cal. Nov. 24, 2008). Jones has failed to carry his burden.

The anti-SLAPP motion challenges only Jones's third cause of action for fraud and deceit and his fourth cause of action under Penal Code § 496. Count Three for fraud must meet Rule 9 specificity standards. Jones amended his complaint after LFL challenged the original for lack of specificity. *See* Docket No. 20; FAC. Jones cannot, as he attempts to do in opposition, add random fraud allegations not found in the FAC. In opposition, Jones refers to claims such as trade secret misappropriation and breach of contract that are not present in the FAC. Jones's opposition arguments directed to defending his other claims that are not at issue in this motion are irrelevant. The dispositive question is whether, as pleaded, the challenged claims amount to actionable fraud or theft as a matter of law. They do not.

### A. Federal Patent Law Preempts Jones's Patent-Centric State-Law Theories

Federal Circuit precedent squarely forecloses the use of state law to impose liability for alleged patent-prosecution conduct. In *Ultra-Precision Manufacturing, Ltd. v. Ford Motor Co.*, 411 F.3d 1369 (Fed. Cir. 2005), the court held that state-law causes of action are preempted where they conflict with the federal scheme for obtaining and enforcing patents, including inventorship. As Defendants' Motion to

Dismiss shows, Jones's demands to "invalidate" specific patent applications, reallocate inventorship, and treat alleged omissions or misstatements to the USPTO as fraud and "theft" fall squarely within this preempted zone. *See* Mot. to Dismiss at 4-5, 18-19.

Jones seeks to avoid the holding in *Ultra-Precision*, arguing that it is limited to claims seeking exclusive rights and stating that he seeks "traditional state-law remedies." Opp. at 8-10. Jones's own pleading belies this characterization. The FAC not only repeatedly targets the content of patent filings, the designation of inventors, and the existence of patents themselves as the supposed "stolen property," but also demands injunctive relief to "invalidate" identified patent families and reassign patent rights. FAC ¶¶ 19(a)-(e), 40, 55, 68, 70-76. Jones avoids directly acknowledging that his FAC seeks Patent Act remedies. Instead, in opposition, he carefully parses words, claiming that he seeks "remedies not covered by the Patent Act." Opp. at 8:24. That Jones seeks *other* remedies for *other* claims does nothing to save his patent-related claims and the patent remedies from preemption.

Jones's attempt to distinguish *BearBox LLC v. Lancium LLC*, 125 F.4th 1101 (Fed. Cir. 2025), is unsuccessful because his third and fourth causes of action are fundamentally inventorship challenges, regardless of the labels he employs. Jones repeatedly asserts a "right to inventorship," alleges that the defendants "withheld patent rights," and explicitly seeks the court to "invalidate WO2025042476A1 and WO2024216300A2" and mandate the "transfer of all intellectual property, including but not limited to that related to WO2025042476A1 and WO2024216300A2" to him. FAC ¶¶ 40, 68, 70-73, 76, 81, 85. Jones pleads the right of control over and exclusionary rights in technology already disclosed in patent publications, forming the basis of an inventorship dispute. These claims, which are replete with patent language (*id.* ¶¶ 19, 40, 70-73, 81), attempt to use state law, including California Penal Code § 496, to establish rights and secure relief. This is precisely the kind of "patent-like protection" that *BearBox* holds is preempted by the Patent Act.

To avoid clear preemption, Jones now contends that his claims rest on trade secret theories rather than patent law. Crucially, however, Jones has not pleaded a trade secret cause of action or a damages theory for pre-disclosure misappropriation, unlike the distinct trade secret claims preserved in *BearBox*, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974), and *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210 (2010). Nor does he plead the breach of contract claim he argues is exempt from

preemption. *See* Opp. at 9-10. The preemption status of Jones's *unpleaded* claims is irrelevant to whether the claims he actually pleaded are preempted. In the FAC, Jones explicitly links liability and damages to the defendants' making and using the patented technology and their alleged failure to name him as inventor. FAC ¶¶ 70-74, 81. This falls squarely within the *BearBox's* preemption holding and directly conflicts with the exclusive federal scheme for inventorship and correction-of-inventorship under 35 U.S.C. §§ 116, 256.

The inventorship and invalidity remedies that Jones pleaded necessarily require the Court to consider and render judgment on patent prosecution and inventorship, functions reserved to the Patent Act and, in the case of inventorship corrections, 35 U.S.C. § 256. *See Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1375-1380 (Fed. Cir. 2000) (holding that disputes over inventorship and patent applications fall within exclusive federal jurisdiction); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460-1465 (Fed. Cir. 1998). Jones's reliance on *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds,* which recognized that state-law fraud claims may survive where they are based on conduct "separate from and in addition to patent rights themselves," does not help him, because the portions of counts three and four at issue are not separate from patent rights; they are built entirely on allegations that Defendants misled the USPTO, mis-designated inventors, and wrongfully obtained or retained patent rights, and they seek rescission and "invalidation" as the primary relief. FAC ¶¶ 19(a)-(e), 40, 55, 68, 70-76. This is the exact sort of conflict *Ultra-Precision* and *Semiconductor Energy* forbid. Similarly, cases confirming state-law protection for trade secrets, such as *Kewanee Oil* and *Silvaco Data Systems,* do not authorize state courts to adjudicate inventorship disputes or to "invalidate" patent applications as a remedy for fraud or theft, contrary to the opposition's argument. Opp. 8-9, 16-18. Because Jones's patent-petitioning-based fraud and Penal Code theories conflict with the federal patent scheme by seeking to regulate correspondence and information exchanged with the USPTO, they are preempted, and Jones cannot meet his burden to show a probability of prevailing as a matter of law.

**B.    Jones Fails His Burden to Show the Fraud Claim Has Minimal Merit**

It is Jones's burden, as the anti-SLAPP defendant, to prove his claims have merit, and he failed his burden. Jones pleaded three categories of fraud seeking to meet his Rule 9 specificity obligation:

(1) interview statements; (2) a March 2023 text exchange, and (3) protected patenting activity. None have any merit.

The category of statements made at the 2019 interview is not legitimately in dispute. The Motion to Dismiss demonstrated that the interview statements in the complaint (*see* FAC ¶¶ 12-16 (referencing "hundreds of patents," a business model "relying heavily" on patent coverage, a large theme-park customer, and an expected 2020 deployment)) are classic forward-looking, promotional statements and opinions, not misrepresentations of existing fact. In his opposition, Jones does not attempt to argue that these interview statements are actionable as fraud; he abandons them and shifts to other alleged conduct. Having failed to respond with any argument or authority, Jones has conceded that the interview statements are not fraudulent statements. Additionally, Jones admits that by 2020, he knew that no Universal deployment had occurred and that discussions had ceased, yet he chose to remain at LFL for three more years, thereby precluding detrimental reliance as a matter of law. *See* Mot. to Dismiss, § III.B.2; FAC ¶¶ 11, 14, 62-63.

The category of alleged fraud premised on the March 2023 text message cannot be fraud as a matter of law. Jones has narrowed the alleged fraud connected to this text, arguing that when he asked whether there was any additional information he was "entitled or required to be given access to as a shareholder," Karafin was obligated to tell him about supposed "Section 220" inspection rights and that the failure to do so was fraudulent concealment. Opp. at 14. But, as the Reply in support of the Motion to Dismiss explains, those rights were expressly disclosed to Jones, and he contracted to waive them. *See* Docket No. 46 at 8:4-9. Jones cannot claim fraud based on alleged oral omissions or promises that are inconsistent with or superseded by the clear integrated writing he received, acknowledged, and signed.

Jones's opposition does not identify any Delaware code-compliant inspection demand made to either of the individual defendants or explain why the individual defendants are responsible for responding to his demand rather than LFL. Nor does Jones dispute the integration language in his employment agreement, or that he waived all inspection rights in the agreement. Jones cites no case imposing an independent tort duty on a sophisticated shareholder to remind him of rights already disclosed and governed by contract. In failing to address the key facts required to pursue a claim based

on Delaware inspection rights, Jones implicitly concedes that his fraud claim premised on the March 2023 text message lacks merit.

With Jones's interview fraud theory conceded and his March 2023 theory foreclosed by his own agreement, no non-patent-related fraud theory remains.

That leaves only Jones's patent application and inventorship allegations as a potential basis for his fraud claim. The patent allegations pleaded in support of the fraud count in the FAC are not actionable fraud as a matter of California law.

First, the patent-related theories are preempted. *See supra* § II.A.

Second, the statements are true, LFL has hundreds of patents, and LFL owns the patents. Jones contends that the USPTO should have made a different decision, but that contention is uninformed and comprises an opinion formed only after Jones was fired. Jones's unsupported legal opinion about USPTO decisions is insufficient to prove fraud.

Finally, Jones's attempt in his opposition to inject a list of additional "random acts" as supposed evidence of fraud cannot salvage these claims because those acts are not pled anywhere in the FAC. *See* Opp. at 13. The original complaint was previously challenged by LFL for failure to plead fraud with specificity; Jones amended expressly to state fraud "with specificity," and in doing so he chose which conduct to include in his fraud theory and which to leave out. Rule 9(b) requires that fraud be pleaded in the complaint with particularity; it does not permit a plaintiff to expand the theory through an opposition brief by adding unpled episodes and character evidence. Because the page-13 "acts" are not in the FAC, they cannot be considered in evaluating whether Jones has shown a probability of prevailing on his fraud claims for purposes of anti-SLAPP or whether those counts state a claim as a matter of law.

Holding Jones to what he actually pleaded, his interview-based theory is conceded, his March 2023 theory is foreclosed by his contracts, and his remaining patent-based theories are both preempted and not cognizable fraud. Count Three cannot survive this motion.

**C.    Jones Fails His Burden to Show the Theft Claim Has Minimal Merit**

Jones's opposition argues that his fourth cause of action under Penal Code section 496 has merit because defendants stole his "intellectual property"—reframed in his opposition as source code and trade secrets. He contends that his claim is about theft of tangible and confidential property, not about

patents or inventorship, so it is neither preempted by federal patent law nor tied to USPTO petitioning for anti-SLAPP purposes. Jones asks the Court to treat Count Four as a classic stolen-property claim for source code and contractual rights, independent of any patent-office activity.

The opposition's characterization cannot be reconciled with the FAC, the record or the governing law. As pleaded, the fourth cause of action is not a source-code claim. It is not a breach of contract claim. It is not a trade secrets claim. Indeed, source code, contract and trade secret claims appear nowhere in the FAC. Count Four is pleaded as an inventorship dispute, stretched to try to capture state law theft. FAC paragraphs 70-76 define the alleged "property" as "Plaintiff's right to *inventorship*" in PCT *patents* WO2025042476A1 and WO2024216300A2, accuse defendants of making "fraudulent statements regarding *inventorship*" of those patents "at the time that Defendants Karafin and Bevensee *applied for the patents*," and assert that LFL has "retained ownership" and that Karafin and Bevensee have "retained inventorship." *Id.* (emphasis added). The injury alleged is "loss of the value of his inventorship" and "loss of the rights to licensing revenue," and the requested relief is to "invalidate WO2025042476A1 and WO2024216300A2" and to order "the transfer of all intellectual property, including but not limited to that related to WO2025042476A1 and WO2024216300A2, created by Plaintiff . . . to Plaintiff." *Id.* ¶¶ 74, 76. Count Four is "entirely predicated" on inventorship and patent rights, not on taking source code or unspecified "trade secrets." Jones cannot rewrite the claim through an opposition brief. Having chosen to amend once in response to a Rule 9(b) challenge, he is bound by the property and theory he actually pleaded for this anti-SLAPP motion.

Jones's Penal Code claim, as pleaded, fails at anti-SLAPP step two in several independent ways. First, the claim relies on patent-related theories and is preempted. *See supra* § II.A. Second, Jones failed to identify in his opposition any "property" cognizable under Penal Code § 496. As the Motion to Dismiss explains, information is not "property" unless some law makes it so, and federal law holds that "an application that has not yet matured into a patent cannot properly be deemed" property in this sense. *See* Mot. at 8; Mot. to Dismiss at 4 and cases cited therein. Count Four is not about source code but about a non-exclusive "right to inventorship" and "patent rights" in published applications. That right is inherently shared and non-exclusive—multiple co-inventors can be named—and does not fit the Penal Code's premise of exclusive possession and permanent dispossession. In opposition, Jones deflects and

turns to unpleaded matters, but he does not dispute that he has no property interest in a patent application. Jones's silence and deflection prove what is patently obvious: the individual defendants cannot be liable for theft for taking property from Jones that Jones does not own.

Third, even if "right to inventorship" could be treated as property, Jones failed to show in opposition that Karafin and Bevensee "received, concealed, or withheld" that property with the necessary intent to steal. There are no particularized facts in the FAC showing that Karafin or Bevensee took possession of Jones's inventorship right, or withheld it. Moreover, the availability of an express federal cause of action to correct inventorship under 35 U.S.C. § 256 is inconsistent with the Penal Code's "intent to deprive permanently" standard. Jones's opposition avoids these points by recasting the actors and the property, asserting for the first time that LFL received "stolen source code." Opp. at 19. The FAC does not plead source code theft, and any such claim would fail Rule 11. The "source code" Jones developed was part of his job responsibilities at LFL. The code was kept in an LFL repository. The individual defendants had permission to access the code, but did not possess it, and as such, could not have stolen it from Jones.

Fourth, Jones's suggestion that Lytro or Google, not LFL, should have been named as the owner of the "foundational patents" only underscores why Count Four cannot succeed. FAC ¶ 19 alleges that LFL's patents are "the property of Lytro." But Jones has no standing to assert Lytro's ownership rights; Jones is not Lytro, and he does not allege an assignment. He cannot use Penal Code section 496 as a vehicle to litigate alleged misappropriation from a third party and then recover as if he were that third party. His opposition cites no authority permitting a section 496 plaintiff to recover for theft of a third party's patent rights. Again, Jones does not dispute the individual defendant's position on this point.

Finally, Jones's effort to salvage Count Four by pointing to a list of additional "acts" and "obstruction timeline" in his anti-SLAPP opposition brief does not change the analysis. *See* Opp. at 12:22-13:13. These acts are not pleaded as part of the fourth cause of action in the FAC. The original complaint was already challenged for failure to plead fraud-based theories with specificity, and Jones amended to add detailed allegations in FAC ¶¶ 70-76 defining the property and theory of his Penal Code claim. Rule 9(b) requires that fraud-based Penal Code claims be pleaded with particularity; they cannot be expanded in an opposition brief by adding unpled episodes and theories. The Court should evaluate

Count Four as it stands in the FAC. On that record, the "theft" claim is directed at inventorship and patent rights, asserts property Jones does not own, fails to allege the required intent and receipt elements as to the individual defendants, and is preempted by federal patent law.

Jones shouldered the burden to show his theft claim had merit. He has failed his burden. The anti-SLAPP motion should be granted as to the theft claim.

### III.   The Individual Defendants Are Entitled to Fees and Costs; Jones is Not

#### A.   The Court Should Grant the Motion to Award Defendants Fees and Costs

The individual defendants' anti-SLAPP motion is appropriately limited to two causes of action in the FAC, which, on their face, constitute protected petitioning activity. The motion is well supported by law and facts, and is meritorious.

Jones does not contest the defendants' entitlement to fees and costs should they prevail. The individual defendants respectfully submit that the Court should grant their motion and permit the subsequent filing of a motion for fees and costs.

#### B.   The Anti-SLAPP Motion is Far from Frivolous

Jones's request for fees is entirely baseless. The special motion to strike is predicated upon sound, well-established anti-SLAPP principles and is supported by controlling and persuasive legal authority. Nothing presented in Plaintiff's opposition even remotely suggests the motion is "frivolous" or was filed "solely to cause unnecessary delay" under the meaning of section 425.16(c)(1).

Jones's assertion that he is entitled to fees because his claims stem from 2019 conduct—four years *before* the defendants filed any patent application (Opp. at 22)—ignores his own pleading. FAC ¶ 71 specifically pleads in support of the theft claim that it was "*made at the time that Defendants Karafin and Bevensee applied for the patents . . .*" These facts occurred well after Jones's 2019 interview. Jones does not dispute, nor can he, given the evidence in the FAC (*see id.* ¶¶ 19(d), 40, 70-73, 81), that the FAC is saturated with patent-related terminology and explicitly targets the Defendants' patent-prosecution filings and associated communications. This pleading conduct is precisely the type of petitioning activity repeatedly recognized as protected under section 425.16(e) by both California courts and the Federal Circuit, as demonstrated in cases like *Mindys Cosmetics* and *IQE*. Therefore, invoking the anti-SLAPP statute in this context is objectively reasonable.

Jones's argument for fees rests on his flawed theory that if he alleges "criminal conduct" in the FAC—without offering any proof—he can escape the anti-SLAPP statute. Opp. at 22. Jones is wrong. The *Flatley* exception only applies when illegality is conclusively established by undisputed evidence or conceded by the defendant. *Osborne*, 106 Cal. App. 5th at 378. Neither applies here. Jones's argument lacks both merit and the necessary evidentiary support. His claim for fees and costs based on this argument is likewise fatally flawed.

## CONCLUSION

For all the reasons stated above and in the individual Defendants' opening brief, along with the pleadings filed concerning the Motion to Dismiss, Defendants respectfully request that the Court grant the motion to strike. Defendants further request that the individual defendants be allowed to recover their fees and costs.

Date: December 9, 2025

Respectfully submitted,

Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-5118@cases.warrenlex.com

*Counsel for Defendants*
*Jon Karafin and Brendan Bevensee*