**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES, <br><br> Plaintiff, <br><br> vs. <br><br> LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10, <br><br> Defendant, | ) Case No.: 3:25-cv-5118 MMC <br> ) <br> ) **PLAINTIFF'S REPLY IN SUPPORT OF** <br> ) **MOTION TO COMPEL DISCLOSURE OF** <br> ) **INTERESTED PARTIES BY DEFENDANT** <br> ) **LIGHT FIELD LAB, INC.** <br> ) <br> ) <br> ) <br> ) <br> ) **Date: April 24, 2026** <br> ) **Time: 9:00 a.m.** <br> ) **Courtroom: 7** <br><br> **Complaint Filed: June 17, 2025** <br> **Am. Complaint Filed: Sept. 3, 2025** |

**I. INTRODUCTION**

Plaintiff has discovered that Light Field Lab, Inc. is a void corporation. Its charter was forfeited by the State of Delaware on February 12, 2026, after its registered agent resigned and LFL failed to appoint a replacement. Under Delaware law, all of LFL's corporate powers are inoperative — including the power to authorize counsel or actively participate in litigation. Yet Gordon Rees Scully Mansukhani LLP continues to defend LFL at substantial expense, filing motions on behalf of an entity that, under its own state of incorporation, "has thereby ceased to exist." *Transpolymer Industries, Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Del. 1990).

With regard to the original subject of this Motion, someone is paying for this defense. LFL's noncompliant certification identifies Hartford as an EPL insurer. But as discussed below, the defense has been constructed to avoid resolving the only claims for which EPL coverage exists — raising the question of who is directing this strategy and why. This is not a matter of discovery; it is a matter of required disclosure, a disclosure that it appears has not been made,

LFL's opposition (Dkt. 61) is three pages long, cites zero cases, and raises two arguments — mootness and overreach — both of which fail. The belated certifications are noncompliant with the current version of Civil Local Rule 3-15. And LFL's own opposition concedes the rule requires exactly what the motion seeks. Plaintiff cooperated with the Individual Defendants, stipulating that the motion is moot as to them (Dkt. 58) in good-faith reliance that their certifications would comply with the rule. As discussed below, they do not — but the cooperation demonstrates Plaintiff's approach: court intervention only where necessary.

## II. LFL IS A VOID CORPORATION

On January 13, 2026, LFL's registered agent in Delaware resigned. Under 8 Del. C. § 136, a corporation whose registered agent resigns must appoint a replacement within thirty days or face forfeiture of its charter. LFL failed to act. On February 12, 2026, the Delaware Secretary of State declared LFL's charter forfeited for "Failure to appoint a R/A." (Supplemental Jones Decl., Ex. A (Delaware Division of Corporations status, retrieved March 20, 2026).) The status also reflects $194,330.40 in unpaid franchise taxes and lists LFL's registered agent as "UNASSIGNED AGENT."

Under 8 Del. C. § 510, when a corporation's charter becomes void, "the charter of the corporation shall be void, and all powers conferred by law upon the corporation are declared inoperative." The Delaware Court of Chancery Vice Chancellor provided comprehensive analysis of this provision in *Rivera v. Angkor Capital Ltd.*, C.A. No. 2022-0671-MTZ (Del. Ch. Aug. 20, 2024). The court concluded that a void corporation is not dissolved, does not benefit from the three-year winding-up period afforded dissolved corporations under § 278, and has "no power to sue, be sued, or wind up." *Id.* at 21. The court confirmed that a voided corporation "has thereby ceased to exist and has lost any standing to appeal and be heard, even if represented by counsel." *Transpolymer*, 582 A.2d at 936. The court stated: "Nobody was authorized to cause Kalibrr to bring or defend this litigation." *Rivera* at 22.

The court further noted that under 8 Del. C. § 513, exercising any powers of a voided corporation is a crime. *Rivera* at 22 n.81.

Under FRCP 17(b)(2), a corporation's capacity to sue or be sued is determined by the law under which it was organized. LFL was organized under Delaware law. Under Delaware law, its charter is void and all powers are inoperative. This Court retains jurisdiction over this action and all parties, but LFL cannot actively defend or authorize filings on its behalf while its charter remains void. The opposition (Dkt. 61) was filed by Gordon Rees on March 25, 2026 — more than six weeks after forfeiture — on behalf of an entity that has "ceased to exist."

**III. THE MOTION IS NOT MOOT**

A. LFL's Own Opposition Concedes the Rule Applies

At page 2 of its opposition, LFL affirmatively states: "Civil Local Rule 3-15(b)(2) requires disclosure of certain entities with financial or other interests, including any individual or entity that provides funding for the litigation and that has a financial interest in the outcome."

This is a judicial admission. *See American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."). Moreover, "statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." *Id.* at 227. The concession eliminates any dispute about the Court's authority. The only remaining question is whether LFL has complied. As shown below, it has not.

B. LFL's Post-Forfeiture Filings Are Without Legal Effect

LFL's charter was declared void on February 12, 2026. The certifications LFL relies upon for its mootness argument (Dkts. 59, 60) were filed on March 25, 2026 — six weeks after forfeiture. Under Delaware law, a void corporation has no power to file anything. 8 Del. C. § 510; *Rivera v. Angkor Capital Ltd.*, C.A. No. 2022-0671-MTZ, at 5 (Del. Ch. Aug. 20, 2024). LFL's post-forfeiture filings are without legal effect. One cannot moot a motion by filing a document one has no legal capacity to file.

LFL cannot comply with L.R. 3-15 because it has ceased to exist as a legal entity. A void corporation cannot certify anything. But the forfeiture does not extinguish the Court's need to know who has a financial interest in this litigation. To the contrary, the fact that a void corporation's defense has

been funded by parties whose identity remains unclear makes that need more acute. Plaintiff does not ask this Court to order an impossibility. Plaintiff asks the Court to determine how this disclosure gap should be resolved.

Even setting aside the void status of LFL's filings, the certifications are substantively noncompliant. Civil Local Rule 3-15 was amended effective October 3, 2025. None of the three defendants' certifications (Dkts. 56, 57, 59) addresses the judicial conflict disclosure required by the new subsection (b)(1). None references the litigation funding disclosure requirement added at subsection (b)(2). All three use pre-amendment boilerplate. *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness"); *id.* at 190 (voluntary cessation moots a case only where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur").

LFL's certifications are also substantively deficient. The Rule 7.1 disclosure (Dkt. 60) misidentifies the defendant as "LIGHT FIELD LABS, INC." The L.R. 3-15 certification (Dkt. 59) states "Complaint Filed: June 17, 2026," a year off from the actual filing date. Both certifications were filed on March 25, 2026 — the opposition deadline — eight months after the obligation arose with LFL's first appearance on July 21, 2025 (Dkt. 10), and only after this motion was filed.

The Rule 7.1 disclosure represents that "there is no parent corporation nor any publicly held corporation owning 10% or more of its stock" — without disclosing that LFL's charter is void, that it executed an ABC through which all shares were cancelled, or that it has no assets, no equity, and no functioning governance. A court cannot evaluate conflicts under Rule 7.1 when the disclosure omits that the entity before it does not legally exist.

### C. The Stipulation Does Not Constitute Acceptance of Noncompliant Certifications

The opposition may contend that Plaintiff's stipulation with the Individual Defendants (Dkt. 58) precludes arguing that the certifications are noncompliant. It does not, for four independent reasons.

**First, the stipulation's predicate is not satisfied.** The WHEREAS clause recites that the Individual Defendants "filed Certificates of Interested Parties Under Civil Local Rule 3-15." (Dkt. 58 at 2.) The phrase "Under Civil Local Rule 3-15" is not merely a title — it characterizes the filings as

certificates pursuant to and in compliance with the rule. "Stipulations are governed by contract principles," *In re Frye*, 150 Cal. App. 3d 407, 409 (Cal. Ct. App. 1983) (collecting cases), and their scope "must be discerned within [their] four corners." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). The certifications do not comply with L.R. 3-15 as currently in effect — they use pre-amendment boilerplate and omit requirements added five months before the stipulation was entered. A document titled "Certificate of Interested Parties" that omits the current rule's requirements is not a certificate "Under" the rule; it is a document that merely bears the rule's name. The recited predicate is inaccurate, and the stipulation's operative clause is not triggered.

**Second, the stipulation is self-limiting.** The operative language states the motion is moot "to the extent it seeks an order directing the Individual Defendants to file Certificates of Interested Parties Under Civil Local Rule 3-15." (Dkt. 58 at 1-2.) The phrase "to the extent" is expressly limiting. If defendants wish to argue that a certification does not implicitly mean a valid certification then a request for *compliant* certifications is distinct relief that falls outside the stipulation's scope.

**Third, even if the stipulation applied, the Court has discretion to grant relief.** Stipulations are construed in light of the circumstances of their formation, and Plaintiff entered this one in good-faith reliance that the certifications would comply with the rule they invoke. *Nat'l Audubon Soc'y, Inc. v. Watt*, 678 F.2d 299, 307 (D.C. Cir. 1982). That representation proved incorrect. "[W]herever justice requires a court may set aside a stipulation… '[I]t has inherent power, in the control of its own action, to relieve against them when made improvidently or when for any cause their enforcement would work injustice.'" *Laughlin v. Berens*, 118 F.2d 193, 196 (D.C. Cir. 1940); *see also Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097-98 (10th Cir. 1991) (stipulations "may be withdrawn whenever necessary to prevent manifest injustice").

**Fourth, L.R. 3-15 serves the Court, not the parties.** The rule exists for judicial conflict screening under 28 U.S.C. § 455 and for transparency about who has a financial interest in the proceedings. Parties cannot stipulate away the Court's right to receive compliant disclosures any more than they can stipulate away subject-matter jurisdiction. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860-62 (1988) (disclosure obligations serve the public interest in the integrity of the judicial process and exist independent of party interests); *Caperton v. A.T. Massey Coal Co.*, 556

U.S. 868, 881-82 (2009) (emphasizing the constitutional importance of judicial conflict screening). Even if Plaintiff were somehow estopped — which he is not — the Court retains independent authority to order supplemental certifications from any party.

D. Hartford's Disclosure Is Incomplete

LFL's certification (Dkt. 59) identifies Hartford as an interested entity but does not describe the "connection and interest" as required by L.R. 3-15(c)(2). Hartford's EPL policy covers employment-related claims — at most 2 of the complaint's 10 causes of action. The remaining eight — including fraud and deceit, civil RICO, violation of Penal Code, and breach of fiduciary duty — would typically fall under fraud and intentional acts exclusions. Under *Buss v. Superior Court*, 16 Cal.4th 35, 58-59 (1997), Hartford must defend the entire mixed action, but its reimbursement rights under *Buss* run against a judgment-proof shell with no assets. If Hartford is the sole funder, it is absorbing defense costs for eight non-covered claims with no prospect of reimbursement — an unusual posture. If it is not the sole funder, the additional funder must be disclosed.

## IV. THE "OVERREACH" ARGUMENT FAILS

As addressed in Section II, LFL's opposition is without legal effect as a post-forfeiture filing. As this is the Court's first opportunity to address LFL's corporate status, Plaintiff responds below.

LFL characterizes the motion as seeking information "beyond the rules." Each item the opposition identifies maps directly to the text of L.R. 3-15.

**The "source of payments" is the identity of the funder.** L.R. 3-15(b)(2) requires disclosure of "an individual or entity (other than a party or its counsel of record) that provides funding for the litigation." The "source of payments to counsel" IS that entity. LFL is a void corporation with no assets — it cannot make payments. Someone else is. Asking who is not overreach; it is a mathematical certainty that disclosure is required.

**The "nature and terms" is the "connection and interest."** L.R. 3-15(c)(2) requires parties to "List names and identify their connection and interest." The motion asks for the nature of the funding arrangement and whether the funder has decisional authority — which is the "connection and interest" the rule's own form language requires. The rule's limitation that "Disclosure of the existence of a litigation funding agreement does not require the disclosure of the agreement itself absent court order"

limits disclosure of the *document*. It does not limit disclosure of the *nature of the relationship*, which is what subsection (c)(2) expressly requires.

**Relationships with insiders are financial interests in the subject matter.** L.R. 3-15(b)(2) requires disclosure of entities with "a financial interest of any kind in the subject matter in controversy." If a former LFL officer or investor is funding the defense, that person has a direct financial interest in the subject matter — the fraud allegations — and faces potential personal liability as a Doe defendant. This interest exists regardless of LFL's corporate status.

**Relationships with Doe defendants are interests in parties.** The First Amended Complaint defines Does 1-10 as including "executives and members of the Board of Directors of Light Field Lab with constructive knowledge of the allegations." These Does are parties to this proceeding. If the funder is one of them, the funder has the most direct possible financial interest in a party — the funder *is* the party. L.R. 3-15 covers exactly this scenario.

LFL's opposition characterizes the requested disclosure as "confidential, proprietary, and irrelevant." (Dkt. 61 at 3.) A void entity whose filings are without legal effect is in no position to assert confidentiality over anything. Regardless, the rule exists to compel disclosure of information parties would prefer to keep private. In *In re Nimitz Technologies LLC*, No. 23-103, slip op. at 5 (Fed. Cir. Dec. 8, 2022), the Federal Circuit declined to block similar disclosure orders, holding that the petitioner had not shown a "clear and indisputable" right to preclude the inquiry. To the extent any confidentiality concern exists, a protective order addresses it. LFL has not sought a protective order.

The Court also possesses independent authority to manage its own proceedings and to control the conduct of those who appear before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991). The Federal Circuit affirmed this in *In re Nimitz Technologies LLC*, No. 23-103 (Fed. Cir. Dec. 8, 2022), where the district court — confronted with a shell entity controlled by undisclosed parties — ordered production of retention agreements, communications with controlling entities, and bank records, and the Federal Circuit denied mandamus. The parallel is direct: there, a shell plaintiff with no assets; here, a shell defendant with no assets.

**V. THE DEFENSE STRATEGY ITSELF REVEALS UNDISCLOSED INTERESTS**

The docket record reveals a defense strategy pattern bearing on who has a financial interest in this litigation.

LFL's L.R. 3-15 certification (Dkt. 59) discloses Hartford Global Specialty Financial Lines, Employment Practices Liability Claims. Under an EPL policy, Hartford's indemnification exposure is tied to the employment claims — Counts 1 (retaliatory termination under Labor Code § 1102.5) and 2 (wrongful termination in violation of public policy). The remaining causes of action — fraud, Penal Code violations, civil RICO, breach of fiduciary duty, and fraudulent transfer — would typically fall outside EPL coverage. Plaintiff has not had access to the Hartford policy; this analysis is based on the type of coverage disclosed in LFL's certification and typical EPL policy scope.

Under *Buss v. Superior Court*, 16 Cal.4th 35, 58-59 (1997), where a complaint contains both covered and uncovered claims, the insurer has a "duty to defend the 'mixed' action in its entirety." However, if the covered claims were dismissed, Hartford's duty to defend would need to be reassessed — and if no remaining claim is potentially covered, Hartford ceases funding.

Against this backdrop, every claim that would typically fall outside EPL coverage was challenged — through LFL's Motion to Dismiss (Dkt. 30), the Individual Defendants' Motion to Dismiss (Dkt. 38), and the Individual Defendants' anti-SLAPP motion (Dkt. 39). Neither claim that would typically fall within EPL coverage was challenged on the merits.

In their Motion to Dismiss (Dkt. 30 at 9), counsel for LFL stated: "Only the first two causes of action in Plaintiff's complaint focus on his allegedly retaliatory termination. . . . Those claims are not at issue in this motion." The employment claims thus were not challenged. In their Reply Brief (Dkts. 34-35), counsel further acknowledged that the disputed compensation "appears to be a source of damages for his retaliation and wrongful termination claims, which Plaintiff is free to argue at the appropriate juncture should the case proceed."

If Counts 1 and 2 — the only EPL-covered claims — were dismissed, Hartford's duty to defend may be extinguished. *See Buss*, 16 Cal.4th at 46 (duty to defend "may be extinguished, if it is shown that no claim can in fact be covered"). The avoidance of challenging these claims on the merits is therefore noteworthy: it mechanically results in Hartford's funding of the entire defense being preserved.

In the tripartite insurance defense relationship, defense counsel represents the insured — not the insurer. Hartford funds the defense but does not direct litigation strategy. Yet Hartford's funds are being directed exclusively at claims for which it bears no indemnification liability, with no effort to resolve the claims it does bear liability for. Reducing active claims would serve LFL's interest in narrowing the litigation. The defense strategy does the opposite. A void corporation with no assets has nothing to gain. The question is who benefits.

The void charter — established through Plaintiff's declaration and Request for Judicial Notice — means the disclosure obligations this motion seeks to enforce cannot be lawfully answered by LFL, because no entity with legal capacity exists to appear before this Court.

**VI. CONCLUSION**

LFL is a void Delaware corporation whose charter was forfeited on February 12, 2026. It cannot file compliant certifications because it has ceased to exist as a legal entity. Its opposition was filed without legal capacity and is without legal effect. All three defendants' certifications use pre-amendment boilerplate and fail to address the requirements of L.R. 3-15 as amended October 3, 2025. The Hartford disclosure raises more questions than it answers. And the defense of a void, asset-less corporation continues at substantial expense — funded by interests that remain inadequately disclosed.

Since filing the Motion to Compel, Plaintiff has discovered that LFL's charter was declared void on February 12, 2026. Under FRCP 17(b)(2) and 8 Del. C. § 510, LFL currently lacks capacity to actively defend this action or authorize counsel to act on its behalf. *See Rivera v. Angkor Capital Ltd.*, C.A. No. 2022-0671-MTZ, at 21-22 (Del. Ch. Aug. 20, 2024). LFL's claims remain pending before this Court, but no person or entity with authority to direct LFL's defense has been identified. Plaintiff accordingly requests modified relief directing counsel of record to provide the required disclosures.

Plaintiff respectfully requests the following relief:

**As to LFL:** Plaintiff acknowledges that a void corporation cannot be ordered to file certifications or any other document. Who authorized and funded LFL's defense — and who can be directed to make disclosures on its behalf — cannot be answered by a nonexistent entity.

**As to counsel:** The Court possesses inherent authority to manage its own proceedings and to control the conduct of those who appear before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991).

Where, as here, counsel continues to file documents on behalf of a void entity whose defense is funded by inadequately disclosed interests, the Court may direct counsel to identify who is funding the defense and who authorized counsel's continued representation. *See In re Nimitz Technologies LLC*, No. 23-103 (Fed. Cir. Dec. 8, 2022). Plaintiff requests that the Court exercise that authority here.

Because the relief Plaintiff now requests differs from the original motion due to LFL's intervening charter forfeiture, Plaintiff submits a revised proposed order reflecting the modified relief.

**In sum, Plaintiff requests that the Court:**

1.    Direct Gordon Rees Scully Mansukhani LLP to disclose to the Court the identity of all persons and entities funding LFL's defense and the identity of the person or entity that authorized counsel's continued representation of LFL after the charter forfeiture on February 12, 2026;

2.    Grant such other and further relief as the Court deems just and proper.

Dated: April 1, 2026

HENRY | LACEY PC

By /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff