United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALAN JONES,

              Plaintiff,

    v.

LIGHT FIELD LAB INC., et al.,

              Defendants.

Case No.  25-cv-05118-MMC

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING MOTION TO STRIKE**

Before the Court are defendant Light Field Lab, Inc.'s ("LFL") Motion, filed October 10, 2025, "to Dismiss Plaintiff's Amended Complaint for Damages," and defendants Jon Karafin ("Karafin") and Brendan Bevensee's ("Bevensee") (collectively, "Individual Defendants") "Motion to Dismiss Amended Complaint for Damages" and "Motion to Strike," both filed November 18, 2025. Plaintiff Alan Jones ("Jones") has filed opposition to each motion, to which defendants have filed separate replies. The Court, having read and considered the papers filed in support of and in opposition to the motions, hereby rules as follows.[1]

## BACKGROUND[2]

Defendant LFL is a Delaware corporation in the business of creating holographic displays. (See Doc. No. 25 ("FAC") ¶¶ 2, 21.) "[F]rom September 30, 2019, through June 23, 2023," plaintiff Alan Jones "was employed by LFL" (see id. ¶ 11), during which time Karafin and Bevensee were employed as officers of LFL (see id. ¶¶ 3-4; Doc. No. 41

[1] By prior order, the Court took the matters under submission. (See Doc. No. 51.)

[2] Unless otherwise stated, the below facts are taken from the FAC.

("Opp. to Individual Defendants' Mot.") at 2:11-12).

In August 2019, prior to accepting LFL's offer of employment, Jones interviewed for the position (see FAC ¶ 12), and, "[a]s part of his onboarding," signed, on September 9, 2019, "a Confidentiality and Proprietary Rights Agreement" that "grant[ed] rights to patents and other works for hire to [Light Field Lab]" (see id. ¶ 18).

Jones worked in-person at LFL's offices in California "from September 30, 2019, through March 7, 2020," and, after the COVID-19 pandemic, Jones, who is a diabetic with a compromised immune system, "worked remotely from his residence in Seattle." (See id. ¶¶ 21, 22.) Between December 2022 and January 2023, however, Jones' supervisor "began having discussions with [him] to stop working remotely and return to in-office work." (See id. ¶ 25.)

In January 2023, "Jones was assigned to work on masking interference for Wavetracing Optics to improve image quality," and "work[ed] closely with LFL's CEO," Jon Karafin. (See id. ¶ 29.) In March 2023, Jones told Karafin "that the methodology was unworkable and was unlikely to result in improved image quality," but "Karafin insisted that…Jones continue with the methodology." (See id.) Nevertheless, at a Software Team Meeting conducted on April 6, 2023, Karafin "scapegoated" Jones (see id. ¶ 31), stating "Jones had failed to generate an image and indicat[ing] that it was unlikely that…Jones' work would result in improved image quality" (see id. ¶ 30). Several days later, Jones filed "a complaint of hostile work environment" regarding Karafin's comments (see id. ¶ 31), and, during LFL's investigation of his complaint, Jones explained to the investigator that "he believed that…Karafin's animosity towards him was due to the fact that he was working remotely because of his disability" (see id. ¶ 32).

On June 23, 2023, "Jones' employment was terminated," LFL stating "things aren't working out." (See id. ¶ 35.) Later that same day, however, "Jones received a letter of termination which stated that his employment was being terminated for poor performance and unprofessional behavior," and "that the decision to terminate…Jones' employment was made prior to the initiation of his hostile work environment complaint." (See id. ¶ 36.)

Jones alleges he signed the above-referenced Confidentiality and Proprietary Rights Agreement in reliance on misrepresentations made to him by Karafin during the interview process (see id. ¶ 35), and that, subsequently, during the course of his employment, Karafin breached his fiduciary duty to Jones by not apprising him of his rights to inspect the company's financials (see id. 17). Jones further alleges that LFL improperly failed to list him as an inventor on its applications for two patents that were "fully derived from [his] work" (see id. ¶ 40), and that LFL "terminat[ed] [him] for requesting [disability] accommodation and then making a complaint about illegal retaliation related to that request" (see id. ¶ 35).

Based on the above, Jones asserts the following Seven Causes of Action: (1) Retaliatory Termination under "California Labor Code § 1102.5" (see id. ¶¶ 41-46); (2) "Wrongful Termination In Violation Of Public Policy" (see id. ¶¶ 47-52); (3) "Fraud and Deceit" (see id. ¶¶ 53-69); (4) "Violation of Penal Code Sections 484 and 496" (see id. ¶¶ 70-77); (6) "Civil RICO" (see id. ¶¶ 78-85); (6) "Breach of Fiduciary Duty" (see id. ¶¶ 86-90); and (7) "Violation of Uniform Fraudulent Transfer Act" (see id. ¶¶ 91-99).

By the instant motion, LFL seeks dismissal of the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, each pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the asserted ground of failure to state a claim. (See Doc. No. 30 ("Light Field Mot.") at 9:5-8.) By the instant motions, the Individual Defendants seek, pursuant to Rule 12(b)(6), dismissal of the First, Third, Fourth, Fifth, and Sixth Causes of Action (see Doc. No. 38 ("Individual Defendants' Mot.") at 1:13-14), as well as an order striking portions of the Third Cause of Action and the Fourth Cause of Action in its entirety pursuant to California's anti-SLAPP statute (see Doc. No. 39 ("Motion to Strike") at 6:4-6).

**LEGAL STANDARD**

**I.    Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." Id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily

4

relies," regardless of whether the document is referenced in the complaint.  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that are subject to judicial notice.  See Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

## II.    Anti-SLAPP Law

Section 425.16 of the California Code of Civil Procedure, California's "anti-SLAPP"[3] statute, is intended "to protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression."  See Metabolife, 264 F.3d at 837 n.7. The statute, in relevant part, provides as follows:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

See Cal. Code Civ. Proc. § 425.16(b)(1).

To prevail on an anti-SLAPP motion, the defendant "must first make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution."  See Sarver v. Chartier, 813 F.3d 891, 901 (9th Cir. 2016) (internal quotation and citation omitted). "The burden then shifts to the plaintiff…to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." See Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013).

---

[3] "Anti-SLAPP" is an acronym for "Anti-Strategic Lawsuit Against Public Participation." See Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 837 n.7 (9th Cir. 2001).

United States District Court
Northern District of California

**DISCUSSION**

**I.    First Cause of Action – Retaliatory Termination**

The First Cause of Action, brought against all defendants, alleges a violation of California Labor Code § 1102.5. Jones alleges that, during the course of his employment with LFL (see FAC ¶¶ 42, 43), he "complained to [LFL's] officers, directors, and/or managing agents that certain of [LFL's] activities violated the law" (see id. ¶ 43), and that "[d]efendants Light Field Lab, Karafin and Bevensee terminated [Jones], substantially motivated by [Jones'] complaints" (see id. ¶ 44).

The Individual Defendants argue that the First Cause of Action, to the extent brought against them, is subject to dismissal "because claims under [§ 1102.5] can only be brought against employers" and not against individual officers and employees. (See Individual Defendants' Mot. at 2:17-21.)[4] In response, Jones argues "there is a split of authority on this issue,[5] with the better reasoned decisions finding that such liability is supported." (See Opp. to Individual Defendants' Mot. at 3:27-28.)

The Court, having reviewed the cases cited by the parties, agrees with those district courts that have found § 1102.5 only authorizes actions against the employer itself. See, e.g., Friedman v. Jenkins, 2024 WL 1182878, at *6 (N.D. Cal. March 19, 2024) (holding "the California Supreme Court would not permit Section 1102.5 claims to proceed against nonemployer individuals"; collecting cases); see also Dawson v. Caregard Warranty Service, Inc., 2024 WL 661198, at *1-2 (C.D. Cal. Jan. 12, 2024) (analyzing issue in detail and listing as relevant factors "statutory language," decisions

---

[4] As noted, LFL does not move to dismiss the First Cause of Action. (See Light Field Mot. at 9:5-6; 9:20-21.)

[5] To the extent Jones characterizes the current state of the law as a "split," it is a very uneven one, Jones having cited only two cases denying the employees' Rule 12(b)(6) motions, see Turner v. City and County of San Francisco, 892 F.Supp.2d 1188 (N.D. Cal. 2012); Cordell v. PICC Lines Plus LLC, 2016 WL 4702654 (N.D. Cal. Sept. 8, 2016), and with the judge in the former changing his mind in a later case, see Mewawalla v. Middleman, 601 F.Supp.3d 574, 608 (N.D. Cal. 2022) (holding "section 1102.5 does not impose individual liability"; collecting cases).

United States District Court
Northern District of California

interpreting "analogous" law, "policy arguments against imposing liability [on] supervisors," and "legislative history"; noting "[t]he overwhelming majority of district courts addressing the merits have found that…§ 1102.5 does not impose individual liability on non-employers").

Accordingly, to the extent the First Cause of Action is asserted against the Individual Defendants, such claim is subject to dismissal.

### II.     Second Cause of Action – Wrongful Termination in Violation of Public Policy

As noted, no defendant moves to dismiss the Second Cause of Action.

### III.     Third Cause of Action – Fraud and Deceit

The Third Cause of Action, brought against all defendants, alleges "[d]efendants made false representations" (see FAC ¶ 53) regarding the "commercial viability" of LFL's products (see id. ¶ 57), the company's "financial stability" (see id. ¶ 58), the "value of [Jones'] stock" (see id. ¶ 59), and the company's "ownership of patents" (see id. ¶ 60).

#### A. Preclusion

At the outset, LFL argues the Third Cause of Action is barred by claim preclusion, issue preclusion, and judicial estoppel. (See Light Field Mot. at 18:10-22.)

As to claim preclusion and issue preclusion, LFL's argument fails, for the reason that the prior judgment on which LFL relies, a dismissal of a declaratory relief action brought by LFL, was a dismissal for lack of subject matter jurisdiction (see Doc. No. 30-2 ("Request for Judicial Notice") Ex. 5 at 1:21; Ex. 6 at 2:7-8),[6] and a dismissal for lack of subject matter jurisdiction does not qualify as a final judgment on the merits, see In re Brooks-Hamilton, 271 Fed.Appx. 654, 657 (9th Cir. 2008) (holding "dismissal for lack of

---

[6] The Court hereby GRANTS LFL's unopposed Request for Judicial Notice of the following documents filed in the prior federal civil action between LFL and Jones: "Order Denying Motions to Dismiss as Moot; Tentatively Granting Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Request for Judicial Notice Ex. 5); "Order Granting Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Request for Judicial Notice Ex. 6). See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (holding federal courts may "take judicial notice of undisputed matters of public record") (emphasis omitted).

subject matter jurisdiction is not a final judgment on the merits"); see also Olivas-Motta v. Whitaker, 910 F.3d 1271, 1280 (9th Cir. 2018) (holding "[c]laim preclusion requires a final judgment on the merits"); Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1021 (9th Cir. 2012) (holding "[i]ssue preclusion" requires that "the first proceeding ended with a final judgment on the merits") (internal quotation and citation omitted).

To the extent LFL relies on judicial estoppel, its argument likewise fails. In particular, LFL argues, Jones' current claim is based in part on an alleged contractual "right to vested and unvested stock options in LFL's stocks" (see Light Field Lab Mot. at 18:14-15), whereas in the earlier action he asserted "there is and never was a stand-alone contractual claim for the lost stock options pursuant to the stock incentive plan" (see id. at 20:10-11). As Jones points out, the FAC does not include a claim based on "a contractual right to own stocks or exercise stock options following his termination." (See Opp to Light Field Mot at 11:19-20.) Rather, Jones claims he "purchase[d] stock options to his detriment" based on defendants' "concealment and misrepresentations." (See FAC ¶ 60.) Such position is not "clearly inconsistent with [his] earlier position." See New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (setting forth requirements for judicial estoppel) (internal quotation and citation omitted).

In sum, Jones' Third Cause of Action is not subject to dismissal on grounds of claim preclusion, issue preclusion, or judicial estoppel.[7] The Court next considers the alleged false representations.

### B. Alleged Misrepresentations

Under California law, the "necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." See Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1239 (1995) (internal

---

[7] To the extent LFL argues the Sixth and Seventh Causes of Action are also precluded on these three same grounds (see Light Field Mot. at 18:10-22), such argument, for the reasons discussed above, likewise is unavailing.

quotation and citation omitted). Additionally, allegations of fraud are subject to Rule 9(b)'s heightened pleading standard. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (holding, to meet Rule 9(b)'s particularity requirement, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged").

### 1. Statements Regarding LFL's Anticipated Product Launch and Theme Park Customer

Jones alleges Karafin made "false representations as to the commercial application and viability of [Light Field Lab's] product." (See FAC ¶ 53.)

In particular, Jones alleges that during his job interviews with LFL on August 28, 2019, and August 29, 2019, Karafin "stated that Light Field Lab had a large theme park customer, ultimately revealed to be Universal Studios" and "that Light Field Lab would have [its] displays out to market the following year (2020) and it would be in the theme park in that timeframe or soon after" (see id. ¶ 13), whereas, according to Jones, after he joined the company, "there was no further discussion of Universal Studios as a customer and no product was delivered to Universal Studios" (see id. ¶ 14).

Jones fails, however, to allege facts sufficient to support a finding that Karafin's representation that Universal Studios was a customer of LFL was false at the time the statement was made to him. Moreover, Karafin's alleged representation that LFL, at some point in the future, would have a display product out to market and in a Universal Studios theme park is a prediction or opinion, and, as "a general rule,…a representation, to constitute fraud, must relate to a past or existing fact, and not to the future." See Daniels v. Oldenburg, 100 Cal.App.2d 724, 727 (1950). Although the general rule is "subject to qualifications," e.g., where the speaker "has knowledge of facts[] not warranting the opinion," see id.; see also Richard P. v. Vista Del Mar Child Care Service, 106 Cal.App.3d 860, 865-66 (1980) (holding same), Jones has not alleged that at the time the above statements were made Karafin did not anticipate LFL's products launching in a Universal Studios theme park in the future, or that Karafin had knowledge

United States District Court
Northern District of California

of facts that would not warrant such prediction.

Accordingly, to the extent the Third Cause of Action is based on the above-referenced statements regarding LFL's anticipated product launch and theme park customer, said claim is subject to dismissal.

### 2. Statements Regarding Vesting of Stock Options Upon LFL's Public Listing or Acquisition

Jones alleges "information regarding the value of [his] stock was concealed." (See FAC ¶ 57.)

In particular, Jones alleges that during his interviews, Karafin "discussed an options double trigger event on which all options would vest if the company was publicly listed or acquired," whereas, according to Jones, "[u]pon…[his] inquiry about the number and value of the options at issue, Karafin concealed that information on the basis that it was highly confidential." (See id. ¶ 15.)

Under California law, "[t]he required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would have acted differently if the concealed or suppressed fact was known; and (5) plaintiff sustained damage as a result of the concealment or suppression of the material fact." See Rattagan v. Uber Technologies, Inc., 17 Cal.5th 1, 40 (2024).

Here, Jones fails to allege facts sufficient to support a finding that Karafin, during Jones' job interview, had a duty to disclose the specific "number and value of" LFL's stock options that would vest upon the company's potential public listing or acquisition, or that Jones would have acted differently had he known such information, let alone that he suffered any injury on account of the allegedly concealed information.

Accordingly, to the extent the Third Cause of Action is based on the above-referenced statement regarding the vesting of LFL's stock options upon the company's public listing or acquisition, said claim is subject to dismissal.

### 3.  Statements Regarding LFL's Patent Portfolio

Jones alleges "[d]efendants made representations…regarding ownership of the patents on which the business was reliant and concealed the true ownership of those patents." (See FAC ¶ 54.)

In particular, Jones alleges that, during his job interviews with LFL, "Karafin stated that the company had hundreds of patents" and that its "business model relied heavily on comprehensive patent coverage of the holographic space" (see id. ¶ 12), whereas, "[s]ubsequently, in August 2025,…Jones learned that Light Field Lab's foundational patents had been developed while Karafin and Bevensee worked for a prior employer, Lytro, and were not valid patents held by Light Field Lab but, in fact, were the property of Lytro" (see id. ¶ 19). In support thereof, however, only one such patent is identified in the FAC, "US10488584" (see id.), and, contrary to the FAC, that patent was issued to LFL, not to Lytro (see Request for Judicial Notice Ex. 9 at 191-92).[8] Under such circumstances, Jones fails to allege facts sufficient to support a finding that Karafin made a fraudulent statement as to LFL's patents.

Accordingly, to the extent the Third Cause of Action is based on the above-referenced statement regarding LFL's patents, said claim is subject to dismissal.

### 4.  Statements Regarding LFL's Financial Books and Records

Jones alleges "the specific value of [his] stock was concealed." (See FAC ¶ 59.)

In that regard, Jones alleges that, during a March 2023 text message exchange with Karafin, "in the context of a financial discussion about the company," Jones asked Karafin whether there was "any additional information [he was] entitled [to] or required to be given access to as a shareholder," and that Karafin responded as follows: "Understood and appreciated. There are no current problems to be aware of (e.g., equity

---

[8] The Court hereby GRANTS LFL's unopposed Request for Judicial Notice of patent number 10,488,584. See, e.g., Threshold Enterprises Ltd. v. Pressed Juicery, Inc., 445 F.Supp.3d 139, 145 (N.D. Cal. 2020) (holding "[m]aterials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice").

11

ownership and payroll) and can keep you posted. Again, not a political response, just the facts." (See id. ¶ 17.) According to Jones, LFL's "[b]ooks and records would classify as additional (financial) information [he] was entitled to be given access to" and that Karafin had a duty to disclose such right under Delaware law, that his text message to Karafin was a direct invocation of his inspection rights, and that Karafin's above-quoted remarks constituted a "refus[al] to provide, and conceal[ing], [such] information." (See id.; see Opp. to Individual Defendants' MTD at 13:27-28.)

Section 220 of the Delaware General Corporation Law, however, sets forth specific formalities and procedural requirements that a shareholder must observe in order to invoke their inspection rights, none of which were satisfied by Jones' text message to Karafin. See 8 Del. C. § 220(b)(1) (providing "any stockholder…shall, upon written demand under oath, have the right during the usual hours for business to inspect…books and records") (emphasis added); see also Central Laborers Pension Fund v. News Corp., 45 A.3d 139, 144 (Del. 2012) (holding [a]bsent…procedural compliance [with Section 220], the stockholder has not properly invoked the statutory right to seek inspection, and consequently, the corporation has no obligation to respond").

Moreover, to the extent Jones contends Karafin was bound by a fiduciary duty to affirmatively disclose the existence of Jones' right under Section 220 of the Delaware General Corporation Law (see Opp. to Individual Defendants' Mot. at 13:6-23), such claim fails because, under Delaware law, a corporate officer's affirmative duty to disclose information to a shareholder only applies in the context of a corporate fiduciary's "communication associated with a request for stockholder action," such as "approving corporate transactions…and making investment decisions," not informal text message communications such as the text message exchange alleged here, see Dohmen v. Goodman, 234 A.3d 1161, 1168 (Del. 2020); see also Malone v. Brincat, 722 A.2d 5, 10 (Del. 1998) (holding "duty of disclosure obligates directors to provide the stockholders with accurate and complete information material to a transaction or other corporate event that is being presented to them for action").

12

Accordingly, to the extent the Third Cause of Action is based on the above-referenced statement regarding LFL's financial books and records, said claim is subject to dismissal.

## IV.    Fourth Cause of Action – California Penal Code §§ 484, 496

The Fourth Cause of Action, brought against all defendants, alleges violations of California Penal Code Sections 484 and 496. In particular, Jones asserts "[d]efendants' misrepresentations to [Jones]…regarding inventorship of [p]atent WO2025042476A1 and WO2024216300A2…constituted theft of personal property, in the form of [Jones'] right to inventorship of those patents." (See FAC ¶ 70.)

At the outset, the Court notes that to the extent the Fourth Cause of Action is brought under California Penal Code § 484, the claim is subject to dismissal because § 484 does not authorize a private right of action. See Durand v. U.S. Customs, 163 Fed.App'x 542, 545-46 (9th Cir. 2006) (finding plaintiffs "did [not]…have a private cause of action" under § 484); see also Quigley v. Yelp, Inc., 2018 WL 7204066, at *5 nn. 3-4 (N.D. Cal. Jan. 22, 2018) (holding § 484 "do[es] not provide for a private right of action"; collecting cases). The Court thus turns to the alleged violation of Penal Code § 496.

"[T]he elements required to show a violation of [§ 496] are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." Siry Investment, L.P. v. Farkhondehpour, 13 Cal.5th 333, 354-55 (2022) (internal quotation and citation omitted).

Defendants argue the Fourth Cause of Action is preempted by federal patent law because Jones seeks to use a state law cause of action to raise a challenge as to patent inventorship, and, consequently, "[f]ederal [p]atent [p]reemption requires [Jones] to seek redress under the Patent Act, not under state law." (See Light Field Mot. at 16:21-17:26; see also Individual Defendants' Mot. at 7:25-9:11). In response, Jones contends the Fourth Cause of Action is not preempted by federal patent law because, according to Jones, he "seeks remedies not covered by the Patent Act, and[,] in particular, invalidation

13

of the Confidential Information and Inventions Assignment Agreement," and that the damages he claims "can be determined without resort to patent law as they hinge on the tortious conduct committed by [defendants], not patent validity or ownership." (See Doc. No. 32 ("Opp. to Light Field Mot.") at 9:19-10:8.)

"Federal Circuit law governs whether federal patent law preempts a state law claim," Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1376 (Fed. Cir. 2005), and "federal patent law preempts any state law that purports to define rights based on inventorship," see University of Colorado Foundation, Inc. v. American Cyanamid Co., 196 F.3d 1366, 1372 (Fed. Cir. 1999).

Here, the Fourth Cause of Action, as currently pled, is entirely predicated on Jones' asserted inventorship of two patents for which he was not listed as an inventor. (See FAC ¶ 70 (alleging "theft of personal property,…in the form of [Jones]' right to inventorship of [two] patents); id. ¶ 72 (alleging "Light Field Lab has retained ownership and Karafin and Bevensee have retained inventorship of Patent WO2025042476A1 and WO2024216300A2 that should have been provided to [Jones]"); id. ¶ 73 (alleging "Light Field Lab ha[s] knowingly received and deliberately withheld patent rights from [Jones]… and that said patent rights have been stolen from [Jones]"); id. ¶ 74 (alleging "[Jones] has suffered and continues to suffer a loss of the value of his inventorship"); id. ¶ 76 (alleging "[Jones] is entitled to…invalidate [patents] WO2025042476A1 and WO2024216300A2).)

Given Jones' allegations, the Fourth Cause of Action is preempted by federal patent law. See BearBox LLC v. Lancium LLC, 125 F.4th 1101, 1112-13 (Fed. Cir. 2025) (holding "conversion claim [was] preempted" where it was "replete with 'patent-like' language typically invoked when a party asserts inventorship"); see also Brown v. Brown, 2013 WL 5947032, at *7 (N.D. Cal. Nov. 5, 2013) (finding state tort claim "based on [plaintiff's] contention that he was improperly omitted as an inventor on the…patent application… is preempted").[9]

---

[9] To the extent Jones' Third Cause of Action is predicated on his allegation that he was fraudulently omitted as an inventor of the above-referenced patents (see FAC ¶¶ 40,

14

Accordingly, the Fourth Cause of Action is subject to dismissal.

## V.   Fifth Cause of Action – Civil RICO

The Fifth Cause of Action, brought against all defendants, alleges a violation of 18 U.S.C. § 1962(c), which section makes it "unlawful for any person employed by or associated with any enterprise…to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See 18 U.S.C. § 1962(c).

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation and citation omitted). Additionally, allegations of predicate acts based on fraud must satisfy Rule 9(b). See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004) (holding "Rule 9(b)'s requirement that [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims") (internal quotation and citation omitted).

Here, Jones alleges that "Light Field Lab is an enterprise" (see FAC ¶ 78), and that Karafin and Bevensee "conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity" (see id. ¶¶ 79, 80).

The specified criminal acts that satisfy the "racketeering activity" element are described in 18 U.S.C. § 1961(1), and encompass "mail fraud" in violation of 18 U.S.C.

---

55), such claim is, for the reasons discussed above, likewise preempted by federal patent law.

United States District Court
Northern District of California

§ 1341 and "wire fraud" in violation of § 1343, see 18 U.S.C. § 1961(1), which activity, Jones alleges, Karafin and Bevensee engaged in by "multiple fraudulent communications regarding Patent WO2025042476A1 and WO2024216300A2 using means of interstate communication, including electronic filing, mail and email" (see id. ¶ 81). The FAC, however, does not meet the requirements of Rule 9(b), as it does not include any factual elaboration as to the alleged "multiple fraudulent communications," such as the content of any such communication, what each defendant allegedly said, when such statements were made, or to whom such statements were made.[10]

Further, without the requisite specificity, Jones is unable to satisfy the continuity requirement of the "pattern" element, which requires plaintiffs to "prove either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e., open-ended continuity." See Howard v. America Online Inc., 208 F.3d 741, 750 (9th Cir. 2000) (internal quotation and citation omitted).

Accordingly, the Fifth Cause of Action is subject to dismissal.

## VI.     Sixth Cause of Action – Breach of Fiduciary Duty

The Sixth Cause of Action, brought against defendants LFL and Karafin, alleges a breach of fiduciary duty by said defendants. In particular, Jones alleges, LFL and Karafin "improperly failed and refused to provide necessary information to [Jones] as a shareholder" (see FAC ¶ 87), and that Jones "was prevented from gaining the knowledge necessary to convert and sell his owned shares" (see id. ¶ 88).

To the extent Jones' breach of fiduciary duty claim is brought against LFL, such

---

[10] To the extent Jones argues the predicate acts are alleged with the requisite detail in paragraph 19 of the FAC (see Opp. to Light Field Lab Mot. at 15:11-16:9; Opp. to Individual Defendants' Mot. at 20:15-17), such argument is unpersuasive, as those acts concern patents that have nothing to do with the patents on which he bases his RICO claim (compare FAC ¶ 19, with FAC ¶ 81).

claim fails because, under Delaware law[11], subject to a limited number of exceptions not applicable here, an "issuing corporation does not owe fiduciary duties to its stockholders," see A.W. Financial Services, S.A. v. Empire Resources, Inc., 981 A.2d 1114, 1127 n.36 (Del. 2009) (holding "[u]nder Delaware law, the issuing corporation does not owe fiduciary duties to its stockholders"), and, consequently, cannot be held liable for breach of any such duty, see Buttonwood Tree Value Partners, L.P. v. R.L Polk & Co., Inc., 2014 WL 3954987, at *4 (Del. Aug. 7, 2014) (dismissing breach of fiduciary duty claim asserted against corporation; holding, under Delaware Law, "a corporation does not owe fiduciary duties to its stockholders"); see also Miele v. Franklin Resources, Inc., 2015 WL 4934071, at *16 (N.D. Cal. Aug. 18, 2025) (holding, under Delaware law, "a corporation[] owes no fiduciary duty to…[a]shareholder of that corporation"; collecting cases).

Next, as to Karafin, to the extent Jones' breach of fiduciary duty claim is premised on allegations of acts committed prior to Jones' employment at LFL, namely, statements made by Karafin during Jones' interviews (see FAC ¶¶ 15-16), such claim fails because Jones cannot predicate a breach of fiduciary duty claim on conduct that occurred when he was not a shareholder of LFL, i.e., when he and LFL were not in a fiduciary relationship. See Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (Del. Ch. 2002) (holding, "under established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendant[] at the time of the alleged breach").

Lastly, to the extent Jones' breach of fiduciary duty claim is based on the above-discussed text message exchange between Jones and Karafin in March 2023, during which Jones allegedly asked Karafin whether there was "any additional information [Jones was] entitled [to] or required to be given access to as a shareholder" (see FAC

---

[11] The Court applies Delaware law with respect to plaintiffs' breach of fiduciary duty claim, as "[c]laims involving…breach of fiduciary duties…are subject to the laws of the state of incorporation." See Davis & Cox v. Summa Corp., 751 F.2d 1507, 1527 (9th Cir. 1985).

¶ 17), the allegations fail. In particular, under Delaware law, where, as here, a plaintiff asserts a claim of breach of fiduciary duty predicated on communications that occur outside "a request for stockholder action" such as "approving corporate transactions (mergers, sale of assets, or charter amendments) and making investment decisions," see Dohmen, 234 A.3d at 1168, the "fiduciary duty of disclosure does not apply," see id. at 1169. Although officers and directors "must still deal honestly with stockholders,…to state a claim for breach of fiduciary duty in this context, [they] must have knowingly disclosed false information." See id. Here, there is no allegation that Karafin, in the above-referenced text message exchange, knowingly provided Jones with false information.

Accordingly, the Sixth Cause of Action is subject to dismissal.

## VII.    Seventh Cause of Action – Uniform Fraudulent Transfer Act

The Seventh Cause of Action, brought against defendant LFL, alleges a fraudulent transfer in violation of California's Uniform Fraudulent Transfer Act, California Civil Code § 3439.04(a)(1).

The Uniform Fraudulent Transfer Act provides, in relevant part, as follows:

> "A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation… [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."

See Cal. Civ. Code § 3439.04(a)(1).

Section 3439.04 "lists eleven nonexclusive factors that historically… have been regarded as circumstantial 'badges of fraud' that are probative of intent." See In re Beverly, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007). Here, Jones alleges, defendants violated § 3439.04 because, according to Jones, LFL "transferred the assets of Light Field Lab to CMBG FBC-Light Field Lab LLC, Assignee for the Benefit of Creditors of Light Field Lab, Inc. at a time when [Light Field Lab] had been threatened with [Jones'] lawsuit and had in fact been sued by [Jones]" (see FAC ¶ 93), LFL "retained use and control of the assets…after the transfer" (see id. ¶ 94), and "[a]t the time of the transfer,

[LFL] knew it may be obligated to pay [Jones] a debt as well as turn over certain intellectual property at issue in this lawsuit" (see id. ¶ 95).[12]

Rule 9(b)'s heightened pleading standard applies to claims under § 3439.04(a)(1). See Hale Bros. Investment Co., LLC v. StudentsFirst Institute, 2017 WL 590255, at *3-4 (E.D. Cal. Feb. 14, 2017) (holding Rule 9(b)'s heightened pleading standard applies to "allegations made against the transferor" for claims under Uniform Fraudulent Transfer Act); see also Lachapelle v. Kim, 2015 WL 7753235, at *5 (N.D. Cal. Dec. 2, 2015) (holding, as to fraudulent transfer claims against a corporation, "[t]he requirement of specificity…requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written") (internal quotation and citation omitted).

Here, however, Jones fails to allege facts sufficient to support a finding that LFL made a transfer "[w]ith actual intent to hinder, delay, or defraud any creditor" in violation of the Uniform Fraudulent Transfer Act. See Cal. Civ. Code § 3439.04(a)(1). In that regard, Jones fails to plead with the requisite particularity when such transfer was made (see FAC ¶ 93 (alleging LFL transferred assets "at a time when [d]efendant had been threatened with [Jones]' lawsuit and had in fact been sued by [Jones]"), what particular assets were transferred (see id. (alleging "Light Field Lab transferred the assets of Light Field Lab"); see also id. ¶ 96 (alleging "[t]he intellectual property transferred [was] [d]efendant's principal asset")), or the manner in which LFL has "retained possession or

_____

[12] Although LFL argues "[p]laintiff does not cite any law, nor is LFL aware of any, that would suggest that an [Assignment for the Benefit of Creditors]…can be a violation of the Uniform Fraudulent Transfer Act" (see Light Field Lab Mot. at 30:18-20), LFL cites no authority holding to the contrary, and at least two cases have denied motions to dismiss such fraudulent transfer claims where the defendants therein likewise failed to cite to any such authority. See, e.g., Lachapelle v. Kim, 2015 WL 5461542, at *5-6 (N.D. Cal. Sept. 16, 2015) (evaluating "claim for fraudulent transfer premised on an assignment for the benefit of creditors"); Tatung Co., Ltd. v. Shu Tze Hsu, 43 F.Supp.3d 1036, 1069 (C.D. Cal. 2014) (noting "[t]he Court finds no…authority or basis in the statutory text to hold that the Uniform Fraudulent Transfer Act is inapplicable to assignments for the benefit of creditors").

control of the property transferred after the transfer" (see id. ¶ 94 (alleging LFL "retained use and control of the assets, including but not limited to the intellectual property at issue in this lawsuit, after the transfer"). Such conclusory allegations are insufficient to state a claim for fraudulent transfer under § 3439.04.

Accordingly, the Seventh Cause of Action is subject to dismissal.

**VIII.   Motion to Strike**

In addition to moving to dismiss the Third and Fourth Causes of Action, the Individual Defendants move, pursuant to California's Anti-SLAPP statute, to strike Jones' Third Cause of Action, to the extent it is based on allegations related to said defendants' patent filings, and the Fourth Cause of Action in its entirety. (See Motion to Strike at 6:4-5.)

In support of their claim thereunder, the Individual Defendants contend "[t]he gravamen of [p]laintiff's third…and fourth…causes of action…is [d]efendants' filing, prosecution, and communications with the U.S. Patent and Trademark Office" (see id. at 2:21-25), and that such conduct "is protected petitioning activity under California's anti-SLAPP statute" (see id. at 4:19-21).

Although the Third and Fourth Causes of Action are, as discussed above, subject to dismissal, the Court, given the early stage of the proceedings, will afford Jones leave to amend those claims, and, under such circumstances, the Court will deny the Motion to Strike, without prejudice. See, e.g., Ramachandran v. City of Los Altos, 359 F.Supp.3d 801, 820-21 (N.D. Cal. 2019) (denying without prejudice defendants' Anti-SLAPP motion in light of plaintiff's opportunity to file amended complaint; holding "striking claims…without leave to amend …would directly collide with Rule 15's liberal amendment policy") (internal quotation and citation omitted); Wynn v. Chanos, 75 F.Supp.3d 1228, 1231 n.1 (N.D. Cal. 2014) (denying without prejudice motion to strike brought pursuant to California's Anti-SLAPP statute where complaint was dismissed with leave to amend).

Accordingly, the Individual Defendants' Motion to Strike will be denied.

//

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, defendants' motions are hereby GRANTED IN PART and DENIED IN PART as follows:

1. As to the Individual Defendants' Motion to Dismiss the First Cause of Action, the motion is hereby GRANTED, and said claim is hereby DISMISSED without leave to amend.

2. As to LFL's and the Individual Defendants' Motions to Dismiss the Third through Seventh Causes of Action, the motions are hereby GRANTED, and said claims are hereby DISMISSED with leave to amend.

3. The Individual Defendants' Motion to Strike is hereby DENIED without prejudice.

4. If Jones elects to amend, his Second Amended Complaint shall be filed no later than July 6, 2026.

**IT IS SO ORDERED.**

Dated: June 9, 2026

MAXINE M. CHESNEY
United States District Judge