Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-5118@cases.warrenllp.com

*Counsel for Defendants Jon Karafin and Brendan Bevensee*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALAN JONES,<br><br>    Plaintiff,<br><br>v.<br><br>LIGHT FIELD LAB, INC.,<br>JON KARAFIN, BRENDAN BEVENSEE,<br>and Does 1 to 10,<br><br>    Defendants. | Case No. 3:25-cv-05118-MMC<br><br>**DEFENDANTS JON KARAFIN AND BRENDAN BEVENSEES' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES**<br><br>**Date:**       August 28, 2026<br>**Time:**       9:00 a.m.<br>**Courtroom:**  7 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 28, 2026, at 9:00 a.m., in Courtroom 7, or as soon thereafter as this matter may be heard, before Judge Maxine M. Chesney of the United States District Court for the Northern District of California, located at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Ave, San Francisco, California, 94102, Defendants Jon Karafin and Brendan Bevensee, by and through their undersigned counsel, will move and hereby do move under the Constitution of the United States, applicable statutes and laws, and the Federal Rules of Civil Procedure including 12(b)(6) for an order dismissing all causes of action in Plaintiff's Second Amended Complaint as pleaded against Defendants Karafin and Bevensee.  The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, and all pleadings, papers and oral argument in this action.

Date:  July 20, 2026

Respectfully submitted,

Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-5118@cases.warrenllp.com

*Counsel for Defendants*
*Jon Karafin and Brendan Bevensee*

Case No. 3:25-cv-05118-MMC

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    The Court Should Dismiss Plaintiff's Third Failed Attempt to Plead Fraud . . . . . . . . . . . . . . . . . 2

    A.    The Fraud Claim Is Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . .2

        1.    Jones's Patent Misconduct Fraud Theory is Time Barred . . . . . . . . . . . . . . . . . . 3

        2.    Jones's Equity Fraud Theory is Time Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    The Fraud Claim Is Preempted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    The Fraud Count Still Fails to Plead Essential Elements . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    The SAC Does Not Even Attempt to Plead Plausible Facts Against Bevensee . . . 6

        2.    The SAC Fails to Plead Misrepresentation or Concealment . . . . . . . . . . . . . . . . . 6

        3.    The SAC Fails to Plead Knowledge of Falsity . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.    The SAC Fails to Plead a Duty to Disclose and the Concealment Claims Fail . . 9

        5.    The SAC Fails to Plead Justifiable Reliance or Fraud-Caused Damage . . . . . . . .10

    D.    Dismissal Should Be With Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.   Jones' Trade Secret and Conversion Claims Should Be Dismissed With Prejudice . . . . . . . . . . 13

    A.    Jones Cannot Plead Ownership as the Copyright Act Vests Ownership in LFL . . . . . . . 13

    B.    Jones Post-Termination Efforts To Claim Ownership Fail . . . . . . . . . . . . . . . . . . . . . . 14

    C.    Jones Fails to Allege Required Elements of His Trade Secret Count . . . . . . . . . . . . . . . .15

        1.    Jones Fails to Allege Specific Acts by the Individual Defendants . . . . . . . . . . . . 16

        2.    The SAC Fails to Plead Any Statutory Misappropriation . . . . . . . . . . . . . . . . . . .16

        3.    The SAC Fails to Allege Reasonable Steps to Preserve Secrecy . . . . . . . . . . . . . 17

        4.    Jones Fails to Plead Damages to Support Misappropriation or Conversion . . . . .17

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

**TABLE OF CONTENTS**

*(continued)*

D.    Jones's Alternative Conversion Claim Fails Because It Is Preempted . . . . . . . . . . . . . . 17

E.    Further Amendment Would Be Futile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

III.    The RICO Claim Fails as the SAC Fails to Remedy the Two Defects Already Identified . . . . . . 18

A.    The Predicate Allegations Still Fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.    The SAC Still Fails to Plead a RICO Pattern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.    The RICO Count Should Be Dismissed With Prejudice . . . . . . . . . . . . . . . . . . . . . . . .21

IV.    The Breach Of Fiduciary Duty Claim Should Be Dismissed with Prejudice . . . . . . . . . . . . . . . .21

A.    The Claim Is Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

B.    The SAC Fails to Plead Required Elements of the Claim . . . . . . . . . . . . . . . . . . . . . . . 23

1.    No Knowing Misrepresentation Is Pleaded . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2.    Jones's Admissions Negate Concealment, Reliance, and Injury . . . . . . . . . . . . 23

3.    Signing Issuance Documents Is Not Actionable . . . . . . . . . . . . . . . . . . . . . . . . .24

C.    Dismissal Should Be With Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

# TABLE OF AUTHORITIES

*Cases*                                                                    *Page*

*A.W. Fin. Servs., S.A. v. Empire Res., Inc.*,
    981 A.2d 1114 (Del. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    625 F.3d 1359 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 7

*Alliance Mortgage Co. v. Rothwell*,
    10 Cal. 4th 1226 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 10, 15

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*An v. Cosman*,
    No. 23-715, 2025 WL 2180575 (Del. Ch. July 31, 2025) . . . . . . . . . . . . . . . . . . . . . . 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9, 10, 14

*Attia v. Google LLC*,
    983 F.3d 420 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 16, 17, 20, 21

*In re Axsome Thers., Inc. Stockholder Derivative Lit.*,
    No. 25-1076, 2026 WL 1983269 (Del. Ch. July 9, 2026) . . . . . . . . . . . . . . . . . . . . . . 23

*Bank of Am. Corp. v. Superior Ct.*,
    198 Cal. App. 4th 862 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Brown v. Brita Prods. Co.*,
    172 F.4th 1113 (9th Cir. 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Cheung v. Keyuan Petrochem., Inc.*,
    No. 11-9495, 2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) . . . . . . . . . . . . . . . . . . . . . 17

*Cisco Sys., Inc. v. Chung*,
    No. 19-7562, 2023 WL 2622155 (N.D. Cal. Mar. 22, 2023) . . . . . . . . . . . . . . . . . . . . 13

*Cohen v. Wedbush, Noble, Cooke, Inc.*,
    841 F.2d 282 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

**TABLE OF AUTHORITIES**
*(continued)*

*Cases*                                                                                          *Page*

*Comm. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Cubic Corp. v. Marty*,
    185 Cal. App. 3d 438 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Dean Witter P'ship Litig.*,
    1998 WL 442456 (Del. Ch. July 17, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Dimmick v. N. Calif. Inst. for Rsch. & Educ.*,
    No. 04-4965, 2005 WL 2347116 (N.D. Cal. Sept. 26, 2005) . . . . . . . . . . . . . . . . . . . .6

*Dohmen v. Goodman*,
    234 A.3d 1161 (Del. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-23

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058, 1065-66 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ellis v. J.P. Morgan Chase & Co.*,
    No. 12-3897, 2016 WL 5815733 (N.D. Cal. Oct. 5, 2016) . . . . . . . . . . . . . . . . . . . . . 7

*Eurosemillas, S.A. v. PLC Diagnostics, Inc.*,
    No. 17-3159, 2019 WL 1960342 (N.D. Cal. May 2, 2019) . . . . . . . . . . . . . . . . . . . . . 8

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2-4, 22

*Frankston v. Aura Sys., Inc.*,
    161 F.3d 12 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Fuller v. First Franklin Fin. Corp.*,
    216 Cal. App. 4th 955 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Gen. Elec. Co. v. Wilkins*,
    No. 10-674, 2011 WL 1740420 (E.D. Cal. May 5, 2011). . . . . . . . . . . . . . . . . . . . . . 14

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21

*Gutierrez v. Mofid*,
    39 Cal.3d 892 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21, 25

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

**TABLE OF AUTHORITIES**
*(continued)*

*Cases*                                                                              *Page*

*Huff Energy Fund, L.P. v. Gershen,*
    2016 WL 5462958 (Del. Ch. Sept. 29, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*InteliClear, LLC v. ETC Glob. Holdings, Inc.,*
    978 F.3d 653 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Irish v. FCA US, LLC,*
    No. 24-2726, 2026 WL 252490 (C.D. Cal. Jan. 16, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*James v. J2 Cloud Servs. Inc.,*
    No. 16-5769, 2018 WL 6092461 (C.D. Cal. Nov. 19, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jozinovich v. JP Morgan Chase Bank, N.A.,*
    No. 09-3326, 2010 WL 234895 (N.D. Cal. Jan. 14, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*JustMed, Inc. v. Byce,*
    600 F.3d 1118 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kanaan v. Yaqub,*
    799 F. Supp. 3d 960 (N.D. Cal. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 17, 19, 20

*Laine v. Wells Fargo Bank, N.A.,*
    No. 13-4109, 2014 WL 793546 (N.D. Cal. Feb. 26, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Latesco, L.P. v. Wayport, Inc.,*
    No. 4167, 2009 WL 2246793 (Del. Ch. July 24, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lazar v. Superior Ct.,*
    12 Cal.4th 631 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,*
    431 F.3d 353 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Maganallez v. Hilltop Lending Corp.,*
    505 F. Supp. 2d 594 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Malone v. Brincat,*
    722 A.2d 5 (Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Miele v. Franklin Res., Inc.,*
    No. 15-199, 2015 WL 4934071 (N.D. Cal. Aug. 18, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Miller v. Yokohama Tire Corp.,*
    358 F.3d 616 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

## TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                                    *Page*

*Nemec v. Shrader,*
   991 A.2d 1120 (Del. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Norgart v. Upjohn Co.,*
   21 Cal. 4th 383 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23

*Oracle Am., Inc. v. Google Inc.,*
   750 F.3d 1339 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Palleson v. Bos. Sci. Corp.,*
   No. 21-1037, 2021 WL 5633015 (S.D. Cal. Dec. 1, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Parsons v. Tickner,*
   31 Cal. App. 4th 1513 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Punian v. Gillette Co.,*
   No. 14-5028, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Rattagan v. Uber Techs., Inc.,*
   17 Cal. 5th 1 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Reilly v. Horn,*
   No. 24-654, 2025 WL 2781735 (Del. Ch. Sept. 30, 2025), *aff'd*
   2026 WL 1256598 (Del. May 7, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Rochlis v. Walt Disney Co.,*
   19 Cal. App. 4th 201 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 24

*Rosenthal v. Great W. Fin. Sec. Corp.,*
   14 Cal. 4th 394 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Rubinstein v. SAP AG,*
   2012 WL 726269 (N.D. Cal. Mar. 1, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.,*
   204 F.3d 1368 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 19

*Sikhs for Justice Inc. v. Facebook, Inc.,*
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18, 21, 25

*Silkiss v. Lee,*
   No. 18-682, 2018 WL 11471621 (N.D. Cal. Nov. 19, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

*Silvaco Data Sys. v. Intel Corp.,*
   184 Cal. App. 4th 210 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

# TABLE OF AUTHORITIES
*(continued)*

*Cases*              *Page*

*Sprewell v. Golden State Warriors*,
266 F.3d 97 (9th Cir.),
*opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 7

*SOS Co. v. E-Collar Techs., Inc.*,
No. 16-9667, 2017 WL 5714716 (C.D. Cal. Oct. 17, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3

*Stansfield v. Starkey*,
220 Cal. App. 3d 59 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*TextileProds., Inc. v. Mead Corp.*,
134 F.3d 1481 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Turner v. Cook*,
362 F.3d 1219 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
411 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 5

*Vazquez v. DataRobot, Inc.*,
No. 22-7619, 2023 WL 6323101 (N.D. Cal. Sept. 28, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Vera v. REL-BC, LLC*,
66 Cal. App. 5th 57 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 8, 16, 19

*Viera v. Bank of Am., N.A.*,
No. 15-5590, 2015 WL 12752882 (C.D. Cal. Oct. 28, 2015) . . . . . . . . . . . . . . . . . . . . . . . . .4, 11

*Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
50 Cal. 4th 913 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Waymo LLC v. Uber Techs., Inc.*,
256 F. Supp. 3d 1059 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wong v. Stoler*,
237 Cal. App. 4th 1375 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

# TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                 *Page*

*x.AI Corp. v. OpenAI, Inc.*,
    821 F. Supp. 3d 1100 (N.D. Cal. 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Statutes*

17 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

17 U.S.C. § 102(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17 U.S.C. § 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13-15

18 U.S.C. § 1832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

18 U.S.C. § 1839(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

35 U.S.C. § 261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 7

35 U.S.C. § 281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Cal. Code Civ. Proc. § 338(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3, 22

Cal. Code Civ. Proc. § 1691 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Code Civ. Proc. § 3426.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Second Amended Complaint (the "SAC") represents plaintiff Alan Jones's third failed effort to transform a routine workplace disagreement at Light Field Lab Inc. into claims against individual defendants Jon Karafin and Brendan Bevensee. Jones wrongly attempts to characterize his employment grievances as counts for fraud, breach of fiduciary duty, civil RICO, and trade secret misappropriation. This Court previously dismissed all claims against Karafin and Bevensee, permitting amendment to the fraud, RICO, and fiduciary duty theories, but the SAC's expanded length and verbiage does not cure the dispositive defects in those claims. The RICO count still fails because a private employment dispute does not meet the predicate act requirement and does not constitute a racketeering pattern. The newly-minted trade secret misappropriation claim collapses under the SAC's own admissions that Jones developed and assigned the source code to LFL. Finally, the SAC pleads facts showing every count is barred by the statute of limitations. The Court should dismiss all claims against defendants Karafin and Bevensee, this time with prejudice.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must state a claim that is "'plausible on its face'" by pleading "sufficient factual matter." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires more than a "sheer possibility" of misconduct, and facts "'merely consistent with'" liability fall short of the plausibility threshold, as the Court need not accept conclusory statements, unreasonable inferences, or allegations contradicted by judicially noticeable matters or incorporated exhibits. *Id.*; *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### FACTUAL BACKGROUND

In evaluating this motion, the Court's review is confined to the Second Amended Complaint and documents subject to judicial notice, which asserts the Third, Fourth, Fifth, and Sixth Counts against defendants Karafin and Bevensee (collectively, the "Individual Defendants"). The SAC and judicially noticed documents establish the necessary background for this motion, and those alleged facts need not be repeated here. To the extent the pleaded facts are relevant to a particular argument, they are

addressed in context below.

<strong><u>LEGAL ARGUMENT</u></strong>

**I.     The Court Should Dismiss Plaintiff's Third Failed Attempt to Plead Fraud**

This Court previously dismissed Jones's fraud claim against the Individual Defendants in its entirety.  Dkt. No. 67 at 7:9 to 13:3.  The SAC adds narrative in an attempt to manufacture a viable claim, but fails to cure the defects as the claim rests on the same operative facts as the First Amended Complaint, regrouped into three categories:  (1) the interview statement that LFL held "hundreds of patents" and other interview-related statements; (2) a concealment theory recycling Jones' theory built on the LFL portfolio's alleged Lytro "provenance" and withheld prior-art references; and (3) a rephrased equity theory now premised on Karafin's August 2019 email and alleged non-disclosure of terms in the governing Plan documents.  SAC ¶¶ 13-24, 27-28, 30-31, 66-71, 119-23.  Jones's wordsmithing fails to save his untimely and unactionable fraud claim, and it should be dismissed with prejudice.

**A.     The Fraud Claim Is Barred by the Statute of Limitations**

Under California law, "[f]raud claims are subject to a 3-year statute of limitations," and accrue on actual or inquiry notice of "the facts constituting the fraud or mistake."  *Irish v. FCA US, LLC.*, No. 24-2726, 2026 WL 252490, at *4 (C.D. Cal. Jan. 16, 2026) (citing Cal. Code Civ. Proc. § 338(d)); *see also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005).  The SAC's allegedly fraudulent statements were made in 2019, and associated with Jones's recruitment and hiring, *see e.g.*, SAC ¶¶ 26-31, 121, 124, and plaintiff's claimed acts of reliance—resignation from Microsoft and exercising options—concluded no later than 2021.  *Id.* ¶¶ 64-65.  Jones had until 2024 to sue, but did not file until 2025.  On the face of the SAC, the fraud claim is untimely and is barred by the statute of limitations.  *Irish*, 2026 WL 252490, at *4.[1]  As the action is barred, plaintiff has the burden of showing that the discovery rule applies, *SOS Co. v. E-Collar Techs., Inc.*, No. 16-9667, 2017 WL 5714716, at *7 (C.D. Cal. Oct. 17, 2017), and must affirmatively plead facts excusing his delayed discovery.  *Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (2021).  The SAC fails to explain or excuse this negligence,

---

[1] Jones recycles the same allegation that he was defrauded because Karafin stated in an interview held in August 2019 "that Light Field Lab had a large theme park customer," and anticipated delivery "the following year" that ultimately did not materialize.  SAC ¶ 28; FAC ¶ 13.  But the Court previously found on these same facts that "Jones fails, however, to allege facts sufficient to support a finding that Karafin's representation that Universal Studios was a customer of LFL was false at the time the statement was made to him."  Dkt. No. 67 at 9:17-19.

instead pleading facts showing that Jones cannot rely on the delayed discovery rule. *SOS*, 2017 WL 5714716, at *7; *Irish*, 2026 WL 252490, at *4.

### 1.    Jones's Patent Misconduct Fraud Theory is Time Barred

A fraud claim accrues when "complete with all of its elements." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999); *see also Fox*, 35 Cal. 4th at 806; *Attia v. Google LLC*, 983 F.3d 420, 425-26 (9th Cir. 2020). Jones admits the relevant facts that start the limitations clock: the patents, assignments, inventor declarations, and prosecution histories that were "established by the public Patent Office record" and available from 2017 through 2019. SAC ¶¶ 13, 19, 25. All elements of Jones's fraud claim concerning the value of LFL's patent portfolio were complete by November 26, 2019, when U.S. Patent No. 10,488,584 issued without the allegedly required disclosures. *Id.* ¶¶ 13-14, 20-25, 27, 29. Therefore, the statute of limitations expired on November 26, 2022, and Jones' claims are presumptively untimely. *Irish*, 2026 WL 252490, at *4; *Fox*, 35 Cal. 4th at 808; *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73-75 (1990); Cal. Code. Civ. Proc. § 338(d).

Under the discovery rule, "plaintiffs are charged with presumptive knowledge of an injury if they have 'information of circumstances to put [them] on inquiry' or if they have 'the opportunity to obtain knowledge from sources open to [their] investigation.'" *Fox*, 35 Cal. 4th at 807-08 (quoting *Gutierrez v. Mofid*, 39 Cal.3d 892, 896-97 (1985)). While Jones pleads that he had no "reason to audit" these records until May 2025, the test is not directed to Jones' motivation to look; it is inquiry notice. *Irish*, 2026 WL 252490, at *4. Jones pleads that LFL's patent portfolio induced him to join the company in 2019; consequently, he had every reason to access this publicly available information. SAC ¶¶ 25, 34-35, 124. Jones affirmatively pleads that the dispositive facts were publicly available and required only a review and comparison of published information, which plaintiff only conducted after "reflecting" upon his contributions after he was fired. *Id.* ¶¶ 35, 145; *Fox*, 35 Cal. 4th at 807-08; *Stansfield*, 220 Cal. App. 3d at 73-75. As no objectively reasonable investigation beyond consulting these public records was needed, the delayed-discovery rule does not apply.

### 2.    Jones's Equity Fraud Theory is Time Barred

The SAC's admission that "Light Field Lab first presented the Plan and the form Option Agreement to Mr. Jones on January 2, 2020," is dispositive and forecloses any claim of delayed

discovery on Jones' equity theory of fraud. SAC ¶ 67.[2] The terms that Jones claims were "never disclosed" from him appear in those documents, *id.* ¶¶ 31, 66-71,[3] and to the extent there was any delay, it was only until he received the written Plan on January 2, 2020, which he signed. "[I]t is black letter law that parties are presumed to understand the contents of the documents they execute," *Silkiss v. Lee*, No. 18-682, 2018 WL 11471621, at *3 (N.D. Cal. Nov. 19, 2018), thus Jones had actual, written notice of each equity term, the alleged discrepancy from any earlier oral assurances, and the integration clause which confirm that the Plan "sets forth the entire agreement and understanding of the parties" and "supersedes all prior or contemporaneous discussions, understandings and agreements, whether oral or written," no later than January 2, 2020, starting the statute of limitations clock. Dkt. No. 30-2, Ex. 3-A, Plan § 13(b); *see id.*, Exercise Agreement § 8(b);[4] *Viera v. Bank of Am., N.A.*, No. 15-5590, 2015 WL 12752882, at *5-7 (C.D. Cal. Oct. 28, 2015) (collecting cases). A plaintiff who possesses the governing written terms cannot defer accrual of a claim that those terms differ from a prior representation—Jones' claim expired in January 2023, rendering it time barred. *See id.*; *Fox*, 35 Cal. 4th at 807-08.

**B.     The Fraud Claim Is Preempted**

Federal law preempts any state cause of action that offers "patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989). "Federal Circuit law governs whether federal patent law preempts a state law claim." *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005); *see also* Dkt. No. 67 at 14:5-9. This Court has already held that federal patent law preempts state-law claims that purport to define patent rights and dismissed Jones' inventorship-

---

[2] This Court can take judicial notice of this agreement, *see* concurrently-filed Request for Judicial Notice.

[3] *See* The Company's repurchase right on termination (Dkt. No. 30-2, Ex. 3-A, LFL's 2017 Stock Incentive Plan (the "Plan") § 8(b)(i)); the Company's right of first refusal, (*id.* § 16); the mandatory ROFR/Co-Sale and Voting Agreement adherence and resulting transfer restrictions (*id.*, Exercise Agreement §§ 3, 5(b)-(c)); and even the waiver of his Section 220 inspection rights is expressly recited in the agreement. *Id.* § 7. The dilution Jones complains of is likewise disclosed on the face of the Plan, which provides that, except for stock splits and similar events, "'no issuance by the Company of shares of stock of any class . . . shall affect, and no adjustment by reason thereof shall be made with respect to, the number or price of Shares subject to an Award.'" SAC ¶ 30 (quoting Ex. 3-A, Plan § 10(a)).

[4] Jones reaffirmed this agreement each time he exercised, through April 29, 2021. Dkt. No. 30-2, Ex. 1-A at 1-5. The specific transactions through which he alleges to have advanced funds in reliance were completed by May 2021, at the latest. SAC ¶¶ 64-65. Even if the claim accrued in May 2021, which it did not, it would remain untimely.

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

based fraud allegations on that ground. Dkt. No. 67 at 14:5 to 15:1 & n.9. The SAC requires a reapplication of that ruling. In the SAC, Jones pleads the same inventorship and ownership grievance that was present in the FAC, relabeled as a challenge to "provenance, defensibility, and valuation" of the LFL patents. SAC ¶¶ 13, 23, 25, 36, 113, 121. The words may have changed, but the patent law implications have not, and preemption turns on substance, not labels—a state-law fraud claim resting on patent focused conduct "clashes with the balance struck by Congress" and cannot stand. *Bonito Boats*, 489 U.S. at 152; *Ultra-Precision*, 411 F.3d at 1382. Conduct before the U.S. Patent Office cannot be repackaged as a state-law claim, and "an application that has not yet matured into a patent cannot properly be deemed" property. *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1380 (Fed. Cir. 2000). The SAC focuses on submissions made to the Patent Office, including alleged knowing omissions across "five separate Information Disclosure Statements." SAC ¶ 22; *see id.* ¶¶ 8, 14, 19, 21-22. Stripped of its labels, the substance of Jones's patent-based fraud theory is a charge of inequitable conduct before the Patent Office and is therefore preempted. *See Semiconductor*, 204 F.3d at 1373-78; *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-92 (Fed. Cir. 2011); *James v. J2 Cloud Servs. Inc.*, No. 16-5769, 2018 WL 6092461, at *6 (C.D. Cal. Nov. 19, 2018).

The preemption defect is compounded by a standing defect that independently defeats the theory and confirms its impropriety. LFL is the owner of record and is therefore presumed to own the patents. 35 U.S.C. § 261; Dkt. No. 67 at 11:12. The "substantial questions" Jones invokes as the source of the portfolio's supposed impairment, SAC ¶¶ 13, 19, are his alone. No third party, including Lytro, has ever challenged that ownership, and Jones concedes that he does not own the patents. He therefore lacks standing to litigate a stranger's asserted ownership rights. *See, e.g.*, *Abraxis Biosci., Inc. v. Navinta LLC*, 625 F.3d 1359, 1364-67 (Fed. Cir. 2010); *TextileProds., Inc. v. Mead Corp.*, 134 F.3d 1481, 1483 (Fed. Cir. 1998) (citing 35 U.S.C. § 281)). Jones cannot manufacture a fraud injury out of doubts he himself generated, or his own speculation about the merits of the PTO's issuance decisions.

### C.    The Fraud Count Still Fails to Plead Essential Elements

Fraud requires misrepresentation, scienter, intent to induce reliance, justifiable reliance, and resulting damage. *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995); Dkt. No. 67 at 8:22-25. Concealment adds the requirement that there be a duty to disclose. *See Rattagan v. Uber*

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

*Techs., Inc.*, 17 Cal. 5th 1, 40 (2024); *see also* Dkt. No. 67 at 10:14-20.  And averments of fraud must satisfy Rule 9(b)'s heightened pleading requirement to identify the "who, what, when, where, and how." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also* Dkt. No. 67 at 9:3-4.  The Third Cause of Action remains deficient on every element.

### 1.      The SAC Does Not Even Attempt to Plead Plausible Facts Against Bevensee

Bevensee should be dismissed outright:  no actionable misrepresentation or concealment is attributed to him.  The "hundreds of patents" and equity statements are attributed to Karafin alone, SAC ¶¶ 27, 30, 120-122, and the allegations as to Bevensee reduce to company recruiting and co-inventor knowledge.  *Id.* ¶¶ 19-23, 26, 34-35.  Rule 9(b) forbids such group pleading and requires that each defendant's role be pleaded with particularity.  *Kearns*, 567 F.3d at 1124-25; *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  Jones has had "multiple opportunities to attempt to state a claim," and has yet to state a claim against Bevensee; this claim should be dismissed with prejudice.  *Dimmick v. N. Calif. Inst. for Rsch. & Educ.*, No. 04-4965, 2005 WL 2347116, at *6 (N.D. Cal. Sept. 26, 2005).

### 2.      The SAC Fails to Plead Misrepresentation or Concealment

Jones's first fraud theory is a repeat of the FAC, that Karafin said that LFL had "hundreds of patents."  SAC ¶¶ 27, 118, 120, 122.  This court has already disposed of this allegation, on the same facts.  *See* Dkt. No. 67 at 11:1-17.  A true statement cannot be fraud.  *See Laine v. Wells Fargo Bank, N.A.*, No. 13-4109, 2014 WL 793546, at *5 (N.D. Cal. Feb. 26, 2014).  Nor can Jones revive the theme-park statement (SAC ¶ 28) by recasting it as an inducement with scienter "established by Defendants' patent-filing conduct" (*id.* ¶ 29); on its face it remains a non-actionable prediction about a future product launch.  *See* Dkt. No. 67 at 9:6 to 10:7.

For the second theory, the SAC seeks to substitute the dismissed patent-based allegations with averments challenging the "provenance" of LFL's patent portfolio.  SAC ¶¶ 13-25, 33-35, 114. "Provenance" here means nothing more than the chain of ownership of the patents.  *Id.* ¶ 13 (LFL's "title to them is defective"), *id.* ¶ 20 ("left a defect in Light Field Lab's title").  That is the same patent-ownership grievance the FAC pleaded and the Court already rejected.  Dkt. No. 67 at 11:1-17.

In the SAC, Jones adds averments directed to the "comprehensiveness, value and security of the

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

portfolio." SAC ¶¶ 23-25, 27, 36, 114.  This is nothing more than Jones's own opinion, formed years later, about what he infers from the prosecution histories.  *Id.* ¶¶ 18, 120.  The SAC never alleges that Karafin or Bevensee falsely represented that the portfolio was comprehensive, secure, or free of risk. *See generally id.*  Jones's characterization of the patents as having questionable ownership (provenance) or lacking validity is his opinion, not a statement of fact.  He points to nothing other than his own opinion for these allegations, and a plaintiff cannot ground a fraud claim on a misrepresentation he supplies himself.  *See Ellis v. J.P. Morgan Chase & Co.*, No. 12-3897, 2016 WL 5815733, at *6 (N.D. Cal. Oct. 5, 2016); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004).

The SAC's relabeling of the patent claims fails for another fundamental reason:  the owner of record at the Patent Office is presumed to own the patent, and that presumption forecloses Jones's contrary theory.  *See* 35 U.S.C. § 261 (recordation of patent assignments); Dkt. No. 67 at 11:12 (the identified patent "was issued to LFL").  Moreover, Jones cannot ground his fraud claim on speculation of a third party's ownership rights.  *See Abraxis*, 625 F.3d at 1364-67.  Jones does not claim to own the patents himself-—no third party, including Lytro, has come forward to claim ownership, and there are no such facts in the SAC supporting lack of ownership.  Stripped of its label, the SAC pleads only Jones's unsupported opinion that the Patent Office should have vested ownership somewhere other than LFL, a bare conclusion with no supporting facts that the Court need not accept.  *Iqbal*, 556 U.S. at 678.  The patents are, as a matter of the presumptive public record, owned by LFL.

For his third theory, Jones contends Karafin promised that his shares would not be diluted.  But the very quotation on which Jones relies says the opposite—Karafin wrote that "each round of investment ***provides dilution*** for our investors every time the . . . value of the company increases."  SAC ¶ 121 (emphasis added).  Jones's fraud theory contradicts the document he pleads in the SAC.  The document Jones relies on lacks any promise of non dilution, and it contains an integration clause (*see supra* § I.A.2), and acknowledgment that Jones "had an opportunity to consult counsel during the Option terms" (Dkt. No. 30-2, Ex. 3-A § 8).  That document, not Jones' litigation-driven pleading, controls. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

Jones's recycled equity theory is also directly contradicted by the Plan document governing Jones's grant which adjusts an award only for a "stock split, reverse stock split, stock dividend, combination, consolidation, reclassification of the Shares or subdivision of the Shares," and then provides in no uncertain terms:  "Except as expressly provided herein, no issuance by the Company of shares of stock of any class, or securities convertible into shares of stock of any class, shall affect, and no adjustment by reason thereof shall be made with respect to, the number or price of Shares subject to an Award."  Dkt. No. 30-2, Ex. 3-A § 10(a).  Because ordinary share issuances in financing rounds are neither splits, dividends, nor recapitalizations, the Plan confirms that Jones's grant was subject to dilution, the exact opposite of the "non-dilution" promise his fraud theory requires.  Though Jones claims not to have received the plan document until January 2020, he has had them for six years, and proceeded to exercise his options three separate times in 2020 and 2021 after receiving the document.  *See* Dkt. No. 30-2, Ex. 3-A at 1-5.  These facts are fatal to Jones' litigation-driven fraud theory.

### 3.    The SAC Fails to Plead Knowledge of Falsity

Even if the SAC pleaded an actionable misrepresentation, it fails at the second element—knowledge of falsity—as to both Individual Defendants.  Fraud requires that the speaker knew the representation was false when made, *Alliance*, 10 Cal. 4th at 1239; *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996), and Rule 9(b) requires that scienter be pleaded with specific and individualized facts, not through conclusory, group pleadings.  *See supra* § I.C; *Vess*, 317 F.3d at 1103; *Eurosemillas, S.A. v. PLC Diagnostics, Inc.*, No. 17-3159, 2019 WL 1960342, at *6 (N.D. Cal. May 2, 2019).

The "hundreds of patents" statement cannot satisfy this element because it was true.  The SAC pleads no facts showing Karafin believed otherwise at the time he spoke.  SAC ¶ 27; Dkt. No. 67 at 11.[5]  The forward-looking theme-park and option-value statements fail for the reason the Court already gave: Jones "has not alleged that at the time the above statements were made Karafin did not anticipate" the predicted outcome or "had knowledge of facts that would not warrant such prediction."  Dkt. No. 67 at 9:26 to 10:1; SAC ¶¶ 28, 121; *see Eurosemillas*, 2019 WL 1960342, at 8-9 ("months to market" and similar forecasts not fraudulent absent facts showing falsity when made); *Maganallez v. Hilltop Lending* //

---

[5] Bevensee is not alleged to have made this or any other statement to Jones, but is alleged to be a co-inventor who "shared Karafin's knowledge" of the portfolio's provenance.  *See* SAC ¶¶ 26, 34-35.

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

*Corp.,* 505 F. Supp. 2d 594, 606 (N.D. Cal. 2007).  The SAC does not cure that gap—it repleads the same predictions without alleging contrary knowledge held when Karafin spoke.

The "theme park" or product readiness statements cannot satisfy this element and the SAC does not even attempt to plead that the Individual Defendants knew these statements were false at the time they were made, recognizing this deficiency.  Instead, Jones asserts that whether Mr. Karafin had knowledge of the truth of the statement at the time he made the statement was made is "not something Mr. Jones must independently establish," because "the scienter for his fraudulent-inducement claim is established by Defendants' patent-filing conduct."  SAC ¶ 29.  This concession is dispositive.  Scienter as to a prediction about a customer and a launch date cannot be supplied by borrowing an unrelated theory about prior-art disclosures to the Patent Office, a theory that is itself non-actionable and preempted.  *See supra* § I.B.  A plaintiff who admits he cannot plead that the speaker disbelieved his own statement has not pleaded scienter; he has pleaded its absence.  What remains is the SAC's bare recitation that Defendants "knew" representations "to be false" concerning the patent portfolio.  SAC ¶ 124.  But this is precisely the formulaic recitation of the elements that Rule 9(b) and *Iqbal* forbid, and fails to attribute scienter to each defendant.  556 U.S. at 678; *Kearns*, 567 F.3d at 1124-25; *Swartz*, 476 F.3d at 764-65; Dkt. No. 67 at 4, 9.

**4.    The SAC Fails to Plead a Duty to Disclose and the Concealment Claims Fail**

A duty to disclose arises only from a fiduciary relationship, exclusive knowledge, active concealment, or a partial representation.  *See Punian v. Gillette Co.*, No. 14-5028, 2016 WL 1029607, at *9 (N.D. Cal. Mar. 15, 2016).  The Court has already applied that framework to this very claim and found no duty, holding that Jones "failed to allege facts sufficient to support a finding that Karafin, during Jones' job interview, had a duty to disclose the information" Jones says was withheld.  Dkt. No. 67 at 10.  The SAC does not cure that defect; it repleads the same recruitment relationship at greater length, but volume cannot hide the defects.  Every concealment the SAC alleges arose during that same recruitment and hiring period.  At each relevant point Jones was a prospective, then newly hired, at-will employee, not a shareholder or fiduciary beneficiary.  SAC ¶¶ 11, 26 (recruitment began August 2019; Jones accepted September 9, 2019); *see id.* ¶¶ 27-31, 33 (interview and email representations and equity terms during hiring).  An arm's-length recruitment imposes no duty on the employer, much less on

individual officers, to volunteer every fact a candidate might find material. *Bank of Am. Corp. v. Superior Ct.*, 198 Cal. App. 4th 862, 870-73 (2011); *Punian*, 2016 WL 1029607, at *9. This Court so held as to the option information, and the identical pre-employment posture defeats the provenance and equity-terms theories alike. Dkt. No. 67 at 10:20-28; SAC ¶¶ 18-25, 30-31.

The remaining three circumstances fare no better. There is no active concealment: the only conduct alleged is the renaming of patent terminology in filings the SAC concedes are part of "the public Patent Office record." *Id.* ¶ 25. Nor is there exclusive knowledge: Jones's own pleading concedes the operative facts are "established by the public Patent Office record." *Id.* ¶¶ 13, 25. A fact of public record cannot be a fact within a defendant's exclusive knowledge, and Jones is charged with knowledge of what those records disclose where he "has 'the opportunity to obtain knowledge from sources open to [his] investigation (such as public records or corporation books).'" *Palleson v. Bos. Sci. Corp.*, No. 21-1037, 2021 WL 5633015, at *3 (S.D. Cal. Dec. 1, 2021) (quoting *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995)); *see Stansfield*, 220 Cal. App. 3d at 73-75. His contrary allegations that the derivation was "not public knowledge" and "affirmatively concealed," SAC ¶¶ 34-35, are bare conclusions contradicted by his own pleading and need not be accepted. *Iqbal*, 556 U.S. at 678; *see* Dkt. No. 67 at 4:15-21.

Jones's contrary allegation makes the contradiction explicit: he pleads that the Lytro derivation "was within Defendants' exclusive knowledge," SAC ¶ 128, while pleading in the same complaint that the operative facts were "established by the public Patent Office record," *id.* ¶¶ 13, 25. An allegation that a fact was within a defendant's "exclusive knowledge" cannot be squared with the plaintiff's own admission that the fact was public, and the Court need not credit the former. *Iqbal*, 556 U.S. at 678; *see* Dkt. No. 67 at 4:15-21. Finally, the fact that Karafin truthfully stated LFL held "hundreds of patents" did not obligate him to volunteer every question about the portfolio's provenance, least of all facts the SAC concedes were of public record. SAC ¶ 25; *see Punian*, 2016 WL 1029607, at *9; Dkt. No. 46 at 11-13. If as Jones pleads, the patent history files were important to his decision to join LFL, it was incumbent upon him to review those records that he admits were available to him.

### 5.    The SAC Fails to Plead Justifiable Reliance or Fraud-Caused Damage

Justifiable reliance and resulting damage are separate, essential elements of fraud. *Alliance*, 10 Cal. 4th at 1239; Dkt. No. 67 at 8:24-25. The SAC pleads neither.

Reliance is not justifiable where the facts were public. The SAC admits the provenance facts were "established by the public Patent Office record," SAC ¶ 25, yet simultaneously alleges Jones did not examine that record until 2025, *id.* ¶ 128; the very definition of a reliance theory that refutes itself. A plaintiff cannot claim reliance on the concealment of facts "readily accessible in the public record," least of all a rendering engineer who forgoes a record he concedes was material to him. *Palleson*, 2021 WL 5633015, at *3. That the facts were public is fatal to reliance for the same reason it is fatal to the duty element. *See supra* § I.C.4.

Reliance on predictions—like those alleged during Jones's interview——is not justifiable. The Court has already held that the option-value and product-launch statements were non-actionable predictions, Dkt. No. 67 at 9:6 to 10:4. Furthermore, Jones cannot reasonably rely on an opinion predicting how an equity grant will perform in future financing rounds (SAC ¶¶ 30, 121), as it is common knowledge that equity grants are inherently subject to risk. The equity theory independently fails on falsity: Jones's own pleading quotes Karafin explaining that "each round of investment provides dilution . . . every time the . . . value of the company increases," *id.* ¶ 121, which is the opposite of the non-dilution promise the theory requires. *See supra* § C.2.

Reliance on oral statements is not justifiable in light of an integrated contract. Jones admits Light Field Lab "first presented the Plan and the form Option Agreement to Mr. Jones on January 2, 2020." SAC ¶ 67. The terms he says were concealed are contained in those very documents. *Id.* ¶¶ 31, 66-71; *see supra* § I.A.2. And the Exercise Agreement he accepted confirmed those documents "set forth the entire understanding . . . and supersede all prior agreements, promises and/or representations." Dkt. No. 30-2, Ex. 3-A, Plan § 8(b); *see supra* § I.A.2. A plaintiff cannot justifiably rely on prior oral assurances that a written, integrated agreement he possessed expressly supersedes. *Viera*, 2015 WL 12752882, at *5-7; *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 288 (9th Cir. 1988), *overruled on other grounds by Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931 (9th Cir. 2001). And, importantly, Jones' continued reliance defeats the claim. Jones's own pleading proves he learned the supposedly withheld facts yet stayed the course, negating his claim to justifiable reliance—he possessed the governing equity documents as of January 2, 2020, SAC ¶ 67, continued exercising options and paying the Company through April 29, 2021, *id.* ¶ 64, and remained employed until June 23, 2023. *Id.* ¶ 57; *see, e.g., Rochlis*

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

*v. Walt Disney Co.*, 19 Cal. App. 4th 201, 216 (1993); *Vazquez v. DataRobot, Inc.*, No. 22-7619, 2023 WL 6323101, at *7-8 (N.D. Cal. Sept. 28, 2023); *Rubinstein v. SAP AG*, No. 11-6134, 2012 WL 726269, at *8 (N.D. Cal. Mar. 1, 2012).

Beyond the reliance failures, the Court expressly found that Jones alleged no facts showing "he suffered any injury on account of the allegedly concealed information." Dkt. No. 67 at 10:24-25. That holding is independently dispositive, and the SAC does not cure this defect. By Jones's own account, his option losses flow not from any 2019 recruitment statement but from intervening, post-termination causes: he alleges he lost his vested shares because he "could not afford to exercise" them "due to tax liability" and the 90-day post-termination expiry, and lost unvested shares that would have vested "had LFL not wrongfully terminated" him. SAC ¶¶ 64-65, 68. Those losses are, on the face of the pleading, the product of his 2023 termination, LFL's acts, and his own inability to fund the exercise. They are not alleged to be the result of reliance on any representation about the theme-park customer, the patent portfolio, or the value of the options. Jones therefore pleads no injury caused by any Individual Defendant's alleged misrepresentation, an independent failure of the causation element as to the very defendants seeking dismissal. Dkt. No. 67 at 10. Because Jones' own allegations trace his losses to a different, independent source, Jones' fraud claim independently fails for this reason.

### D. Dismissal Should Be With Prejudice

The fraud count should be dismissed with prejudice. This is Jones's third attempt, and the SAC confirms that the deficiencies are legal, not factual: the claim is time-barred on the face of Jones's own pleading (SAC ¶¶ 27, 30, 64-67, 121), the patent-based theory is preempted as a matter of Federal Circuit law (*id.* ¶¶ 13, 19, 21-22), the "hundreds of patents" statement has already been adjudicated as true (Dkt. No. 67 at 11), and the forward-looking statements remain non-actionable predictions (*id.* at 9-10). Because these are legal bars that no additional allegation consistent with Jones's own pleading could overcome, "granting leave to amend would be futile because th[e] claim is barred as a matter of law." *Sikhs for Justice Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015). Dismissal should be with prejudice.

//

//

**II.    Jones' Trade Secret and Conversion Claims Should Be Dismissed With Prejudice**

For purposes of this motion, the Individual Defendants accept as true every well-pleaded factual allegation in the SAC.  So applied, Jones's own allegations require dismissal of the Fourth Cause of Action against Karafin and Bevensee.  Count Four recharacterizes Jones's (1) "original source code" and the (2) "methods, techniques, and algorithms embodied in it" as "trade secrets," recycling the identical subject matter pleaded in the FAC's patent claims.  SAC ¶¶ 130-31.  When accepted as true, Jones's own allegations defeat his claim on every essential element.  The SAC confirms that the methods are not secret, that he assigned ownership of the purported secrets to Light Field Lab, and that he failed to implement reasonable measures to protect his work from the Individual Defendants.  Jones' claim fundamentally fails because he cannot plead ownership or misappropriation, any claim is expired, and the conversion claim asserted in the alternative is preempted.

**A.    Jones Cannot Plead Ownership as the Copyright Act Vests Ownership in LFL**

Ownership is a required element of both a CUTSA and a DTSA claim.  The plaintiff must hold "rightful legal or equitable title to, or license in," the trade secret.  18 U.S.C. § 1839(4); *Cisco Sys., Inc. v. Chung*, No. 19-7562, 2023 WL 2622155, at *8-9 (N.D. Cal. Mar. 22, 2023).  A trade secret Jones does not own cannot have been misappropriated from him by anyone, including the Individual Defendants.

Ownership of source code is governed by the Copyright Act as a "literary work" fixed in a tangible medium.  17 U.S.C. § 102(a)(1); *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014).  Because a trade-secret plaintiff must own the asserted secret, 18 U.S.C. § 1839(4), the Copyright Act's allocation of ownership controls whether Jones can plead that element as to source code, and confirms that he may not.

Jones's own allegations bring his source code squarely within the Act's "work made for hire" doctrine, under which "the employer or other person for whom the work was prepared is considered the author" and "owns all of the rights comprised in the copyright" unless the parties agree otherwise in a signed writing.  17 U.S.C. §§ 101; 201(b); *Reid*, 490 U.S. at 737.  A work is "made for hire" when it is "a work prepared by an employee within the scope of his or her employment."  *Reid*, 490 U.S. at 738.  Jones pleads exactly that.  He alleges that he "authored a substantial body of original source code" "[t]hroughout his employment," SAC ¶ 36; that the work was among "Light Field Lab's software

development efforts" he was hired to perform, *id.* ¶ 26; that he "developed this work during his employment" and "committed" his "implementation . . . to Light Field Lab's own source-control system . . . beginning at the outset of his employment in September 2019," *id.* ¶ 37; and that the code "became central to Light Field Lab's rendering pipeline," *id.* ¶ 36. Those admissions establish each element of the work-for-hire test. 17 U.S.C. §§ 101, 201(b); *Reid*, 490 U.S. at 737-38, 751-52. Jones's execution of the September 9, 2019 Confidentiality and Proprietary Rights Agreement removes any doubt. He concedes he "signed a Confidentiality and Proprietary Rights Agreement that purported to grant rights to patents and other works for hire to LFL," SAC ¶ 33, and that he "entrusted his original source code and inventions to Light Field Lab under" that agreement, *id.* ¶ 124. The Court has already recognized that this agreement "grant[ed] rights to patents and other works for hire to Light Field Lab." Dkt. No. 67 at 2:4-5; *see also* 17 U.S.C. § 201(b).

That Jones does not own the trade secrets also follows from California law governing employee-developed work. Where an employee signs an invention agreement assigning work created within the scope of his employment, the resulting technology belongs to the employer. *Gen. Elec. Co. v. Wilkins*, No. 10-674, 2011 WL 1740420, at *10 (E.D. Cal. May 5, 2011); *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438, 448-52 (1986). Jones alleges precisely that arrangement: that he "authored, and maintained as confidential," the source code "[t]hroughout his employment," committing it "only to the company's access-controlled source-control system." SAC ¶¶ 131-32. On Jones' own allegations, title to the asserted secrets passed to and remains with LFL when he assigned his work.

**B.      Jones Post-Termination Efforts To Claim Ownership Fail**

Recognizing the written assignment controls, Jones seeks to invalidate his 2020 assignment. This fails for two reasons. First, even if the assignment agreement were voided, Copyright Law's Work for Hire Doctrine would still vest ownership in LFL. *See supra* § II.A.1. Second, the SAC fails to plausibly plead that the assignment agreement is void or was rescinded for fraud. SAC ¶¶ 125, 136. The SAC's assertions that the assignment is void are legal conclusions this Court need not accept. *Iqbal*, 556 U.S. at 678. And on his own pleaded facts they are wrong: Jones pleads fraud in the inducement, which renders a contract voidable rather than void. *Rosenthal v. Great W. Fin.*, 14 Cal. 4th 394, 420 (1996).

To escape the limits of the assignment, Jones was required to rescind it promptly upon

discovering the fraud and to restore all benefits received.  Cal. Code Civ. Proc. § 1691.  He never did: the SAC pleads no notice of rescission and no restoration or offer to restore.  *See* SAC ¶ 129 (alleging this action gave "notice of rescission"); *Jozinovich v. JP Morgan Chase Bank, N.A.*, No. 09-3326, 2010 WL 234895, at *6 (N.D. Cal. Jan. 14, 2010) (asserting rescission does not automatically void a contract).  Jones instead retains all of his employment salary and equity while simultaneously disclaiming the assignment, the "affirm and sue" maneuver California Law strictly forbids.  *See Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 926 (2010).

Nor can Jones rescue the theory by reframing it as fraud in the execution.  He pleads that he "did not read the form Exercise Agreement, including the Section 7 waiver."  SAC ¶ 71.  A party who had the opportunity to read an agreement but neglected to do so cannot avoid it on that basis.  *Silkiss*, 2018 WL 11471621, at *3; *Rosenthal*, 14 Cal. 4th at 415, 423.

Finally, fraudulent inducement requires proving the same elements as fraud.  *Alliance*, 10 Cal. 4th at 1239; *see Wong v. Stoler*, 237 Cal. App. 4th 1375, 1388 (2015).  This Court has already rejected Jones's fraud theory for failure to plead misrepresentation or concealment under Rule 9(b).  Dkt. No. 67 at 8-13.  Because the fraud claim remains legally infirm and is time-barred, *see supra* § I.A, Jones cannot void the assignment.  He remains bound by his original contract and holds no ownership over the trade secrets he now claims were misappropriated.  *Wong*, 237 Cal. App. 4th at 1388; *see also JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125-28 (9th Cir. 2010) (holding that source code written for an employer constituted a "work made for hire" owned by the company).  Jones's pleading places him in precisely the posture those decisions foreclose:  an employee, hired to write software, claiming ownership of the very source code he admits he authored on the job and committed to his employer's systems.  SAC ¶¶ 26, 33, 36-37, 124.  Because the Copyright Act vests ownership of Jones's employment-created source code in LFL, and because Jones concedes he authored it within the scope of his employment and assigned it in writing, Jones cannot plead the ownership element his trade-secret and conversion claims require.  17 U.S.C. § 201(b); 18 U.S.C. § 1839(4).

### C.      Jones Fails to Allege Required Elements of His Trade Secret Count

Jones' trade secret claim independently fails because the SAC does not plead required elements of misappropriation against the individual defendants.  Both the Defend Trade Secrets Act ("DTSA")

and California Uniform Trade Secrets Act ("CUTSA") require a plaintiff to allege, with nonconclusory facts, an existing trade secret, reasonable measures to preserve its secrecy, an act of misappropriation by the defendant, and resulting damage. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020). The SAC satisfies none of these as to the Individual Defendants.

### 1. Jones Fails to Allege Specific Acts by the Individual Defendants

Jones's misappropriation count fails at the threshold because he never alleges a specific act by either Individual Defendant. Rule 9(b) and this Circuit require a plaintiff suing multiple defendants to "differentiate their conduct" and inform each defendant separately of the allegations surrounding his own alleged participation. *Vess*, 317 F.3d at 1106. Instead, the SAC refers throughout to acts by the "individual defendants" collectively, rather than to any act of Karafin or of Bevensee, and claims regarding use do not disclose the "when," "where," or "how." As shown below, Jones fails to plead the required elements of acquisition, disclosure, or use, and reasonable secrecy measures, and, critically, fails to do so as to each defendant individually, providing an independent ground for dismissal of both.

### 2. The SAC Fails to Plead Any Statutory Misappropriation

Both the federal DTSA and California's CUTSA define misappropriation in exactly the same three ways: (1) acquisition by a person who knows or has reason to know the secret was acquired by improper means; (2) disclosure without consent; and (3) use without consent. 18 U.S.C. §§ 1839(5), (6); Cal. Code Civ. Proc. § 3426.1(b); *Attia*, 983 F.3d at 424; *InteliClear*, 978 F.3d at 657-58. At best, the SAC alleges that the individuals possessed or accessed secrets, without facts showing use, which is insufficient, as "mere possession of trade secrets is not sufficient to constitute misappropriation." *x.AI Corp. v. OpenAI, Inc.*, 821 F. Supp. 3d 1100, 1109-10 (N.D. Cal. 2026); *see also Attia*, 983 F.3d at 424.

As to *acquisition*, Jones alleges only that both individuals had "access to" LFL's source control "in the ordinary course" of employment starting in September 2019. SAC ¶¶ 37, 133. Authorized access to material the plaintiff himself placed in the employer's systems is not acquisition by improper means. 18 U.S.C. § 1839(6); *Attia*, 983 F.3d at 425.

As to *disclosure*, Jones' assignment agreement precludes any such claim. He voluntarily gave the "secrets" to LFL, claiming them as his only after he was terminated. *See supra* §§ II.A-B. Jones does not plead any specific facts that either Individual Defendant made any disclosures, only offering the

unsupported, conclusory statement that Karafin "directed" LFL to file the patent applications. This falls well short of the required "who, what, when, where, and how" of the alleged disclosures. SAC ¶¶ 143, 134, 136, 140; *Kearns*, 567 F.3d at 1124; *see Cheung v. Keyuan Petrochem., Inc.*, No. 11-9495, 2012 WL 5834894, at *6-7 (C.D. Cal. Nov. 1, 2012).

As to *use*, the SAC attributes post-employment use to Light Field Lab, not the individuals: LFL "retain[ed]" the code generated by Jones' work for hire, *see supra* §§ II.A-B, demanded its return as "Company Property," and "transferred" it through the August 15, 2025 assignment. SAC ¶¶ 133, 135.

### 3.    The SAC Fails to Allege Reasonable Steps to Preserve Secrecy

A plaintiff must plead nonconclusory facts showing "reasonable measures to keep [trade secret] information secret." 18 U.S.C. § 1839(3)(A); *InteliClear*, 978 F.3d at 657-58; *Attia*, 983 F.3d at 424. Where a plaintiff shares the claimed secret with those given access, the secrecy analysis turns on the importance of confidentiality and nondisclosure agreements to maintaining secrecy. *Id.* Jones pleads no confidentiality or nondisclosure obligation binding Karafin or Bevensee, and no restriction limiting their use of the material to which he gave them access as LFL employees. To the contrary, he affirmatively "[drew] their attention to that work." SAC ¶¶ 37, 132-33. Absent any pleaded obligation of confidentiality constraining these individuals, Jones has not alleged reasonable measures to preserve secrecy as against them. *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161, at *2-3 (2d Cir. Mar. 9, 2022) (collecting cases); *InteliClear*, 978 F.3d at 657-58.

### 4.    Jones Fails to Plead Damages to Support Misappropriation or Conversion

A misappropriation claim requires a showing that the defendant's conduct caused or threatened damage to the plaintiff. *See InteliClear*, 978 F.3d at 657-58. Jones attributes the destruction of his alleged trade secrets solely to the publications, and he assigns responsibility for those acts of publication, retention, and transfer to LFL rather than to Karafin or Bevensee. SAC ¶¶ 133-35, 166. Because Jones identifies no actionable conduct by either individual that caused him harm, his claims fail.

### D.    Jones's Alternative Conversion Claim Fails Because It Is Preempted

Jones pleads conversion in the alternative to his trade-secret theory. SAC ¶¶ 141-42. That claim fails as a matter of law for three independent reasons, each sufficient on its own.

First, CUTSA supersedes it. CUTSA displaces all common-law claims "based upon

misappropriation of a trade secret," and a conversion claim that rests on the same nucleus of facts here, the same source code, "methods, techniques, and algorithms" underlying the misappropriation count cannot survive alongside it. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236-42 (2010) (holding CUTSA supersedes common-law claims premised on the same wrongful taking of information, whether or not the information qualifies as a trade secret), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062-64 (N.D. Cal. 2017) (CUTSA may supersede non-trade secret common-law claims resting on "the same nucleus of facts as trade secret misappropriation," unless the plaintiff pleads a property right or wrongdoing "materially distinct" from the CUTSA claim). Jones's conversion allegations reach the identical intangible subject matter, SAC ¶¶ 141-42, and are therefore superseded.

Second, the claim fails on the same ownership defect that defeats the misappropriation count. Conversion requires the plaintiff's "ownership or right to possession of the property," but Jones assigned the asserted work to LFL and pleads no facts voiding that assignment. *See supra* § II.B.

Third, even as to any tangible property, the SAC's own allegations locate possession and transfer with Light Field Lab, not the Individual Defendants. Jones alleges LFL "retained" the code and "transferred" it through the August 15, 2025 assignment. SAC ¶¶ 133, 135, 141-42. Jones pleads no act of dominion by Karafin or Bevensee over any property he owned, and thus states no conversion claim.

### E.    Further Amendment Would Be Futile

The Trade Secret Count should be dismissed with prejudice. Jones admits he assigned the asserted material to LFL and seeks only to rescind that assignment (SAC ¶¶ 18, 68), asserts methods already established in the public Patent Office record (*id.* ¶¶ 13, 25), and fails to allege any misappropriating act or resulting damage by Karafin or Bevensee, who do not even possess the material. *See Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-404, 2019 WL 1924992, at *14 (N.D. Cal. Apr. 30, 2019) (denying leave to amend trade secret claims where plaintiff "already filed three complaints"). Because these are legal rather than factual defects, Jones cannot cure them without contradicting his own pleading, rendering further amendment futile. *Sikhs*, 144 F. Supp. 3d at 1096.

### III.    The RICO Claim Fails as the SAC Fails to Remedy the Two Defects Already Identified

The SAC does not cure the two defects this Court identified when it dismissed the FAC's RICO

claim. The Court dismissed on two grounds: First, the alleged fraud predicates were not pleaded with Rule 9(b) particularity because Jones did not identify the content of the alleged communications, what each defendant said, when the statements were made, or to whom they were made. Dkt. No. 67 at 15:2 to 16:17 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)); *see also Vess*, 317 F.3d at 1106. Second, that without sufficiently pleaded predicates, Jones could not satisfy the continuity component of the pattern element. Dkt. No. 67 at 16:10-16; *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). The SAC adds new categories, labels, and narrative, but it still does not plead legally sufficient predicates, and it still alleges only a single, concluded dispute between one former employee and his former employer. SAC ¶¶ 147-66.

### A.    The Predicate Allegations Still Fail

The predicate defect remains the same. The SAC now groups the alleged predicates into recruitment and option-exercise wires, publication and assignment wires, and a trade-secret predicate under 18 U.S.C. § 1832. SAC ¶¶ 151-56. But Rule 9(b) requires the "who, what, when, where, and how" of the alleged fraud, and the SAC still does not provide that as to either Karafin or Bevensee. *See Kearns*, 567 F.3d at 1124; *Vess*, 317 F.3d at 1106. The new allegations identify categories of communications and dates, but they still do not identify, for each Individual Defendant, the specific false statement, why it was false when made, or to whom it was directed. SAC ¶¶ 151-56, 158-63. That is the same defect the Court already found fatal. Dkt. No. 67 at 16:10-17.

The SAC's patent-filing predicates are also barred as a matter of law. This Court already observed that Jones's patent-filing allegations "have nothing to do with the patents on which he bases his RICO claim" and cannot supply the pattern. Dkt. No. 67 at 16 n.10. The governing rule is categorical: statements made during the patent application process "before the PTO cannot qualify as an act of mail fraud or wire fraud for purposes of [RICO's] predicate act requirement." *Semiconductor Energy.*, 204 F.3d at 1378-80. Yet the SAC again relies on inventorship declarations and patent-office filings. SAC ¶¶ 154-55. Jones now says he is not alleging "fraud on the Patent Office," but that disclaimer changes nothing. *Id.* ¶¶ 147, 154, 163. Under *Semiconductor Energy*, the rule turns on the nature of the conduct, not on the label Jones places on it after the fact. 204 F.3d at 1378-80. The communications pleaded in SAC ¶ 154 are patent-office submissions, and cannot satisfy this element.

The SAC's new § 1832 theory fares no better. It pleads no act of criminal trade-secret misappropriation by Karafin or Bevensee distinct from LFL. SAC ¶ 153. It does not allege that either Individual Defendant personally took, disclosed, used, or retained Jones's claimed trade secrets. Instead, it alleges that Jones performed the work while employed by LFL, that his work was "welded onto" LFL's patent portfolio, and that LFL later held, sold, and swept the relevant intellectual property into the assignment estate. *Id.* ¶¶ 33, 77, 79, 83, 85, 124, 153, 156, 158-59. The SAC also pleads that Light Field Lab prepared, signed, and transmitted the applications and that LFL was the assignee of "the entire right, title, and interest" in them. *Id.* ¶ 154. That is corporate conduct by LFL, not pleaded misappropriation by the Individual Defendants. That omission matters because a plaintiff must allege each defendant's own conduct in acquiring, disclosing, or using the trade secret; conclusory group allegations do not suffice. *Kearns*, 567 F.3d at 1124-25; *Attia*, 983 F.3d at 427. Here, the SAC affirmatively pleads that LFL—not the individuals—held the property, transferred it, and that LFL no longer exists. SAC ¶¶ 77, 79, 83, 85, 87-88, 156. Once the corporate entity is stripped away, what remains is not a pleaded act of criminal misappropriation by either Individual Defendant. There are no facts directed to the Individual Defendants that can supply a RICO predicate.

## B.    The SAC Still Fails to Plead a RICO Pattern

The continuity defect remains just as plain. Jones still alleges one scheme directed at one victim: himself. The SAC says as much, alleging that the predicates were committed "in furtherance of a single scheme to obtain Mr. Jones's money and property by fraud," and treating the alleged conduct as one integrated course aimed at him alone. SAC ¶¶ 151, 159, 166. A single scheme with a single victim does not establish a RICO pattern. *Grimmett v. Brown*, 75 F.3d 506, 510-12 (9th Cir. 1996); *Howard v. Am. Online Inc.*, 208 F.3d 741, 748 (9th Cir. 2000); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975-76 (9th Cir. 2008). The pre-2019 Lytro allegations do not change that, because Jones expressly pleads them only as "context" and "evidence of . . . method," not as charged predicates. SAC ¶¶ 158-59, 164. What remains is one localized dispute over Jones's recruitment, his assigned work, and LFL's later treatment of that work, which RICO does not reach. *Canyon Cnty.*, 519 F.3d at 975-76.

Nor can Jones salvage the claim with open-ended continuity. He alleges that the scheme "threatens to continue," SAC ¶ 160, but his own pleading forecloses any plausible threat of repetition.

– 20 –                    Case No. 3:25-cv-05118-MMC

The SAC pleads that LFL transferred away substantially all of its assets, including the patent portfolio and the source code and work product Jones claims as his, through the 2025 assignment and later sales. *Id.* ¶¶ 77, 79, 83, 85-86, 156. It further pleads that LFL's Delaware charter was forfeited and that LFL is now "a void and forfeited Delaware corporation" that "has ceased to exist" and lacks "the corporate capacity to act." *Id.* ¶¶ 87-88. A defunct, asset-less enterprise poses no "credible threat of future criminal conduct." *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004); *Howard*, 208 F.3d at 748. Continuity turns on whether the alleged conduct is open-ended or inherently terminable, and the facts as pled are tied to Jones's employment, which ended in June 2023, and to an enterprise the SAC itself alleges is dead. SAC ¶¶ 57, 87-88; *Canyon Cnty.*, 519 F.3d at 975-76; *Grimmett*, 75 F.3d at 510-12.

### C.    The RICO Count Should Be Dismissed With Prejudice

Jones has now attempted to plead a civil RICO claim three times—in the original complaint, the FAC, and now the SAC—and the result is the same. Even with the benefit of this Court's June 9 order identifying what the claim lacked, Jones still does not allege the facts necessary to satisfy core RICO elements. Dkt. No. 67 at 15:2 to 16:17. Where factual detail is required, he offers categories, labels, and conclusions. Where continuity is required, he alleges only a single dispute between himself and his former employer. Where individualized racketeering conduct is required, he alleges only corporate conduct by LFL and the former titles of its officers. SAC ¶¶ 33, 77, 79, 83, 85, 87-88, 124, 151-66.

The problem is not a lack of opportunities to amend. It is that the core of Jones's case is an employment dispute over recruitment, compensation, assigned work, and the consequences of LFL's later collapse and asset transfer, and that kind of private, one-employee dispute is not transformed into a RICO violation by repeating the word "scheme" or repackaging the same facts under federal labels. *Canyon Cnty.*, 519 F.3d at 975-76; *Howard*, 208 F.3d at 748, 750. The SAC also continues to plead away any cognizable, direct RICO injury by alleging that the relevant property belonged to and was held by LFL, not Jones or the Individual Defendants. SAC ¶¶ 33, 77, 83, 124, 154, 156; *see e.g.*, *Attia*, 983 F.3d at 427. The SAC confirms that the RICO defects are legal and structural, not factual, and should be dismissed with prejudice. *Howard*, 208 F.3d at 748, 750; *Sikhs*, 144 F. Supp. 3d at 1096.

### IV.    The Breach Of Fiduciary Duty Claim Should Be Dismissed with Prejudice

The Court dismissed Jones's breach-of-fiduciary-duty claim, holding that the "informal text

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

message communications" at issue do not trigger a corporate officer's affirmative duty to disclose information to a shareholder which "only applies in the context of a corporate fiduciary's 'communication associated with a request for stockholder action.'" Dkt. No. 67 at 12:17-28 (quoting *Dohmen v. Goodman*, 234 A.3d 1161, 1168 (Del. 2020)). The SAC attempts to bypass that ruling by focusing on Jones' 2021 option exercises, but it fails to cure the claim defects. SAC ¶¶ 167-77.

### A.    The Claim Is Barred by the Statute of Limitations

The breach-of-fiduciary-duty claim is time-barred under both Delaware and California law.[6] "It is well-settled under Delaware law that a three-year statute of limitations applies to claims for breach of fiduciary duty." *Miele v. Franklin Res., Inc.*, No. 15-199, 2015 WL 4934071, at *15 (N.D. Cal. Aug. 18, 2015) (citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998)); *see also* 10 Del. C. § 8106; *Reilly v. Horn*, No. 24-654, 2025 WL 2781735, at *6 (Del. Ch. Sept. 30, 2025), *aff'd*, 2026 WL 1256598 (Del. May 7, 2026). California mandates the same three-year period "for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit," accruing when a plaintiff has reason to suspect wrongdoing rather than upon learning the specifics of a legal theory. *Kanaan v. Yaqub*, 799 F. Supp. 3d 960, 965 (N.D. Cal. 2025) (quoting *Fuller v. First Franklin Fin. Corp.*, 216 Cal. App. 4th 955, 963 (2013)); *see also* Cal. Code Civ. Proc. § 338(d). Because both jurisdictions operate under a parallel inquiry-notice framework, and because Jones's own admissions place him on notice well outside the limitations window, his claim is untimely. The claim accrued by April 29, 2021, when Jones last exercised his options. SAC ¶¶ 167, 169-71. All other allegations concerning patent and equity representations or recruitment conduct date back to 2019. *Id.* ¶¶ 26-31, 34-35. Consequently, the latest possible wrongful act occurred by May 6, 2021, and the limitation period expired on May 6, 2024, rendering Jones' claim untimely on its face. SAC ¶ 64; *see* Dkt. No. 1; *supra* § I.A.1.[7]

//

---

[6] Delaware law governs Jones's breach of fiduciary duty claim. *See* Dkt. No. 67 at 17 n.11; *see also Frankston v. Aura Sys., Inc.*, 161 F.3d 12, n.1 (9th Cir. 1998).

[7] Jones cannot invoke delayed discovery. First, Jones possessed the governing equity documents by January 2, 2020 (SAC ¶ 67), well before the exercise upon which the claim relies. His assertion that he failed to review the public record until May 2025 (*id.* ¶ 35) is legally irrelevant because the legal test is directed to the availability of facts rather than the plaintiff's subjective choice to ignore them. *Reilly*, 2025 WL 2781735, at *8; *Fox*, 35 Cal. 4th at 808. *See supra* § I.A. The facts were not inherently unknowable and are charged to Jones as a matter of law. *See Reilly*, 2025 WL 2781735, at *7-8.

Jones's "continued holding" theory does not extend accrual. To the extent the SAC alleges that the Individual Defendants' "continuing silence" breached an ongoing duty as Jones held his shares (SAC ¶¶ 174-75), that theory cannot revive his claim. Both Delaware and California measure accrual from the wrongful act, and neither restarts the limitations period based on the mere persistence of an alleged nondisclosure. *In re Axsome Thers., Inc. Stockholder Derivative Lit.*, No. 25-1076, 2026 WL 1983269, at *4 (Del. Ch. July 9, 2026) ("claims accrued at the moment of the alleged 'wrongful act'"); *Norgart*, 21 Cal. 4th at 397. Indeed, passive retention of stock is not a "request for stockholder action" and thus is not itself an actionable event. Dkt. No. 67 at 12:17-28. Because every wrongful act the SAC identifies occurred no later than April 29, 2021, and because Jones's own admissions establish inquiry notice well before that period expired, the claim is time-barred under both Delaware and California law.

## B.    The SAC Fails to Plead Required Elements of the Claim

Even if the claim were timely, it fails on the merits for the same reasons the Court dismissed it before. The SAC concedes the pre-shareholder point addressed in the Court's prior order (SAC ¶¶ 169, 171), then pivots to a silence-based disclosure theory foreclosed under Delaware law, while its own admissions continue to negate concealment, reliance, and injury, and the claim still fails Rule 9(b).

### 1.    No Knowing Misrepresentation Is Pleaded

The SAC's disclosure theory regarding option exercises and share retention still fails under Delaware's requirements to bring a fiduciary duty law. *Dohmen*, 234 A.3d at 1168-69. The affirmative fiduciary duty to disclose only arises when directors communicate in connection with a request for stockholder action and requires the knowing disclosure of false information. Dkt. No. 67 at 12:17-28. The SAC, however, relies entirely on silence, which *Dohmen* forecloses. Delaware law imposes no free-floating duty to correct information absent a formal request for stockholder action. 234 A.3d at 1168-69 (duty of disclosure arises when fiduciaries communicate with stockholders in connection with a request for stockholder action and requires knowing false information); *see also Malone v. Brincat*, 722 A.2d 5, at *10-11 (Del. 1998) (same). Because the SAC does not plead a request for stockholder action, this theory fails as a matter of law.

### 2.    Jones's Admissions Negate Concealment, Reliance, and Injury

The SAC's concealment premise is refuted by Jones's admission that the "provenance" facts

were "established by the public Patent Office record" and "not by Mr. Jones's characterization of them." SAC ¶¶ 13, 25.  A fact of public record cannot be one within a fiduciary's exclusive knowledge, and this Court already treated patents as a matter of public record, taking judicial notice that U.S. Patent No. 10,488,584 "was issued to LFL, not to Lytro." Dkt. No. 67 at 11:12-13, n.8.  Jones's contrary SAC allegation, that the derivation was "within Defendants' exclusive knowledge," cannot survive his admission that the operative facts were public and that he had the agreement in January 2, 2020.  SAC ¶ 67.  Yet, he continued exercising and paying the Company through April 2021 (*id.* ¶¶ 64-65) and remained employed until June 2023 (*id.* ¶ 57).  *See supra* § I.C.5; *Rochlis*, 19 Cal. App. 4th at 216.

The Court expressly found that Jones alleged no facts showing "he suffered any injury on account of the allegedly concealed information." Dkt. No. 67 at 10:24-25.  The SAC does not cure that holding; it confirms it.  By Jones's own account, his option losses flow not from any representation about the portfolio but from the termination, the 90-day post-termination exercise window, and his own inability to fund the exercise.  SAC ¶¶ 64-65, 68.  Those are LFL's corporate acts, not the conduct of Karafin or Bevensee.  *Id.* ¶¶ 64-65, 68.  Jones therefore pleads no injury caused by any Individual Defendant, an independent failure of causation.

### 3.    Signing Issuance Documents Is Not Actionable

To the extent Jones grounds this claim on the fact that Karafin signed the option grant as President and that Karafin and Bevensee approved and signed the resulting stock certificates as President and Secretary (SAC ¶ 64), that conduct cannot supply the missing element.

A countersignature memorializing a transaction Jones himself initiated by tendering the exercise price conveys no factual assertion—least of all a false one——about the provenance, defensibility, or value of LFL's patent portfolio.  This Court has already held that a fiduciary-duty claim in this context requires that the fiduciary "knowingly disclosed false information." Dkt. No. 67 at 12.  The Plan and Option Agreement—not the act of signature—defined the parties' rights, and the individual defendants' execution of documents implementing a Plan-authorized grant is a ministerial act that creates no independent fiduciary liability.  *See Huff Energy Fund, L.P. v. Gershen*, No. 11116, 2016 WL 5462958, at *6 (Del. Ch. Sept. 29, 2016).  Because a contract-governed relationship cannot be repackaged as a fiduciary-duty claim based on the same conduct and relief, the fiduciary theory fails for that additional

reason. Likewise, where a Plan governs the parties' relationship and expressly authorizes the challenged grant mechanics, the fiduciary's compliance with those contractual rights is not a separate breach of fiduciary duty. *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

The SAC confirms the point. Jones pleads that "Light Field Lab dealt with Mr. Jones in its own securities" (SAC ¶ 171), and that Karafin and Bevensee only "approved and signed" the certificates "as President" and "as Secretary." *Id.* ¶ 64. The counterparty is the corporation. Under Delaware law, an issuing corporation does not owe fiduciary duties to its stockholders in the sale of its own securities. *See An v. Cosman*, No. 23-715, 2025 WL 2180575, at 12 & n.141 (Del. Ch. July 31, 2025); *see also A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1127 n.36 (Del. 2009). Nor can silence supply the missing element, and his entitlement claim is weaker than the FAC. Under Delaware law, a plaintiff asserting omission-based fraud must demonstrate a duty to speak or intentional concealment. *Latesco, L.P. v. Wayport, Inc.*, No. 4167, 2009 WL 2246793, at *8 (Del. Ch. July 24, 2009). The SAC's "chose to speak" and "half-truth" labels (SAC ¶¶ 172-73) neither identifies any statement made while Jones was a stockholder, much less a statement that was false or misleading.

## C.   Dismissal Should Be With Prejudice

Denial of leave to amend is proper where amendment cannot cure the underlying defects. Jones's fiduciary claim is time-barred and cannot be salvaged by further amendment; his attempts to repackage the facts across complaints confirm that further pleading is futile. *Howard*, 208 F.3d at 748, 750; *Sikhs*, 144 F. Supp. 3d at 1096; *Brown v. Brita Prods. Co.*, 172 F.4th 1113, 1120 (9th Cir. 2026).

## CONCLUSION

For the reasons set forth above, the individual defendants respectfully request that the Court dismiss the SAC in its entirety against them, with prejudice.

Date:  July 20, 2026

Respectfully submitted,

_____
Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

25-5118@cases.warrenllp.com

*Counsel for Defendants*
*Jon Karafin and Brendan Bevensee*

Case No. 3:25-cv-05118-MMC

MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES