**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ALAN JONES,

        Plaintiff,

    vs.

LIGHT FIELD LAB, INC., JON KARAFIN,
BRENDAN BEVENSEE, and Does 1 to 10,

        Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:25-cv-05118-MMC

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS JON KARAFIN AND
BRENDAN BEVENSEE'S MOTION TO
DISMISS THE SECOND AMENDED
COMPLAINT**

**Date: August 28, 2026**
**Time: 9:00 a.m.**
**Courtroom: 7**

**Complaint Filed: June 17, 2025**
**Am. Complaint Filed: Sept. 3, 2025**
**Second Am. Complaint Filed: July 6, 2026**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 1

III. ARGUMENT ............................................................................................................... 2

  A. Defendants' uses of the judicially noticed documents are improper, and in any event unavailing. .. 3

  B. The Third Cause of Action (Fraud and Deceit) is adequately pleaded. ........................................... 4

    **1. The fraud claim is not time-barred on the face of the pleading.** ............................................... 4

    **2. The fraud claim is not preempted, and Jones does not litigate a stranger's rights.** .............. 6

    **3. The SAC pleads every element of fraud with Rule 9(b) particularity.** .................................. 6

    **4. Dismissal with prejudice is improper.** ................................................................................... 10

  C. The Fourth Cause of Action (Trade Secret and Conversion) is adequately pleaded. ...................... 10

    **1. Ownership is not defeated by the Copyright Act's work-for-hire allocation.** ....................... 11

    **2. Rescission defeats the "affirm and sue" bar.** ........................................................................ 13

    **3. The SAC pleads secrecy, misappropriation, and each defendant's own conduct.** ............... 14

    **4. CUTSA does not supersede the conversion theory and amendment would not be** ............. 16

    **Futile.** ........................................................................................................................................ 16

  D. The Fifth Cause of Action (Civil RICO) is adequately pleaded. ...................................................... 17

    **1. The predicates are pleaded defendant by defendant.** .............................................................. 17

    **2. Continuity is pleaded under either theory.** ............................................................................ 18

    **3. Jones has pleaded RICO injury, and dismissal with prejudice is improper.** ........................ 20

  E. The Sixth Cause of Action (Breach of Fiduciary Duty) is adequately pleaded. .............................. 20

    **1. The fiduciary claim is not time-barred on the face of the pleading.** ...................................... 20

    **2. The SAC pleads breach of the duty to speak.** ........................................................................ 21

**3. Dismissal with prejudice is improper.**...................................................................................... 24

IV. CONCLUSION AND REQUEST FOR LEAVE TO AMEND ........................................................ 25

**Cases**

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631(9th Cir. 2012) ................................................ 25

*Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226 (1995) ................................................................ 9

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) .............................................................. 20

*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013) ..................................................... 21

*Attia v. Google LLC*, 983 F.3d 420 (9th Cir. 2020) .............................................................................. 15

*Boyle v. United States*, 556 U.S. 938 (2009) ....................................................................................... 19

*Brown v. Brita Products Co.*, 172 F.4th 1113 (9th Cir. 2026) .............................................................. 25

*Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) .................................................. 20

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ......................................................... 18

*Cleveland v. United States*, 531 U.S. 12 (2000) .................................................................................. 18

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) ..................... 10, 16

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992) .............................................. 11

*Daniels-Hall v. National Education Ass'n*, 629 F.3d 992 (9th Cir. 2010) .......................................... 1, 12

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) ....................................................................... 20

*Dohmen v. Goodman*, 234 A.3d 1161 (Del. 2020) .............................................................................. 22

*DuBeck v. Cal. Physicians' Serv.*, 234 Cal. App. 4th 1254 (2015) ....................................................... 13

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .............................................. 25

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................................................. 25

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) .............................................................. 18

*Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412 (1945) ............................................................................ 5

*Huff Energy Fund, L.P. v. Gershen*, 2016 WL 5462958 (Del. Ch. Sept. 29, 2016) ............................. 24

*InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020) ..................................... 11

*Irish v. FCA US, LLC*, 2026 WL 252490 .............................................................................................. 4

*JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010) .......................................................................... 12

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) ....................................................................... 10

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .................................................... 3

*Latesco, L.P. v. Wayport, Inc.*, 2009 WL 2246793 (Del. Ch. July 24, 2009) ....................................... 23

*Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001)................................................................... 8

*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) ............................................................................... 22

*Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121 (Del. Ch. 2004) ....................................................................................................................... 22

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010)......................................................................... 24

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999)......................................................................... 4

*Parsons v. Tickner*, 31 Cal. App. 4th 1513 (1995) ................................................................... 5

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013) .............. 9

*Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996) ................................................ 5

*Runyan v. Pacific Air Indus., Inc.*, 2 Cal. 3d 304 (1970)......................................................... 13

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368 (Fed. Cir. 2000)........................ 6

*Sikhs for Justice Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088 (N.D. Cal. 2015) ..................................... 25

*Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010)................................................. 11

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995) ................................................. 5, 10

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007).......................................................... 6, 17

*Ticor Title Ins. Co. v. Florida*, 937 F.2d 447 (9th Cir. 1991)..................................................... 18

*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) .......................................................................... 19

*Turret Labs USA, Inc. v. CargoSprint, LLC* 2022 WL 701161 (2d Cir. Mar. 9, 2022)........................... 16

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (9th Cir. 2012)................................ 12

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)................................................................. 3

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................................ 14

*Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913 (2010) ............ 13

*Wal-Mart Stores, Inc. v. AIG Life Insurance Co.*, 860 A.2d 312 (Del. 2004). ....................................... 21

*Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285 (1970)......................................... 9

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007).................................................................... 1

**Statutes**

17 U.S.C. § 101(1) ...................................................................................................................... 12

17 U.S.C. § 102(b) ...................................................................................................................... 11

17 U.S.C. § 106.................................................................................................................... 11

18 U.S.C. § 1836(d) ............................................................................................................. 10

18 U.S.C. § 1839(5) ............................................................................................................. 15

18 U.S.C. § 1839(6)(A)........................................................................................................ 15

Cal. Civ. Code § 1688.......................................................................................................... 13

Cal. Civ. Code § 1692.......................................................................................................... 13

Cal. Civ. Code § 3426.1(b) .................................................................................................. 15

Cal. Civ. Code § 3426.1(d)(2) ............................................................................................. 15

Cal. Civ. Code § 3426.6....................................................................................................... 10

Cal. Civ. Code §§ 3426.3 ..................................................................................................... 11

Cal. Code Civ. Proc. § 1856(g)............................................................................................. 9

Civ. Code § 1691(b)............................................................................................................. 13

Civil Code section 1691 ....................................................................................................... 13

**Rules**

Civil L.R. 7-3(d)(1)................................................................................................................ 4

Fed. R. Civ. P. 12(d) ............................................................................................................. 4

Rule 12(b)(6)........................................................................................................................ 23

**I. INTRODUCTION**

Defendants Jon Karafin and Brendan Bevensee move to dismiss, "this time with prejudice," the four causes of action at issue. Mem. p. 1. The motion does not engage the pleading before the Court: it omits the words on which each allegation turns — and, in places, supplies words the pleading does not contain — and treats the result as the pleading.

The Second Amended Complaint (Dkt. 68, the "SAC") is the amendment this Court's leave invited. That leave was not confined to "the fraud, RICO, and fiduciary duty theories," as the motion recasts it, mem. p. 1: the Order dismissed the Third through Seventh Causes of Action — the Fourth included — "with leave to amend," and denied leave only as to the First. Dkt. 67 at 21, Concl. ¶¶ 1–2. Defendants develop no scope-of-leave argument, and one raised first on reply need not be considered. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

On a motion under Rule 12(b)(6) the Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." *Daniels-Hall v. National Education Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Both that rule and the companion rule the motion draws from the same page, mem. p. 1, govern; the companion rule is answered where the motion deploys it, §§ III.A, III.B.3, and the first is where each of the motion's arguments meets the pleading. Much of what follows nonetheless asks the Court to decide, against the party who pleaded them, the reliance, inquiry-notice, knowledge, and materiality questions the law commits to the trier of fact. Read as pleaded, as the governing standard requires, each of the four causes of action states a claim, and the motion should be denied.

**II. FACTUAL BACKGROUND**

Karafin is Light Field Lab, Inc.'s co-founder, CEO, President, and a director; Bevensee its co-founder, CTO, and Secretary. Light Field Lab employed Alan Jones, a rendering-software engineer, from September 30, 2019 to June 23, 2023. SAC ¶¶ 1–4, 11, 34, 170.

Both are named inventors on Lytro, Inc.'s U.S. Patent No. 10,565,734 and on Light Field Lab's foundational patents, having filed the two provisionals underlying them in July 2016 while still at Lytro. U.S. Patent No. 10,488,584 issued on those provisionals November 26, 2019, and the SAC pleads that it describes the same light-field architecture as the Lytro patent in terminology substituted one for one so

the derivation would not be apparent; that across five information-disclosure statements they never disclosed their own earlier Lytro application; and that the resulting questions of provenance impaired the value of the equity Light Field Lab offered Jones. SAC ¶¶ 13, 15–18, 20–22, 172. At interviews on August 28 and 29, 2019, Karafin said the company had hundreds of patents and a business model relying heavily on comprehensive patent coverage. Jones accepted on September 9, 2019, signed a Confidentiality and Proprietary Rights Agreement that day, and resigned from Microsoft, irreversibly surrendering his vesting equity. SAC ¶¶ 26–27, 29, 33, 71.

Light Field Lab granted him an option for 215,000 shares on December 9, 2019 but first presented its 2017 Stock Incentive Plan and form Option Agreement on January 2, 2020, months after he began work and assigned his inventions; none of the terms then revealed had been disclosed during his recruitment. SAC ¶¶ 31, 63, 67, 69. Exercising three times, Jones paid $56,437.50 for 80,625 shares and became a stockholder on December 10, 2020. SAC ¶¶ 64–65, 169.

Throughout his employment he authored source code and rendering software, committing it only to Light Field Lab's access-controlled source-control system. SAC ¶¶ 36–37, 132. On April 9, 2023 he identified that work as his own to Karafin and Bevensee; four days later Light Field Lab filed a provisional application naming only those two as inventors, and a second on the day it terminated him. SAC ¶¶ 38–39. Those applications published October 17, 2024 and February 27, 2025; Jones identified them in about May 2025, and the overlapping inventions and terminology substitution only in August 2025, after filing this action on June 17, 2025. SAC ¶¶ 35, 74, 145. Reasonable diligence could not have uncovered those facts earlier. SAC ¶¶ 34–35.

While this action was pending, Jones's shares were cancelled and extinguished on July 13, 2025; Light Field Lab, by a General Assignment Karafin signed as CEO, conveyed all its assets to an assignee for the benefit of creditors on August 15, 2025 and swept in Jones's source code; and that assignee conveyed the patent estate onward on January 15, 2026. SAC ¶¶ 79, 83, 86, 169.

**III. ARGUMENT**

This opposition answers the motion section by section, beginning with Defendants' judicial-notice request and the objections Civil L.R. 7-3(a) requires be contained within this brief.

**A. Defendants' uses of the judicially noticed documents are improper, and in any event unavailing.**

Plaintiff opposes neither judicial notice of the equity packet (Dkt. 69-1) nor incorporation of the 2017 Stock Incentive Plan: the packet is of record here and in the related action (Dkt. 20-1; Dkt. 30-2, Ex. 3-A). The objection, stated here as Civil L.R. 7-3(a) requires, is to the use. Rule 201(c)(2)'s mandate runs no further than Rule 201(b)'s facts not subject to reasonable dispute, and neither doctrine permits taking an instrument's text as establishing what Jones knew, would have investigated, or could justifiably rely on. Both reach what a document indisputably shows — existence, dates, text — and place it before the Court as part of the pleading, not as evidence; and a court may not "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1000–01, 1003 (9th Cir. 2018); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Qualifying under both doctrines places the Plan before the Court twice, not on better terms. *Sprewell* (mem. p. 7) has no predicate: SAC ¶ 30 quotes § 10(a) verbatim and SAC ¶ 121 pleads from it, so what Defendants dispute is that provision's significance, not its text. § III.B.3.

The motion makes precisely that use: the instruments are offered to establish Jones's "actual, written notice of each equity term," mem. p. 4, and again for reliance and fiduciary limitations, mem. pp. 11, 22 n.7, and the integration clause and counsel acknowledgment quoted at mem. p. 7 serve the same end — recitals of documents first presented January 2, 2020, after the reliance became complete and irreversible in September 2019. SAC ¶¶ 67, 71, 124. That date marks the delivery of a term, not the loss that completes a fraud claim. §§ III.B.1, III.E.1.

One of the terms said to have been disclosed rests on instruments not before the Court at all. On Defendants' own boundary — review "confined to the [SAC] and documents subject to judicial notice," mem. p. 1 — the footnote's "mandatory ROFR/Co-Sale and Voting Agreement adherence" item, mem. p. 4 n.3, rests on the Voting Agreement and the Right of First Refusal and Co-Sale Agreement, which were never furnished and are before the Court in no form, neither being within Exhibit A, the packet the Request reaches; and the provisions cited bind Jones's shares to restrictions located in those instruments without disclosing a term of them. SAC ¶¶ 69–70, 114; Dkt. 30-2 at pp. 64–109; *Khoja*, 899 F.3d at

1002; § III.B.1. The assertion is extra-record, and the Notice of Motion's reliance on "all pleadings, papers and oral argument in this action" enlarges nothing. Instruments supplied with the reply must be excluded or the motion converted, Fed. R. Civ. P. 12(d), and Plaintiff would object under Civil L.R. 7-3(d)(1).

One judicial-notice argument lies outside the Request. The prior order noticed a document — "patent number 10,488,584," on Light Field Lab's unopposed request — and held only that the earlier pleading's record-title allegation was unsupported, dismissing with leave. Dkt. 67 at 11 & n.8, 21. A patent's face proves its assignee, not the derivation of what it discloses, and neither it nor 35 U.S.C. § 261, which governs recordation alone, makes public a derivation the SAC pleads "could not be recognized from Light Field Lab's patents alone." SAC ¶¶ 114, 176; mem. pp. 5, 7, 12, 23–24.

**B. The Third Cause of Action (Fraud and Deceit) is adequately pleaded.**

The Third Cause of Action rests on affirmative misrepresentations of present fact and active concealment, identified in the SAC's own particularity recital, SAC ¶ 122 — not on statements this Court has already addressed. The characterization of the pleading as "the same operative facts … regrouped into three categories," mem. p. 2, fails because the June 9 Order dismissed the Third Cause of Action only "to the extent" it was "based on" particular statements and dismissed it with leave to amend, Dkt. 67 at 11, 13, 21, Concl. ¶ 2, while the recital that defines the claim reaches instruments "never furnished … to Jones" at all and rests on the chain of derivation the earlier pleading never traced. SAC ¶¶ 13, 69, 114, 122. That scope answer also disposes of mem. p. 2 n.1. *See* § III.B.3.

**1. The fraud claim is not time-barred on the face of the pleading.**

No count is barred on the face of this pleading, here or below. Mem. p. 1; *see* §§ III.C, III.E.1. The fraud claim is timely: the dates the motion offers fix a statement and a series of payments rather than a loss. A claim accrues only when "complete with all of its elements," *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) — here the 2025 insolvency in which Jones "received nothing," SAC ¶¶ 77, 86 — and section 338(d) does not run "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake," which the SAC pleads occurred in 2025, SAC ¶¶ 34–35, 128; the availability of public records is no substitute for the suspicion-arousing facts Defendants' own authority requires. *Irish v. FCA US, LLC*, 2026 WL 252490, at *4.

November 26, 2019, the date a patent issued, is an accrual date for neither theory the motion aims it at. Mem. p. 3. The January 2, 2020 delivery of the Plan did not start the clock either: the documents omitted what this count charges was concealed — the never-furnished Voting and Co-Sale Agreements and a derivation that "could not be recognized from Light Field Lab's patents alone," SAC ¶¶ 69–70, 114 — the reliance was already irreversible in September 2019, SAC ¶ 71, so the integration clause Defendants invoke discloses supersession, not falsity; and a term is not a loss. The presumption that a signer understands what he executes is a rule of assent, expressly reserved as to the fraud in the inducement Jones pleads. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 423 (1996). The footnote's May 2021 fallback, mem. p. 4 n.4, fixes the dates on which Jones paid Light Field Lab — the SAC pleads each exercise as "a separate decision . . . to commit additional money" he would not have made had he known, SAC ¶ 65 — not the 2025 discovery of the concealed derivation, SAC ¶¶ 35, 114; and the same dates fail against the Sixth Cause of Action for those reasons and for those given at § III.E.1.

The burden-shifting fails at its own condition: *SOS* shifts the burden only "[o]nce a defendant shows that the action is barred," 2017 WL 5714716, at *7, and untimeliness must appear on the face of the pleading, *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995). The delayed-discovery attack fails because the pleading it describes is not the one before the Court — the SAC pleads that Karafin's representations induced Jones, and that the public record established what was done without revealing that it had been done — and because availability is not inquiry notice: absent a duty to inquire "the statute does not run merely because the means of discovery were available," *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 442 (1945), Defendants identify no fact that "should raise suspicion and trigger a further investigation," *Irish*, 2026 WL 252490, at *4, and the SAC pleads the time, manner and mechanism of a 2025 discovery turning on applications that did not publish until October 2024 and February 2025. SAC ¶¶ 25, 29, 34–35, 114, 128. Importance imposes no duty — their own authority finds "no duty imposed by law or otherwise . . . to verify the representations," *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1529 (1995) — and a plaintiff "not competent to judge the facts without expert assistance" is aided by that fact, not charged with it. *Hobart*, 26 Cal. 2d at 435; SAC ¶ 34; mem. pp. 3, 10–11. Paragraphs 34 and 35 plead history, not legal conclusions — who knew, the

acts that kept the derivation off the face of the documents, and the dates of discovery — and contradict nothing. Mem. p. 10.

### 2. The fraud claim is not preempted, and Jones does not litigate a stranger's rights.

The preemption ground fails because this count defines no right based on inventorship and pleads the Patent Office conduct "solely as evidence" of knowledge, intent and the manner of concealment, SAC ¶¶ 13, 120, 123, so that no element of it "must be proven for liability" by anything that happened before the Patent Office, *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000) — and the count in any event charges the concealed equity terms and Bevensee's own conduct in the inducement and in each transaction, neither of which is conduct before the Patent Office. SAC ¶¶ 26, 65, 116, 122. The same answer meets the inequitable-conduct recharacterization. Mem. p. 5. The provenance ground goes with it: the SAC defines provenance as the portfolio's origin, not a chain of title, and pleads that its claims "do not require" any contention about title "to be adjudicated," SAC ¶¶ 13, 114, and the ruling invoked reached a claim "predicated on [the] allegation that he was fraudulently omitted as an inventor," Dkt. 67 at 14 n.9 — which this count disclaims in terms. SAC ¶¶ 113, 123. Mem. pp. 4–7.  The unmatured-application point, mem. p. 5, is answered at § III.D.1. The standing objection fails because 35 U.S.C. § 261 governs the recordation of assignments and Defendants' Federal Circuit authorities decide only who may sue for infringement, while Jones asserts no title and "seeks relief only for the fraud practiced on him," SAC ¶¶ 82, 113 — and the impairment he pleads is his own, grounded in the public Patent Office record rather than in his characterization of it, and requires the adjudication of no one's title, SAC ¶¶ 13, 25 — and so does that presumption, mem. p. 7. Nor is the injury manufactured: SAC ¶ 13 pleads the impairment as materiality, while the count's damages are pleaded at SAC ¶ 127. *See* § III.B.3.

### 3. The SAC pleads every element of fraud with Rule 9(b) particularity.

The elements as the motion states them are pleaded. Mem. pp. 5–6. The demand to dismiss Bevensee fails because the count pleads him on concealment, which requires no statement by him, and pleads it as his own acts — the deliberate substitution on both sides of which he is a named inventor, the Lytro reference he withheld across five information-disclosure statements, and the 37 C.F.R. § 1.63 declarations from which his knowledge is pleaded, SAC ¶¶ 18, 22–23, 114, 117, 122–123 — which is

the role identification Rule 9(b) requires, *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The footnote at mem. p. 8 n.5 does not reach him either: the paragraphs it cites plead his own statements to Jones, SAC ¶ 26, as the pleading throughout names each man's own acts, SAC ¶ 116. *Dimmick*'s "multiple opportunities" premise, mem. p. 6, is absent: the leave granted carried no last-chance condition. Dkt. 67 at 21; § IV.

The "true statement" answer fails because the June 9 Order made no finding of truth — it held the earlier pleading alleged insufficient facts as to that statement and dismissed the claim to that extent with leave to amend, Dkt. 67 at 11 & n.8, 21 — and because the SAC, repleading on facts the earlier pleading did not contain, alleges not that the number was wrong but that the representation that the Company had hundreds of patents on which its business model "relied heavily" nonetheless "misrepresented the value and security of the portfolio," SAC ¶¶ 13–25, 27, 114, 120, which answers the assertion that the SAC "never alleges" as much. Mem. p. 7. Nor does Jones supply his own misrepresentation: the representation is Karafin's, pleaded as "one of existing fact, not opinion," its falsity is pleaded from the public Patent Office record and not from Jones's characterization of it, § III.B.2, and the theory is pleaded as concealment, which requires no statement at all. SAC ¶¶ 13, 18, 22–23, 25, 27, 114–115, 120, 122.

The theme-park statement is not revived, because it is not charged: the recital defining the count omits it, SAC ¶ 122, and SAC ¶ 113's general incorporation cannot enlarge that scope. *See* § III.B. The prediction holding the motion extends to SAC ¶ 121, mem. pp. 8–9, does not reach a representation of how the equity then functioned, and the objection to SAC ¶ 29's scienter source fails with its premise that the patent-filing conduct is preempted, *see* § III.B.2, scienter being independently pleaded at SAC ¶¶ 117 and 123.

The dilution argument fails because the representation charged is the sentence that follows the one the motion quotes — "[e]very time the valuation of the company increases, the value of your options grant also increase," SAC ¶¶ 30, 121 — which the SAC pleads false from the Plan's own quoted text providing that no new share issuance adjusts an Award, SAC ¶ 30. Nothing in the pleading contradicts the document, so *Sprewell*'s carve-out is not engaged, and Plan § 10(a), invoked at mem. pp. 4 n.3, 8 and 11, is that very text. § III.A.

Scienter is pleaded. The "formulaic recitation" the motion identifies is addressed to SAC ¶ 124, the reliance paragraph, while knowledge is pleaded against each defendant from the inventor's declaration he himself swore and the personal duty of candor he bore, SAC ¶¶ 117, 123 — conduct pleaded "solely as evidence of their knowledge and intent" and not preempted, *see* § III.B.2 — which is more than Rule 9(b) requires of knowledge, that rule providing that knowledge "may be alleged generally." Paragraph 29 sources the element rather than withdrawing it, and does so as to statements this count does not charge, SAC ¶ 122; the equity representation's scienter rests independently on Karafin's own issuance of the grant under the Plan whose text made his August 12, 2019 assurance false. SAC ¶¶ 63, 121.

The duty premise fails as well. Not every concealment arose during recruitment: the SAC grounds the duty in the December 9, 2019 option grant and the three stock sales, the last two after Jones became a stockholder, which Karafin and Bevensee "approv[ed] and execut[ed] . . . while in possession of the undisclosed facts," and pleads that "[n]one of these grounds depends on a fiduciary relationship" — grounds requiring no relationship and no statement, none of which the June 9 Order's interview-and-option holding reached. SAC ¶¶ 63–65, 114–116, 119; Dkt. 67 at 10:21–28; *see* § III.E.2. Those circumstances are disjunctive, mem. p. 9, and active concealment is pleaded: the substitution adopted so the derivation "would not be apparent on the face of the documents" and the reference withheld across five disclosure statements are acts aimed at preventing discovery, which carry the effect of a statement that the matter does not exist. SAC ¶¶ 18, 22–23; *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (2001). The exclusive-knowledge argument fails because the SAC pleads that "[a]lthough the underlying patent filings were public, the derivation was not apparent on their face," and that the governing equity agreements "were never furnished to him at all," SAC ¶ 114 — paragraph 25 stating where the patent-related facts are documented, not what Jones could find in them — and because the rule the motion quotes fixes when "the statute commences to run," *Parsons*, 31 Cal. App. 4th at 1525 (§ III.B.1), not when a defendant's knowledge ceases to be exclusive — the circumstance *Punian* states as knowledge of "material facts not known to the plaintiff." 2016 WL 1029607, at *9. Paragraph 128 pleads the same, mem. p. 10, and contradicts nothing. Finally, a true statement is the premise of the partial-representation ground, not a defense to it: one who speaks must disclose the facts that "materially

qualify" what he said, *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970), and what was withheld is pleaded as historical fact, not as a view about the law. SAC ¶¶ 114–115, 120.

Reliance is a question of fact. The prediction ruling reached only uncharged statements, SAC ¶ 122, while the representation the motion's own parenthetical identifies concerned how the equity then functioned; justifiable reliance on it is "a question of fact," which no unsupported assertion of common knowledge — to which Plaintiff objects, Civil L.R. 7-3(a) — resolves on the pleadings. *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239–40 (1995); mem. p. 11. That the facts were public is no answer here either: *Palleson*, 2021 WL 5633015, at *3, is a limitations decision in which "reliance" and "justifiable" never appear. Nor does the integration clause defeat reliance: the fraud exception to the parol evidence rule is not confined to representations consistent with the writing, Cal. Code Civ. Proc. § 1856(g); *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1182 (2013), and no term exempts a party from responsibility for its own fraud, Cal. Civ. Code § 1668. And continued participation defeats nothing here: the concealed derivation was not discovered until 2025, after the employment had ended, so the pleading supplies none of the post-discovery interval *Rochlis* (a summary judgment), *Vazquez* and *Rubinstein* each required; the reliance the count charges was complete when the Microsoft forfeiture became irreversible in September 2019, months before those documents arrived; and the exercises and continued employment are themselves pleaded as reliance continuing — reliance being measured act by act and a question of fact at the pleading stage. SAC ¶¶ 11, 29, 65, 67, 71, 114, 118, 128; *Swartz*, 476 F.3d at 763–64. The same answer meets mem. p. 8.

The causation attack fails last. The prior order's no-injury finding ran only "to the extent" the fraud claim rested on the earlier pleading's concealment of the "number and value of" options vesting on a listing or acquisition. Dkt. 67 at 10:21–28. The account attributed to Jones is not the SAC's: "could not afford to exercise," "due to tax liability," "had LFL not wrongfully terminated," and the ninety-day expiry appear nowhere in SAC ¶¶ 64–65, 68, or elsewhere in it. Mem. p. 12. Those come from the original complaint, Dkt. 1 ¶ 35, twice superseded; the pleading before the Court is the SAC. This count does not seek the lost-option value the motion's cases measure; it pleads its damages at SAC ¶ 127, each head caused by "Defendants," a term the count defines to include both movants, SAC ¶ 113 — and the transactions and publications behind those heads are pleaded as Karafin's and Bevensee's own acts,

SAC ¶¶ 35, 64–65, 116, for which "[a] corporate officer or director is, in general, personally liable . . . notwithstanding that he acted as an agent of the corporation." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999).

### 4. Dismissal with prejudice is improper.

Dismissal with prejudice — as to either Defendant — fails because every ground it borrows fails above, because the June 9 Order adjudicated no statement true, § III.B.3, and because the asserted defects turn on reliance, inquiry notice, and materiality — questions of fact, not legal bars. *See* § IV.

### C. The Fourth Cause of Action (Trade Secret and Conversion) is adequately pleaded.

The Fourth Cause of Action pleads that the methods and code were Jones's, that he took reasonable measures to keep them secret, and that each defendant acquired and used them. Defendants' threshold grounds hold only on a reading of that pleading against him, which is not the standard they state. Mem. p. 13.

The assertion that "any claim is expired," mem. p. 13, fails on either reading. Both statutes run three years from when the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered," Cal. Civ. Code § 3426.6; 18 U.S.C. § 1836(d), and the SAC — which Defendants accept as true, mem. p. 13 — pleads a concealed derivation that reasonable diligence could not have uncovered before the applications published, Jones's identification of them in or about May 2025, and the filing of this action on June 17, 2025. SAC ¶ 145. Untimeliness therefore does not appear on the face of the pleading. *Supermail Cargo*, 68 F.3d at 1206–07. And if "expired" instead means that publication extinguished the secret, that destruction is Jones's pleaded injury, not a defense. SAC ¶¶ 134, 140.

Nor does the count recycle patent claims. The paragraph Defendants cite identifies the property as Jones's own source code and the methods embodied in it, and disclaims any adjudication of the inventorship, validity, or ownership of any patent. SAC ¶ 130. No element of trade-secret misappropriation is defined by inventorship, Cal. Civ. Code § 3426.1; 18 U.S.C. § 1839; state trade-secret law is not preempted by the patent laws, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 492–93 (1974); the preemption rule the motion states without confining it to the fraud count, mem. pp. 4–5, fails

for the reasons given at § III.B.2; and the leave this Court granted was not confined to particular theories, Dkt. 67 at 21, Concl. ¶¶ 1–2 (§ I).

### 1. Ownership is not defeated by the Copyright Act's work-for-hire allocation.

Work for hire is pressed as a ground no instrument can touch: ownership vests in Light Field Lab "even if the assignment agreement were voided." Mem. p. 14. It does not. The ownership premise fails because the element the governing cases state — their own included — is "that the plaintiff possessed a trade secret," *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020); accord *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010); CUTSA's remedy runs to a "complainant" as to a trade secret "of another," Cal. Civ. Code §§ 3426.3, 3426.1(b); and § 1839(4) reaches "rightful legal or equitable title to, **or license in**" the secret — an interest the SAC pleads both as title, three independent ways, SAC ¶ 136, and as the possession *Silvaco* defines, SAC ¶ 132 — while misappropriation turns on the improper acquisition and use pleaded at SAC ¶¶ 133, 143, not on who holds title afterward.

Defendants establish a copyright proposition and assert a trade-secret conclusion. That source code is copyrightable expression is not in dispute; for the step that "the Copyright Act's allocation of ownership controls whether Jones can plead that element," mem. p. 13, they cite nothing. The step fails as to each category of property the SAC pleads. As to the methods, the Copyright Act has nothing to allocate: copyright protection does not extend to "any idea, procedure, process, system, method of operation . . . regardless of the form in which it is . . . embodied in such work," 17 U.S.C. § 102(b) — which leaves untouched "the proprietary methods, techniques, and algorithms embodied in it," SAC ¶ 131, as does Defendants' own theory, advanced only "as to source code," so the ownership element survives even if Defendants were right about every line of the code. As to the code, § 201(b) vests only "all of the rights comprised in the copyright," which 17 U.S.C. § 106 enumerates exhaustively; none of them is a right against the acquisition, disclosure, or use of information, which is the whole of trade-secret protection, 18 U.S.C. § 1839(5); *accord Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 718 (2d Cir. 1992). And the decision Defendants cite for supersession draws the same line: copyright law "protects 'works,'" while "trade secret law protects 'information.'" *Silvaco*, 184 Cal. App. 4th at 229.

Case No. : 3:25-cv-05118-MMC
Opposition to Motion to Dismiss Second Amended Complaint

The theory fails at its own first step besides. A work made for hire is "a work prepared [1] by an employee [2] within the scope of his or her employment," and scope is governed by the common law of agency. 17 U.S.C. § 101(1); *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012) (bracketed numerals in the original); Restatement (Second) of Agency § 228, which *U.S. Auto Parts* adopted along with its requirement that the work be "actuated, at least in part, by a purpose to serve the [employer]." *Id.* That purpose is not established by pleading work performed during an employment that later proved useful to the employer — "[t]hroughout his employment," SAC ¶ 36; "beginning at the outset of his employment in September 2019," SAC ¶ 37 — allegations reaching at most the time-and-space prong; characterizing them as a concession does not supply the element. Mem. pp. 13–15. The Ninth Circuit reversed summary judgment on scope in *U.S. Auto Parts* where employee status was undisputed, 692 F.3d at 1018–19; what could not be resolved there cannot be resolved on a complaint construed in Jones's favor. *Daniels-Hall*, 629 F.3d at 998. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125–28 (9th Cir. 2010), forecloses nothing: it decided the element no one contests — employee status — and records that scope of employment was undisputed there, *id.* at 1125 n.4, and what it allocated was a copyright, not the entitlement 18 U.S.C. § 1839(4) requires.

The fallback to the Confidentiality and Proprietary Rights Agreement fails because an operative agreement makes the argument contractual rather than statutory and rests it on an instrument the SAC pleads void and rescinded, SAC ¶ 136 (§ III.C.2), and because the pleading alleges only an agreement that "purported to grant" those rights, "signed without knowledge of the misrepresented and concealed facts," SAC ¶ 33 — the allegation this Court's order recites in its background summary of the superseded pleading. Dkt. 67 at 1 n.2, 2:3–5 (citing FAC ¶ 18).

Defendants' separate California-law ground fails on its own terms. Their rule governs an employee who "signs an invention agreement assigning work created within the scope of his employment," mem. p. 14, and so presupposes both a valid assignment and within-scope work — neither of which appears on the face of the pleading. The SAC pleads the Confidentiality and Proprietary Rights Agreement void as to this work and, in the alternative, rescinded, with the rescission relating back to restore title as of the assignment. SAC ¶¶ 129, 136; *see* § III.C.2. And employment does

not supply scope, for the reasons just stated. The Introduction's preview of this count, mem. p. 1, rests on the same two premises.

### 2. Rescission defeats the "affirm and sue" bar.

The rescission argument fails because SAC ¶ 136 pleads title by routes needing no rescission at all — the agreement is void, and "independently, [Jones] authored the work" — and rescission is pleaded besides: SAC ¶ 129 pleads notice both by the original complaint filed June 17, 2025 and by the SAC itself; Civil Code section 1691 deems the service of a pleading seeking rescission "such notice or offer or both"; section 1693 — uncited in the motion — forbids denying relief for delay in restoring absent a substantial prejudice Defendants never assert; the June 2025 notice fell within the discovery period SAC ¶ 35 pleads; and *Jozinovich*, mem. p. 15, is a Truth in Lending Act mortgage case supplying no Civil Code rule.

The voidness allegations are not legal conclusions; they rest on pleaded facts of procurement by concealment and of governing terms never furnished. SAC ¶¶ 31, 33, 136. And "voidable rather than void" defeats nothing: a rescinded contract is void *ab initio*, so title relates back through the taking. Cal. Civ. Code § 1688; *DuBeck v. Cal. Physicians' Serv.*, 234 Cal. App. 4th 1254 (2015); SAC ¶¶ 136, 138. Nor did Jones affirm and sue: he rescinded, then sued — the course *Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 930–31 (2010), prescribes; rescission and damages are not alternatives, because a "claim for damages is not inconsistent with a claim for relief based upon rescission," Cal. Civ. Code § 1692; *Runyan v. Pacific Air Indus., Inc.*, 2 Cal. 3d 304, 311 (1970); the 2020–2021 exercises are no affirmance of facts pleaded as concealed until 2025, SAC ¶¶ 34–35; his unvested options were cancelled and marked "Forfeited," SAC ¶ 68; and his wage was not value received under the rescinded contract, Civ. Code § 1691(b). Fraud in the execution was neither pleaded nor needed: the failure-to-read rule is reserved as to fraud in the inducement (§ III.B.1), and SAC ¶ 71 concerns the Exercise Agreement's Section 7 waiver, not the September 9, 2019 agreement the ownership attack depends on.

The closing move — that the fraud claim's asserted infirmity and untimeliness leave Jones unable to "void the assignment" and so without "ownership over the trade secrets," mem. p. 15 — fails at both ends: the fraud claim is timely and particularized, §§ III.B.1, III.B.3; and ownership does not

travel through that count in any event, because SAC ¶ 136's third route, original authorship, turns on no instrument and no fraud finding.

### 3. The SAC pleads secrecy, misappropriation, and each defendant's own conduct.

The chapeau asserts that the SAC pleads no existing trade secret. Mem. pp. 15–16. Paragraph 131 names the secrets — the viewer-dependent light-field rendering method, the "Acuity" perceived-image optimization software, the light-field ray-generation library, the shader libraries, and the optical-simulation techniques and algorithms. Paragraph 132 pleads the element: those secrets "derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by," others who could obtain economic value from their disclosure or use, and Jones "took reasonable measures to maintain their secrecy." SAC ¶¶ 131–132. That was the state of the information when the acts paragraph 138 dates were committed; the publications' destruction of the methods' secrecy is the pleaded injury, not a gap in the element. SAC ¶¶ 134, 138. Defendants' own authority states the same definition — "broad," and consisting of "(1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret" — as what a plaintiff must ultimately "prove." *InteliClear*, 978 F.3d at 657–58. It holds as well that a plaintiff's "burden is only to identify at least one trade secret with sufficient particularity to create a triable issue," and that leaving identification open to later refinement is "not fatal" where "no discovery whatsoever had occurred" — the course paragraph 131 reserves under Code of Civil Procedure section 2019.210. *InteliClear*, 978 F.3d 653. And whether information is a trade secret turns on its value and its owner's measures, not on which defendant is before the Court. The premise that "the SAC confirms that the methods are not secret," mem. p. 13, redeployed as futility at mem. p. 18, is unsupported: the paragraphs cited concern the provenance of Light Field Lab's foundational patents, SAC ¶¶ 13, 25, and the only filings in that record reaching Jones's work are the two applications Light Field Lab itself filed and published — the pleaded injury, following a taking already complete. SAC ¶¶ 39, 134, 138.

Rule 9(b) does not measure this count as a whole, because fraud is no element of misappropriation and "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003);

and paragraphs 138 and 143 satisfy Rule 9(b) in any event. The assertion that the SAC pleads only collective conduct fails because paragraph 143 allocates each man's own act — Karafin "directed the company's exploitation of [Jones's] work, including the decision to file the applications built upon it" four days after the April 9, 2023 communication identifying that work as his, and Bevensee "used [Jones's] methods by incorporating them into those applications, on which he is named" — which is the role identification Defendants' own authority requires. SAC ¶¶ 38, 39, 143; *Swartz*, 476 F.3d at 764–65.

The acquisition prong fails because the qualifier that converts access into authorization — access "in the ordinary course" of employment, mem. p. 16 — appears nowhere in the pleading, which alleges acquisition "by improper means and without his consent," SAC ¶¶ 133, 138 — misrepresentation being an enumerated improper means, 18 U.S.C. § 1839(6)(A) — and because any authorization Light Field Lab gave its own officers is not the holder's consent 18 U.S.C. § 1839(5)(B) requires. *Attia v. Google LLC*, 983 F.3d 420 (9th Cir. 2020), where the applications were filed with the plaintiff's permission and knowledge, decides nothing here. The disclosure prong fails because its assignment premise is not established on the face of the pleading (§§ III.C.1–III.C.2), because the SAC pleads that Jones "never validly consented" to the acquisition, use, or disclosure of his secrets, SAC ¶¶ 134, 136, and because he claimed the work as his own on April 9, 2023, months before his June 23, 2023 termination; paragraph 138 supplies the dates of the filings and of the publications Defendants caused. The use prong fails because incorporation into one's own product is "use" under Defendants' own authority, *Silvaco*, 184 Cal. App. 4th at 224, and paragraph 143 pleads that mechanism as each man's own act, paragraph 138 dating the acts from 2019 through the August 15, 2025 transfer; place is no element of use. Their answer on that prong reaches only post-employment use, leaving untouched the use pleaded while Jones was still employed, and the defendant's possession is no element of misappropriation at all. 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).

The secrecy element measures the plaintiff's conduct, not the defendants' paperwork. Mem. p. 17. The DTSA asks whether "the owner thereof has taken reasonable measures to keep such information secret," 18 U.S.C. § 1839(3)(A), and CUTSA whether the information "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy," Cal. Civ. Code § 3426.1(d)(2). Neither asks whether secrecy was preserved "as against" a particular defendant, or what

agreements bound the persons the owner sues. Paragraph 132 pleads the measures: Jones "committed his work only to the company's access-controlled source-control system and did not disclose his methods or source code outside that environment," and Light Field Lab "itself defined such work as confidential information of 'great competitive importance and commercial value,' to be kept strictly confidential and disclosed only on a need-to-know basis." SAC ¶ 132. And Defendants' own authority holds that "confidential disclosures to employees, licensees, or others will not destroy the information's status as a trade secret." *InteliClear*, 978 F.3d at 660 (quoting *United States v. Nosal*, 844 F.3d 1024, 1043–44 (9th Cir. 2016)). His April 9, 2023 communication drawing their attention to the work was an internal assertion of authorship to company insiders, SAC ¶¶ 38, 133; it published nothing. *Turret Labs USA, Inc. v. CargoSprint, LLC*, a non-precedential summary order, ties the access-focused inquiry to a claimed secret consisting "primarily, if not entirely," of software "functionality that is made apparent to all users of the program." 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022) (summary order). Jones claims unpublished source code and internal methods. SAC ¶¶ 131–132.

The damages attack recites Jones's own pleaded injury, and it is not confined to the publications: paragraph 140 pleads "two permanent deprivations" — the destruction of secrecy through publication, and "the continuing dispossession of the source code and work product that Light Field Lab retained, transferred, and refused to return." The taking was complete before either publication, SAC ¶¶ 134, 138, 140; its attribution premise omits paragraph 143, which pleads that Karafin and Bevensee "each personally participated in that misappropriation" and gives each man's own acts, conduct for which a corporate officer is personally liable. *Coastal Abstract*, 173 F.3d at 734.

### 4. CUTSA does not supersede the conversion theory and amendment would not be Futile.

Supersession fails at the threshold: paragraph 143 pleads conversion against Light Field Lab alone — the caption names all four defendants because the same count pleads misappropriation against each of them — and Light Field Lab has not joined this motion. SAC ¶¶ 141, 143. *Silvaco* supersedes only where "the only basis for any property right is trade secrets law," and paragraph 141 pleads dominion over "the physical files, media, and repositories themselves" on "a basis independent of any misappropriation of a trade secret." The ownership element carried over is disjunctive besides —

"ownership or right to possession" — and paragraph 141 pleads that Jones "was entitled to its possession." § III.C.1.

Futility is answered at § IV. The premises offered for it that are specific to this count fare no better: the paragraphs cited for the assertion that Jones "seeks only to rescind" the assignment, SAC ¶¶ 18, 68, mention neither; and *Alta Devices*, mem. p. 18, announces no rule, having denied leave on a time bar and, independently, as "unduly prejudicial" because the plaintiff had "already filed three complaints," where this count is timely and is tested here for the first time; and the premise that Defendants "do not even possess the material" reaches neither deprivation paragraph 140 pleads. § III.C.3.

### D. The Fifth Cause of Action (Civil RICO) is adequately pleaded.

The Court's prior order dismissed the RICO claim on one ground, Rule 9(b) particularity, and its continuity sentence was expressly derivative of it: "without the requisite specificity, Jones is unable to satisfy the continuity requirement of the 'pattern' element." Dkt. 67 at 16. Continuity was never reached, and the condition on which that observation rested is not met here. The pleading supplies, predicate by predicate and defendant by defendant, the content, speaker, date, and audience the order found missing, § III.D.1, and pleads continuity on both branches of the disjunctive test the order quoted, § III.D.2. SAC ¶¶ 151–156, 159, 161. Defendants' "private employment dispute" characterization, mem. p. 1, supplies no rule for either element.

### 1. The predicates are pleaded defendant by defendant.

Defendants assert that the pleading identifies no specific false statement, its falsity when made, or its addressee as to either individual. Mem. p. 19. The paragraphs they cite supply each item the order named. Paragraph 151 pleads Karafin's August 12, 2019 email and his representations at Jones's August 28 and 29, 2019 interviews that the patent portfolio was "comprehensive and sound," false when made because its foundation was "derived from undisclosed Lytro work, encumbered, and exposed to prior art that had been withheld" — provenance Bevensee, a former senior Lytro technologist, "likewise concealed." Paragraph 161 then allocates the predicates to each man by name, which is the role identification Rule 9(b) requires of a multi-defendant pleading. SAC ¶¶ 151, 161; *Swartz*, 476 F.3d at 764–65.

Footnote ten compared two paragraphs of a superseded pleading; the linkage it found wanting is now pleaded in the applications' own text. Dkt. 67 at 16 n.10; SAC ¶¶ 40, 158. Nor does *Semiconductor Energy* reach the wires charged at SAC ¶¶ 154–155. It holds only that the Patent Office was not defrauded of property *of its own*, 204 F.3d at 1380, so whose property was lost is the element, not, as Defendants answer, a label placed on the conduct after the fact, mem. p. 19 — and the rule cannot reach wires charged as the means of taking property that was Jones's own before it was taken: his source code and the methods embodied in it, their secrecy, and the $56,437.50 he paid. SAC ¶¶ 36–37, 147, 155, 162–163; *Cleveland v. United States*, 531 U.S. 12, 15 (2000).

The § 1832 predicate is said to plead no act by either man distinct from Light Field Lab, and the count to allege only corporate conduct and "the former titles of its officers." Mem. pp. 20–21. The paragraph cited pleads that Karafin and Bevensee "took and used those trade secrets without his consent and caused them to be embodied in the applications," SAC ¶ 153, and each man's own acts are allocated to him, including the August 15, 2025 General Assignment Karafin signed and transmitted. SAC ¶¶ 150, 161; §§ III.B.3, III.C.3. That is the individualized pleading Defendants' own authorities require, mem. p. 20, not group pleading. Nor do an officer's racketeering acts become the corporation's merely by being committed through it: the natural person who conducts the enterprise's affairs is section 1962(c)'s paradigm defendant. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

### 2. Continuity is pleaded under either theory.

Defendants' pattern attack is "one scheme directed at one victim." Mem. p. 20. The charged August 15, 2025 General Assignment wire is multi-victim on its face: the incorporated allegations plead that it left "Mr. Jones, like every other creditor and equity holder," with "nothing," while "the undisclosed secured creditor absorbed the available proceeds." SAC ¶¶ 86, 147, 156. They show what the predicate did, not Jones's injury. SAC ¶ 162.

Their "same victim" language is the SAC's own relatedness recital. Relatedness turns on acts sharing "the same or similar purposes, results, participants, victims, or methods of commission." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). A shared victim strengthens relatedness rather than defeating the pattern; the same paragraph pleads "not a single, self-terminating fraud upon a single victim." SAC ¶ 159. *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450–51 (9th Cir. 1991),

sustained a pattern on three forgeries whose "frequency" showed "a regular way of conducting business" though only one injured the plaintiff, recovery confined to that loss. That test compares the predicates to the business; it cannot be run on them alone. *H.J. Inc.*, 492 U.S. at 242–43. Multiple schemes are not required, *id.* at 240; predicates "not isolated or sporadic" suffice. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). The SAC pleads these acts "are not isolated," and that the method's earlier "objects were others' work and the Patent Office." SAC ¶ 158.

Continuity also does not turn solely on whether conduct is "open-ended or inherently terminable." Mem. p. 21. The test is disjunctive — "either . . . a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. A closed period is established "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. The pleading states that series in dates. The charged predicates "span at least six and one-half years," and "[a]t least four of those acts — the two publications, the assignment, and the sale — occurred after [Jones's] employment ended on June 23, 2023 . . . so the scheme did not end with his employment." SAC ¶ 159. The last of them is the August 15, 2025 assignment wire. SAC ¶ 156.

The threat of repetition is pleaded independently, and nothing in the pleading forecloses it. Paragraph 160 is no bare conclusion: it pleads the August 15, 2025 assignment and the January 15, 2026 sale of the patent estate as "continuing the disposition of the misappropriated assets into 2026." Nor does the transfer of Light Field Lab's assets negate that threat: the SAC alleges that the misappropriated code and trade secrets "continue to be held and exploited . . . by a holder that remains undisclosed," that that course of conduct "has not ended," and that the transferees who now hold those assets are members of the enterprise itself. SAC ¶¶ 5(c)–(d), 89, 149. The charter forfeiture defeats nothing either: paragraphs 87 and 88 fix Light Field Lab's corporate capacity as of February 12, 2026 — after every charged predicate — while SAC ¶ 149 pleads in the alternative an association-in-fact "persisting from 2016 through 2026" that needs no charter, *Boyle v. United States*, 556 U.S. 938, 947–48 (2009), and a company's having "ceased to do business" does not defeat the threat of continuity, *Ikuno v. Yip*, 912 F.2d 306, 309 (9th Cir. 1990).

**3. Jones has pleaded RICO injury, and dismissal with prejudice is improper.**

The contention that the SAC pleads away RICO injury reaches only "the relevant property" — pleaded as Jones's own and taken as true here, SAC ¶¶ 36–37; *see* § III.C.1 — and never the money: the $56,437.50 he paid out of his own pocket, pleaded as "a loss complete in itself and independent of any question of who owns his work" and as "a direct loss proximately caused by the concealment," SAC ¶¶ 147, 162, with no more directly injured party standing between the predicate conduct and that loss. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). RICO's reach is measured by the acts charged, not by the characterization of the case as a private, one-employee dispute, mem. pp. 20–21. SAC ¶¶ 152–156, 159; § III.D.2. And the decision offered for that characterization withholds standing only from a government entity relying on "expenditures alone"; a plaintiff suffering "a wrongful deprivation of her money" is injured in her property. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976 (9th Cir. 2008). Dismissal with prejudice is improper for the reasons stated at § IV.

**E. The Sixth Cause of Action (Breach of Fiduciary Duty) is adequately pleaded.**

The Sixth Cause of Action runs against Karafin and Bevensee personally and charges only breaches after Jones became a stockholder on December 10, 2020. That they owed him Delaware's fiduciary duties is common ground. SAC ¶ 168; Dkt. 67 at 17 n.11; mem. p. 22 n.6. Limitations is a separate question, taken up first.

**1. The fiduciary claim is not time-barred on the face of the pleading.**

Defendants' May 6, 2024 expiry date fails because April 29 and May 6, 2021 are the date and settlement date of an option exercise, SAC ¶¶ 64, 171, not of the breach the count charges — the concealment these fiduciaries maintained "throughout his stockholding" until the shares were extinguished on July 13, 2025, SAC ¶¶ 169, 173–174 — so no bar appears on the face of the pleading. The companion premise that "[a]ll other allegations . . . date back to 2019," mem. p. 22, fails on that same pleaded text, which it passes over. The retention point fails because this count charges not Jones's holding of his shares but the fiduciaries' continuing concealment, throughout that holding, of the facts that falsified the picture they had held out to him, SAC ¶¶ 173–174 — conduct Delaware makes actionable whether or not stockholder action is requested (§ III.E.2), the affirmative disclosure duty being pleaded here only in the alternative. Footnote 6 changes nothing. Delaware supplies the substance

of the duty; it does not supply the clock, which a federal court sitting in California takes from the forum. *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003). And the "parallel inquiry-notice framework" fails because neither body of law supplies it: California's section 338(d) runs only from discovery of the facts constituting the fraud (§ III.B.1), and Delaware's three-year statute runs from the wrongful act, displaced only by tolling — equitable tolling, fraudulent concealment, and inherently unknowable injuries. Under either, the concealment and publication dates the SAC pleads leave the count timely on the face of the pleading. SAC ¶¶ 34–35, 172, 175–176. In the alternative, the rule that persistence of a nondisclosure does not "restart" a limitations period, mem. p. 23, defeats only a continuing-violation theory Jones does not advance: continuous accrual neither restarts nor revives but segments a duty owed continuously, SAC ¶ 170, leaving the pleaded concealment reachable inside the window under both jurisdictions' law. *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1192, 1199 (2013). The deceit-gravamen characterization, mem. p. 22, adds nothing: it selects section 338(d) whole, discovery rule included, and a rule for choosing a limitations statute is not a pleading standard. *See* § III.E.2.

The remaining conjunct — that "Jones's own admissions establish inquiry notice," mem. pp. 22, 23 — rests on allegations taken as true that plead the opposite. Inquiry notice is a question of fact, §§ I, III.B.4, and that same question gates every Delaware route past section 8106. Footnote 7 does not fill the gap: possession of the equity documents in January 2020 starts no clock on a fact those documents do not contain, and its availability test is not the law, *Parsons*, 31 Cal. App. 4th at 1528–29 (§ III.B.1), and does not fit a pleading that alleges the derivation "could not be recognized from Light Field Lab's patents alone" and that the applications capturing Jones's own work did not publish until October 2024 and February 2025. SAC ¶¶ 34–35, 176. Those allegations plead Delaware's fraudulent-concealment and inherently-unknowable-injury doctrines, and nothing is charged to Jones as a matter of law on them: "[a] Rule 12(b)(6) motion . . . is not a proper procedural vehicle to resolve conflicting inferences of fact." *Wal-Mart Stores, Inc. v. AIG Life Insurance Co.*, 860 A.2d 312, 321 (Del. 2004).

**2. The SAC pleads breach of the duty to speak.**

Dkt. 69 § IV opens on a passage the motion draws from the Court's fraud analysis, Dkt. 67 at 12–13, addressed to "informal text message communications," whereas its ruling on the Sixth Cause of

Action preserved the duty to "deal honestly with stockholders" and dismissed for want of an allegation of knowing falsity, Dkt. 67 at 18 — knowledge and falsity SAC ¶¶ 172–173 now plead, as to what SAC ¶ 171 alleges were "formal equity transactions," not informal communications. The count therefore does not fail "for the same reasons the Court dismissed it before," mem. p. 23: the order's other grounds were a defendant this count no longer names and a period it no longer reaches. SAC ¶¶ 167, 169, 177. That narrowing is the pleading's own, drawn to satisfy Dkt. 67 at 17, and costs the count nothing: the conduct charged lies entirely inside the fiduciary relationship. The Rule 9(b) objection fails because the count is not grounded in fraud — it pleads the fiduciary duties of loyalty, care, good faith, and candor owed a stockholder and routes every non-fiduciary disclosure duty "sounding in fraud" to the Third and Fifth Causes of Action, SAC ¶¶ 168, 170 — and because it meets the standard regardless, naming the second and third exercises by date and amount, the representations left uncorrected, and each man's own knowledge and act, including Bevensee's signature on each certificate as Secretary. SAC ¶¶ 15–21, 64, 171–173.

The premise that a fiduciary owes his stockholder no duty absent a request for stockholder action misstates Delaware law. *Malone v. Brincat*, 722 A.2d 5 (Del. 1998), offered as holding the "same," mem. p. 23, holds the opposite on the pages cited: deciding the question "in the absence of a request for shareholder action," it held that directors who "knowingly disseminate false information" damaging a stockholder "violate their fiduciary duty," honesty being the *sine qua non* of the duty owed whenever directors speak to shareholders, "with or without a request for shareholder action." 722 A.2d at 9–10. *Dohmen*, the motion's own authority, is to the same effect: outside a request directors "must still deal honestly with stockholders" and state a claim by "knowingly disclos[ing] false information." *Dohmen v. Goodman*, 234 A.3d 1161, 1168–69, 1171 (Del. 2020). That honesty duty — not the affirmative-disclosure duty *Dohmen* declined to impose on individual transactions, pleaded here only in the alternative, SAC ¶ 173 — is the duty this count invokes. The companion "no free-floating duty to correct" proposition misses SAC ¶ 173, which pleads not a duty to update a statement true when made but the duty to correct a picture known false when held out. *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 154–55 (Del. Ch. 2004). And the "relies entirely on silence" premise fails on the pleading and on the law: the breach this count charges first is a

half-truth — a picture the fiduciaries "knew to be false" and "allowed . . . to stand" throughout Jones's stockholding, SAC ¶ 173 — and Delaware makes silence itself actionable where, as pleaded, fiduciaries sell their stockholder the corporation's stock while holding material facts he lacks, SAC ¶¶ 65, 172, a transaction-based duty *Latesco, L.P. v. Wayport, Inc.*, 2009 WL 2246793 (Del. Ch. July 24, 2009), sustained on a motion to dismiss without any request for stockholder action.

Nothing at mem. pp. 23–24 negates concealment, reliance, or injury. Exclusive knowledge is only one of the two routes to omission liability Defendants' own authority recognizes, mem. p. 25, and the SAC pleads the other: a derivation "affirmatively concealed by the one-for-one substitution of terminology designed to defeat the very comparison that would reveal it." SAC ¶ 176. The contention that that allegation "cannot survive" SAC ¶¶ 13 and 25 fails because those paragraphs allocate the source of proof — the patent file rather than Jones's characterization of it, which makes the pleaded derivation documentary rather than argumentative — without pleading that the derivation was apparent from that file, and Rule 12(b)(6) requires them to be read with SAC ¶ 176, not weighed against it. The '584 assignee observation, Dkt. 67 at 11, fixes only the record assignee, which the pleading does not dispute. § III.A. The continued-exercise point fails for the reasons given at § III.B.3, and because the SAC pleads Jones's further exercises and his retention of the 80,625 shares to their extinguishment as the products of reliance on his fiduciaries' silence. SAC ¶¶ 174–176. The finding that Jones alleged no injury "on account of the allegedly concealed information" was made on the Third Cause of Action and dismissed with leave to amend, Dkt. 67 at 10:21–28, 21 — the ruling on the Sixth Cause of Action decided no injury question, *id.* at 17–18 — and this count now pleads its injury as the $49,437.50 paid on the second and third exercises and the lost value of the 80,625 shares extinguished in Light Field Lab's assignment for the benefit of creditors. SAC ¶ 177. The causation attack fares no better: this count does not seek the option-value loss the motion describes but the loss the fiduciaries' continuing concealment "induced" at transactions they "approved and executed" while holding the undisclosed facts, SAC ¶¶ 65, 174–175 — their own conduct, not the corporation's. *See* § III.B.3, including mem. p. 24's attribution to SAC ¶¶ 64–65, 68.

The countersignature argument fails because the count pleads the signatures not as an assertion but as the fiduciaries' own participation in exercises they "administered and executed," SAC ¶ 171 —

the trigger for the duty to speak while transacting under the motion's own authority, *Latesco* — and their own "relies entirely on silence" characterization confirms that a demand for a false assertion answers a claim the SAC does not plead. *Huff Energy Fund, L.P. v. Gershen*, 2016 WL 5462958 (Del. Ch. Sept. 29, 2016), announces no ministerial-act rule; it reviewed whether directors breached their duties "by approving and implementing" the transaction before it. The repackaging argument fails because there is no contract-governed relationship to displace: this count pleads no contract claim, and the equity documents it reaches are pleaded as forms procured by the same concealment, the Exercise Agreement's waiver void as to Jones, SAC ¶¶ 66–71, 76. Jones asserts no right "solely a creature of contract" but one that "attached to or devolved upon all the Company's common shares generally, irrespective of a contract" — the right to the honesty and candor owed every stockholder. *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010); SAC ¶¶ 168–170. The issuer-shield argument fails because *A.W. Financial* and *An v. Cosman* hold only that the issuing corporation owes no fiduciary duty in selling its own stock, and this count names not the issuer but Karafin and Bevensee, whose duty of honesty in speaking to their stockholder binds them whoever stood on the other side of the sale. *Malone*, 722 A.2d at 10. The rule the motion draws from *Latesco*, mem. p. 25 — a duty to speak or intentional concealment — is met on both branches for the reasons given.

The count requires no in-relationship utterance, and it quotes Karafin's March 2023 assurance to his stockholder besides. SAC ¶ 32. The demand for "a statement that was false or misleading" fails with it — SAC ¶¶ 172–173 plead one, and a representation Defendants themselves call true, mem. p. 8, is actionable falsity where its maker withholds the facts "necessary to prevent" it "from being misleading." *Metro*, 854 A.2d at 155. Silence supplies no missing element because none is missing: the pleading supplies the knowing falsity the prior order found absent, and the loss.

### 3. Dismissal with prejudice is improper.

Defendants' with-prejudice request rests on the limitations showing answered at § III.E.1, on a repackaging-across-complaints charge answered at § IV, where futility remains their burden, and, as to Bevensee, on a ruling that never reached him — the prior count named only Light Field Lab and Karafin. Dkt. 67 at 16.

**IV. CONCLUSION AND REQUEST FOR LEAVE TO AMEND**

For the reasons stated above, the motion should be denied in its entirety.

Every ground offered for dismissal with prejudice is answered above; and a ground that succeeds establishes dismissal, not its permanence. A district court "abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Defendants assert both grounds; neither is present. Amendment is futile only where it is "clear on de novo review that the complaint could not be saved by amendment," and absent prejudice or a strong showing on the remaining factors, Rule 15(a) presumptively favors leave; Defendants show neither. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Their own 2026 authority calls that standard "generous." *Brown v. Brita Products Co.*, 172 F.4th 1113 (9th Cir. 2026). On the formulation they invoke, futility requires a claim "barred as a matter of law," *Sikhs for Justice Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015); mem. p. 12; no cause of action is. Their premise that "these are legal rather than factual defects," mem. p. 18, describes the motion's reading of the pleading, not the pleading, and a defect in that reading is not one the pleader must cure.

Nor is this a record of repeated failure to cure. That factor measures "repeated failure to cure deficiencies *by amendments previously allowed*." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court dismissed the Third through Seventh Causes of Action with leave to amend and set July 6, 2026 for the SAC, filed that day. Dkt. 67 at 21, Concl. ¶¶ 2, 4. The First Amended Complaint was not an amendment previously allowed: it was filed as of right, as this Court held. Dkt. 26 at 2.

Should the Court find any allegation insufficient, the dismissal should be without prejudice: even a fraud complaint that "patently fail[ed] to comply with Rule 9(b)" was one whose dismissal "would necessarily be without prejudice." *Swartz*, 476 F.3d at 765 (Defendants' own authority). Plaintiff respectfully requests leave to amend.

To meet the page limit of Civil L.R. 7-4(b), this opposition compresses arguments and authorities that would otherwise have been developed at length, and omits others. Plaintiff would welcome the opportunity to submit supplemental briefing, or to be heard at argument, on any issue the Court would find useful.

Dated: August 3, 2026

HENRY | LACEY PC

By /s/ Stephen Henry_____
STEPHEN F. HENRY
Attorney for Plaintiff

**Case No. : 3:25-cv-05118-MMC**
**Opposition to Motion to Dismiss Second Amended Complaint**