**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ALAN JONES,

        Plaintiff,

    vs.

LIGHT FIELD LAB, INC., JON KARAFIN,
BRENDAN BEVENSEE, and Does 1 to 10,

        Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:25-cv-5118 MMC

**PLAINTIFF'S MOTION FOR AN ORDER REQUIRING COUNSEL PURPORTING TO APPEAR FOR LIGHT FIELD LAB, INC. TO DEMONSTRATE AUTHORITY TO APPEAR**

**Date: September 11, 2026**
**Time: 9:00 a.m.**
**Courtroom: 7**

**Complaint Filed: June 17, 2025**
**Am. Complaint Filed: Sept. 3, 2025**
**Second Am. Complaint Filed: July 6, 2026**

**NOTICE OF MOTION AND MOTION**

    **PLEASE TAKE NOTICE** that on September 11, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of the above-entitled Court, Plaintiff Alan Jones will and hereby does move the Court for an order requiring Gordon Rees Scully Mansukhani, LLP to demonstrate its authority to appear on behalf of defendant Light Field Lab, Inc.

    Plaintiff moves for a single order: that Gordon Rees Scully Mansukhani, LLP be required to demonstrate its authority to appear on behalf of defendant Light Field Lab, Inc. This motion is based on

this Notice, the following Memorandum of Points and Authorities, the pleadings and papers on file in this action, and such further argument and evidence as may be presented at or before the hearing.

**STATEMENT OF THE ISSUE TO BE DECIDED**

Whether the Court should exercise its power to require Gordon Rees Scully Mansukhani, LLP, the firm purporting to appear for Light Field Lab, Inc., to show its authority to appear.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. STATEMENT OF FACTS**

1. Light Field Lab, Inc. ("LFL") is a Delaware corporation whose charter was forfeited on February 12, 2026. Delaware's own record states the ground — "Forfeited, Failure to appoint a R/A" — the forfeiture prescribed by 8 Del. C. § 136(b). [Dkt. 63, Ex. A]

2. LFL's registered agent is "UNASSIGNED AGENT." Its prior registered agent, Capitol Services, Inc., resigned on January 13, 2026, and no successor has been designated. [Dkt. 63, Ex. A]

3. Gordon Rees Scully Mansukhani, LLP filed Dkts. 59, 60 and 61 in this action on March 25, 2026 — nearly six weeks after the forfeiture.

**II. THE COURT HAS POWER TO REQUIRE AN ATTORNEY TO SHOW HIS AUTHORITY TO APPEAR**

Almost a century ago, the Supreme Court stated the power this motion asks the Court to exercise, in terms that have never been qualified: "the trial court, or this court, has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear." *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927).

The ground of that power is the court's supervision of its own bar. Quoting Justice Washington in *The King of Spain v. Oliver*, the *Pueblo* Court explained that "it would be strange, if a Court whose right and whose duty it is to superintend the conduct of its officers, should not have the power to inquire by what authority an attorney of that Court undertakes to sue or to defend, in the name of another — whether that other is a real or fictitious person — and whether its process is used for the purpose of vexation or fraud" *Id.* at 319. The power, on the face of the text the Supreme Court adopted, reaches an attorney who undertakes "to sue *or to defend*." It is not confined to policing the plaintiffs' side of the

caption. Gordon Rees Scully Mansukhani, LLP has appeared to *defend* — filing Dkts. 59, 60 and 61 in Light Field Lab, Inc.'s name — and the same supervisory power reaches that appearance.

The same passage defines the limits of what the Court must decide, and it is what makes the relief sought here modest: "The only question can be, as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the Court, and ought to be adapted to the case." *Id.* Plaintiff does not ask the Court to find that Gordon Rees lacks authority, to strike anything, or to enter any default. He asks only that the Court exercise the power *Pueblo* confirms it has — to require counsel to show his authority to appear — at a time and in a manner the Court deems suited to this case.

That power is not a historical curiosity. The D.C. Circuit applied *Pueblo* two years ago in *Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608 (D.C. Cir. 2024), on facts structurally close to these: an entity whose governance had been displaced, and a law firm continuing to litigate in that entity's name. Quoting its own earlier decision, the court recognized the "undoubted power to require counsel before us to demonstrate their authority." *Id.* at 613 (quoting *Donnelly v. Parker*, 486 F.2d 402, 405 n.6 (D.C. Cir. 1973)). Plaintiff acknowledges that no decision of the Ninth Circuit applies *Pueblo*; but *Pueblo* binds this Court as Supreme Court precedent, and *Doraleh* confirms that it remains a live and applied rule of federal practice.

A. The objection may be raised at any stage

Timing is no obstacle. In *Pueblo* itself the Supreme Court declined to make the timing of the challenge decisive, holding that whether it "was seasonably interposed, it is not important to decide." 273 U.S. at 319. *Doraleh* states the rule directly: challenges to a lawyer's authority are "not subject to the standard forfeiture rules and may be raised 'at any stage of the case,' including on appeal." 109 F.4th at 615 (quoting *Pueblo*, 273 U.S. at 319). In accord is Judge Hand's formulation: "'[T]he objection' to an attorney's authority, 'is good at any time.'" *Sutherland v. Int'l Ins. Co. of N.Y.*, 43 F.2d 969, 972 (2d Cir. 1930) (L. Hand, J.), *quoted in Doraleh*, 109 F.4th at 615.

Nor does Rule 9 supply a different answer. As the *Doraleh* court explained: "Rule 9 includes procedures for challenging 'a party's authority to sue or be sued in a representative capacity.' FED. R. CIV. P. 9(a)(1)(B). Rule 9 procedures, however, do not apply to disputes about whether the lawyer has authority to represent the named party." 109 F.4th at 613, n.3)》. This motion concerns the latter —

whether the lawyer has authority to represent the named party — and Rule 9 therefore has no bearing on it.

### III. THE RECITAL OF FACTS IS ITSELF SUFFICIENT GROUND

*Pueblo of Santa Rosa* did not rest on an elaborate evidentiary record. Having recited the facts, the Supreme Court held that "[t]o justify the conclusion that there was no authority to bring or maintain the suit really needs nothing beyond the foregoing short recital of the facts." 273 U.S. at 319. The facts stated above (Part I) are of the same kind: each is drawn from Delaware's own public records or from this Court's docket, and none can be disputed. The recital does the work.

The governing standard is not demanding, and this record clears it. When a party requests that the court inquire into a lawyer's authority "and presents evidence showing 'sufficient ground to question the authority,' the request is 'always granted.'" *W.A. Gage & Co. v. Bell*, 124 F. 371, 380 (W.D. Tenn. 1903), *cited in Pueblo*, 273 U.S. at 319, *and quoted in Doraleh*, 109 F.4th 614. A court need not entertain "light or frivolous grounds" for such a challenge, but it must evaluate "substantial reasons." *Tally v. Reynolds*, 1 Ark. 99, 104 (1838), *quoted in Doraleh*, 109 F.4th at 615. The forfeiture of LFL's charter by force of 8 Del. C. § 136(b) — on Delaware's own stated ground, "Forfeited, Failure to appoint a R/A" — is as substantial a reason as the law supplies.

And once such grounds are shown, the inquiry is no longer optional. As *Doraleh* holds, courts "do not have discretion to refuse to require an attorney to show his authority when such grounds are present." 109 F.4th at 614, n.4. Discretion survives only "as to the time and manner of calling for" the lawyer's authority. *Id.* (quoting *Pueblo*, 273 U.S. at 319). The order Plaintiff seeks is thus not an exercise of grace; it is the response the case law prescribes when substantial reasons are presented.

The recital also fixes where the showing must now come from. A prima facie presentation of sufficient ground shifts the burden of production to counsel, whose authority is the very matter in question, to come forward with affirmative proof. That is the procedure *Pueblo* itself applied — the circumstances there were "so improvident as to call for affirmative proof of authority of the clearest kind," 273 U.S. at 320 — and it is the procedure *Doraleh* applied, where declarations from the court-appointed administrator, stating that she had not authorized the suit, "set forth the type of substantial reasons that create 'sufficient ground to question the authority.'" 109 F.4th at 614 (quoting *W.A. Gage &*

*Co.*, 124 F. at 380). The documentary showing here is, if anything, stronger: it does not depend on any declarant.

Counsel may respond that an attorney's authority is presumed, and the California Supreme Court has stated the presumption in its strictest form: "An attorney's authority to represent his purported client is presumed in the absence of a strong factual showing to the contrary." *Sarracino v. Superior Court*, 13 Cal.3d 1, 13 (1974). Plaintiff meets that formulation head-on, and answers it twice. First, this is a federal court exercising a federal supervisory power over its own officers — the power *Pueblo* grounds in the court's "right and . . . duty . . . to superintend the conduct of its officers," 273 U.S. at 319 (quoting *The King of Spain v. Oliver*, 2 Wash. C.C. 429, 430) — so a state-court formulation of the showing required is persuasive at most; it does not define the reach of this Court's power over the members of its own bar. Second, the showing here satisfies even *Sarracino*'s strict standard. Under California law the presumption "may be overcome only by a strong showing that the attorney had no authority," *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.*, 12 Cal.App.4th 74, 95 (1993) — but the showing here is not the credibility contest that sank the challenge in *Tsakos*. It is a documentary public record of the State of Delaware, of a kind no cross-examination can impeach: the charter of the corporation in whose name Gordon Rees appears was forfeited by force of statute on February 12, 2026. Dkt. 63, Ex. A.[1]

A. There is no affirmative evidence that anyone authorized the appearance

The presumption of authority deserves a candid statement before it is answered, because it is a presumption and nothing more. An attorney's authority to represent his client "must indeed exist." *Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 830 (1824), *quoted in Doraleh*, 109 F.4th at 613. Such authority is presumed. *Hill v. Mendenhall*, 88 U.S. (21 Wall.) 453, 454 (1875). But a presumption is not evidence; it is an assumption that stands in for evidence until the record supplies or displaces it. On this record, nothing supplies what the presumption assumes: the Delaware record — the public record of the corporation's existence — discloses no act by which anyone authorized this appearance,

---

[1] The Court's April 10, 2026 order (Dkt. 64) denied Plaintiff's motion to compel as moot; it decided nothing about anyone's authority to appear for LFL.

and the forfeiture removes the foundation on which the assumption would rest. If authority was supplied from some other quarter, that is precisely what the order to show will bring forward.

*Pueblo* measured exactly this situation. Where the circumstances are "so improvident as to call for affirmative proof of authority of the clearest kind," and what the record contains instead is "no affirmative evidence of a substantial character," the challenge must be heard. 273 U.S. at 320. Each of these facts maps onto that measure. A charter forfeited by force of 8 Del. C. § 136(b) is a forfeiture of the thing from which all corporate power flows — including the power to retain and instruct counsel (*see* § III.B). The registered agent — Delaware's own channel for reaching the corporation — is "UNASSIGNED." And Gordon Rees filed Dkts. 59, 60 and 61 on March 25, 2026, nearly six weeks after the forfeiture it nowhere addresses. Dkts. 59–61.

To be clear about what Plaintiff is and is not asking: Plaintiff does not ask the Court to find, on this motion, that Gordon Rees lacks authority. The recital of facts does not itself prove a negative; it does what *Pueblo* says such a recital does — it calls for proof. That is why the relief sought is an order requiring counsel to demonstrate its authority, and nothing more. If authority exists, counsel holds the proof of it and can produce it without burden. If it does not, the appearance cannot stand on a presumption the record has stripped of its foundation. Either way, the question is answered by the inquiry, and the inquiry is what this motion requests.

### B. Wholly aside from the foregoing, LFL's charter is forfeited by force of statute

*Pueblo* closed its analysis with an independent statutory ground, introduced in a single turn of phrase: "But wholly aside from this," the instruments at issue were void by force of statute. 273 U.S. at 320–21. Plaintiff makes the same move here, in the same alternative posture: wholly aside from the recital of facts in Sections I and III.A, Light Field Lab's charter is forfeited by force of 8 Del. C. § 136(b). This ground stands alone. If the Court is not persuaded that a § 136 forfeiture strips LFL's capacity to instruct counsel, the showing already made in Sections I and III is untouched.

The statute works its result without any act of this Court or of any litigant. Under 8 Del. C. § 136(b), when a corporation's registered agent resigns and the corporation fails to obtain and designate a new registered agent within 30 days after the resignation is filed, the Secretary of State declares the corporation's charter forfeited. That is exactly what happened here: Capitol Services resigned on

January 13, 2026, no successor was designated, and the Secretary of State declared LFL's charter forfeited on February 12, 2026, on the ground Delaware itself states, "Forfeited, Failure to appoint a R/A." The facts establishing the forfeiture are already of record. *See supra* § I; Dkt. 63, Ex. A.

The consequence of that forfeiture is settled in Delaware, and it does not depend on why the charter was lost. A Delaware corporation's powers flow from its charter; the charter is the source, and the only source, of every power the corporation can exercise. When the charter is forfeited, nothing remains from which any corporate power could flow — the corporation is void. And a void Delaware corporation is not dormant; it is dead: it "had no power to pursue or defend this litigation," it has "died a civil death," and "[i]t is dead, and has been since before it purported to initiate this action." *Rivera v. Angkor Capital Ltd.*, 2024 WL 3873050, at 8 (Del. Ch. Aug. 20, 2024). LFL remains a party to this action and a valid judgment debtor. It possesses, however, no corporate power by which anyone could retain or instruct counsel to appear in its defense.

Delaware's own record establishes the point directly. That record does not describe LFL as delinquent, or dormant, or in default; it states that LFL is "Forfeited," effective February 12, 2026. Dkt. 63, Ex. A. Section 136(b) is the statute that produced that status, and it forfeits the "charter of such corporation" — the very instrument whose loss § 510 describes, in the tax context, as rendering "all powers . . . inoperative." Delaware does not make the civil death of a forfeited corporation turn on which subsection worked the forfeiture. No decision appears to have applied that consequence to a charter forfeited for failure to maintain a registered agent rather than for non-payment of taxes; to that extent the trigger presents a question of first impression, and there is no authority to the contrary. But the distinction is one of trigger, not consequence. And LFL is in no event a going concern whose forfeiture is a mere formality: the same Delaware record shows it owes $194,330.40 in unpaid franchise tax and last filed an annual report in 2024. Dkt. 63, Ex. A.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks the Court to exercise the power it has always had — the power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear. *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927). The only question is "as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the

Court, and ought to be adapted to the case." *Id.* at 319 (quoting *King of Spain v. Oliver*, 2 Wash. C.C. 429, 430). Plaintiff asks only that Gordon Rees Scully Mansukhani, LLP be required to demonstrate its authority to appear for Light Field Lab, Inc. Plaintiff does not seek Light Field Lab's dismissal; it remains a defendant, and the relief requested is directed only at the authority of the firm appearing in its name.

Dated: August 3, 2026

                                    HENRY | LACEY PC

                                    By /s/ Stephen Henry_____
                                    STEPHEN F. HENRY
                                    Attorney for Plaintiff