Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-5118@cases.warrenllp.com

*Counsel for Defendants Jon Karafin and Brendan Bevensee*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALAN JONES,<br><br>    Plaintiff,<br><br>v.<br><br>LIGHT FIELD LAB, INC.,<br>JON KARAFIN, BRENDAN BEVENSEE,<br>and Does 1 to 10,<br><br>    Defendants.<br><br>_____ | ) Case No. 3:25-cv-05118-MMC<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>) **DEFENDANTS JON KARAFIN AND**<br>) **BRENDAN BEVENSEES' REPLY IN**<br>) **SUPPORT OF NOTICE OF MOTION**<br>) **AND MOTION TO DISMISS**<br>) **PLAINTIFF'S SECOND AMENDED**<br>) **COMPLAINT FOR DAMAGES**<br>)<br>) **Date:**      August 28, 2026<br>) **Time:**      9:00 a.m.<br>) **Courtroom:**  7<br>) |

Case No. 3:25-cv-05118-MMC

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    The Fraud Claim is Time-Barred, Preempted, and Remains Factually Deficient . . . . . . . . . . . . 1

    A.    The Fraud Claim Is Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    The Fraud Count is Preempted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    Jones Still Fails to Plead a Plausible Fraud Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    Jones' Trade Secret Claim Fails for Lack of Ownership . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    LFL Owns the Source Code Under the Work-for-Hire Doctrine . . . . . . . . . . . . . . . . . . . 5

    B.    The Assignment Independently Disposes of the Method Trade Secrets . . . . . . . . . . . . . . 7

    C.    The Methods Belong to LFL as a Matter of the Employment Relationship . . . . . . . . . . . 8

III.    The Civil Rico Claim Fails for the Same Reasons the Court Already Identified, Now Confirmed Rather Than Cured . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    Jones Cannot Plead the Specific Conduct Required for a RICO Claim . . . . . . . . . . . . . . 10

    B.    The RICO Claim Depends on Ownership That This Court Should Reject . . . . . . . . . . . 11

    C.    The SAC Pleads a Finite Episode That Had Already Run Its Course . . . . . . . . . . . . . . . 12

    D.    Jones' Stock Option Theory Fails the Proximate Cause Requirement . . . . . . . . . . . . . . . 13

IV.    The Breach of Fiduciary Duty Claim is Time-Barred and Fails the Plausibility Standard . . . . . 13

    A.    The Breach of Fiduciary Duty Claim is Barred by the Statute of Limitations . . . . . . . . 13

    B.    The Breach of Fiduciary Duty Claim is Not Plausible . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.    Leave to Amend Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

REPLY ISO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

## TABLE OF AUTHORITIES

*Cases*                                                                                                    *Page*

*Alliance Mortg. Co. v. Rothwell*,
   10 Cal. 4th 1226 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Alta Devices, Inc. v. LG Elecs., Inc.*,
   2019 WL 1924992 (N.D. Cal. Apr. 30, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Aryeh v. Canon Bus. Solutions, Inc.*,
   55 Cal. 4th 1185 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Attia v. Google LLC*,
   983 F.3d 420 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 8, 10, 15

*Attia v. Google LLC*,
   2023 WL 7268431 (Cal. Ct. App. Nov. 3, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Boon Global Ltd.*,
   923 F.3d 643 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Brooks v. Gomez*,
   2013 WL 496339 (N.D. Cal. Feb. 7, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brown v. Brita Prods. Co.*,
   172 F.4th 1113 (9th Cir. 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cisco Sys., Inc. v. Chung*,
   2023 WL 2622155 (N.D. Cal. Mar. 22, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 9-10

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   982 F.2d 693 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cubic Corp. v. Marty*,
   185 Cal. App. 3d 438 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Deutsch v. Turner Corp.*,
   324 F.3d 692 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dohmen v. Goodman*,
   234 A.3d 1161 (Del. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15

REPLY ISO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

## TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                                                          *Page*

*Foman v. Davis*,
   371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gen. Elec. Co. v. Wilkins*,
   2011 WL 1740420 (E.D. Cal. May 5, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gjovik v. Apple Inc.*,
   2024 WL 2309100 (N.D. Cal. May 20, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-11

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hobart v. Hobart Estate Co.*,
   26 Cal. 2d 412 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

*Huff Energy Fund, L.P. v. Gershen*,
   2016 WL 5462958 (Del. Ch. Sept. 29, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

*Jozinovich v. JP Morgan Chase Bank, N.A.*,
   2010 WL 234895 (N.D. Cal. Jan. 14, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*JustMed, Inc. v. Byce*,
   600 F.3d 1118 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 9

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Latesco, L.P. v. Wayport, Inc.*,
   2009 WL 2246793 (Del. Ch. July 24, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

**TABLE OF AUTHORITIES**
*(continued)*

*Cases*        *Page*

*Lewis v. Activision Blizzard, Inc.*,
2013 WL 5663103 (N.D. Cal. Oct. 17, 2013),
*aff'd*, 634 F. App'x 182 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lovejoy v. AT&T Corp.*,
92 Cal. App. 4th 85 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
833 F.2d 1360 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
854 A.2d 121 (Del. Ch. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Miele v. Franklin Res., Inc.*,
2015 WL 4934071 (N.D. Cal. Aug. 18, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Moore v. Apple, Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

*Musi Inc. v. Apple Inc.*,
827 F. Supp. 3d 1226 (N.D. Cal. 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*NYC Topanga, LLC v. Bank of Am.*,
2015 WL 4075844 (C.D. Cal. Jul. 2, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Palantir Techs. Inc. v. Abramowitz*,
2021 WL 2400979 (N.D. Cal. June 11, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Palleson v. Bos. Sci. Corp.*,
2021 WL 5633015 (S.D. Cal. Dec. 1, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Parsons v. Tickner*,
31 Cal. App. 4th 1513 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 4, 15

*Punian v. Gillette Co.*,
2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Religious Tech. Ctr. v. Wollersheim*,
971 F.2d 364 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
55 Cal. 4th 1169 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rosenthal v. Great Western Financial Securities Corp.*,
14 Cal. 4th 394 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

**TABLE OF AUTHORITIES**
*(continued)*

*Cases*                                                                      *Page*

*Rubinstein v. SAP AG*,
   2012 WL 726269 (N.D. Cal. Mar. 1, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-5

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
   204 F.3d 1368 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 12

*Sever v. Alaska Pulp Corp.*,
   978 F.2d 1529 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

*Sikhs for Justice Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Social Media Adolescent Addiction*,
   2024 WL 4719068 (N.D. Cal. Nov. 7, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*SOS Co. v. E-Collar Techs., Inc.*,
   2017 WL 5714716 (C.D. Cal. Oct. 17, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Spirit Clothing Co. v. Jerry Leigh of Cal., Inc.*,
   2017 WL 5891056 (C.D. Cal. June 30, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Stemcell Techs. Canada Inc. v. StemExpress, LLC*,
   2022 WL 509673 (N.D. Cal. Feb. 21, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
   445 F. Supp. 3d 139 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ticor Title Ins. Co. v. Florida*,
   937 F.2d 447 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Tristar Prods., Inc. v. Telebrands Corp., Whele LLC*,
   2025 WL 1111513 (N.D. Fla. Apr. 14, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
   692 F.3d 1009 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 9

*Vazquez v. DataRobot, Inc.*,
   2023 WL 6323101 (N.D. Cal. Sept. 28, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

REPLY ISO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

## TABLE OF AUTHORITIES
*(continued)*

*Cases*                                                                      *Page*

*Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.,*
    50 Cal. 4th 913 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vincent v. Trend W. Tech. Corp.,*
    828 F.2d 563 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,*
    860 A.2d 312 (Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Warner Const. Corp. v. City of Los Angeles,*
    2 Cal. 3d 285 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Wayport, Inc. Litig.,*
    76 A.3d 296 (Del. Ch. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Other Authorities*

*Light Field Lab v. Jones,*
    No. 23-5344, Dkt. 1, Ex. A (N.D. Cal. Oct. 19, 2023) . . . . . . . . . . . . . . . . . . . . . . . 1

*Statutes*

17 U.S.C. § 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

18 U.S.C. § 1832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

18 U.S.C. § 1832(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

37 C.F.R. §§ 1.63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cal. Code Civ. Proc. § 1691 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

Fed. R. Evid. 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY ISO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

## INTRODUCTION

The SAC is Plaintiff's third unsuccessful attempt to plead plausible claims, yet he continues to press time-barred claims, non-actionable corporate conduct, and property interests that Plaintiff does not own. As demonstrated herein, the SAC's claims have fundamental legal defects, and other defects identified in this Court's prior order remain uncured. The SAC should be dismissed with prejudice.

## LEGAL ARGUMENT

**I.     The Fraud Claim is Time-Barred, Preempted, and Remains Factually Deficient**

**A.     The Fraud Claim Is Barred by the Statute of Limitations**

Jones does not dispute the dates that control this motion. He does not dispute that Karafin's patent-portfolio and recruitment statements were made in 2019, that the 2017 Stock Incentive Plan[1] was delivered to him in writing on January 2, 2020, that he signed it, or that his claimed acts of reliance, resigning from Microsoft, and exercising his options, were complete no later than 2021. Those dates are conceded, and they are dispositive, as the fraud clock starts when all fraud elements are present. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005); Mot. § I.A.1. The SAC's own admissions place every element of both fraud theories outside the limitations window. SAC ¶¶ 26-31, 121, 124.

What Jones argues in opposition is contradicted by his own pleading. He contends the claim did not accrue until "the 2025 insolvency in which Jones 'received nothing.'" Opp. at 4:24-26 (citing SAC ¶¶ 77, 86). But those paragraphs describe LFL's August 15, 2025 assignment for the benefit of creditors, an event Jones alleges occurred while this action, filed June 17, 2025, was already pending. *Id.* ¶ 86

---

[1] Jones wrongly argues the Court cannot consider the Plan documents. Jones does not dispute the authenticity of the 2017 Stock Incentive Plan; he concedes the packet is of record and does not oppose judicial notice or incorporation by reference. The Plan has been before this Court since LFL filed it on October 19, 2023, well before Jones filed this action. *See Light Field Lab v. Jones*, No. 23-5344, Dkt. 1, Ex. A. It appeared again at Dkt. 20-1 and Dkt. 30-2, Ex. 3-A without challenge, and is now the subject of the pending Request, Dkt. 69-1. Jones failed to challenge its authenticity over years and three rounds of pleading, waiving further argument. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014). Both grounds for considering the Plan stand unrebutted: incorporation by reference, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and judicial notice under Fed. R. Evid. 201(b), a standard Jones concedes is met. Jones' reliance on *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), is misplaced. *Khoja* bars using judicial notice to resolve genuinely disputed facts, not to test whether the SAC's characterization of an undisputed document is accurate. A court ruling on a motion to dismiss need not accept allegations that contradict matters properly subject to judicial notice or exhibit. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Individual Defendants ask nothing more.

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

("while this action . . . was pending").  Jones also invokes a "2025 discovery," *id.* ¶¶ 34-35, 128, but that discovery concerns the Lytro patent derivation theory, which this Court previously rejected, finding the statements concerning LFL's patent ownership true.  Dkt. 67 at 11:1-17, n.8.  Moreover, Jones cannot use a later-arising theory's discovery date to save claims based on events that occurred years earlier.

Jones' remaining arguments do not close the gap.  He argues that the January 2020 Plan "omitted what this count charges was concealed," pointing to the never-furnished Voting and Co-Sale Agreements and an unspecified "derivation."  Opp. at 5:1-5.  But the fraud theory the motion addresses does not depend on those agreements; it depends on the Plan itself, which Jones concedes he received and signed, and which discloses on its face the anti-dilution term, the repurchase right, and the Section 220 waiver that the SAC alleges were concealed.  SAC ¶¶ 30, 66-71.  A plaintiff who holds the governing written instrument cannot claim delayed discovery of terms that instrument states.  Mot. at 4:1-9; *NYC Topanga, LLC v. Bank of Am.,* 2015 WL 4075844, at *5-6 (C.D. Cal. Jul. 2, 2015).  Jones next argues that reliance was "already irreversible in September 2019," so that the integration clause "discloses supersession, not falsity."  Opp. at 5.  That distinction does not help him:  Jones received the 2020 Plan more than three years before filing suit, and his alleged harm in 2019 is a concession that his claim is time barred.  The fraud he pleads was apparent, if at all, and complete with all its elements, no later than May 2021.  *See* Mot. § I.A.2; n.4.  The equities Jones invokes elsewhere in his brief do not change this analysis, because the problem is not the diligence of his investigation but the arithmetic of his own complaint.  Whether characterized as running from the 2019 representations, the January 2020 delivery of the Plan, or the completed 2021 reliance, *every date* the SAC supplies for this count's own charged misrepresentations falls outside the three-year window, and the only 2025 events Jones can point to[2] either postdate the claim itself or belong to a separate theory this count does not charge, and cannot satisfy his burden.  *See*

---

[2] Jones cites a string of cases in an attempt to excuse his lack of diligence and avoid his burden, but none do.  *Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal. 4th 394 (1996) is not a statute of limitations case, and does not disturb the rule charging signers with notice of the agreement's terms.  *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412 (1945), and *Parsons v. Tickner*, 31 Cal. App. 4th 1513 (1995), are distinguishable as neither involved a plaintiff who, like Jones, received the actual governing instrument.  Indeed, *Hobart*, 26 Cal. 2d at 438, confirms that possession of such information triggers a duty to investigate.  Finally, *SOS Co. v. E-Collar Techs., Inc.*, 2017 WL 5714716 (C.D. Cal. Oct. 17, 2017), and *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995), place the burden on Jones to plead facts excusing the facially untimely delay, which he cannot meet.

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

Opp. at 4-5.  The fraud claim is time-barred on the face of the SAC, which amendment cannot cure.

**B.      The Fraud Count is Preempted**

Jones concedes that federal patent law preempts state law claims offering patent-like protection—the very ground on which this Court previously dismissed his inventorship allegations. Opp. § III.B.2.  His fraud count targets inventor declarations and disclosures filed under 37 C.F.R. §§ 1.63 and 1.56.  *See* SAC ¶¶ 122-23.  Because preemption depends on the substance of the allegations rather than their labels, Jones is limited to the legal conclusions arising from his pleaded facts.

Jones unsuccessfully attempts to avoid preemption by characterizing Patent Office submissions as mere evidence of intent.  *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000), on the page Jones cites, expressly rejects this.  *See* Opp. at 6.  In *Semiconductor*, the Federal Circuit held that defendants cannot evade preemption when the gravamen of the charge is misconduct before the Patent Office.  *Id.* at 1382.  Here, the SAC explicitly ties the fraud claim to inventor declarations and disclosure statements.  SAC ¶ 122.  Jones relies on the Patent Office's duty of candor to make this withholding actionable.  *Id.* ¶ 123.  Labeling this conduct as "evidence" does not change the fact that the claim asks the Court to adjudicate inequitable conduct.  *See* Mot. § I.B.  This splitting of hairs cannot camouflage the claim's reliance on patent-preempted conduct.  *See id.*; *see also* SAC ¶¶ 113-15, 117, 120, 122-24, 127-28; *Tristar Prods., Inc. v. Telebrands Corp., Whele LLC*, 2025 WL 1111513, at *23 (N.D. Fla. Apr. 14, 2025) (dismissing preempted fraud claims).

**C.      Jones Still Fails to Plead a Plausible Fraud Claim**

Jones admits public Patent Office records establish the operative patent facts, and that he exercised options three times and remained employed for years after receiving the equity documents. These concessions do most of the work for this motion.  What Jones offers in opposition is a set of maneuvers, each aimed at a different element, none of which holds up.  Opp. at 6:24-10:3.

On scienter, Jones argues that knowledge need only be pleaded generally.  Opp. at 8:5-6.  Rule 9(b) relaxes the "elevated pleading standard" for pleading a state of mind, not for pleading facts showing that a defendant held it, as the "less rigid—though still operative—strictures of Rule 8" must be satisfied, which Jones does not.  *Brooks v. Gomez*, 2013 WL 496339, at *6 (N.D. Cal. Feb. 7, 2013). Knowledge of a duty owed to the Patent Office cannot support a plausible assertion that Karafin had

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

knowledge that a statement made to Jones consistent with that duty, months earlier, in an interview, was false. *See, e.g.*, *Spirit Clothing Co. v. Jerry Leigh of Cal., Inc.*, 2017 WL 5891056, at *4 (C.D. Cal. June 30, 2017) (dismissing claims based on misrepresentations to the USPTO as lacking "a factual context that would" allow "the Court to draw a reasonable inference" it had knowledge).

On duty, Jones argues the 2019 option grant and subsequent stock sales created a duty because Light Field Lab was selling him securities. SAC ¶¶ 63-65. But Jones' allegation that Karafin and Bevensee approved and executed the certificates merely amounts to an act of the corporation, not the officers personally, as "a corporate officer does not become a party to the contract simply 'by signing it in the officer's representative capacity." *See id*; *Stemcell Techs. Canada Inc. v. StemExpress, LLC*, 2022 WL 509673, at *3 (N.D. Cal. Feb. 21, 2022) (quoting *In re Boon Global Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019)); *see also In re Social Media Adolescent Addiction*, 2024 WL 4719068, at *3-5 (N.D. Cal. Nov. 7, 2024) (allegations of knowledge or control are insufficient for corporate officer liability).[3] And the SAC's public-record admissions are fatal to Jones' duty (and reliance) arguments, as the lack of exclusive knowledge fails to trigger any duty of disclosure. *See* Mot. § I.C.4. Jones complains that *Palleson v. Bos. Sci. Corp.*, is "a limitations decision," but it stands for the more general principle that where a plaintiff "should have discovered" a wrong, relying on that misrepresentation is unreasonable. 2021 WL 5633015, at *3 (S.D. Cal. Dec. 1, 2021); Mot. § I.C.4.[4]

Reliance fails too. *See supra.* Jones suggests that his reliance continued through 2021, but a plaintiff who continues exercising options for years while holding the documents he claims would have changed his mind cannot plead justifiable reliance. Jones' long tenure at LFL shows a lack of reliance as

---

[3] Jones' duty cases support the Individual Defendants, not Jones. Expanding the relationship here would allow plaintiffs to relabel standard benefits as new duties whenever an original theory fails. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (2001) involves only a corporate defendant, it does not seek to impose liability against corporate officers, nor involve claims that public records were hidden.

[4] Jones' remaining duty cases concerning concealment also support the Individual Defendants—*Punian v. Gillette Co.*, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016), confirms that a duty to disclose arises where a defendant has "exclusive knowledge," but here the documents were known to Jones. *Parsons*, 31 Cal. App. 4th at 1525-27, supports the principle that public facts cannot be secret, as the statute of limitations begins when plaintiff "has the opportunity to obtain knowledge" from sources including "public records," and there, plaintiff was "not in possession" of any such records. *Warner Const. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970) limits the duty to "materially qualify" what was actually said—not concealed—and accurate statements about dilution require no qualification.

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

a matter of law. *See Vazquez v. DataRobot, Inc.*, 2023 WL 6323101, at *7-8 (N.D. Cal. Sept. 28, 2023); *Rubinstein v. SAP AG*, 2012 WL 726269, at *6 (N.D. Cal. Mar. 1, 2012).[5]

The damage facts remain anemic, and implausible. Jones points to paragraph 127 of the SAC, but those damages still stem from conduct already shown to be true, non-actionable predictions, or fully disclosed. Additionally, Jones fails to address the defect that Bevensee[6] is charged only with recruiting and co-inventor knowledge, never with a particularized misrepresentation or act of concealment, waiving that argument. *See* Mot. at 6-7; *Moore*, 73 F. Supp. 3d at 1205.

Jones' remaining arguments do not alter the outcome. Whether framed as provenance, dilution, or a transactional duty, his theories rely on public facts, documents with integration clauses that he signed, or conduct the Individual Defendants did not personally undertake. The Third Cause of Action still fails to plead sufficient facts for every required element of the claim. *See* Mot. at 12-13.

## II.    Jones' Trade Secret Claim Fails for Lack of Ownership

The SAC pleads two categories of trade secret: "original source code" and "proprietary methods, techniques, and algorithms embodied" in the code.[7] SAC ¶ 131. Jones claims both are his because he worked on them as a Light Field Lab employee. The work-for-hire doctrine and California law resolve ownership of both against him. Without ownership, a trade secret claim fails as a matter of law.

### A.    LFL Owns the Source Code Under the Work-for-Hire Doctrine

For the source code Jones claims as a trade secret, ownership is controlled by 17 U.S.C.

---

[5] Jones argues reliance is "a question of fact." Opp. at 9 (*citing Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239-40 (1995); *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1182 (2013)). But the rule requires a triable claim, which is not present when the plaintiff relies on documents that contradict his own pleading. *Riverisland*, is likewise inapposite: it allows proof of oral promises varying from written terms to prevent fraud. 55 Cal. 4th at 1182. Here, the pleaded statement and the Plan text align: value fluctuates and dilution is expected. And, the PTO records are the source of truth for patent ownership and judicial notice. *See* Dkt. 67 at 11, n.8 (quoting *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145 (N.D. Cal. 2020)).

[6] Jones' tepid arguments about agency liability fail under his lone citation to *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999), which is distinguishable because the officer-defendant there personally made the statement at issue. Here, Bevensee is alleged to have made no actionable statement to Jones at all, failing the "who, what, and where" of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

[7] Jones attempts to identify secrets by collapsing the claimed methods into the code itself, but fails to identify any distinguishable "tangible trade secret material." SAC ¶ 13; *InteliClear, LLC v. ETC Glob. Inc.*, 978 F.3d 653, 658-59 (9th Cir. 2020); *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020).

§ 201(b).  Absent a signed writing to the contrary, which Jones does not allege, "work product created by an employee belongs to the employer where the employee was hired to create such work product." *Gen. Elec. Co. v. Wilkins*, 2011 WL 1740420, at *10 (E.D. Cal. May 5, 2011).  Jones' SAC makes it clear that he was an employee:  LFL recruited him for a role "contributing across many of [its] software development efforts," SAC ¶ 26; Jones' role was "a rendering-software engineer," *id.* ¶ 34; his code was written "throughout his employment" on LFL's access-controlled systems, *id.* ¶¶ 36-37; and the code became, in his words, "central to Light Field Lab's rendering pipeline." *Id.* ¶ 36.  In *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125-28 (9th Cir. 2010), the Ninth Circuit affirmed work-for-hire ownership of an employee's source code on the employment relationship alone, with no comparable assignment.  Jones' attempt to distinguish *JustMed* because it "decided the element no one contests — employee status," Opp. at 12, does not help him:  employee status is equally undisputed here.  SAC ¶¶ 11, 26, 34, 36-37.

Jones' reliance on *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (9th Cir. 2012), for the proposition that scope of employment cannot be resolved short of trial, is incorrect.  The *U.S. Auto* Court found that summary judgment was inappropriate only because unlike here, there was "no evidence" the parties had "expressly agreed" to ownership in a written instrument.  692 F.3d at 1019.  The Ninth Circuit approves of pretrial dismissals when no genuine dispute of fact exists.  *See Lewis v. Activision Blizzard, Inc.*, 2013 WL 5663103, at *4 (N.D. Cal. Oct. 17, 2013), *aff'd*, 634 F. App'x 182 (9th Cir. 2015) (granting summary judgment where employee disputed whether work was in scope of employment).  Here, the SAC admits every fact necessary to satisfy the three-prong "scope of employment" test set forth in section 228 of the Restatement (Second) of Agency.  *See id.* at *3; SAC ¶¶ 11, 26, 34, 36-37, 42, 51.  There is no bar to dismissal on these undisputed facts.

Jones separately argues that even if § 201(b) vests the copyright in LFL, that vesting is beside the point under a trade secret analysis. Opp. at 11.  But the vesting dooms his claim.  Individual Defendants do not contend that owning the copyright confers some separate, trade-secret-specific right to exclude; they contend that § 201(b) resolves the antecedent question of who owns the source code housing it.  A trade secret plaintiff must establish that he, not someone else, "possessed a trade secret," *InteliClear*, 978 F.3d at 657-58, and possession of that kind cannot survive a statute that deems another party 'author.' Jones' assertion of trade secret rights is equally invalid.  Because the Assignment Agreement and

California law assign all code and methods developed during his employment to LFL, his claim to trade secret rights is refuted just as clearly in contract and employment law as it is under copyright law.

Jones' cases do not hold otherwise. The court in *Silvaco*, 184 Cal. App. 4th at 229, distinguishes between works protected by copyright and information protected by trade secret law, but this distinction only applies after ownership has been established. *Altai* is equally inapplicable, as it is not only out of circuit, but involved a copyright dispute between competitors, and did not address whether an employer's work-for-hire authorship forecloses a competing employee's claim to the same code. 982 F.2d at 703-04. Jones admits that his theory about the Act's lack of allocation applies only to methods, not to the source code. Opp. at 11. As to the source code, the Act allocates everything. Consequently, Jones does not own the source code and he cannot maintain a misappropriation claim in it. *See Cisco Sys., Inc. v. Chung*, 2023 WL 2622155, at *7-9 (N.D. Cal. Mar. 22, 2023).

### B.     The Assignment Independently Disposes of the Method Trade Secrets

Jones is correct that the Copyright Act does not allocate ownership of the methods themselves, but Individual Defendants do not press that argument as to them. Two other, independent grounds do. First, the Confidentiality and Proprietary Rights Agreement Jones signed on September 9, 2019, granted inventions and know-how to Light Field Lab, not merely of copyrightable expression, and it reaches the very "methods, techniques, and algorithms" the SAC pleads. SAC ¶¶ 33, 131; Dkt. 67 at 2:4-5. An employee's invention-assignment agreement transfers to the employer whatever technology the employee develops within the scope of employment, independent of whether any part of that technology is separately copyrightable. *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438, 448-52 (1986); *Gen. Elec.*, 2011 WL 1740420, at *10. The alleged method secrets fail on the contract alone.

Jones primarily argues that the Agreement is void ab initio, pleading rescission only "in the alternative, if voidable rather than void." SAC ¶ 125. Both theories fail. For the sake of arguments, fraud in the inducement would only make a contract voidable rather than void and would not automatically restore previously conveyed rights. *Rosenthal*, 14 Cal. 4th at 415, 420, 423. Rescission also fails because the law requires a party to provide prompt notice and restore, or offer to restore, everything of value received. CCP § 1691; *Jozinovich v. JP Morgan Chase Bank, N.A.*, 2010 WL 234895, at *6 (N.D. Cal. Jan. 14, 2010). Jones claims "this action" alone provided notice, SAC ¶ 129,

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

despite performing under the Agreement for years—he attempts to retain every contractual benefit while demanding further payment. *Id.* ¶¶ 127(b), 129. As Jones' own authority confirms, a plaintiff cannot accept a contract's benefits while rejecting its burdens; he must restore and rescind first. *Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 926, 930-31 (2010); *see* Opp. at 13:12 to 12:25. Relying on an invalid voidness theory and an incomplete rescission, Jones cannot change the fact that the valid Agreement authorized the conduct he characterizes as misappropriation, as he assigned away his interest before any challenged use occurred.

Ownership at the time of misappropriation constitutes a threshold, dispositive requirement for any DTSA or CUTSA claim. Jones transferred his interest and cannot maintain a claim regardless of a defendant's alleged conduct or his own later regret. *Attia*, 983 F.3d at 425-26; *see also Attia v. Google LLC*, 2023 WL 7268431, at *6-8 (Cal. Ct. App. Nov. 3, 2023) (rejecting an inventor's attempt to treat a signed assignment as conditional, holding that the plain terms of an assignment control and an assignor's uncommunicated intent cannot undo a completed transfer).

**C.**     **The Methods Belong to LFL as a Matter of the Employment Relationship**

Even setting the Agreement aside, California's common-law rule of employee-invention ownership reaches the same result by a route that depends on no agreement at all. Absent a contrary agreement, inventions, methods, and know-how an employee develops within the scope of employment, using the employer's resources and at the employer's direction, belong to the employer. *Cubic*, 185 Cal. App. 3d at 448-52. Jones' own pleading satisfies that standard: LFL recruited him for a role "contributing across many of [its] software development efforts, primarily focusing on the development of pipeline, workflow, tools, shaders, algorithms," SAC ¶ 26, a role Jones describes as "a rendering-software engineer," *id.* ¶ 34; his methods were developed "throughout his employment" on LFL's access-controlled systems, *id.* ¶¶ 36-37; LFL's Karafin directed and "defined the scope of work and methodology" used as late as January 2023, *id.* ¶ 51; and the work became, in his words, "central to Light Field Lab's rendering pipeline," *id.* ¶ 36—a company flagship product, developed at his employer's direction, not a personal undertaking. Jones drew a salary, a merit pay increase upon his promotion to Principal Engineer, "periodic incentive pay bonuses" throughout his tenure, *id.* ¶ 42, and exercised stock options tied to the value of the product he says his methods helped build. *Id.* ¶¶ 64-65.

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

The SAC, identifies only a single instance in nearly four years where Jones purportedly informed anyone at LFL that his methods belonged to him personally:  an April 9, 2023, email addressed to Karafin, Bevensee, his supervisor, and human resources.  Opp. at 16:8; SAC ¶ 38.  Not only is this wrong as a matter of law, it is not supported by the document that Jones relies on.  *See* Declaration of Jon Karafin, Ex. A.  The SAC quotes selective fragments of this email and repeatedly cites its internal pagination, SAC ¶¶ 38, 52-53 (citing the email at pp. 1-3, 5-6), rendering it a document the SAC "necessarily relies on" and incorporates by reference despite Plaintiff's tactical decision not to attach it.  *See e.g.*, *Ritchie*, 342 F.3d at 908; *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005); *Musi Inc. v. Apple Inc.*, 827 F. Supp. 3d 1226, 1233 (N.D. Cal. 2026) (noticing emails and letters quoted in complaint for fraud).  Jones' characterization of the April 2023 email is more than incomplete; it is disingenuous.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1032 (9th Cir. 2018) (where a complaint's characterization of an incorporated document is contradicted by the document itself, the document controls).  The Opposition suggests to this Court that the email reserved ownership to Jones.  Opp. at 16:8-9; SAC ¶ 38.  Yet the terms "ownership," "rights" and "trade secret" appear nowhere in its six pages, and no statement suggests the work belongs to him rather than the Company.  *See* Ex. A.  The email is merely a rebuttal to Karafin's comments regarding the company's dissatisfaction with Jones' performance and Jones' responsive grievances.  *Id.* at 6.  The technical content shows Jones was working on an assignment he admits was Karafin's to give and his to execute.  Jones wrote that "The Wavetracing Optics work is based upon optical modelling Jon Karafin performed," and that he was "assigned the work."  *Id.* at 1.  The two brief references to "Acuity" and the ray-generation library assert no ownership interest; instead, they are cited as evidence of Jones' track record as an employee.  *Id.* at 2-5.  This email is the standard language of an employee defending his judgment to a manager, not an inventor asserting title against an employer.  The very document Jones offers as proof that he claimed the work as his own confirms, on its face, the opposite of his representations.

Jones cannot plausibly plead ownership under any theory.  Because the method claims are independently disposed of by the Agreement, (*see supra* § II.B), and the common-law employment rule (*see supra* § II.C), Jones lacks an ownership theory for the methods distinct from the code addressed in Part A, which likewise cannot sustain a claim.  *See supra* § A.  Ownership is a threshold requirement

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

that no amendment can supply, supporting dismissal. *Cisco*, 2023 WL 2622155, at *7-9; Mot. § II.A. Accepting Jones' theory would establish a dangerous precedent, allowing departing engineers to retroactively convert years of compensated work into personal trade-secret estates.

## III. The Civil Rico Claim Fails for the Same Reasons the Court Already Identified, Now Confirmed Rather Than Cured

The SAC fails to cure the two defects identified by this Court when dismissing the FAC's RICO claim. First, the asserted fraud predicates still lack Rule 9(b) particularity. *See supra* § I.C. Second, Jones cannot satisfy the pattern element's continuity requirement. Dkt. 67 at 16. Despite adding new categories, labels, and narratives, the SAC describes only a single, concluded dispute between one former employee and his former employer. SAC ¶¶ 147-66. The RICO Count is fatally flawed.

### A. Jones Cannot Plead the Specific Conduct Required for a RICO Claim

Jones argues SAC paragraph 161 satisfies Rule 9(b) by naming specific individuals. However, the paragraph merely alleges that Karafin made recruitment misrepresentations, approved option exercises, and signed the General Assignment, while Bevensee demonstrated the display and incorporated methods into applications listing him as an inventor. *Id.* These allegations do not satisfy the substantive elements of a RICO predicate and thus fail to state a claim. *See, e.g.*, Dkt. 67 at 16; *Attia*, 983 F.3d at 424; *Palantir Techs. Inc. v. Abramowitz*, 2021 WL 2400979, at *8 (N.D. Cal. June 11, 2021). For example, allegations concerning Bevensee's recruitment of Jones have no bearing here as unrelated to any mail or wire transmissions, and Bevensee's alleged incorporation of methods into patent applications constitutes an act of authorship and prosecution rather than the nonconsensual taking of property. *See supra* § I.C.

Jones argues that the RICO-based act is that the Individual Defendants caused the "trade secrets" to be embodied in the patent applications. Opp. at 18 (citing SAC ¶ 153). Yet, he fails to plead any Rule 9 facts needed to show the predicate acts of *using the mail or wires* to remove, copy, or disclose materials to third parties. To the contrary, no mail or wire acts are present because, as Jones admits, his work was "embodied in" the source code on *Light Field Lab's own systems*. *See* Opp. at 18:9-17; SAC ¶¶ 37, 153, 161. The Individual Defendants had in-house access, without the need of mail or wires. Likewise, Karafin's act of signing a corporate assignment two years after Jones left the company does not constitute a step in a fraudulent scheme, as "a RICO complaint must be dismissed if 'the plaintiff fail[s] to plead that the other participants in the alleged enterprise shared a common purpose to do so'"

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

or "'acted with the common purpose to engage in a scheme to defraud.'" *Gjovik v. Apple Inc.*, 2024 WL 2309100, at *10 (N.D. Cal. May 20, 2024) (quotation omitted).  The SAC does not allege that the General Assignment misrepresented its contents, but only that the transfer disadvantaged Jones.  The legitimacy of that transfer depends on the ownership of the property conveyed, which Jones cannot establish. *See supra* § II.  Ultimately, Jones has failed to provide facts showing that either individual's conduct involved a taking or fraud; rather, the allegations describe ordinary corporate actions in a transaction whose legality depends on ownership rights that the Court should reject.

Jones' own characterization confirms he cannot establish a pattern of racketeering.  SAC ¶ 159.  A pattern requires that predicates be related and pose a threat of continuing criminal activity.  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  A single episode aimed at a single alleged victim fails this test when the conduct has the singular purpose of impoverishing one plaintiff.  *See, e.g.*, *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533-36 (9th Cir. 1992); *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987); *Palantir*, 2021 WL 2400979, at *8 (granting motion to dismiss and explaining that "single-victim cases with a single episode—regardless of the alleged number of actual acts—and a single purpose do not meet the continuity requirement.").  *Sever* and *Medallion* control here because every alleged predicate furthered a single scheme to obtain his money and property.  SAC ¶¶ 151, 158.  His pre-2019 Lytro allegations involve uncharged conduct against a different party years before his employment and do not supply the relatedness or continuity required under *Sever* and *Medallion*.  *Id.* ¶ 158.

Relatedness requires that predicates share victims, purposes, or methods, but "merely having the same participants is insufficient to establish relatedness." *Howard v. Am. Online Inc.*, 208 F.3d 741, 748 (9th Cir. 2000); *H.J.*, 492 U.S. at 240.  Jones argues the 2025 assignment wire was multi-victim, but the other creditors he invokes are not victims of any charged predicate act.  SAC ¶¶ 86, 147, 156.  This incidental effect lacks the shared victims of *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447 (9th Cir. 1991).

**B.**     **The RICO Claim Depends on Ownership That This Court Should Reject**

Section 1832 requires proof that the defendant took, used, or disclosed a trade secret belonging to another.  18 U.S.C. § 1832(a).  Paragraph 161's individualized allegation that Bevensee took Jones' methods, even taken as true, presupposes that the code and methods were Jones' trade secret to begin

with—a premise this Court should resolve against Jones. *See supra* § II.A. A trade secret Jones does not own cannot be the object of a completed theft under § 1832 any more than of a civil misappropriation claim, however specifically the taking is described.

The SAC pivots to avoid the holding in *Semiconductor*, 204 F.3d at 1378-80, which establishes that a pending application is not property, as Jones now alleges that LFL stole Jones' own property. SAC ¶¶ 147, 154. The wire fraud allegations at paragraphs 154 and 156 rely on patent declarations and assignments asserting LFL's ownership. LFL owned the underlying code and methods under the work-for-hire doctrine, a valid assignment, and the employment relationship. *See supra* § II.A. An accurate representation of ownership cannot constitute a fraudulent predicate act.

### C.        The SAC Pleads a Finite Episode That Had Already Run Its Course

Continuity requires a closed period of related predicates over a substantial duration or conduct projecting a credible threat of repetition. Jones fails to satisfy either test. His closed-period argument relies on a purported six-year span, yet duration alone is insufficient. The alleged acts must reflect the sustained conduct RICO targets rather than a single relationship's aftermath. In *Sever*, the court rejected a similar argument involving a former employee where there was only a single victim and no facts showing the conduct was a regular business practice. 978 F.2d at 1535; *see supra* § III.A; *see also Medallion*, 833 F.2d at 1364; *Palantir*, 2021 WL 2400979, at *8. The post-employment acts as alleged merely wind down a completed episode and do not constitute the "long term criminal conduct" required for a RICO pattern. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992).

Jones similarly fails to show open-ended continuity. The relevant inquiry focuses on the threat of repetition at the time of the predicates. Dkt. 67 at 16:13-14 (citing *Howard*, 208 F.3d at 748); *Palantir*, 2021 WL 2400979, at *8. The SAC describes a finite scheme ending with the August 15, 2025 assignment and a subsequent sale. *See* Mot. § III.B (citing SAC ¶¶ 77, 79, 83, 85-88, 156). Jones is the only alleged defrauded victim and there are no future victims alleged to be targeted by the same method. *Palantir*, 2021 WL 2400979, at *8. Jones' alternative association-in-fact enterprise theory, introduced to avoid dismissal, fails because it relies on the same non-continuing predicates. Furthermore, Jones' own recent filings confirm this enterprise was finite—Jones' motion challenging LFL's counsel's authority represented that Light Field Lab's 2026 charter forfeiture resulted in its "civil death." Dkt. 75 at 7. This

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

is exactly the type of finite episode that fails RICO's continuity requirement.

### D.       Jones' Stock Option Theory Fails the Proximate Cause Requirement

Jones fails the proximate-cause requirement because his timeline of alleged harm is backwards. RICO plaintiffs must demonstrate that their harm occurred "by reason of" the charged predicates. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  Between December 2020 and May 2021, Jones paid $56,437.50 to exercise stock options.  SAC ¶¶ 147, 152, 162.  Conversely, he alleges the relevant predicates including trade secret theft, inventorship declarations, and assignment did not occur until 2023 and 2025.  *Id.* ¶¶ 152-156.  Those predicates could not have caused his loss because Jones finalized his payments years before the alleged misconduct.  Jones cannot manufacture causation by retroactively stitching together post-termination allegations with his earlier, unrelated financial choices.  A cause must precede its effect, but in the SAC Jones has it exactly backwards.[8]

## IV.       The Breach of Fiduciary Duty Claim is Time-Barred and Fails the Plausibility Standard

Jones does not dispute that Delaware law applies, that only his second and third option exercises are at issue, or that his only communication with a fiduciary while holding stock was the March 2023 text exchange with Karafin.  SAC ¶ 32.  Jones' amendment failed to cure the fundamental deficiencies of this claim and instead added facts proving the claim has expired.  It should be dismissed.

### A.       The Breach of Fiduciary Duty Claim is Barred by the Statute of Limitations

Jones agrees that the limitations prior is three years; he only contests which act starts it.  Jones wrongly claims the second and third option exercises are merely settlement dates rather than the breach itself.  Jones pleads those exercises were the very "investment decisions" at issue, and alleges fiduciaries misled him as he "committed further money to acquire the Company's stock."  SAC ¶¶ 171, 173.  Jones cannot plead a transaction as the breach in one paragraph and incidental in the next.  Both exercises were settled by May 6, 2021—meaning the period expired by May 6, 2024.  *Id.* ¶¶ 64, 171.  Jones did not sue until June 2025, which is outside the statute of limitations.

Jones' other arguments fail.  *Deutsch v. Turner Corp.*, 324 F.3d 692, 716-17 (9th Cir. 2003) does not contemplate breach of fiduciary claims, and "the Ninth Circuit and federal district courts sitting in

---

[8] Jones' attempt to distinguish *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008), is irrelevant to this fundamental defect as the SAC confirms that the alleged 2023-2025 predicates did not proximately cause a loss Jones incurred in 2021.  SAC ¶¶ 57, 89.

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

California have held that a claim for breach of fiduciary duty falls within" the "internal affairs doctrine," and routinely apply the Delaware statute. *Miele v. Franklin Res., Inc.*, 2015 WL 4934071, at *8 (N.D. Cal. Aug. 18, 2015) (applying Delaware statute of limitations); *see also* Dkt. 67 n.11.  Even if California law applied—which it does not—the result is identical:  California's three-year period ran in 2024.

Continuous accrual fares no better.  *Aryeh* has no bearing as it applies California law, and although it permits reaching discrete acts within the period, it cannot revive a claim where the only pleaded acts—the two exercises—are time-barred.  *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013).  Jones identifies no wrongful act after May 2021; passive retention of stock is not an actionable event.  Dkt. 67 at 12.  Finally, timeliness is not a disputed fact under *Wal-Mart* because the SAC admits the operative facts were in public Patent Office records and Jones' hands by January 2020.  SAC ¶¶ 13, 25, 67; *see Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004).

**B.      The Breach of Fiduciary Duty Claim is Not Plausible**

Jones contends that recharacterizing his option exercises as "formal equity transactions" avoids *Dohmen*'s disclosure framework.  Opp. § III.E.2.  This fails.  Delaware's "special facts" doctrine applies to fiduciaries transacting directly with existing stockholders, requiring disclosure only when the director "is possessed of special knowledge of future plans or secret resources and deliberately misleads a stockholder." *In re Wayport, Inc. Litig.*, 76 A.3d 296, 314 (Del. Ch. 2013).  This bar is demanding; even a material sale of a company's patent portfolio did not qualify as a "special fact," as it lacked the required magnitude, such as an offer for the company as a whole.  *Id.* at 296.  The doctrine requires knowledge of a specific, pending, corporation-altering event—materiality alone has never been enough.  The SAC does not plead anything close:  it alleges no special knowledge of any pending transaction, no secret resource, and no fact bearing on the exercises themselves.  The opposition focuses on whether a duty exists rather than whether the claimed acts plausibly triggered that duty.  Here, Jones alleges a dispute regarding the patent portfolio's Lytro origin that he himself generated and only he believes.  SAC ¶¶ 13, 25.  If an actual company patent sale fails this bar, a plaintiff's self-generated opinion fails.

Jones also fails to connect his alleged injury to the individual defendants.  The corporate asset assignment to creditors, not Karafin or Bevensee, is pleaded to have extinguished the value of his shares.  These losses stem from corporate acts and Jones' own investment decisions rather than any statements

– 14 –      Case No. 3:25-cv-05118-MMC

from the defendants.  None of the authority Jones offers the court can save this claim.[9]

## V.       Leave to Amend Should Be Denied

This Court has broad discretion to deny further leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Mot. §§ I.D, II.E, III.C, IV.C.  Such denial is particularly appropriate where, as here, the plaintiff has already amended and failed to identify facts—as opposed to mere arguments—that would cure his pleading's defects.  *Brown v. Brita Prods. Co.*, 172 F.4th 1113, 1120 (9th Cir. 2026); *see also Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 1924992, at *14 (N.D. Cal. Apr. 30, 2019).  Both futility and repeated failure to cure warrant dismissal without further leave to amend in this case.

The fraud and breach of fiduciary duty claims are barred by the statute of limitations, and no pleading can fix that bar.  *Brown*, 172 F.4th at 1120; *Sikhs for Justice Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015).  The trade secret claim independently fails as Jones does not own the code or the methods at issue.  *See Attia*, 983 F.3d at 425-27.  Jones has had multiple opportunities to cure these deficiencies and failed; Jones is not entitled to a fourth attempt to invent an entirely new cause of action from facts that have not changed since this case began.  *See Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 570-71 (9th Cir. 1987) (leave should be denied where only "new theories" are offered and "no satisfactory explanation for his failure to fully develop his contentions originally."); *see also Alta*, 2019 WL 1924992, at *14.  Jones' own request for leave confirms the point; he does not identify a single new fact, document, or witness he would add if given another chance, nor can he.  *See* Opp. at 25:21-24.

### <u>CONCLUSION</u>

The Individual Defendants respectfully request that the Court dismiss the SAC with prejudice.

---

[9] *Dohmen v. Goodman*, 234 A.3d 1161 (Del. 2020) (confirming the duty of honesty requires a knowingly false statement); *Huff Energy Fund, L.P. v. Gershen*, 2016 WL 5462958 (Del. Ch. Sept. 29, 2016) (applying the business judgment rule to a board's discretionary vote to dissolve a company; no comparable board decision or discretion is alleged here, as Karafin and Bevensee merely executed stock certificates for option exercises initiated by Jones); *Latesco, L.P. v. Wayport, Inc.*, 2009 WL 2246793 (Del. Ch. July 24, 2009) (noting that an insider trading directly with a stockholder may have a duty to disclose, but only regarding information specifically bearing on transaction value, not general disputes); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121 (Del. Ch. 2004) (distinguishing the present case from instances where officers engaged in active, individualized conduct by making specific misleading statements); *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) (precluding fiduciary claims where the rights at issue are defined solely by contract); *Parsons*, 31 Cal. App. 4th at 1513 (facts already pleaded as public information cannot simultaneously be exclusive).

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES

Date:  August 10, 2026

Respectfully submitted,

Patricia L. Peden (State Bar No. 206440)
Madeline A. Woodall (State Bar No. 351664)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
25-5118@cases.warrenllp.com

*Counsel for Defendants*
*Jon Karafin and Brendan Bevensee*

Case No. 3:25-cv-05118-MMC

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DAMAGES