**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES,<br><br>Plaintiff,<br><br>vs.<br><br>LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,<br><br>Defendant, | Case No.: 3:25-cv-05118-MMC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AN ORDER REQUIRING COUNSEL FOR LIGHT FIELD LAB, INC. TO DEMONSTRATE AUTHORITY TO APPEAR**<br><br>**Date: October 16, 2026**<br>**Time: 9:00 a.m.**<br>**Courtroom: 7**<br><br>**Complaint Filed: June 17, 2025**<br>**Am. Complaint Filed: Sept. 3, 2025** |

## TABLE OF CONTENTS


**I. INTRODUCTION ........ 1**

**I.A — Defendant describes the relief accurately, then apply the test for a different one ........ 2**

**I.B — Capacity is LFL's, authority is counsel's, and Delaware is the law they invoke........ 3**

**I.C — The motion states the presumption in its strictest form, and answers it twice ........ 4**

**I.D — The Statement of Facts rests on two sources, not one ........ 5**

**II. ARGUMENT IN RESPONSE TO DEFENDANT'S OPPOSITION ........ 5**

**II.A — The showing required is not the one LFL describes, and this record makes it........ 5**

**II.A.1 — LFL's own authority's trigger, and what it says a presumption does........ 5**

**II.A.2 — The question is the client's capacity to confer, not counsel's conduct ........ 6**

**II.A.3 — The presumption is federal; LFL's measure rests on one unpublished order ........ 6**

**II.A.4 — *Pueblo*: the recital raises the question, and the missing proof was of authority ........ 6**

**II.A.5 — *Doraleh* makes inquiry mandatory once ground is shown, not on declarations ........ 7**

**II.A.6 — A declaration from Light Field Lab is the very thing the motion asks about ........ 7**

**II.A.7 — Dkt. 63 Ex. A: the objections ask judicial notice for what it does not require ........ 7**

**II.A.7.b — Plaintiff checked before filing the motion; the change marks the default........ 8**

**II.A.8 — No federal statute is required, because the power is the Court's own ........ 8**

**II.A.9 — LFL's ¶ 9 has two limbs, and both are answered........ 9**

**II.A.10 — LFL's footnote 1: no earlier ruling forecloses judicial notice now ........ 10**

**II.B — On defendant's own Delaware text, forfeiture leaves no power to instruct counsel ........ 11**

**II.B.1 — Dkt. 63 Ex. A's own dates are the thirty days § 136(b) prescribes ........ 11**

**II.B.2 — Rule 17(b)(2) sends the question to Delaware, and Delaware's text answers it ........ 11**

**II.B.3 — First impression reaches the trigger; the argument is from the charter ........ 11**

**II.B.4 — *Rivera* is current Delaware authority, applied by two Delaware tribunals this year .. 12**

**II.B.5 — "Void" and "forfeit," on the plain language defendant invokes ........ 12**

**II.B.6 — Section 136(b) has two limbs, and the domestic one takes the charter ........ 12**

**II.B.7 — § 136(c) routes service and appoints no agent; suable is not able to act ........ 13**

**II.B.8 — Nothing in this record identifies anyone empowered to instruct counsel ................ 14**
**III. WHAT COUNSEL OWED THIS COURT, AND WHAT THE RECORD SHOWS ............. 14**
**III.A — The duty is counsel's own, and it runs to the Court ...................................................... 14**
**III.B — Counsel owed this Court the forfeiture, as they owed it the assignment before it ....... 15**
**IV. CONCLUSION ............................................................................................................... 15**

## TABLE OF AUTHORITIES

**Cases**

*Adidas Sportschuhfabriken ADI Dassler KG v. Chen*, 1988 WL 1091940 (N.D. Cal. 1988) .................. 6
*Anderson v. Krafft-Murphy Co.*, 82 A.3d 696 (Del. 2013) ........................................................ 3
*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ............................................... 15
*Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238 (1985) ........................................ 2
*Booth v. Fletcher*, 101 F.2d 676 (D.C. Cir. 1938) ................................................................ 3, 14
*Department of Water and Power of the City of Los Angeles v. Anderson*, 95 F.2d 577 (9th Cir. 1938). 3, 5, 7, 15
*Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608 (D.C. Cir. 2024) 1, 2, 7, 8, 9, 14
*Dorsey v. Jones*, 2026 WL 850417 (Del. Ch. 2026) ............................................................... 12
*Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713 (Del. 1968) ........................................ 12
*Frye v. County of Calhoun*, 14 Ill. 132 (1852) ......................................................................... 1
*Fusari v. Steinberg*, 419 U.S. 379 (1975) ............................................................................... 2
*Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat.) 174 (1823) ................................................. 2
*Hunter v. Bryant*, 98 Cal. 247 (1893) .................................................................................... 6
*International Pulp Equipment Co. v. St. Regis Kraft Co.*, 54 F. Supp. 745 (D. Del. 1944) .................. 13
*Meredith v. The Ionian Trader*, 279 F.2d 471 (2d Cir. 1960) .................................................... 2
*Mitchell v. Cooling & Winter LLC*, No. 1:23-cv-2555-VMC-LTW (N.D. Ga. 2023) ........................... 8
*Montana v. United States*, 440 U.S. 147 (1979) ...................................................................... 10
*Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824) ...................................... 1, 9
*Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927) ................................................ 3, 4, 6, 7, 8, 9, 14
*Rivera v. Angkor Capital Ltd.*, C.A. No. 2022-0671-MTZ, 2024 WL 3873050 (Del. Ch. Aug. 20, 2024) 1, 12, 14
*Souffront v. La Compagnie des Sucreries de Porto Rico*, 217 U.S. 475 (1910) ............................... 10
*SWSZ Holding, Inc. v. SZ Global Inc. v. Wich*, No. N25C-05-105 SSA (Del. Super. Ct. 2026) ............ 12
*The King of Spain v. Oliver*, 14 F. Cas. 577 (C.C.D. Pa. 1810) .................................................. 14
*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.*, 12 Cal. App. 4th 74 (Cal. Ct.

App. 1993) ........ 7
*United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726 (8th Cir. 1986) ........ 14
*W.A. Gage & Co. v. Bell*, 124 F. 371 (W.D. Tenn. 1903) ........ 7, 14
*Wilson v. Sharp*, 175 Cal. App. 2d 691 (Cal. Ct. App. 1959) ........ 6
*Zheng v. Internet Corp. for Assigned Names & Numbers*, No. 2:25-cv-04808-SPG-AJR (C.D. Cal. Aug. 5, 2025) ........ 10

**Statutes**

8 Del. C. § 122 ........ 1, 2
8 Del. C. § 136 ........ 3, 8, 11, 13
8 Del. C. § 279 ........ 14
8 Del. C. § 284 ........ 14
8 Del. C. § 291 ........ 1
8 Del. C. § 311 ........ 12
8 Del. C. § 312 ........ 12, 14
8 Del. C. § 371 ........ 13
8 Del. C. § 382 ........ 14
8 Del. C. § 383 ........ 13
8 Del. C. § 509 ........ 12, 14
8 Del. C. § 510 ........ 3, 12
8 Del. C. § 511 ........ 12

**Rules**

Fed. R. Civ. P. 17 ........ 1, 3, 4, 11
Fed. R. Evid. 201 ........ 7, 10
Fed. R. Evid. 901 ........ 7
Fed. R. Evid. 902 ........ 8

## I. INTRODUCTION

Plaintiff asks for one order: that counsel appearing for Light Field Lab, Inc. demonstrate the authority by which they do so. An attorney's authority to represent a client "must indeed exist." *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 830 (1824), quoted in *Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 613 (D.C. Cir. 2024). It is not the attorney's to supply: "The relation of client and attorney must subsist between them. That relation cannot be created by the attorney alone." *Frye v. County of Calhoun*, 14 Ill. 132, 133 (1852). The capacity of a corporation to confer it is determined by "the law under which it was organized." Fed. R. Civ. P. 17(b)(2); Dkt. 80 at p.7. Delaware supplies that law, and conditions it: "Every corporation **created under this chapter** shall have power … (2) Sue and be sued in all courts and participate, as a party or otherwise, in any judicial … proceeding, in its corporate name; … (5) Appoint such officers and agents as the business of the corporation requires." 8 Del. C. § 122. Retaining an attorney exercises § 122(5) and appearing in this action exercises § 122(2) — powers the chapter grants only to corporations created under it. Under the seal of the Secretary of State and dated August 19, 2026, Light Field Lab, Inc. "IS NO LONGER IN EXISTENCE AND GOOD STANDING UNDER THE LAWS OF THE STATE OF DELAWARE HAVING BECOME FORFEITED THE TWELFTH DAY OF FEBRUARY, A.D. 2026, FOR FAILURE TO OBTAIN AND DESIGNATE A REGISTERED AGENT." RJN Ex. B-1. A second certificate of the same date certifies that the certificates it lists "ARE THE ONLY CERTIFICATES ON RECORD." RJN Ex. B-2. That leaves a question of capacity — who may now act in the corporation's name. Delaware answers it by order of its Court of Chancery: on the application of a creditor or stockholder the Court may appoint receivers with "power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by the corporation." 8 Del. C. § 291. No such order appears in this record. Of a corporation in that condition the Court of Chancery has said: "Nobody was authorized to cause [it] to bring or defend litigation." *Rivera v. Angkor Capital Ltd.*, C.A. No. 2022-0671-MTZ, 2024 WL 3873050, at *8 (Del. Ch. Aug. 20, 2024).

An appearance is an affirmative act: "[t]he appearance of any one of these gentlemen in a cause, has always been received as evidence of his authority." *Osborn*, 22 U.S. at 830. And it must exist when

the act is taken: "the substitute acts by virtue of the authority of his principal, existing at the time the act is performed." *Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat.) 174, 202 (1823). Counsel for Light Field Lab has appeared repeatedly since February 12, 2026. An appearance was entered on March 13, 2026. Dkt. 54. Three papers were filed in its name on March 25, 2026. Dkts. 59, 60, 61. A motion to dismiss the Second Amended Complaint was filed in its name on August 14, 2026, supported by a declaration sworn that day. Dkts. 77, 77-1. The opposition was filed in its name on August 18, 2026, over the signature block "Attorneys for Defendant LIGHT FIELD LAB, INC." Dkt. 80 at p.8. On April 1, 2026, Plaintiff asked this Court to direct counsel to disclose "the identity of the person or entity that authorized counsel's continued representation of LFL after the charter forfeiture on February 12, 2026." Dkt. 62 at p.10. No paper filed since has identified that person or entity. Counsel are under a "continuing duty to inform the Court of any development which may conceivably affect the outcome" of the litigation. *Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam) (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring)). And the question does not keep: "filings made by attorneys without the party's consent are a 'nullity,'" which "conforms with the rule that '[a]n unauthorized appearance is generally ineffectual for any purpose.'" *Doraleh*, 109 F.4th at 616 (quoting *Meredith v. The Ionian Trader*, 279 F.2d 471, 473 (2d Cir. 1960); 6 C.J.S. Appearances § 19 (2023)). Every fact necessary to decide this motion is above, drawn from this Court's own docket, Delaware's certificates, and the text of a statute or rule. They establish more than the order sought: since February 12, 2026 Light Field Lab has held none of the powers 8 Del. C. § 122 confers, and neither revival nor a Chancery appointment appears in this record. § II.B.8. On these papers there is therefore no source from which any person could now hold authority to act in Light Field Lab's name. Plaintiff nonetheless addresses the opposition in full.

**I.A — Defendant describes the relief accurately, then apply the test for a different one**

Defendant states that Plaintiff seeks an order requiring counsel "to demonstrate their authority to continue to appear on behalf of LFL in this litigation," and again in their argument and their conclusion. Dkt. 80 at p. 2.

The standard they then apply belongs to a different request. Plaintiff is faulted for presenting no "clear and convincing evidence (or indeed any evidence) that defense counsel is not authorized to

represent LFL." *Id.* at p. 4. That is the proposition a party seeking a finding of want of authority must establish. Plaintiff seeks no finding: "Plaintiff does not seek Light Field Lab's dismissal; it remains a defendant, and the relief requested is directed only at the authority of the firm appearing in its name." Dkt. 75 at p. 8. An order to show produces the authority; it does not disprove it.

Defendant's own authorities keep the two apart. *Booth* attaches the heavier showing to the remedy — substantial proof is required "in order to justify, on that ground, an order to strike a pleading from the files" — while *Anderson* measures the trigger by whether "proof is submitted challenging the truth of such assumption, sufficient to warrant inquiry regarding such authority." *Booth v. Fletcher*, 101 F.2d 676, 683 (D.C. Cir. 1938); *Department of Water and Power of the City of Los Angeles v. Anderson*, 95 F.2d 577, 580 (9th Cir. 1938). Plaintiff meets both standards.

**I.B — Capacity is LFL's, authority is counsel's, and Delaware is the law they invoke**

The two questions are related and the motion says so: capacity governs authority, because authority is the client's to confer. Related is not conflated, and the motion severs them in terms. Defendant briefs both.

Defendant charges that "He alternately conflates and distinguishes between a party's capacity and its counsel's, twisting the two into a unique concoction that he argues supports his position." Dkt. 80 at p. 2. It assumes a vocabulary that neither the governing sources nor defendant's own brief keeps. Rule 17(b) calls a party's own ability its capacity, Fed. R. Civ. P. 17(b); the franchise-tax statute calls what a corporation holds its powers, 8 Del. C. § 510; and § 136(b) calls a corporation's ability to do business here its authority, 8 Del. C. § 136(b). Delaware's Supreme Court uses it of a corporation too: one past its winding-up period "lacks any authority to continue managing the winding-up of its business, which includes defending lawsuits brought against it." *Anderson v. Krafft-Murphy Co.*, 82 A.3d 696, 709 (Del. 2013). And the opposition uses it both ways in the one document — of counsel in its opening sentence, Dkt. 80 at p. 2, and of a corporation in its § III.B, *Id.* at p. 8. The word does not tell the two apart, so describing what Light Field Lab lost as a want of authority conflates nothing. The order does not vary with the label: a corporation must possess the ability before it can confer it.

The decision the motion relies on for the Court's power, *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927), is a decision of the Supreme Court of the United States, and the motion says so in the same

sentence in which it acknowledges that no decision of the Ninth Circuit applies it. Dkt. 80's answer to *Pueblo* is that it is distinguishable, not that it does not bind: the opposition reconciles *Pueblo* with circuit law — "Pueblo is not inconsistent with the requirement set forth by the Ninth Circuit in Anderson" *Id.* at 4:24 — measures Mr. Jones's showing against "the standards outlined in Pueblo and Doraleh" *Id.* at 5:14, and then distinguishes *Pueblo* and *Doraleh* on the federal statutes underlying them. That is how a party treats an authority that governs.

They are on point as well as binding. *Pueblo* gives the ground in words the Court adopted from Justice Washington: "it would be strange, if a Court whose right and whose duty it is to superintend the conduct of its officers, should not have the power to inquire by what authority an attorney of that Court undertakes to sue or to defend, in the name of another." *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927). An attorney appearing to defend is within that sentence.

Dkt. 80 faults the motion for relying "on his own interpretation of inapposite cases, primarily from other jurisdictions," and invokes Fed. R. Civ. P. 17(b)(2) so that "Delaware law controls this issue." Dkt. 80 at 2:10-11, 7. Both cannot do the work asked of them. Rule 17(b)(2) fixes a corporation's capacity "by the law under which it was organized," Fed. R. Civ. P. 17(b)(2), and LFL was organised under Delaware law; so on the very question Dkt. 80 frames — LFL's capacity — Delaware decisions are not authority from another jurisdiction. They are authority from the only jurisdiction the rule selects.

**I.C — The motion states the presumption in its strictest form, and answers it twice**

Dkt. 80 § I charges that "Plaintiff explicitly recognizes the strong presumption in favor of counsel's authority to represent its client but proceeds to disregard it." Dkt. 80 at p. 2. Page 5 of the motion is the answer: "Counsel may respond that an attorney's authority is presumed, and the California Supreme Court has stated the presumption in its strictest form: 'An attorney's authority to represent his purported client is presumed in the absence of a strong factual showing to the contrary.' *Sarracino v. Superior Court*, 13 Cal.3d 1, 13 (1974)." Dkt. 75 at p. 5.

The motion answers that formulation twice on the same page, each answer sufficient alone: this Court's supervisory power over the members of its own bar, which a state court's account of its own practice does not measure, argued at § II.A.3 and § II.A.8; and the documentary character of what is offered — a public record of the State of Delaware, not proof turning on a declarant's credibility —

argued at § II.A.6 and § II.A.7. Its § III.A then restates the presumption before answering it again. *Id.* at p. 5. A presumption stated at its strictest and answered twice on its own terms is not one disregarded.

**I.D — The Statement of Facts rests on two sources, not one**

The opposition says of the motion that "Instead, his statement of facts cites to only one source of information, 'Dkt. 63, Ex. A.'" Dkt. 80 at p. 3. The motion's own first page says otherwise, and that sentence is argued at § II.A.2. Its statement of facts also cites a second source in terms — paragraph 3 cites this Court's own docket: "Gordon Rees Scully Mansukhani, LLP filed Dkts. 59, 60 and 61 in this action on March 25, 2026." Dkt. 75 at p. 2. That is a fact the Court confirms from its own file, and it needs evidence from no party.

The rest of the sentence is accurate, and the motion claimed nothing else: "Yet, Plaintiff submitted no evidence with his motion." Dkt. 80 at p. 3. No declaration was needed — the motion rested on judicial notice of a public record already on this docket, and on the docket itself. The objections to Dkt. 63 Ex. A are answered at § II.A.7, where defendant makes them.

**II. ARGUMENT IN RESPONSE TO DEFENDANT'S OPPOSITION**

**II.A — The showing required is not the one LFL describes, and this record makes it**

**II.A.1 — LFL's own authority's trigger, and what it says a presumption does**

*Anderson* assumes members of the bar are authorized, and its trigger is disjunctive: "and will continue to indulge in that assumption until the litigants or such attorneys formally and under oath challenge the truth of such assumption, or proof is submitted challenging the truth of such assumption, sufficient to warrant inquiry regarding such authority." *Anderson*, 95 F.2d at 580. The first route runs through the party's own oath or its attorneys', and is not Mr. Jones's. The second names no submitter and asks one question of the proof — whether it warrants inquiry, where Dkt. 80's quotation stops.

The opposition attaches a quantum of proof to a presumption and names *Anderson* as its source. Dkt. 80 at p. 4. *Anderson* describes a presumption otherwise — "The 'presumption is not the fact itself, nor the inference itself, but the legal consequence attached to it.' 5 Wigmore on Evidence, 2d Ed., 451, § 2491. It is only a procedural rule of law, placing on the opponent the burden of going forward with the evidence." *Anderson*, 95 F.2d at 583 — which fixes who must come forward, not how much he must prove, and is spent once he does.

**II.A.2 — The question is the client's capacity to confer, not counsel's conduct**

Defendant objects that "Plaintiff has failed to present clear and convincing evidence (or indeed any evidence) that defense counsel is not authorized to represent LFL." The motion asserts: "LFL remains a party to this action and a valid judgment debtor. It possesses, however, no corporate power by which anyone could retain or instruct counsel to appear in its defense." Dkt. 80 at p. 4; Dkt. 75 at p. 7. One is counsel's authority; the other, the client's power to confer it — and their own § III.B answers with Rule 17(b)(2), the corporation's capacity. Dkt. 80 at p. 7.

The objection that Dkt. 63 Ex. A was "not even submitted with his motion" is met by the motion's Notice: "This motion is based on this Notice, the following Memorandum of Points and Authorities, the pleadings and papers on file in this action." *Id.* at p. 4; Dkt. 75 at p. 1.

**II.A.3 — The presumption is federal; LFL's measure rests on one unpublished order**

The opposition has the motion making the presumption "a creation of California, not federal, law," Dkt. 80 at 4:11. The motion states it on the Supreme Court's own authority: "Such authority is presumed. *Hill v. Mendenhall*, 88 U.S. (21 Wall.) 453, 454 (1875)." Dkt. 75 at p. 5 — Dkt. 80's own source for the presumption it takes from *Anderson*, Dkt. 80 at p. 3. It cites *Osborn*, quoted in *Doraleh*, for the premise that authority must exist, Dkt. 75 at p. 5.

Neither California case behind *Adidas*, Dkt. 80 at p. 4, states a clear-and-convincing measure. *Wilson v. Sharp* did not reach the right to represent, *Wilson v. Sharp*, 175 Cal. App. 2d 691, 697 (Cal. Ct. App. 1959), and states the presumption without a quantum, *Id.* at 695. *Hunter v. Bryant* required "a showing entirely clear and convincing," *Hunter v. Bryant*, 98 Cal. 247, 251 (1893) of defaulted defendants disowning their attorney to undo a judgment, *Id.* at 251 — relief this motion does not seek.

The clear-and-convincing measure the opposition urges, Dkt. 80 at p. 3, rests on one clause of one authority: an unpublished 1988 order of one judge of this district, *Adidas Sportschuhfabriken ADI Dassler KG v. Chen*, 1988 WL 1091940, at *7 (N.D. Cal. 1988).

**II.A.4 — *Pueblo*: the recital raises the question, and the missing proof was of authority**

A recital enough to decide the authority question is enough to raise it; the opposition's own pincite: "To justify the conclusion that there was no authority to bring or maintain the suit really needs nothing beyond the foregoing short recital of the facts." *Pueblo*, 273 U.S. at 319.

And the absence it records is of proof that the authority existed: the deed called for "affirmative proof of authority of the clearest kind," and instead "no affirmative evidence of a substantial character." *Id.* at 320.

**II.A.5 — *Doraleh* makes inquiry mandatory once ground is shown, not on declarations**

*Doraleh* states the rule: "When a party requests the court inquire into the lawyer's authority and presents evidence showing 'sufficient ground to question the authority,' the request is 'always granted.'" *Doraleh*, 109 F.4th at 614. Refusal is then not open. *Id.* The declarations Defendant describes, Dkt. 80 at p. 5, distinguish its record, not its rule.

*Anderson*'s second trigger, submitted proof sufficient to warrant inquiry, names no submitter, *Anderson*, 95 F.2d at 580. There amici curiae suggested want of authority, *Id.* at 580; inquiry was declined because neither appellant nor its attorneys denied the authority, *Id.* at 580, not because amici raised it.

**II.A.6 — A declaration from Light Field Lab is the very thing the motion asks about**

A declaration "from LFL or a person(s) purporting to be LFL" requires a presently authorised agent, here a member of this Court's bar; whether one exists is what the motion asks. Dkt. 80 at 5:15-16.

The threshold quoted at § II.A.5 is stated as evidence the requesting party presents. It restates a 1903 source in which the affidavit was the vehicle, not the measure. *W.A. Gage & Co. v. Bell*, 124 F. 371, 380 (W.D. Tenn. 1903).

In *Tsakos* the declaration of the person who purported to bind the client was found not credible. *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.*, 12 Cal. App. 4th 74, 95 (Cal. Ct. App. 1993). A Delaware public record presents no such question, and the showing depends on no declarant. Dkt. 75 at p. 5.

**II.A.7 — Dkt. 63 Ex. A: the objections ask judicial notice for what it does not require**

Rule 201 reaches a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." It tests the source, Delaware's register, not the copy's form. Rule 901 governs "authenticating or identifying an item of evidence," which a noticed fact is not; Rule 201 covers "an adjudicative fact only, not a legislative fact," so the statute is law, not a recital the register need carry. Fed. R. Evid. 201(b)(2); Fed. R. Evid. 201(a); Fed. R. Evid. 901(a). See also II.A.10.

The Secretary of State certified that condition as of August 19, 2026, and dated the forfeiture February 12, 2026. RJN Ex. B-1 at p. 1.

Sealed and signed, it requires "no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902.

**II.A.7.b — Plaintiff checked before filing the motion; the change marks the default**

Plaintiff checked Delaware's record on March 20, on August 2, and on August 19, 2026; the status and its effective date are the same on each. Dkt. 63 at p. 4; RJN Ex. A at p. 1; RJN Ex. B-1 at p. 1. The registered-agent entry has changed since that March 20 record, where it read as unassigned. Dkt. 63 at p. 4. The August 2 record gives it as the Delaware Secretary of State. RJN Ex. A at p. 1. That entry names the office to which § 136(c) directs process once an agent has resigned and no new agent has been obtained and designated, 8 Del. C. § 136(c), so it marks the uncured default rather than any change in Light Field Lab's condition, and required no separate statement in the motion.

Both limbs of the opposition turn on Light Field Lab's present condition — "whether the relevant information has changed since March 20, 2026," and "admissible evidence that LFL's charter is currently forfeited" — yet never state it. Dkt. 80 at 5:23-24, 7.

The opposition sets no record of its own against Dkt. 63 Ex. A, disputing the document but never the accuracy of its source, Delaware's record.

**II.A.8 — No federal statute is required, because the power is the Court's own**

*Pueblo* grounds the power in the court's own duty, not a statute, *Pueblo*, 273 U.S. at 319; its statutes come later, on a separate ground, *Id.* at 320. *Doraleh*, reading *Pueblo*, agrees, *Doraleh*, 109 F.4th at 613. Neither needed a statute.

The opposition's case applied its own district's local rule, not a statute — "The rule that applies in this Court is Local Rule 83.1, which provides that an 'attorney's appearance as attorney of record . . . may be evidenced by signature. . . on a Fed. R. Civ. P. 12(b) pre-answer motion.'" — which fixes what evidences an appearance, not when a court may require a showing — a power the same discussion affirmed: "As the Supreme Court explained, courts can 'require an attorney . . . to show his authority to appear.'" *Mitchell v. Cooling & Winter LLC*, No. 1:23-cv-2555-VMC-LTW, slip op. at 6, 7 (N.D. Ga. 2023).

The reason the opposition's *Doraleh* parenthetical gives, Dkt. 80 at p. 6, is not the court's: at the page cited it is the argument the Republic of Djibouti made in the district court, *Doraleh*, 109 F.4th at 612. In the court's own analysis the statute cut the other way: counsel there argued that "its authority cannot be considered because attorney authority is not one of the reasons listed in the New York Convention for denying enforcement of an arbitral award", and the court rejected it — an unauthorized filing is a nullity, "The New York Convention does not abrogate this procedural rule." *Id.* at 616, 617.

**II.A.9 — LFL's ¶ 9 has two limbs, and both are answered**

"It is admitted that a corporation can only appear by attorney, and it is also admitted, that the attorney must receive the authority of the corporation to enable him to represent it." *Osborn*, 22 U.S. at 829. Its existence lies in counsel's knowledge; the duty runs to the Court, whose officer counsel is, *Pueblo*, 273 U.S. at 319. The opposition identifies no act by which Light Field Lab conferred it, resting on Plaintiff's failure to disprove it, Dkt. 80 at p. 6 — which discharges no duty.

The opposition closes: "If any plaintiff were permitted to challenge the authority of attorneys to represent a corporation based on so little evidence, challenging such authority would become a favored litigation tactic." *Id.* at p. 6. A tactic is something a litigant chooses, and the objection assumes the challenger decides whether the challenge exists. He does not. The ground is a fact certified under the seal of Delaware. No plaintiff can cause a corporation to forfeit its charter, a registered agent to resign, or a successor not to be designated. A litigant who wished to make challenges of this kind his practice would need a supply of adversaries that had ceased to exist under the laws of the States that created them. Only one party controls the forfeiture, and only that party could exploit it.

A challenge to a lawyer with authority is met by the showing this motion asks for and ends at no cost or gain, *Id.* at p. 6; their rule screens only founded challenges. An appearance sufficient in itself, *Id.* at p. 6, examinable only on clear and convincing evidence, *Id.* at p. 4, of a conferral not in the record would let a corporation cease to exist under its organizing law and litigate on in its name, no court free to ask who controls it — cheap, repeatable, open to corporations alone.

The name on the record is not the end of the inquiry into who is litigating. In *Souffront* the Supreme Court applied a principle: "one who prosecutes or defends a suit in the name of another to establish and protect his own right … and who does this openly to the knowledge of the opposing party,

is as much bound by the judgment and as fully entitled to avail himself of it … as he would be if he had been a party to the record." *Souffront v. La Compagnie des Sucreries de Porto Rico*, 217 U.S. 475 (1910). It reaches defending as much as suing, and its consequences run both ways — but each is attached to a person who acts openly, and the sentence before states the condition again: "The persons for whose benefit, to the knowledge of the court and of all the parties to the record, litigation is being conducted cannot, in a legal sense, be said to be strangers to the cause." *Id.* at 486. Openness is the term on which the rule operates, and the Court states it twice. *Montana v. United States* carries it forward and names the act: "the cause of action which a nonparty has vicariously asserted." *Montana v. United States*, 440 U.S. 147, 154 (1979).

Where a corporation the chartering State certifies is no longer in existence continues to be defended, someone is deciding what is filed in its name; on the rule proposed above, this Court may not ask who. Every consequence the law attaches to litigating in another's name runs on control established, so forbidding the question does not resolve who is conducting the litigation — it settles that nobody will find out. That person is identified by nothing, and the judgment, whichever way it goes, runs for or against a name. Adjudication proceeds in the names of parties, and the match between that name and the person for whom a court is asked to act is what gives a judgment its meaning. Foreclosing the question in the one class of case where the name is in doubt does not protect the integrity of appearances; it commits this Court's process to the conduct of a person the Court is forbidden to identify.

The order they offer reached counsel's authority only second, *Zheng v. Internet Corp. for Assigned Names & Numbers*, No. 2:25-cv-04808-SPG-AJR, slip op. at 1 (C.D. Cal. Aug. 5, 2025); it turned first on an unserved party outside the court's jurisdiction, *Id.* at 1, and a Rule 37 motion premature at the pleadings stage, *Id.* at 1 — neither present here.

**II.A.10 — LFL's footnote 1: no earlier ruling forecloses judicial notice now**

That the Court did not rule on the earlier request, Dkt. 80 at p. 3 & n.1, does not foreclose notice of the Delaware public record now: a court "may take judicial notice on its own," may do so "at any stage of the proceeding," and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1); Fed. R. Evid. 201(d); Fed. R. Evid. 201(c)(2).

**II.B — On defendant's own Delaware text, forfeiture leaves no power to instruct counsel**

**II.B.1 — Dkt. 63 Ex. A's own dates are the thirty days § 136(b) prescribes**

Dkt. 63 Ex. A need not name § 136(b): the agent's resignation certificate was filed January 13, 2026; the register reads "Status: Forfeited, Failure to appoint a R/A Status as of: 2/12/2026." Dkt. 63 at p. 4. Thirty days apart: "If such corporation, being a corporation of this State, fails to obtain and designate a new registered agent as aforesaid prior to the expiration of the period of 30 days after the filing by the registered agent of the certificate of resignation, the Secretary of State shall declare the charter of such corporation forfeited." 8 Del. C. § 136(b).

The second source that sentence offers is "see also Moore Decl., Exh. 2, p. 4." Dkt. 80 at p. 6. No declaration accompanies the opposition, and it defines the short form nowhere. Sara A. Moore's declarations in this action are Dkt. 20-1, Dkt. 30-1 and Dkt. 77-1, and behind each of them the exhibit numbered 2 is a court pleading — Mr. Jones's motion in the earlier action, Light Field Lab's own first motion to dismiss, and the Second Amended Complaint — rather than a record of Light Field Lab's corporate status.

**II.B.2 — Rule 17(b)(2) sends the question to Delaware, and Delaware's text answers it**

LFL invokes Rule 17(b)(2), which determines capacity "for a corporation, by the law under which it was organized", and states "Delaware law controls this issue, which Plaintiff himself recognizes, including in his reference above." Fed. R. Civ. P. 17(b)(2); Dkt. 80 at p. 7. That is where the question belongs. Delaware's text answers it: the § 136(b) forfeiture took the charter, and with the charter went the powers it conferred.

The relief sought does not in any event depend on this section. The motion pleads its statutory ground wholly aside from its evidentiary one, Dkt. 75 at p. 6: "If the Court is not persuaded that a § 136 forfeiture strips LFL's capacity to instruct counsel, the showing already made in Sections I and III is untouched." *Id.* at p. 6.

**II.B.3 — First impression reaches the trigger; the argument is from the charter**

The opposition reports a concession that "it is 'a question of first impression' whether section 510 and section 138 have the same consequences." (Chapter 1 of Title 8 contains no § 138; Plaintiff takes the reference to be to § 136.) The motion said "to that extent the trigger presents a question of first

impression," and the next sentence: "the distinction is one of trigger, not consequence." Dkt. 80 at 7:20-21; Dkt. 75 at p. 7.

The opposition reads § III.B as claiming "'forfeit' and 'void' are the same," but it argues from the instrument: § 136(b) forfeits the "charter of such corporation." *Rivera* enters only after that text, and only for the consequence. Dkt. 80 at 7:18; Dkt. 75 at p. 7.

**II.B.4 — *Rivera* is current Delaware authority, applied by two Delaware tribunals this year**

*Rivera* is current Delaware authority: the Delaware Superior Court applied it in 2026, as did a Court of Chancery Rule 144(b)(1) report. *SWSZ Holding, Inc. v. SZ Global Inc. v. Wich*, No. N25C-05-105 SSA (Del. Super. Ct. 2026); *Dorsey v. Jones*, 2026 WL 850417 (Del. Ch. 2026). Each cited it at *9 n.90 rather than for the language Dkt. 80 addresses, and in each the corporation had already revived.

**II.B.5 — "Void" and "forfeit," on the plain language defendant invokes**

The chapter defendant invokes gives one default three words: § 510 provides that "the charter of the corporation shall be void, and all powers conferred by law upon the corporation are declared inoperative", § 511 that "the charters of these corporations are repealed," and § 509(b) speaks of "any forfeiture of the charter of any corporation." 8 Del. C. § 510; 8 Del. C. § 511; 8 Del. C. § 509(b). Delaware's Supreme Court reads § 510 the same way: "upon forfeiture of a charter for failure to pay franchise taxes, all of the corporation's powers become inoperative." *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 714 (Del. 1968).

§ 312 speaks of a corporation "whose certificate of incorporation has become forfeited or void pursuant to this title" — one phrase, one condition. A charter forfeited under § 136(b) is forfeited pursuant to Title 8, so inside the phrase. 8 Del. C. § 312(b).

Title 8 divides void from dissolved, not void from forfeited: § 311 is headed "Revocation of voluntary dissolution; restoration of expired certificate of incorporation," and a forfeited charter is neither. 8 Del. C. § 311. *Rivera* says the same — "Section 311 addresses dissolved corporations, while Sections 312 and 313 address the void ones" — so a § 136(b) forfeiture sits on the void side. *Rivera*, 2024 WL 3873050, at *4.

**II.B.6 — Section 136(b) has two limbs, and the domestic one takes the charter**

Section 136(b) states one rule per class, neither conditioned on the other: "If such corporation,

being a corporation of this State, fails to obtain and designate a new registered agent as aforesaid prior to the expiration of the period of 30 days after the filing by the registered agent of the certificate of resignation, the Secretary of State shall declare the charter of such corporation forfeited. If such corporation, being a foreign corporation, fails to obtain and designate a new registered agent as aforesaid prior to the expiration of the period of 30 days after the filing by the registered agent of the certificate of resignation, the Secretary of State shall forfeit its authority to do business in this State." 8 Del. C. § 136(b). The first governs a Delaware corporation and ends at the charter. The second governs a foreign corporation, and it alone speaks of authority to do business — the consequence Dkt. 80 attributes to § 136(b), making "such corporation" the subject of a verb the statute gives the Secretary. Dkt. 80 at p. 8.

Light Field Lab is a corporation of Delaware — defendant's own premise for reaching Delaware law, *Id.* at p. 7 — so not in the class the chapter defines as organized elsewhere. 8 Del. C. § 371(a).

Each limb takes the most Delaware can reach. A foreign corporation holds a charter granted elsewhere, beyond Delaware's authority, so § 136(b) reaches only what Delaware gave it — the authority to do business here. A corporation of Delaware holds a charter Delaware granted, and § 136(b) takes that. Delaware expressly saved the right to defend against the foreign limb's want of authority, 8 Del. C. § 383(b); § 136 saves no such right.

**II.B.7 — § 136(c) routes service and appoints no agent; suable is not able to act**

Section 136(c) routes process where no agent remains; it does not make the Secretary of State one: "After the resignation of the registered agent shall have become effective as provided in this section and if no new registered agent shall have been obtained and designated in the time and manner aforesaid, service of legal process against the corporation for which the resigned registered agent had been acting shall thereafter be upon the Secretary of State in accordance with § 321 of this title." 8 Del. C. § 136(c). The Secretary's capacity to accept service is a condition on which a Delaware corporation does business under its charter, not an agency the corporation conferred. *International Pulp Equipment Co. v. St. Regis Kraft Co.*, 54 F. Supp. 745, 749 (D. Del. 1944).

Delaware creates an agency for service in terms when it means to — "Any foreign corporation which shall transact business in this State without having qualified to do business under § 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State its

agent for the acceptance of legal process," 8 Del. C. § 382(a) — and § 136(c) contains none of it, an omission Delaware reads as intended. *Rivera*, 2024 WL 3873050, at *4.

*NEPACCO* decides capacity to be sued more than three years after forfeiture, *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 747 (8th Cir. 1986), which the motion concedes and distinguishes from the power to retain or instruct counsel. Dkt. 75 at p. 7.

**II.B.8 — Nothing in this record identifies anyone empowered to instruct counsel**

Two mechanisms restore the power to litigate in a forfeited corporation's name: revival, effected "by executing, acknowledging and filing a certificate of revival," 8 Del. C. § 312(c), or a Chancery appointment, 8 Del. C. § 279; 8 Del. C. § 284(b); 8 Del. C. § 509(a). For Light Field Lab, the Secretary of State certified on August 19, 2026 that "THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID CORPORATION," RJN Ex. B-2 at p. 2; no Chancery order appears in this record.

Delaware confines who may act for a forfeited corporation: "For purposes of this section and § 502(a) of this title, the board of directors or governing body of the corporation shall be comprised of the persons, who, but for the certificate of incorporation having become forfeited or void pursuant to this title, would be the duly elected or appointed directors or members of the governing body of the corporation" — a board to procure a revival and make the annual franchise tax report, not to direct this litigation or retain counsel. 8 Del. C. § 312(h). No revival appears on this record, and Delaware's record of August 2, 2026 states the franchise tax due as $274,330.40. RJN Ex. A at p. 1.

**III. WHAT COUNSEL OWED THIS COURT, AND WHAT THE RECORD SHOWS**

**III.A — The duty is counsel's own, and it runs to the Court**

Requiring a showing of authority is this Court's power over "an attorney, one of its officers," whose own obligation it is; the motion asks only that it be shown. *Pueblo*, 273 U.S. at 319.

A court inquires by what authority a suit is brought, satisfied by the warrant of attorney or other evidence. *The King of Spain v. Oliver*, 14 F. Cas. 577 (C.C.D. Pa. 1810). The attorney answers the rule promptly once granted, *Gage*, 124 F. at 380, and is entitled to an opportunity to defend it. *Booth*, 101 F.2d at 683. The answer produces the act said to confer it — a power of attorney and board resolution, *Doraleh*, 109 F.4th at 617, or, as in *Anderson*, a referral by the client's own executive officers, patent

from the answering brief. *Anderson*, 95 F.2d at 580.

**III.B — Counsel owed this Court the forfeiture, as they owed it the assignment before it**

"It is the duty of counsel to bring to the federal tribunal's attention, 'without delay,' facts that may raise a question of mootness." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997).

Plaintiff's First Amended Complaint pleaded the transfer of Light Field Lab's assets to the Assignee, Dkt. 25 at p. 17, and his April 1, 2026 papers gave the forfeiture date and attached Delaware's entity record. Dkt. 62 at p. 1; Dkt. 63 at p. 4.

The duty is discharged by bringing the development to the Court, not by the adverse party doing so. In *Arizonans* the plaintiff's changed circumstances reached the court of appeals through the opposing side, and the Supreme Court recited the omission notwithstanding, in its own account of the proceedings: "First, Yniguez did not tell the Court of Appeals that she had left the State's employ." *Arizonans*, 520 U.S. at 74. The explanation offered for it — resting partly on opposing counsel's knowledge and agreement that the appeal should proceed — it called laconic and unsatisfactory. *Id.* at 68 n.23. Here the assignment was pleaded by Mr. Jones on September 3, 2025, and Light Field Lab addressed it on October 10, 2025.

Light Field Lab's August 20, 2025 motion does not state the assignment. The Assignee's August 21, 2025 notice to Plaintiff was addressed to "All Creditors, Investors and Interested Parties of Light Field Lab, Inc." Dkt. 30-2 at p. 188. Light Field Lab itself filed it, asking judicial notice of "An email notifying Plaintiff of the assignment for the benefit of creditors." *Id.* at 2:18.

## IV. CONCLUSION

An attorney's authority to appear is the client's to confer, so counsel can hold none that Light Field Lab had no capacity to give. A defence is nonetheless conducted in its name, over a signature block reading "By: /S/ Sara A. Moore SARA A. MOORE SARAH B. ABSHEAR NIKAYLA JOHNSON Attorneys for Defendant LIGHT FIELD LAB, INC." Dkt. 80 at p. 8; and if Light Field Lab cannot authorise that, by whom and on what authority is the showing this motion asks.

Plaintiff respectfully requests an order that counsel appearing for Light Field Lab, Inc. demonstrate the authority by which they do so.

Dated: August 25, 2026

HENRY | LACEY PC

By /s/ Stephen Henry_____________
STEPHEN F. HENRY
Attorney for Plaintiff