**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ALAN JONES,

Plaintiff,

vs.

LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,

Defendant,

Case No.: 3:25-cv-05118-MMC

**PLAINTIFF'S OPPOSITION TO DEFENDANT LIGHT FIELD LAB, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**Date: October 16, 2026**
**Time: 9:00 a.m.**
**Courtroom: 7**

**Complaint Filed: June 17, 2025**
**Am. Complaint Filed: Sept. 3, 2025**

## TABLE OF CONTENTS

**I. INTRODUCTION** ..... 1
**II. ANSWERING THE ALLEGATIONS AND NOTICEABLE FACTS** ..... 5
**II.A. Mr. Jones does not oppose notice; the objection is to the use** ..... 5
**II.B. The noticed documents contradict nothing on either reading of the pleading** ..... 5
**II.C. Footnote 1 repeats the carve-out as a premise, without authority or condition** ..... 5
**II.D. No cover page shows derivation, and the assignee field says nothing about knowledge** ..... 6
**II.E. Judicial notice proves Dkt. 30 was filed; footnote 2 imports none of the argument in it** ..... 6
**II.F. Repleading was what the Order provided for, and "inappropriate" names no test** ..... 6
**III. IF AUTHORITY IS NOT SHOWN, THERE IS NO MOTION TO GRANT** ..... 6
**IV. ARGUMENT** ..... 7
**IV.A. No count is preempted: none requires a patent question to be decided** ..... 8
**IV.B. The Fourth Cause of Action states a claim, and conversion in the alternative** ..... 11
**IV.C. The Third Cause of Action pleads fraud with particularity** ..... 13
**IV.D. The Fifth Cause of Action pleads particularized predicates and a dated pattern** ..... 15
**IV.E. The Seventh Cause of Action states a UVTA claim; the ABC is not an answer to it** ..... 19
**IV.F. No limitations bar appears on the face of the pleading** ..... 23
**V. CONCLUSION** ..... 25

# TABLE OF AUTHORITIES

## Cases

*Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315 (Cal. Ct. App. 1974) .......... 25
*BearBox LLC v. Lancium LLC*, 125 F.4th 1101 (Fed. Cir. 2025) .......... 8, 10
*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) .......... 9, 10
*Brown v. Brown*, No. CV 13-03318 SI (N.D. Cal. 2013) .......... 8
*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008) .......... 19
*City of Vista v. Robert Thomas Securities, Inc.*, 84 Cal. App. 4th 882 (Cal. Ct. App. 2000) .......... 24
*Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150 (Cal. Ct. App. 2016) .......... 13
*Daniels-Hall v. National Education Ass'n*, 629 F.3d 992 (9th Cir. 2010) .......... 6
*Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608 (D.C. Cir. 2024) .......... 7
*Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001) .......... 12
*Gardner v. StarKist Co.*, 418 F. Supp. 3d 443 (N.D. Cal. 2019) .......... 18, 19
*Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996) .......... 24
*Hinesley v. Oakshade Town Center*, 37 Cal. Rptr. 3d 364 (Cal. Ct. App. 2005) .......... 14
*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .......... 18
*Howard v. America Online Inc.*, 208 F.3d 741 (9th Cir. 2000) .......... 18
*Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320 (D. Del. 2017) .......... 12
*In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir. (en banc) 1994) .......... 15
*In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 12
*Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466 (7th Cir. 2007) .......... 18
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......... 5
*Lazar v. Superior Court*, 12 Cal. 4th 631 (1996) .......... 13
*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (Cal. Ct. App. 1997) .......... 14
*Manzarek v. St. Paul Fire & Marine Insurance Co.*, 519 F.3d 1025 (9th Cir. 2008) .......... 5, 19
*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) .......... 15
*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir. 1988) 18, 19

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) ........ 16, 17
*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. (en banc) 2007) ........ 16, 18
*Pashley v. Pacific Electric Railway Co.*, 25 Cal. 2d 226 (1944) ........ 24
*Salinas v. United States*, 522 U.S. 52 (1997) ........ 17
*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ........ 17
*Semiconductor Energy Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d 1368 (Fed. Cir. 2000) ... 9
*Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210 (Cal. Ct. App. 2010) ........ 12, 13
*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........ 5
*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ........ 2, 8
*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ........ 5
*Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036 (C.D. Cal. 2014) ........ 20
*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) ........ 11
*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) ........ 18
*United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993) ........ 25
*United States v. Musacchio*, 968 F.2d 782 (9th Cir. 1992) ........ 25
*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (9th Cir. 2012) ........ 12
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........ 15, 16, 25
*Walker v. Pacific Indemnity Co.*, 183 Cal. App. 2d 513 (Cal. Ct. App. 1960) ........ 24
*Williams v. County of Alameda*, 26 F. Supp. 3d 925 (N.D. Cal. 2014) ........ 6

**Statutes**

8 Del. C. § 220 ........ 14
18 U.S.C. § 1832 ........ 16
18 U.S.C. § 1961 ........ 16
35 U.S.C. § 154 ........ 8
35 U.S.C. § 256 ........ 8
35 U.S.C. § 282 ........ 8
35 U.S.C. § 284 ........ 10
Cal. Civ. Code § 3439.01 ........ 20

Cal. Civ. Code § 3439.04 .... 20, 21, 22
Cal. Civ. Code § 3439.07 .... 20, 21
Cal. Code Civ. Proc. § 1802 .... 22
Cal. Corp. Code § 1601 .... 14

**Rules**

Fed. R. Civ. P. 12 .... 6
Fed. R. Evid. 201 .... 6

## I. INTRODUCTION

This case is about whether the cloud over the provenance of Light Field Lab's patent portfolio, and the conduct that put it there, would have been material to Mr. Jones's decision to leave a secure position and take the Light Field Lab job. No patent determination bears on that question.

The motion answers a different one. The difference is a single word with two meanings. Ownership of the "patents" can mean title in the instrument, or ownership of the invention the instrument captures; a patent's face answers the first and is silent on the second. The motion takes the first throughout — "'Provenance' here means nothing more than the chain of ownership of the patents." Dkt. 69 mem. p. 6 — and on it Mr. Jones's request for "the return of, and compensation for, his own work" is said to "amount to the same thing" as being named an inventor. Dkt. 77 at 13:14-15, 13:15.

Take defendants' reading and state what each side must then be saying. Theirs: Mr. Jones says there are patents of ours with someone else listed as the owner; that is false, because every one of our patents lists Light Field Lab. His must be the opposite — this patent is Light Field Lab's, but someone else is listed as the owner. The Second Amended Complaint (the "SAC") makes no such claim.

Plaintiff has never said that. Defendants point to no such statement in any filing, and to no evidence that Plaintiff made one. Every patent the pleading calls Light Field Lab's is Light Field Lab's: "Light Field Lab's U.S. Patent No. 10,488,584", "their own application", "the broader family of Light Field Lab applications". SAC ¶¶ 17, 22, 23. On defendants' reading each of those statements is true. The single patent the pleading puts in another name is Lytro's — and the pleading is what puts it there, identifying it as Lytro's and invoking it as the reference they did not disclose to the Patent Office. And where Defendants' own papers reach that patent, they describe the dispute as the pleading does — a derivation theory, the portfolio's Lytro origin, provenance and withheld prior-art references, and conduct against a different party. Dkt. 69 mem. p. 2; Dkt. 76 at pp. 9, 18, 21. Having named it, they argue throughout from the reading it is not.

On defendants' reading the pleading also agrees with the very document they noticed, and a judicially noticed document displaces an allegation only where it contradicts it. The pleading disclaims the claim the motion supposes: the materiality of the patent facts "does not depend on any determination that a Light Field Lab patent is invalid", and "his claims do not require that contention to be

adjudicated." SAC ¶ 13. And the defect it does allege is Light Field Lab's own — the Lytro covenants "left a defect in Light Field Lab's title". *Id.* ¶ 20. Defendants' reading turns an allegation that Light Field Lab holds less into a claim that it holds more.

So both of the things defendants rely on refute them: the complaints, which claim no patent for Mr. Jones, and the Patent Office documents they asked this Court to notice, which show exactly what the pleading says. What the claims allege is something else, and it holds together: the misrepresentation was about the inventive content the instruments capture, and the portfolio was represented as more secure and more valuable than, to defendants' knowledge, it was, because its provenance was clouded. Defendants' reading leaves the pleading incoherent. What the claims allege is coherent on its own terms. The defect is in Defendants' reading — and defendants cite the answer themselves. The page Defendants give for their own legal standard holds that "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Their reading is not the more convincing of two accounts. It is the one on which the pleading alleges nothing at all.

Nor does their evidence prove what their reading needs. What it proves, Mr. Jones pleads himself. For that record to contradict anything, the pleading would have to allege that a Light Field Lab patent belongs to someone else. It does not, so there is nothing there for the record to disprove. Proving it across every patent would mean reaching the one patent in another name, and no defendant ever has — not in this motion, and not in the papers it incorporates.

The same record of title carries a second argument, and it is aimed at nothing. Their incorporated papers offer "a standing defect that independently defeats the theory", reasoning that "No third party, including Lytro, has ever challenged that ownership" and that "Jones concedes that he does not own the patents", so that "[h]e therefore lacks standing to litigate a stranger's asserted ownership rights." Dkt. 69 mem. p. 5. But Mr. Jones asserts no stranger's ownership rights. He pleads that the inventions were derived from work done at Lytro and that the Lytro reference was not disclosed to the Patent Office, and

the pleading disclaims any determination of ownership. The claim that argument defeats is one defendants supplied themselves.

What the pleading alleges has nothing to do with who holds title. In April 2017 Karafin and Bevensee assigned their light-field inventions to Lytro, covenanting that they "had not made and would not hereafter make any assignment, grant, mortgage, license, or other agreement affecting the rights, titles, and interests herein conveyed." About fourteen months later they assigned the same or substantially the same technology to Light Field Lab. SAC ¶ 20. And in U.S. Patent No. 10,488,584 alone, "across five information-disclosure statements spanning 183 references, they did not disclose Lytro's then-published application." *Id.* ¶ 19. The pleading asks this Court to resolve neither contention, and says so: Mr. Jones "does not seek to be named as an inventor on any patent." *Id.* ¶ 13. What matters is that facts of this kind raise substantial questions about the portfolio's defensibility and its value, and so about the value of the equity offered to induce his employment. *Id.* ¶ 13.

Their reading does not fit the earlier pleadings either. The allegation defendants have pressed since their first motion is the First Amended Complaint's (the "FAC"), that Light Field Lab's foundational patents "were not valid patents held by Light Field Lab but, in fact, were the property of Lytro" Dkt. 25 at p. 5. Its next sentence defines it: Karafin and Bevensee "concealed their patent filing activities that were material to Jones' employment decision. Specifically:" *Id.* at p. 5 — and it then enumerates the Lytro provisional, their named inventorship on the Lytro patent, and the provisionals they filed for Light Field Lab while still employed at Lytro containing substantially identical inventions. That is derivation and inventorship. Assignment, recordation, and title appear nowhere in it. The original complaint said the same, seeking the transfer to Mr. Jones of the intellectual property he created and measuring the loss as the value of his inventorship. The property claimed has been the same in every version of this case, and in none of the three has Mr. Jones claimed to own a patent.

Defendants' own materials refute the rest. Their declarant lists what Exhibit 8's cover pages show — "the applicant, assignee, and inventors". Dkt. 77-1 at 2:12. A cover page cannot contradict a fact it does not state. Mr. Jones adopts that same exhibit, offered "to demonstrate the publicly available nature of the patents" to demonstrate the facially unapparent relatedness of them. Dkt. 77-2 at 2:17-18. The authority offered for the proposition that the claims "necessarily ask" for a patent determination is a

bare “Id.”, and its pincite, “Id. at ¶ 36,” lands on the paragraph where Mr. Jones disclaims seeking to be named an inventor.

On the same page as that argument, Light Field Lab asks the Court to read its own filings as not meaning what they say: “All discussion of LFL’s ownership of the patents in this action has referred to the relevant time period, that in which they were disputed. The use of the present tense in litigation papers should not be read to represent that LFL continued to own the patents or will continue to own.” Dkt. 77 at 12:27-28. That request reaches sworn testimony. On November 18, 2025 — more than three months after the assignment — Charles Yang, who had served as Light Field Lab’s Director of Legal Affairs and had been responsible for managing its patent portfolio, declared under oath that the company “owns 17 provisional patent applications and 13 PCT international patent applications” and “is the listed applicant on 355 patent applications globally.” SAC ¶ 82. The footnote does not say that testimony was mistaken, and Mr. Yang has neither corrected nor qualified what he swore. One sworn statement would have resolved it: that on that date, and at all times since, Light Field Lab was not the owner of record of any patent or patent application in the Patent Office’s assignment records.

And the record Light Field Lab does put forward was assembled after the transfer it now invokes. Its counsel declared that she was notified on September 2, 2025 that the assignment had been made. Dkt. 30-1 at 2:12-14. The Patent Office search offered for what the cover pages show was run five weeks later, and re-attached to this motion on August 14, 2026. Dkt. 77-1 at p. 2. Light Field Lab asks the Court to take the assignee field as the answer on ownership and, on the same page, not to read the present tense as representing it. What it offers for the difference is a footnote — no declaration, no exhibit, no citation to the record. No claim of Mr. Jones’s depends on who owns the patents, then or now. The question is before the Court because Light Field Lab put it there.

Defendant’s reading is self-defeating. Taken arguendo, on their own documents, Mr. Jones received the portfolio represented to him or better — so the claim their reading supposes would fail for want of damage, a consequence the motion does not address. The claim it defeats is not the one Mr. Jones pleads.

Mr. Jones claims his own inventive content — his source code, his trade secrets, and the other work product embodying his inventions — and not title in any instrument. Separately, and for a different

purpose, the pleading alleges where Light Field Lab's foundational patents came from: provisionals Karafin and Bevensee filed while still at Lytro, terminology substituted component for component, and a reference they did not disclose. Those facts bear on the value of the equity Light Field Lab offered him; they are not a claim to anyone's patent. A patent's face proves its assignee. It proves nothing about where the invention came from. No patent determination is necessary to any claim, so the preemption argument fails at its premise, and the rest fail with it or on their own terms, as set out below.

## II. ANSWERING THE ALLEGATIONS AND NOTICEABLE FACTS

### II.A. Mr. Jones does not oppose notice; the objection is to the use

Mr. Jones does not oppose judicial notice of these records. He objects, as Civil Local Rule 7-3(a) requires the objection be contained here, to the use Defendants make of them. The grounds are stated in full at Dkt. 72 § III.A.

### II.B. The noticed documents contradict nothing on either reading of the pleading

Defendant's § III says the Court need not accept allegations contradicted by noticed matter or by documents the complaint refers to. Dkt. 77 at p. 11. Neither reading supplies a contradiction. Ownership aligns. Patent ownership is not derivation. No Light Field Lab patent is alleged to stand in another's name. Both are set out above. *Steckman* and *Manzarek* state that rule for conclusory allegations a document contradicts, not any it touches. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *Manzarek v. St. Paul Fire & Marine Insurance Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). *Sprewell* alone applied it, where the document addressed the allegation and not where it did not. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989, 992 (9th Cir. 2001). Theirs does not. The judicial-notice branch needs a fact beyond reasonable dispute, and competing readings supply none — otherwise "defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). What their exhibit shows is at § II.D.

### II.C. Footnote 1 repeats the carve-out as a premise, without authority or condition

The same carve-out appears again as a footnote. Dkt. 77 at 8:25. There it carries no authority and no condition, and repeating it does not supply the ones § III's own cases impose. § II.B.

Well-pleaded allegations are accepted as true and construed in the pleader's favour. *Daniels-Hall*

*v. National Education Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The movant must establish the carve-out, document by document and allegation by allegation. Placed on the section heading, it qualifies every allegation recited beneath it before any showing is made — and none is made there: no passage of § II identifies which allegation any noticed document is said to contradict.

**II.D. No cover page shows derivation, and the assignee field says nothing about knowledge**

Defendants' declarant swears what the cover pages show, and derivation is not among them. Dkt. 77-1 at 2:11-12. Named inventorship goes to knowledge; the assignee field goes to title and says nothing about knowledge. What those pages do print corroborates the pleading's chronology.

**II.E. Judicial notice proves Dkt. 30 was filed; footnote 2 imports none of the argument in it**

Footnote 2 incorporates Dkt. 30 by reference through Request Exhibit 6. Judicial notice reaches an adjudicative fact only, Fed. R. Evid. 201(a), and a brief's contentions are not facts. Dkt. 30 may be noticed for its existence and what it says, not for what it argues — and it attacked the FAC and was decided by Dkt. 67, so it is a brief filed in connection with a motion that is not before the Court. *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014).

**II.F. Repleading was what the Order provided for, and "inappropriate" names no test**

Their § II.F says "Plaintiff also attempts to reallege three causes of action that the Court previously dismissed." Dkt. 77 at p. 11. Their own § II.E recites the answer: "The Court granted Plaintiff leave to amend with respect to his claims against LFL." *Id.* at 10:17-18. Repleading with leave is proper. Dkt. 67 at p. 21. The amendment history is at Dkt. 72 § IV, and prejudice at § V.

Section II's banner promises relevant allegations and judicially noticeable facts. Dkt. 77 at 8:14. What follows characterises, and asserts that "This Court found as much." *Id.* at 7:27-28. A dismissal with leave to amend is not that finding, and no rule makes a cause of action's appropriateness a test for dismissal. Fed. R. Civ. P. 12(b)(6). The leave carried no last-chance condition. Dkt. 72 mem. p. 7. The assignment premise its § II.D recital assumes is not established on the face of the pleading. *Id.* mem. p. 15. The recitals themselves are undisputed.

**III. IF AUTHORITY IS NOT SHOWN, THERE IS NO MOTION TO GRANT**

Mr. Jones's pending motion asks only that counsel purporting to appear for Light Field Lab demonstrate authority to do so; it does not ask the Court to find authority absent, to strike any paper, or

to dismiss anyone. Dkt. 75 at pp. 3, 6.

A paper filed in a party's name without its authority is a nullity: "If Doraleh did not authorize this petition, then there is no petition . . . ." *Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 617 (D.C. Cir. 2024). Authority is exercised act by act, not dated from a retention, so each paper filed in Light Field Lab's name stands or falls on whether authority existed when filed. The question is live on the record: Delaware's Secretary of State has certified under seal that Light Field Lab is no longer in existence and good standing, having become forfeited on 12 February 2026 for failure to obtain and designate a registered agent. RJN Ex. B-1 at p. 1. Why that leaves no power to instruct counsel is argued at Dkt. 75 § III.B and in the Dkt. 80 reply filed with this opposition. Mr. Jones does not ask the Court to decide it here, only that it not be foreclosed: should the showing not be made, there is no motion of Light Field Lab's to grant. The defect is curable, and only the client can cure it — the cure and the showing are one act. This opposition answers the present motion on its merits in any event.

**IV. ARGUMENT**

Light Field Lab has adopted the individual defendants' motion to dismiss. Its notice expressly incorporates the applicable arguments for dismissal made in that motion, and the papers filed in connection with it, to the extent not already expressly stated in its own memorandum. Dkt. 77 at p. 7.

Mr. Jones answered that motion at Dkt. 72. On the same terms Light Field Lab has chosen, and to the same extent, Mr. Jones incorporates the applicable arguments in opposition made in that opposition and the papers filed in connection therewith, to the extent not already expressly stated herein. He asks the Court to consider them to the same extent it considers the material Light Field Lab has adopted. Mr. Jones's cross-reference is not open to the objection at § II.E — Dkt. 72 and this opposition address the same operative pleading, before the same judge, on the same calendar.

The same clause does different work for a movant and for a respondent, and that is the whole of Mr. Jones's objection. Which of the individual defendants' arguments are "applicable," and which are "already expressly stated" in Light Field Lab's own memorandum, Light Field Lab alone will say — and it will say so in a reply Mr. Jones cannot answer. Light Field Lab is the movant and carries the Rule 12(b)(6) burden; a pointer preserves an issue but cannot discharge it. Mr. Jones carries no burden on this motion, and preservation is all his cross-reference needs to do.

**IV.A. No count is preempted: none requires a patent question to be decided**

The motion answers a case about who is named on a patent, and Mr. Jones has never brought one. On their own standard, where both explanations are plausible the pleading survives, and dismissal follows only where the movant's alternative is so convincing that the pleader's is implausible. *Starr*, 652 F.3d at 1216. Light Field Lab's alternative is a reading on which the pleading states nothing at all. The preemption answers for the Third and Fourth Causes of Action are made in full at Dkt. 72 §§ III.B.2 and III.C, and are not repeated. What follows answers what is new to this motion.

No patent exists to adjudicate. WO 2024/216300 A2 and WO 2025/042476 A1 are published applications; the pleading says so, and disclaims any patent ruling in terms: "No patent issued from the applications built on Mr. Jones's work, and Mr. Jones neither seeks nor needs any ruling correcting inventorship or adjudging any patent invalid or unenforceable." SAC ¶ 163. Defendants have said as much themselves, "no patent has issued." Dkt. 47 at p. 7. The Act's machinery matches: invalidity is a defence to an action involving a patent; § 256 reaches only an issued patent; and § 154(d)'s reasonable-royalty right is one a patent confers. 35 U.S.C. § 282(b); 35 U.S.C. § 256(a); 35 U.S.C. § 154(d)(1). The object in *BearBox* was the correction of an issued patent to name its plaintiff as an inventor *BearBox LLC v. Lancium LLC*, 125 F.4th 1101 (Fed. Cir. 2025), and *Brown* does not close the gap: its conversion claim rested on an omitted-inventor contention, which is why the application–patent distinction was immaterial there. *Brown v. Brown*, No. CV 13-03318 SI, slip op. at 11 (N.D. Cal. 2013). Light Field Lab asks this Court to determine rights to the patents Dkt. 77 at 12:24-25 while saying on the same page that it holds none and that Mr. Jones no longer expressly claims to have been omitted as an inventor *Id.* at 12:19-20 — then attacks all four counts on grounds none of which requires a patent question be decided.

The heading's verb — that these four counts *remain* preempted — presupposes four prior holdings; there are two. *Id.* at p. 12. The Fourth was held preempted as currently pled, and given Mr. Jones's allegations Dkt. 67 at p. 14 — limiters the motion drops, reporting what the Court said of the version then before it as a finding about the cause of action Dkt. 77 at p. 12 — and on a different claim, brought under Penal Code sections 484 and 496 for a right to inventorship where this one arises under CUTSA and the DTSA. The Third was preempted only so far as one allegation carried it, Dkt. 67 at p. 14 & n.9, and the motion concedes the Court was "relying on independent grounds for dismissing

Plaintiff's third causes of action for fraud and deceit." Dkt. 77 at 12:12-13. It made no preemption ruling on the Fifth or the Seventh at all; each fell on Rule 9(b). No element of civil RICO, or of avoidance under the UVTA, is defined by inventorship, patent validity, or who owns a patent — and none could be, since no patent has granted.

The motion's premise is that the pleading asks this Court to decide rights to the patents — a reading that leaves every complaint Mr. Jones has filed incoherent, as the introduction sets out. It declines, and not in one overlookable sentence: the disclaimer heads the patent allegations, closes the transfer allegations, opens each of the four counts moved against, and closes the relief — each cross-referring to the same two anchors. SAC ¶¶ 13, 82, 120, 130, 147, 178, 185. On the movants' own authorities preemption turns on what a claim necessarily requires, and a disclaimer inside a count is part of what it pleads. The invalidation request the earlier pleading carried was relief sought, not an element, and was not repleaded when leave to amend gave the opportunity. No count needed patent law then or now, the test being which acts "must be proven for liability." *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000).

Three ownership questions run through this case and only one is recorded title: title to the instruments, which the face of the patent answers and nobody disputes; whose inventive concepts the foundational patents capture, a question between Lytro and Light Field Lab on which Mr. Jones is not a claimant; and ownership of Mr. Jones's own work, which these counts seek recovery for. The preemption premise begins at recorded title, and the judicial-notice bullet repeats it, Dkt. 77 at 12:17-18, 17:22-23 — but what the motion briefs elsewhere is one of the other two: its supersession and work-for-hire section asks who owns Mr. Jones's work, and its own test here speaks of a plaintiff not successful in protecting information under the federal patent laws, not a chain of title. *Id.* at 13, 14:24-25. Neither is answered by a cover page, nor becomes a patent question by being called one. The SAC pleads why no determination is needed (SAC ¶¶ 13, 120, 146): the impairment runs through licensees, competitors and adversaries, none of whom is a tribunal. The motion answers with one unsupported adverb.

The Florida statute in *Bonito Boats*, their lead authority, fell because it offered "protection beyond that available under the law of unfair competition or trade secret, without any showing of consumer confusion, or breach of trust or secrecy." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489

U.S. 141, 167 (1989). Every count the motion calls preempted requires a showing of wrongdoing that statute dispensed with. Nor does any count do what the second objection named — the statute "endows the original boat hull manufacturer with rights against the world, similar in scope and operation to the rights accorded a federal patentee." *Id.* at 158. A claim running only against parties who owed Mr. Jones duties is the opposite. The case this motion rests on says the same: it cites that holding, flags the trade-secret carve-out, and states that a conversion cause of action is not ipso facto preempted. *BearBox*, 125 F.4th 1101. Its preemption holding came on summary judgment; nothing in it is a Rule 12(b)(6) holding.

The test the motion invokes asks whether the state claim seeks a *patent-like remedy* — a right to exclude others from practising the subject matter, or a royalty for its use. The Fourth Cause seeks the return of Mr. Jones's source code, files and work product, and damages for the destruction of their secrecy. SAC ¶ 137. Neither excludes anyone: the material is public, and no relief would take it back out of the public domain. Nor is compensation for lost secrecy a fee for use, or the right to charge one — the Patent Act's own measure. 35 U.S.C. § 284. The pleading refuses that in terms: "Mr. Jones does not seek, and does not consent to, any compulsory license of his work." SAC ¶ 137. *BearBox* draws the line itself: "But BearBox does not just demand the return of its allegedly converted property or its value at the time of the alleged conversion, BearBox persistently pursues more— monetary damages akin to those awarded under federal patent law." *BearBox*, 125 F.4th 1101. It seeks unjust enrichment and exemplary damages, SAC ¶ 137, but those are section 3426.3's measures for misappropriation, not that royalty. So the very paragraph offered as evidence of preemption, Dkt. 77 at 13:17-18, puts Mr. Jones on the conversion side of their own test. The motion says return and compensation "amount to the same thing" as being named an inventor *Id.* at 13:15 — reading an express disclaimer as its opposite.
Mr. Jones set out the difference before the Order issued: § 256 corrects inventorship on an otherwise valid patent, the defects charged here are not inventorship defects, the correction is made on an oath he could not truthfully swear on filings built on Lytro concepts, and granted in full it would restore none of the source code, trade secrets and work product at issue. Dkt. 42 at p. 25. The disclaimer is about relief.

The preemption argument needs the patent allegations substantial enough to compel the Court to decide patent rights: "Indeed, the SAC now provides pages of information on highly technical patent details." Dkt. 77 at p. 13. The sufficiency argument Light Field Lab has adopted needs those same

paragraphs to be a recharacterised charge of inequitable conduct (Dkt. 69 mem. p. 5) and, pages later, "a bare conclusion with no supporting facts that the Court need not accept." *Id.* mem. p. 7. Both cannot hold. The limitations argument needs those same facts publicly ascertainable enough to have put Mr. Jones on notice — the opposite of concealed, which is what the pleading charges. All three fail on those facts. And if the acts are such conduct, as Defendants label them, that only further proves their materiality, which on that doctrine means "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011). The recharacterisation names a doctrine, not a question: it is no cause of action, Jones cannot occupy the defending posture it requires, and it is immaterial to every element pleaded.

In any event, assume every question of validity, enforceability and inventorship on the two applications built on Mr. Jones's work resolved entirely in Defendants' favour. Nothing in any count changes: the source code was still taken and still withheld, and the methods it embodied were still published by those very applications, which "permanently extinguished the secrecy of the methods it disclosed." SAC ¶ 134. A claim surviving that assumption is not one that "necessarily asks the Court to determine" them. Dkt. 77 at 12:24. That the Patent Office was the instrument of publication is a fact about the means, not about the right asserted. The assumption reaches those two applications and those three questions only — not the foundational portfolio's clouded provenance, which is the concealed fact pleaded as material, and not ownership of Mr. Jones's own work, which is these counts' merits. He seeks no patent ruling: he "does not by this allegation claim any patent, seek to be named an inventor on any application, or ask the Court to determine the patentability, validity, or inventorship of any application." SAC ¶ 127.

**IV.B. The Fourth Cause of Action states a claim, and conversion in the alternative**

Light Field Lab having joined the individual defendants' arguments on this count, Mr. Jones's answers come with them: ownership under the Copyright Act, scope, rescission and relation back of title, identification of the secrets and the secrecy element are answered in full at Dkt. 72 § III.C.1, Dkt. 72 § III.C.2 and Dkt. 72 § III.C.3. The joinder is express and names their pages. Dkt. 77 at p. 14.

Defendant's ownership case substitutes one term for another: the statute is "a work prepared by an employee within the scope of his or her employment" and the next sentence is "he developed the

source code in the course of his employment with LFL, which is sufficient on its own" *Id.* at 14:25-26, 15. Nothing on the face of the motion answers the statute's question. The page pincited for it states a genuine issue of material fact on scope. *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1019 (9th Cir. 2012). And the distinction rests on an instrument alleged void ab initio and, in the alternative, rescinded. SAC ¶ 136. The self-defeat argument rests on a string cite whose paragraphs are about recruitment, signing, identification and secrecy measures.

The motion says "Plaintiff has only vaguely referenced the property" Dkt. 77 at 15:23. The same page quotes that paragraph in full, appositive intact: "the physical files, media, and repositories themselves" SAC ¶ 141. That appositive is the precise definition, its contents itemised at *Id.* ¶ 37, and exclusivity pleaded in terms. *Id.* ¶ 141. *In re iPhone*, the case the test is taken from, turned on the thing not being property at all, the weight of authority holding personal information is not, and dismissed that count with prejudice. *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012). Physical files, media and repositories are the paradigm case of convertible personal property. And their ownership ground, Dkt. 77 at 15:25-26, does not reach an element stated in the disjunctive: "ownership or right to possession of property" *In re iPhone*, 844 F. Supp. 2d at 1074. Ownership is in any event "a factual dispute that cannot be resolved on a motion to dismiss." *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 338 (D. Del. 2017). The motion's own sentence names the exception: "unless a physical item were alleged to have been taken." Dkt. 77 at 15:13. SAC ¶ 141 alleges exactly that. *Firoozye*'s preempting half is likewise conditional: it preempts where the plaintiff seeks only damages for a reproduction of the work and not the actual return of a physical piece of property. *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001). There the plaintiff had authorised the possession and sought no return of tangible property. *Id.* at 1130. This pleading is the opposite on both: it seeks the return, SAC ¶¶ 137, 142, and the assent said to have authorised it was procured by concealment. *Id.* ¶¶ 129, 136.

Supersession is conditional: it applies where the only arguable property identified is a trade secret and the only basis for any property right is trade-secrets law. *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 238 (Cal. Ct. App. 2010). The carve-out is the plaintiff's assertion of "some other basis in fact or law on which to predicate the requisite property right" *Id.* at 238. The second

condition fails: the right arises from the instruments being void ab initio and, in the alternative, rescinded, and independently from authorship — a basis in contract and rescission law. SAC ¶ 136. It is asserted in the pleadings, as *Silvaco* requires. *Silvaco*, 184 Cal. App. 4th at 239. The Count says so in terms: "has a basis independent of any misappropriation of a trade secret" SAC ¶ 141. And their remaining ground is that "even as to any tangible property, the SAC's own allegations locate possession and transfer with Light Field Lab, not the Individual Defendants" Dkt. 69 mem. p. 18. But it locates possession with Light Field Lab, which is who the conversion limb names. SAC ¶ 143.

§ IV.A answers the patent argument; two points are additional. The motion says Mr. Jones claims the patents should not have been patented at all. Dkt. 77 at 13:25-26. The paragraph offered for it alleges the publication and its effect on secrecy, not that claim. SAC ¶ 134. The Count does not rename the patent and inventorship rights; it disclaims them, to minimise Defendants' confusion. *Id.* ¶ 130.

**IV.C. The Third Cause of Action pleads fraud with particularity**

Light Field Lab having adopted the individual defendants' motion, Mr. Jones's answers come with it: the scope of the Count, the four grounds of the duty to disclose, active concealment, exclusive knowledge, the dilution representation, the absence of any finding of truth, and the injury and causation attacks are answered in full at Dkt. 72 § III.B, Dkt. 72 § III.B.2 and Dkt. 72 § III.B.3. *Daniels*, the authority their § IV.C leads with for specificity, relaxes it on the same page where the defendant must necessarily possess full information, and where the facts lie more in his knowledge than the plaintiff's; it infers the belief element the motion says must be pleaded; and it reverses, for the pleaders *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1167, 1168 (Cal. Ct. App. 2016). The facts said to be missing are Defendants' own, and the federal half of the dual standard is the same. § IV.D. And the recited standard is met by a paragraph the motion never mentions. SAC ¶ 122 supplies every factor *Lazar* demands of a pleading against a corporate employer, with its bases stated wherever it pleads on information and belief SAC ¶ 122; *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996).

Bullet 1 gives the Order's "false at the time" finding to "representations regarding a product launch and prospective theme park customer" Dkt. 77 at p. 17. The Order made it as to one, "Karafin's representation that Universal Studios was a customer of LFL" Dkt. 67 at 9:17-18 and disposed of the product-launch representation in the next sentence as a prediction or opinion *Id.* at 9:19-21, their second

bullet. Neither is charged in any event: ¶ 122's recital omits them, and the pleading routes the scienter to the patent-filing conduct SAC ¶¶ 29, 122.

Their § IV.C states: "The misrepresentation supporting a cause of action for fraud 'must be based on a statement of fact.'" Dkt. 77 at 16:25-26. That sentence is the *Hinesley* court's summary of what the moving defendant argued: "Oakshade argued such statements could not support an action for fraud citing the general rules that an action for fraud must be based on a statement of fact" *Hinesley v. Oakshade Town Center*, 37 Cal. Rptr. 3d 364, 368 (Cal. Ct. App. 2005). The rule is correct and undisputed; what matters is what the court did with it. On summary judgment, on a full record, it decided the point against the party advancing it — holding the description a false assertion of existing fact, not an opinion about third parties' future actions, and a triable issue as to which *Id.* at 369. What could not be resolved against that plaintiff on that record cannot be resolved against Mr. Jones on a pleading taken as true. ¶¶ 120-121 plead existing fact, and defendants are locked into calling the statement one of fact.

The third bullet's duty premise needs a relationship this Count does not: *LiMandri* makes nondisclosure actionable in four circumstances, only the first a fiduciary relationship. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 337 (Cal. Ct. App. 1997). That Plaintiff would have acted differently is pleaded twice: he would not have joined, given up his source code, forgone the Microsoft equity, or paid to exercise SAC ¶¶ 118, 119. The inspection formalities belong to the Sixth Cause of Action, which this motion does not move against, and name no element of fraud; the demand was made under 8 Del. C. § 220(b) and Cal. Corp. Code § 1601(a), sworn, and served August 1, 2025 SAC ¶ 76 — which is what that finding said was missing. Issuance to LFL contradicts derivation only if derivation means title, which Mr. Jones has never pleaded. The facially unapparent relatedness is a proposition those pages support.

Paragraphs 13, 115 and 120 each plead facts, and scoping a claim is what amendment is for. ¶ 124 is the reliance element the same brief demands; ¶ 121 pleads present fact, not prediction.

Taken arguendo, their record-title construction destroys the damage element on both horns: if no patent stood outside Light Field Lab's name the portfolio was exactly as represented, and if one did, Light Field Lab held more than Mr. Jones understood. A construction on which the claim has no

damages either way is not the one the pleading bears. Footnote 5, Dkt. 77 at 16:28, omits *Vess*'s disposition that a Rule 9(b) dismissal "should ordinarily be without prejudice." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003). It affirmed with prejudice because that plaintiff failed to comply and declined to amend. *Id.* at 1108. Mr. Jones amended.

**IV.D. The Fifth Cause of Action pleads particularized predicates and a dated pattern**

The Order's Rule 9(b) holding named four omissions in the FAC: the content of the alleged communications, what each defendant said, when, and to whom. Dkt. 67 at p. 16. The SAC supplies all four, in the predicates it charges. SAC ¶¶ 151, 152. The continuity holding was derivative of that one, and the Order's sentence opens with the condition that produced it: "Further, without the requisite specificity, Jones is unable to satisfy the continuity requirement of the 'pattern' element" Dkt. 67 at p. 16. Dkt. 77 restates it as free-standing. The SAC satisfies both.

Nor is ¶ 89's characterisation offered without facts. It recites by date the July 2016 foundational provisionals filed while Mr. Karafin and Mr. Bevensee were still at Lytro, the withheld Lytro prior art, the 2019 recruitment, the applications filed on Mr. Jones's work, the assignment executed days after the refused inspection demand, the concealed onward sale and the charter forfeiture, and closes that each step from 2016 to 2026 advanced or protected the same objective and that the course of conduct has not ended. SAC ¶ 89. A paragraph of dated events is the opposite of what the parenthetical says. Rule 9(b) is measured on the discrete portions of a pleading that supply the particulars, not on whether the one paragraph a movant selects would suffice alone. *In re GlenFed* so held of a complaint it had just called cumbersome almost to the point of abusiveness. *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir. (en banc) 1994). Count Five charges ¶¶ 151–157 directly and reaches ¶ 89 through the incorporation clause at ¶ 147. Even if ¶ 89 were purely summary, *McHenry* makes Rule 8(e)'s demand — simple, concise and direct — a ground of dismissal in its own right. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). A pleading that restated its particulars at every reference would satisfy this objection by violating that rule. Footnote ten compared two paragraphs of a superseded pleading; the operative one pleads that both sets of patents descend from the same two foundational provisionals, and that twenty of Light Field Lab's sixty-four granted patents trace to them by priority, SAC ¶¶ 19, 40 — so the disconnection the footnote asserted is what the SAC pleads against, at the priority root.

The recruitment communications charged at SAC ¶ 151, the reach of the Federal Circuit authority the motion invokes to the wires charged at ¶¶ 154–155, the declarations and the assignment wire at ¶¶ 154 and 156, the individual conduct at ¶ 153, the role identification Rule 9(b) requires, footnote ten of the Order, the relatedness and closed-period standards and the dated span at ¶ 159, the one-scheme-one-victim and wound-up-enterprise attacks on the pattern, the directness of the injury, and the with-prejudice request are answered in full at Dkt. 72 § III.D.1, Dkt. 72 § III.D.2 and Dkt. 72 § III.D.3.

Rule 9(b) reaches the circumstances of the fraud, not every element of a RICO count. On a Rule 12(b)(6) motion, *Odom* states the limit: "The only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. (en banc) 2007). Rule 9(b)'s second sentence permits knowledge and intent to be alleged generally, and non-fraudulent allegations need satisfy only Rule 8(a). *Vess*, 317 F.3d at 1105. So ¶ 149's alternative enterprise, the state of mind, and ¶ 153's trade-secret predicate are Rule 8 matter. RICO's own definition makes that predicate racketeering activity. 18 U.S.C. § 1961(1). And the offence may be committed by appropriating a trade secret without authorization, so misrepresentation is no element of it. 18 U.S.C. § 1832(a)(1). Mr. Jones does not dispute the standard the motion states for the fraud predicates: the time, place and content of each false representation, and who was party to it. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

Each charged predicate is pleaded with its date, its medium, its content and its actor, predicate by predicate and defendant by defendant, as Dkt. 72 § III.D.1 sets out. The option payments are pleaded as three separate interstate wires from Washington to Light Field Lab's California account — $7,000, $14,000 and $35,437.50, settling on December 22, 2020, January 4, 2021 and May 6, 2021 — which Mr. Karafin as president and Mr. Bevensee as Secretary approved and consummated by signing the resulting stock certificates. SAC ¶ 152.

*Moore*, itself a pleading-stage decision, holds statements of the time, place and nature of the alleged fraudulent activities sufficient and only conclusory allegations insufficient. *Moore*, 885 F.2d at 540 ¶ 157 sets apart its further acts as overt acts, not separately charged predicates. SAC ¶ 157. The paragraph the motion attacks for lacking that detail alleges no communication at all — SAC ¶ 87 is the

Delaware corporate-status allegation. Dkt. 77 at p. 19; SAC ¶ 87. The quoted phrase comes from the original complaint, and the charged predicates are at ¶¶ 151–157.

Both Ninth Circuit particularity authorities the motion cites state the relaxation for facts outside the pleader's knowledge, and each declined it for the opposite reason to this pleading's. What defeated the *Sanford* plaintiffs was that the missing facts were their own and they had forgotten them; *Moore* states the same relaxation for matters within the opposing party's knowledge, and for corporate fraud in particular. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010); *Moore*, 885 F.2d at 540. The facts said to be missing here are Defendants': the SAC pleads that the derivation was affirmatively concealed by a one-for-one substitution of terminology, lay within Defendants' exclusive knowledge and could not be recognized from the patents alone, and that the two governing shareholder agreements were never furnished to him at all. SAC ¶¶ 114, 176. The relaxation lowers the standard without dispensing with it, and ¶¶ 151–157 satisfy it as stated. *Id.* ¶ 151. Dkt. 77 offers *Sanford v. MemberWorks, Inc.* for "plaintiff's failure to identify which defendants made certain telephone calls and were parties to the alleged misrepresentations, and allege any specific mailings does not satisfy Rule 9's pleading requirements" Dkt. 77 at p. 20. The holding is about which plaintiff: "The Smiths failed to allege which of them made any of the telephone calls to purchase the various bait products and, thus, who was a party to the alleged misrepresentations" *Sanford*, 625 F.3d at 558. "Them" is Preston and Rita Smith, the two named plaintiffs: on those facts the plaintiffs placed the calls and the defendants' side received them. The mailings half of the parenthetical is accurate, and Mr. Jones does not dispute it. The interstate wires are pleaded here by date, route, sender, amount and content. SAC ¶ 152. Two predicate acts are pleaded for each individual defendant at SAC ¶ 161, and § 1962(d) requires no agreement to commit two and no overt act. *Salinas v. United States*, 522 U.S. 52, 63, 65 (1997).

The sentence that carries the enterprise attack is directed at the superseded pleading: "The FAC fails to present facts, or plead them with adequate specificity, to show that Defendants engaged in a 'fraudulent enterprise' or to demonstrate 'racketeering activity' or 'predicate acts.'" Dkt. 77 at p. 19. The enterprise is pleaded twice, in the alternative: ¶ 148 pleads Light Field Lab as the § 1961(4) enterprise and each individual as a § 1961(3) person; ¶ 149 pleads an association in fact in the further alternative — a shared purpose of monetizing misappropriated intellectual property while concealing its

origin, members related through their roles, and longevity from 2016 through 2026. SAC ¶ 149. That is common purpose, relationships and longevity, and *Odom* holds that no organisational structure beyond it is required. *Odom*, 486 F.3d at 551. The conduct charged is not a request that employees assign their inventions. It is the trade-secret theft of ¶ 153, the false inventorship and ownership declarations, and the removal before publication of the legends marking the figures confidential and proprietary to Light Field Lab. SAC ¶¶ 153, 154, 155. The motion says otherwise: "The SAC pleads nothing more than routine business activity, which is utterly insufficient for a RICO claim." Dkt. 77 at p. 19. But *Gardner* decided the enterprise element alone: calling routine commercial dealing a RICO enterprise is not enough. *Gardner v. StarKist Co.*, 418 F. Supp. 3d 443 (N.D. Cal. 2019). And routine is no exemption — RICO is satisfied where "the predicates are a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 243 (1989). What is charged here is the dated acts of ¶¶ 151–157, each with its actor and its route.

Continuity is disjunctive and both branches are pleaded with dates. The closed period is the six-and-a-half-year span of ¶ 159, SAC ¶ 159, on facts ¶ 89 recites rather than labels, *Id.* ¶ 89; the decision offered against it is a Seventh Circuit case about a closed period of fewer than ten months, addressing that branch alone. *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 473, 474 (7th Cir. 2007). Open-ended continuity is pleaded in this circuit's words — *Howard* asks for "predicate acts that specifically threaten repetition or that become a 'regular way of doing business.'" *Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) and ¶ 160 pleads the August 2025 assignment and the January 2026 sale as that regular way, and pleads the conduct has not ended. SAC ¶ 160. The motion's own authority failed on that branch only because the conduct there would cease once a judgment was collected *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004); nothing here has a collection date. Nothing on the face of the pleading describes a wound-up enterprise: the disposition was still running in 2026, and one sale was paid partly in warrants. SAC ¶¶ 160, 183.

*Medallion* is an appeal from summary judgment, and both findings the motion relies on rest expressly on an absence of evidence — none that SelecTV defrauded the plaintiff in any other way, and none that anyone other than the plaintiff was a victim. *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1364, 1365 (9th Cir. 1988). A Rule 12(b)(6) motion has no

evidentiary record to fail. The test the opinion announces points the other way on these allegations: "we prefer to frame the inquiry as whether the acts are isolated or sporadic, on the one hand, or whether they indicate a threat of continuing activity, on the other." And of the single-scheme case it approved: "The court found continuity in the context of a single fraudulent scheme involving repeated deceptive liquor license applications in successive years because the underlying profit-skimming scheme had no obvious terminating goal or date." *Id.* at 1365. This pleading alleges no terminating goal and no date. SAC ¶¶ 159, 160. No authority makes a single victim defeat a pattern.

The loss is pleaded to the dollar and to the day. Paragraph 162 pleads that Mr. Jones paid $56,437.50 out of pocket to exercise his option — a direct loss caused by the concealment that induced and lulled him — which is the sum of the three dated interstate transfers of ¶ 152 and what ¶ 147 states as the object of the Count. *Id.* ¶¶ 147, 162. A sum paid on three identified dates is the concrete financial loss the motion's authorities require. *Canyon County*, the decision offered for the objection, places a marketplace actor's payment of money wrongfully induced inside "business or property," and disqualified the County only for the sovereign capacity in which it had spent. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 978, 979 (9th Cir. 2008). Mr. Jones is a private individual, and the money went from him to the Defendants' own company. The second injury is the property itself: "he was deprived of his trade secrets and source code, whose secrecy the publications irreversibly destroyed — a permanent loss of value that the return of the work cannot cure — and whose tangible embodiment Light Field Lab retained and transferred" SAC ¶ 162. It does not depend on the validity of the assignment: assent to the Confidentiality and Proprietary Rights Agreement was fraudulently induced, so no title validly passed. And *Gardner*, on which the motion relies a page earlier, disposed of the identical attack: "I disagree with StarKist's contention that plaintiffs failed to adequately allege injury" *Gardner*, 418 F. Supp. 3d 443.

**IV.E. The Seventh Cause of Action states a UVTA claim; the ABC is not an answer to it**

The Act contains no carve-out for a transfer effected through an assignment for the benefit of creditors, and this Court has already addressed the contention on Light Field Lab's own motion: "LFL cites no authority holding to the contrary, and at least two cases have denied motions to dismiss such fraudulent transfer claims where the defendants therein likewise failed to cite to any such authority."

Dkt. 67 at p. 19. A district court applying California law found no other authority or basis in the Act's statutory text for holding it inapplicable to such assignments. *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1069 (C.D. Cal. 2014). Their § IV.E offers no authority for it now, and none of the Code of Civil Procedure sections it cites is a provision of the Act. The Act's text runs the other way: it counts the assignee of a general assignment among the creditors it protects — the very section the motion cites — and gives that assignee the Act's own remedies. Cal. Civ. Code § 3439.01(c); Cal. Civ. Code § 3439.07(d).

The Count does not charge Light Field Lab with electing an assignment. The first paragraph of the range the motion cites seeks avoidance of the transfers and the return of Mr. Jones's own property; what it charges is the two transfers below; and it closes by pleading that the Act reaches such a transfer. SAC ¶¶ 178, 180. The Act asks what a particular transfer did, not whether the debtor was entitled to use the procedure. The motion's phrase "for the benefits of all of its creditors" describes the form of the instrument, not what happened under it; and against the seven lettered grounds of intent the Count pleads, their § IV.E offers one adverb — "somehow." Dkt. 77 at 20:22. The result the pleading alleges is taken as true: "and that no creditor — priority or unsecured — and no equity holder received any distribution, the estate having no funds remaining to distribute to its creditors or investors." SAC ¶ 86.

The motion says the Count would override the ABC proceedings and prefer Mr. Jones over other creditors. It does neither: the Act caps avoidance at his own claim, and the machinery the motion cites is the assignee's, not a court's.

Mr. Jones is a creditor: the Act defines a claim at its broadest — a right to payment, however contingent, disputed or unliquidated, and whether or not reduced to judgment — and each of his claims is pleaded as one, arisen before the transfers challenged, this action having been filed on June 17, 2025 and the General Assignment executed on August 15, 2025. Cal. Civ. Code § 3439.01(b); SAC ¶ 179. Light Field Lab, the debtor, made both transfers, and the Act defines a transfer as widely — every mode, direct or indirect, of disposing of or parting with an asset or an interest in one. Each is pleaded as one, made while this action was pending. Cal. Civ. Code § 3439.01(m); SAC ¶ 180. The third element is the one their § IV.E is aimed at: a transfer made "With actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). Only one of the three verbs is fraud. Putting an asset

beyond a claimant's reach is hindering, and the subdivision reaches a creditor whose claim arose before or after the transfer. Cal. Civ. Code § 3439.04(a). The pleading concludes to the single most reasonable inference: actual intent to place Light Field Lab's assets, and Mr. Jones's own property, beyond his reach as a creditor. SAC ¶ 182.

The Count also runs against the persons who took the transfers, and the Act's relief runs against the transfer and the transferee. Cal. Civ. Code § 3439.07(a). Each is identified by what it did: the undisclosed purchasers of the non-patent assets; the undisclosed senior secured creditor that approved the sales and absorbed their proceeds; the persons behind them, affiliated with or in control of Light Field Lab's officers, directors or controlling shareholders; and any entity holding or having conveyed those assets or proceeds. What is unknown is a name, and only because the Assignee refused to disclose it. SAC ¶¶ 85, 178. The relief sought against the transferees is unanswered on its own terms.

Their § IV.E's remaining ground is that this Court has already applied Rule 9(b) here and the pleading adds nothing: "Plaintiff has failed to allege any additional facts that would support his conclusions that the ABC was fraudulent or for the purpose of defrauding him rather than addressing LFL's insolvency." Dkt. 77 at p. 21. The Order named three particulars the FAC had not supplied: when the transfer was made, what particular assets were transferred, and the manner in which Light Field Lab retained possession or control of the property transferred after the transfer. Dkt. 67 at pp. 19, 20. The pleading supplies each. When, and what: "By the August 15, 2025 General Assignment for the Benefit of Creditors, signed for Light Field Lab by Mr. Karafin as its Chief Executive Officer, Light Field Lab conveyed all of its nonexempt property and assets of every kind — including its patent portfolio; its display prototypes, manufacturing equipment, computer hardware, and other tangible assets; its remaining cash and liquid assets; its 'source codes, software, and related documentation'; and its choses in action — to the Assignee (the General Assignment § 1(a); ¶¶78, 83). The estate's patent portfolio was then conveyed onward, by a Patent Assignment Agreement made effective January 15, 2026, to the purchaser (¶79)." SAC ¶ 180. The manner of retained control is pleaded to the factor the Order's phrase comes from, "Whether the debtor retained possession or control of the property transferred after the transfer." Cal. Civ. Code § 3439.04(b)(2). Neither transfer was recorded in the Patent Office's assignment index, which continued to show Light Field Lab as the owner of every patent it had

purported to assign. SAC ¶ 181.

And Mr. Jones used the claims process the assignment statute does create. Cal. Code Civ. Proc. § 1802(b). What came back was refusal: “the Assignee has refused, despite Mr. Jones’s repeated formal demands as a creditor, to disclose what the assets were, what they sold for, or to whom, and for at least one sale it took warrants of no current determinable value rather than cash.” SAC ¶ 183.

Their § IV.E answers the badges with the insolvency explanation quoted above. But insolvency is itself on the statute’s list of factors probative of intent, and is pleaded as one. Dkt. 77 at p. 21; Cal. Civ. Code § 3439.04(b)(9); SAC ¶ 181. An explanation the Act makes a badge is no answer to the element the badges bear on. The rest are dated and pleaded against the transfer each belongs to. Against Light Field Lab’s transfer of August 15, 2025: it executed the General Assignment fourteen days after refusing his statutory demand to inspect the books and fifty-nine days after this action was filed, conveying substantially all its assets, and did not notify him — a creditor and claimant by then — for six days. SAC ¶¶ 77, 181. Against the Assignee’s onward sale of January 15, 2026: Mr. Jones demanded the terms on February 27 and again on March 5, 2026, and on March 6 was told the Assignee would not respond while his litigation remained pending; and the purchaser, the secured creditor that approved the sales, and the majority shareholder are pleaded, on stated bases, as insiders. *Id.* ¶¶ 79, 181. The pleading says what it claims: “That intent is shown by the following facts, among others, several of which are badges of fraud the Act identifies in section 3439.04(b)” *Id.* ¶ 181. Every subdivision reference is signalled “Cf.”; whether they establish actual intent is not the question here, only whether they are facts.

The warrants are not an inference: the pleading takes them from the Assignee’s own Notice of Assignment Status. *Id.* ¶ 183. Nor does the paragraph the motion quotes assert that anyone retained anything; its clause is conditional: “it created a means by which those persons or entities, if (as alleged above, ¶85) they stand behind the buyer or that secured creditor, could retain an interest in, and a measure of control over, the acquiring entity that now holds those assets, even though Light Field Lab itself transferred the assets away and retains nothing.” *Id.* ¶ 86. Those persons are the ones the preceding paragraph identifies, on stated bases beginning with the refusal. *Id.* ¶ 85. The motion’s example quotes two fragments and supplies the words between them: “For example, Plaintiff argues that because the assignee allegedly ‘took, for one of the sales, warrants’ it created a means for Defendants to ‘retain an

interest in, and a measure of control over, the acquiring entity that now holds those assets.' SAC, ¶ 86." Dkt. 77 at p. 21. What the pleading conditions on an alleged affiliation, and states as an interest those persons could retain, arrives as an accomplished means held by Defendants. The purchaser's identity is the clearest case, because the pleading says where it was not: it did not appear in the patent assignment records, and the record Mr. Jones pulled on March 6, 2026 showed no conveyance to the Assignee or the purchaser. SAC ¶¶ 79, 81. So the fact had to be excavated: he learned who the purchaser was not from the Assignee and not from any ownership record, but by digging it out of the Patent Office's prosecution record himself. *Id.* ¶ 79. That is the opposite of a guess. "[P]urported to transfer" is ¶ 82's concessive opening, not its conclusion — the conclusion is what was asserted after that date.

**IV.F. No limitations bar appears on the face of the pleading**

What their § IV.F asks for is not what it argues. Its operative sentence is conditional: "To the extent Plaintiff relies on actions outside the statute of limitations to make his claims, such claims are barred." Dkt. 77 at 22:11-12. That asks the Court to disregard allegations, not to dismiss a count, and its authorities supply limitations periods and an accrual rule — none a rule for excising allegations. Its closing sentence asks for something different, dismissal of the Third, Fourth and Fifth Causes as time-barred, *Id.* at p. 22 and the Conclusion for something different again, which § V addresses.

Nor does the motion seek excision as a party must. Its Notice states that the motion is made under Rule 12(b)(6), Rule 8(a)(2) and Rule 9(b). *Id.* at p. 7. None of the three reaches matter within a pleading that states a claim. Rule 12(f) is what allows a party to ask that matter be stricken, and the motion does not invoke it. Untimeliness must in any event appear on the face of the pleading, and a request framed to reach only some of the conduct does not show these counts are barred.

The accrual and discovery answers for the Third and Fourth Causes of Action are made in full at Dkt. 72 §§ III.B.1 and III.C, and are not repeated.

The section's only dated anchor is SAC ¶ 124, offered as "SAC ¶ 124 (admitting that alleged harm 'became irreversible in September 2019')" *Id.* at p. 22. What those words attach to is not harm. The paragraph pleads reliance, and the phrase modifies the resignation — "In reliance, he forwent the vesting Microsoft equity that was the financial premise of his move and resigned his Microsoft employment, a forfeiture that became irreversible in September 2019" SAC ¶ 124 — a forfeiture the

pleading dates before he began work. *Id.* ¶ 71. When an act of reliance became irrevocable is not when a loss was sustained.

The remaining anchor is a block of the SAC described as "outlining LFL's purported actions that took all place in 2019" Dkt. 77 at p. 22. No reading delivers that: one paragraph within it dates an event to January 2, 2020, and the next pleads a non-disclosure of the agreements' terms that never ended. SAC ¶¶ 30, 31. Shifting rationales across pleadings fix no accrual date.

Nor was any loss sustained in 2019 or 2020. Damage merely threatened is not damage sustained, and money exchanged for a security is not a loss while the security may still return it: the purchaser there parted with money for an instrument, and nothing was lost until the instrument failed to return the price. *City of Vista v. Robert Thomas Securities, Inc.*, 84 Cal. App. 4th 882, 886, 887 (Cal. Ct. App. 2000). Mr. Jones exercised his options and held the equity until the 2025 insolvency in which, on the Assignee's own representation, the undisclosed secured creditor absorbed the proceeds and he received nothing. SAC ¶ 86. That is when the loss was sustained, and the answer does not turn on when it could be quantified. *Walker v. Pacific Indemnity Co.*, 183 Cal. App. 2d 513, 517 (Cal. Ct. App. 1960).

The rule the section takes from *Grimmett* runs on notice, and the section supplies no date on which Mr. Jones was on notice. The same decision answers the argument: an overt act restarts the period where it is new and independent rather than a reaffirmation, and inflicts new and accumulating injury. *Grimmett v. Brown*, 75 F.3d 506, 513 (9th Cir. 1996). The October 2024 and February 2025 publications meet both. They inflicted an injury no earlier act had worked — the irreversible destruction of the methods' secrecy, SAC ¶ 140 which does not naturally flow from a 2019 inducement; that is the distinction the decision draws between a wrongful takeover and the later mismanagement and sale. *Grimmett*, 75 F.3d at 513. The August 15, 2025 assignment and the sale are of the same kind: each moved property still there to be taken. It is in any event a summary-judgment decision, and on this motion Mr. Jones is entitled to his allegations. *Id.* at 510. The pleading answers the delay in any event: "A defendant who fraudulently conceals the facts constituting a claim cannot charge the plaintiff with a failure to discover what the concealment was designed to hide." SAC ¶ 128 — California's rule, not confined to actions sounding in fraud, and applied in decisions reversing a demurrer sustained without leave on a limitations bar. *Pashley v. Pacific Electric Railway Co.*, 25 Cal. 2d 226, 231, 232 (1944);

*Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 324 (Cal. Ct. App. 1974).

Even if some conduct pleaded could not support recovery, it would not follow that the Court must disregard it. A limitations statute fixes when an action must be brought; it is not a rule of evidence. The Ninth Circuit has refused to convert it into one: once the action is timely brought the statute's function ends, and it does not bar evidence of acts outside the period. *United States v. Musacchio*, 968 F.2d 782, 790 (9th Cir. 1992). The same court treats it as settled that time-barred offenses may serve as predicates establishing a pattern of racketeering activity. *United States v. Baker*, 10 F.3d 1374, 1410 (9th Cir. 1993). Both are criminal appeals about evidence at trial, but what a limitations statute is does not vary with the case. So even on the motion's own premise, the acts it would set aside remain evidence of the pattern, the method, and the knowledge and intent with which the later acts were done. Mr. Jones seeks no recovery for injury caused by an out-of-period act; he offers those acts as proof of the acts for which he does sue. Their § IV.F identifies no rule forbidding that use, and asks for none.

## V. CONCLUSION

No limitations argument in the motion reaches the Seventh Cause of Action: § IV.F asks the time bar for the Third, Fourth and Fifth alone. Dkt. 77 at p. 22. Against it the motion has only preemption and the assignment for the benefit of creditors, answered at §§ IV.A and IV.E.

The motion asks that all four counts be dismissed with prejudice, undifferentiated, and offers for that disposition only its reasons for dismissal. *Id.* at p. 23. Sufficiency and curability are different questions, and the second has a standard the merits do not supply: leave should be granted unless the pleading "could not possibly be cured by the allegation of other facts" *Vess*, 317 F.3d at 1108. On the motion's own authority the default runs the other way.

This Court has already decided that question the other way: its Conclusion withheld leave on the First Cause of Action and granted it on the Third through Seventh in the next paragraph. Dkt. 67 at p. 21. It gave its reason: the early stage of the proceedings. *Id.* at 20:18-19. The motion does not argue that the stage has changed, and its third-attempt characterisation fails because the SAC is the first amendment this Court has allowed.

The motion should be denied. In the alternative, Mr. Jones requests leave to amend.

Dated: August 25, 2026

HENRY | LACEY PC

By /s/ Stephen Henry______________
STEPHEN F. HENRY
Attorney for Plaintiff