SARA A. MOORE (SBN: 294255)
SARAH B. ABSHEAR (SBN: 270847)
NIKAYLA JOHNSON (SBN: 347157)
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054
smoore@grsm.com
sabshear@grsm.com
njohnson@grsm.com

Attorneys for Defendant
LIGHT FIELD LAB, INC.



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,<br><br>Defendants. | CASE NO.: 3:25-cv-5118 MMC<br><br>**DEFENDANT LIGHT FIELD LAB, INC.'S REPLY IN SUPPORT OF DEFENDANT LIGHT FIELD LAB, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Complaint Filed: June 17, 2026<br>Am. Complaint Filed: Sept. 3, 2025<br>Sec. Am. Complaint Filed: Jul. 6, 2026 |

**Gordon Rees Scully Mansukhani, LLP**
315 Pacific Avenue
San Francisco, CA 94111

## I. INTRODUCTION

After this Court dismissed the majority of Plaintiff's causes of action on June 9, 2026, Plaintiff attempted to correct the deficiencies in his Second Amended Complaint ("SAC"). For the reasons set forth in Defendant's Motion to Dismiss ("Motion") and discussed further below, he failed to do so. Plaintiff's Opposition fails to add any information or argument that would change the analysis already set forth in the Motion. Plaintiff's SAC should be dismissed in the same manner as his FAC.

Because Plaintiff's claims are preempted, time-barred, and fail to state a claim, his Third, Fourth, Fifth, and Seventh causes of action should be dismissed.

## II. LEGAL ARGUMENT

### A. Plaintiff's Third, Fourth, Fifth, and Seventh Causes of Action Remain Preempted by the Patent Act

Plaintiff spends the first four pages of his Opposition once again arguing about patent rights, while simultaneously claiming that he is not disputing patent rights, in an attempt to avoid patent preemption. In the very first sentence of the Opposition, Plaintiff claims, "This case is about whether **the cloud over the provenance of Light Field Lab's patent portfolio**, and the conduct that put it there, would have been material to Mr. Jones's decision to leave a secure position and take the Light Field Lab job." Opposition, p. 1 (emphasis added). He immediately thereafter states, however, "No patent determination bears on that question." *Id.* Elsewhere, he claims that the "provenance was clouded" and that there was a "defect in Light Field Lab's title." *Id.* at 2. Asking the Court to accept and/or determine that the title is defective or the provenance is clouded *is* asking the Court to determine LFL's ownership rights in the patent. The question is whether LFL *fully and rightfully owns the patent portfolio*, evaluating the *strength* of Light Field Lab's ownership interests. Such questions are preempted by the Patent Act. *See BearBox LLC v. Lancium LLC*, 125 F.4th 1101, 1112-13 (Fed. Cir. 2025); *Brown v. Brown*, 2013 WL 5947032, at *7 (N.D. Cal. Nov. 5, 2013); *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377-78 (Fed. Cir. 2005); *Bldg. Innovation Indus., L.L.C. v. Onken*, 473 F. Supp. 2d 978, 987–88 (D. Ariz. 2007) ("the hired-to-invent doctrine and the rules governing the validity

**Gordon Rees Scully Mansukhani, LLP**
315 Pacific Avenue
San Francisco, CA 94111

of a patent application are completely federalized areas of law").[1] Plaintiff cannot pretend that these causes of action are not preempted by the Patent Act simply by claiming that he does not dispute the "recorded title." *See* Opposition, p. 9. Nor does the case he cites, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011), suggest otherwise; it is inapplicable to this case. *See id.* (discussing elements of inequitable conduct, a defense available to infringers in patent infringement cases); *see also Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1383 (Fed. Cir. 2000), amended (Apr. 5, 2000) (RICO counterclaims are preempted by patent laws; inequitable conduct, without more, is insufficient to justify a state RICO action).[2]

Further, Plaintiff's claim that the question of the patents is "before the Court [only] because Light Field Lab put it there" (Opposition, p. 4) is disingenuous when viewed against the backdrop of the Original Complaint and the FAC. *See* ECF No. 1, ECF No. 25. When viewed in that context, it is clear that Plaintiff continues to attempt artful pleading to get around the patent preemption issue he faced when he previously challenged aspects of the patents. He has simply renamed his patent rights.

**B. Plaintiff's Cause of Action for Misappropriation Fails to State a Claim**

Plaintiff's fourth cause of action for misappropriation and conversion replaces the prior cause of action the Court dismissed on the grounds of preemption by federal patent law. Plaintiff's vague terms and new language, including "source code," "other intellectual property," trade secrets," and "other work product" support the idea that he is making claims regarding the same intellectual property at issue in his prior complaints. *See, e.g.*, SAC ¶¶ 78,

---

[1] Plaintiff claims that the patent preemption argument previously accepted by the Court does not apply to these causes of action, since the argument was only used to dismiss a cause of action he now drops. However, the Court rested on separate grounds and was not required to reach the issue of patent preemption. Defendant maintains that the argument applies to all causes of action claiming that the patent assignment process was fraudulent, that obtaining the rights were a predicate act, or that it was otherwise improper for LFL employees to represent that LFL owned their patents without mentioning a purportedly "clouded" provenance or "deficient" title.

[2] In *Therasense*, the Court criticized the use of the doctrine as a litigation tactic, because such charges "cast a dark cloud over the patent's validity and paint the patentee as a bad actor," which can have "ruinous consequences for the reputation of his patent attorney," since the doctrine involves fraud on the PTO and the court system, extremely serious charges. *Therasense*, 649 F.3d at 1288. The conduct described, and disapproved of, in *Therasense* is similar to what Plaintiff is asserting here.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

83, 125, 130-146. He claims that the contract he entered into regarding his intellectual property rights was "void ab initio and, in the alternative, rescinded." Opposition, p. 12.[3] This is yet another argument that requires a determination regarding ownership of some of the intellectual property contained in LFL's patents, and it is thereby preempted by the Patent Act. But now, Plaintiff characterizes the assignment as dealing with trade secrets.

Even assuming that Plaintiff were able to get around the fact that these were *patent* rights involved in a *patent* assignment, Plaintiff fails to allege facts sufficient to establish that he had any trade secret(s). *See* Motion, pp. 14-15; Cal. Civ. Code § 3426.1(d); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020); 18 U.S.C. § 1839(5); *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125 (9th Cir. 2010), *citing* 17 U.S.C. §§ 101, 201(b). Plaintiff claims that *JustMed* "states a genuine issue of material fact on scope," suggesting that it is more appropriate for the summary judgment stage. *See* Opposition, p. 12, *quoting* Motion at 14:25-26. However, in *JustMed*, the factual issue was whether the individual who developed the source code was an employee or independent contractor. *JustMed*, 600 F.3d at 1125. Here, Plaintiff has *already admitted* he is an employee in his own pleadings; this is a wrongful termination action. *See, e.g.*, SAC ¶ 11. The case Plaintiff cites in support of his argument involved an individual who did work for two separate companies, leading to genuine issues of fact regarding ownership. *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009 (9th Cir. 2012).

Furthermore, in assuming that he can skip to the fact-determination stage, Plaintiff ignores that it is his own burden to identify the trade secrets with adequate specificity first. *See InteliClear*, 978 F.3d at 658 (plaintiff must "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade" and cannot "simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial) (internal citations omitted) (emphasis in original). Vague references to "source code," "other intellectual property," trade

---

[3] Plaintiff raised this argument for the first time in the SAC; in his earlier complaints, he admitted entering into such agreements. *See* ECF No. 1, 25. He also admitted in the SAC that he *did not even read* one of the agreements he entered into with LFL. SAC ¶ 71.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

secrets," and/or "other work product" are insufficient to identify a particular trade secret. *See, e.g.*, SAC ¶¶ 78, 83, 125, 130-146. This language could encompass everything Plaintiff worked on for the duration of his employment and is clearly overbroad.

Similarly, Plaintiff alleges that he described the physical property with sufficient specificity. *See* Opposition, p. 12, *citing* SAC ¶ 141. That paragraph states: "In the alternative, and only to the extent any portion of the retained source code, files, and tangible work product – the physical files, media, and repositories themselves—does not qualify as a trade secret, Mr. Jones alleges conversion." SAC ¶ 141. Not only is this vague regarding the trade secrets involved; it is vague regarding the files, media, and repositories. If Plaintiff is asserting that he is entitled to recover any and all files, media, and repositories that contain any work he did while at LFL, that is clearly not the case. Plaintiff needs to specifically identify what items he actually seeks to recover.

### C. Plaintiff's Cause of Action for Fraud and Deceit Fails Because It Does Not Meet the Heightened Specificity and Particularity Requirements for Fraud

Allegations for fraud must meet Rule 9(b)'s heightened pleading standard. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (requiring the "who, what, when, where, and how" of the misconduct charged be set forth in the complaint). A representation is not generally considered fraud if it relates to a future event. *Daniels v. Oldenburg*, 100 Cal.App.2d 724, 727 (1950). Plaintiff has failed to allege any concrete statements made by LFL or its employees that they knew were false at the time they were stated. Plaintiff has added additional information to the SAC, but none of it serves to provide the additional facts necessary to meet Rule 9(b)'s heightened pleading standard. Plaintiff cannot simply rely on claims that Defendant is required to provide him with the information needed to allege his fraud claims. *See* Opposition, p. 13-14.

In his Opposition, Plaintiff claims he has added the necessary facts, citing paragraph 122 of the SAC. *Id.* However, that paragraph does not provide any additional information that supports a cause of action for fraud. In fact, Plaintiff's arguments referenced in that paragraph include two somewhat incredible claims regarding "misrepresentations" – first, that LFL's claim

that it had hundreds of patents was false (even though it *did* have hundreds of patents in its name) because it "misrepresented the value and security of the portfolio" due to its "provenance and enforceability" being "clouded" (SAC ¶ 120); second, that an email that expressly stated both that "non-dilutable can mean a lot of things," and that "each round of investment provides dilution for our investors" misrepresented to Plaintiff that his shares were ***non***-dilutable, because it also stated that Plaintiff's shares could "rise in value" with the Company's valuation (SAC, ¶ 30). Inexplicably, Plaintiff argues both statements meant something completely different to him than articulated by their plain meaning, claiming that he thought he was not included in "investors." One need only read the actual words to see that these were not misrepresentations in any way.

### D. Plaintiff's Cause of Action for Civil RICO Fails Because It Consists Solely of Conclusory Statements Without Factual Information

Plaintiff's cause of action for Civil RICO is based on essentially the same allegations as the cause of action for fraud, and it fails for the same reasons. Plaintiff also fails to show a "fraudulent enterprise," demonstrate "racketeering activity" or show "predicate acts." *See Cnty. of Marin v. Deloitte Consulting LLP*, 836 F.Supp.2d 1030, 1037-38 (N.D. Cal. 2011). Plaintiff now tries to string together a purported "pattern" by including work done by LFL's employees at their prior employer (the same work he claims "clouds" the patents), Plaintiff's purchase of stocks from LFL, the theft of the so-called "trade secrets" he fails to specifically identify, patent filings with the PTO, the publication of the patents, and the assignment for the benefit of creditors upon LFL's insolvency, all as part of a purported "pattern." SAC, ¶¶ 147-166. Plaintiff even speculates that (presumably privileged) transmissions to patent counsel could exist constituting part of the alleged racketeering activity. *Id.* at ¶ 157. Once again, Plaintiff fails to allege facts that support his cause of action, instead listing perfectly legitimate business activities.

**Gordon Rees Scully Mansukhani, LLP**
315 Pacific Avenue
San Francisco, CA 94111

**Gordon Rees Scully Mansukhani, LLP**
315 Pacific Avenue
San Francisco, CA 94111

### E. Plaintiff's Seventh Cause of Action Fails to State a Claim Because Plaintiff Alleges No Facts to Demonstrate Insolvency Proceedings Were Used for a Fraudulent Purpose

Plaintiff fails to allege facts sufficient to support any finding that LFL made the assignment for the benefit of creditors with "actual intent to hinder, delay, or defraud any creditor." *See* Cal. Civ. Code § 3439.04(a)(1). He fails to detail any "fraud" with the heightened scrutiny required by Rule 9(b). Though Plaintiff now includes a few additional details about the assets transferred, he fails to explain how or why the transfers would be fraudulent, only speculating that they must have been meant to keep him from getting his alleged assets returned through this lawsuit. *See* SAC, ¶ 181. However, as discussed in the moving papers and above, Plaintiff has alleged no claims against LFL under which he is entitled to any of the property in the assignment for the benefit of creditors.

Because LFL transferred all of its assets to a trustee on August 15, 2025, and Plaintiff originally filed this lawsuit on June 17, 2025, he alleges his conclusion is supported, but temporal proximity alone does not suggest a causal connection, much less fraudulent intent. Plaintiff's interpretation of fraudulent intent also relies on LFL believing that Plaintiff is entitled to its assets and capable of recovering them in this lawsuit, such that a shield was needed in the extreme form of fraudulent insolvency proceedings. Yet no facts alleged actually support that conclusion.[4] Plaintiff's allegations consist solely of conclusory speculations.

Further, Plaintiff has alleged no facts that suggest that LFL or its trustee will be unable to pay him should the lawsuit turn out in his favor, such that the assignment fraudulently transferred the assets that would otherwise be for that purpose. *See, e.g.*, ECF No. 59, Certificate of Interested Parties.

[4] If instead LFL has a good faith belief, supported by federal patent law and agreements signed by Plaintiff, that it owns all the assets transferred in the assignment, will successfully defend against Plaintiff's lawsuit, and will never have to pay Plaintiff anything, it would have no need to hide assets from him. Plaintiff was forced to withdraw his original complaint in response to an initial motion to dismiss, and subsequently all but his wrongful termination causes of action were dismissed by this Court. *See* ECF Nos. 1, 25, 67. This suggests not only would such LFL's belief be in good faith, but it would be reasonable as well.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

**F. Plaintiff's Third, Fourth, and Fifth Causes of Action Are Time-Barred**

Plaintiff bases his causes of action on actions that date back to the beginning of his employment with LFL in September 2019. SAC ¶ 11. Plaintiff was employed for almost four years, then waited almost two more years to file this lawsuit, on June 17, 2025. *See* ECF No. 1. Yet in the SAC, he focuses on a great deal of information regarding events that occurred in 2019 and 2020. *See, e.g.*, SAC, ¶¶ 13-24, 27-28, 30-31, 66-71, 119-123. Plaintiff argues that he only discovered certain wrongdoing recently, but that cannot be an excuse where he could have discovered it sooner. *See New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, 400 F. App'x 250, 251 (9th Cir. 2010) (citation omitted). To the extent that he alleges wrongdoing that occurred within the relevant statute of limitations periods, those acts must stand on their own, without the time-barred events being included. This further weakens Plaintiff's arguments regarding the Third, Fourth, and Fifth Causes of Action.

## III. CONCLUSION

Defendant respectfully requests that the Court grant LFL's Motion and dismiss Plaintiff's Complaint as to the Third, Fourth, Fifth, and Seventh causes of action with prejudice, and without leave to amend, for the reasons set forth in the Motion and above.

Dated: September 4, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: /S/ Sara A. Moore
SARA A. MOORE
SARAH B. ABSHEAR
NIKAYLA JOHNSON
Attorneys for Defendant
LIGHT FIELD LAB, INC.