**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES,<br><br>Plaintiff,<br><br>vs.<br><br>LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,<br><br>Defendants, | Case No.: 3:25-cv-05118-MMC<br><br>**PLAINTIFF'S REPLY TO OPPOSITION (DKT. 93) TO PETITION FOR CERTIFICATION OF QUESTIONS OF LAW TO THE SUPREME COURT OF THE STATE OF DELAWARE**<br><br>**Date: November 20, 2026**<br>**Time: 9:00 a.m.**<br>**Courtroom: 7**<br><br>**Complaint Filed: June 17, 2025**<br>**Am. Complaint Filed: Sept. 3, 2025**<br>**Second Am. Complaint Filed: July 6, 2026** |

## TABLE OF CONTENTS


**STATEMENT OF ISSUES TO BE DECIDED** ..... 1

**I. INTRODUCTION** ..... 1

**II. ARGUMENT** ..... 2

**A. Dkt. 93 § I (Introduction)** ..... 2

**1. "Rather than content himself with those five pages" (Dkt. 93 at 2)** ..... 2

**2. The request "if the Court was unsure about the rulings it made" (Dkt. 93 at 2)** ..... 3

**3. The motion as brought "presumably in hopes" of a favorable answer (Dkt. 93 at 2)** ..... 3

**B. Dkt. 93 § II (Legal Standard)** ..... 3

**1. The motion "selectively quotes" Rule 41 and omits "the full legal standard" (Dkt. 93 at 2, 3)** ..... 3

**2. Footnote 1: the local rule "says nothing regarding certifying" (Dkt. 93 at 2 n.1)** ..... 4

**C. Dkt. 93 § III (Certification Process and Framework)** ..... 4

**1. The Court's act, and the burden called "slight" (Dkt. 93 at 2-3)** ..... 4

**2. Local counsel, pro hac vice admission and a fee for "both parties" (Dkt. 93 at 3)** ..... 5

**3. Rule 71, Delaware's rules of professional conduct, "no mere formality" (Dkt. 93 at 3)** ..... 6

**4. The parties "would be required to fully brief the matter in Delaware" (Dkt. 93 at 3)** ..... 7

**5. That "this case would presumably be on hold" (Dkt. 93 at 3)** ..... 7

**D. Dkt. 93 § IV (Plaintiff Fails to Justify Certification)** ..... 7

**1. An "important and urgent reason for an immediate determination" (Dkt. 93 at 3)** ..... 7

**2. Does not address whether this Court "has already decided the question" (Dkt. 93 at 3)** 8

**3. Counsel "aware of no important or urgent reason" (Dkt. 93 at 3)** ..... 8

**4. This Court is "equally capable of deciding" (Dkt. 93 at 3)** ..... 10

**5. That "in the Order to Show Cause, the Court did determine" (Dkt. 93 at 3)** ..... 13

**6. "The parties are already briefing the matter before this Court" (Dkt. 93 at 3)** ..... 13

**7. Plaintiff's reliance on *Arizonans*, cited to "Dkt. 85, p. 3" (Dkt. 93 at 4)** ..... 14

**8. *Arizonans* "was not a case interpreting a simple matter of state law" (Dkt. 93 at 4)** ..... 14

**E. Dkt. 93 § V (Conclusion)** ..... 15

**III. CONCLUSION ........................................................................................................ 15**

## TABLE OF AUTHORITIES

### Cases

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997) .................................................... 3, 11, 14, 15

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985) ......................................................... 14

*Comm'r v. Est. of Bosch*, 387 U.S. 456 (1967) ......................................................................... 10

*Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843 (Del. 1998) ............................................. 11

*Hanson v. Morton*, 67 A.3d 437 (Del. 2013) .............................................................................. 6

*Harned v. Beacon Hill Real Est. Co.*, 84 A. 229 (Del. 1912) .................................................. 12

*In re Krause*, 546 F.3d 1070 (9th Cir. 2008) ............................................................................ 11

*King v. Ord. of United Commercial Travelers of Am.*, 333 U.S. 153 (1948) ........................... 10

*Kremen v. Cohen*, 325 F.3d 1035 (9th Cir. 2003) ............................................................... 11, 15

*Lehman Bros. v. Schein*, 416 U.S. 386 (1974) ....................................................................... 3, 15

*Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738 (1824) ......................................................... 2

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 294 F.3d 1085 (9th Cir. 2002) ................. 11

*Rivera v. Angkor Cap. Ltd.*, C.A. No. 2022-0671-MTZ, 2024 WL 3873050 (Del. Ch. Aug. 20, 2024). 1, 11, 12

*Thompson v. Paul*, 547 F.3d 1055 (9th Cir. 2008) .................................................................... 14

*Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936, 1990 WL 168276 (Del. 1990) (TABLE) 6

*Wax v. Riverview Cemetery Co.*, 24 A.2d 431 (Del. Super. 1942) ............................................ 12

### Statutes

8 Del. C. § 122 ........................................................................................................................ 10

8 Del. C. § 136 .................................................................................................................... 1, 10

8 Del. C. § 321 ........................................................................................................................ 10

8 Del. C. § 510 ................................................................................................................. 1, 8, 10

10 Del. C. § 3111 ..................................................................................................................... 10

**Rules**

Civil L.R. 7-1 .... 4
Del. Supr. Ct. R. 12 .... 6
Del. Supr. Ct. R. 41 .... 2, 4, 6, 7, 8, 9, 13, 15
Del. Supr. Ct. R. 71 .... 6, 7
Fed. R. Civ. P. 17 .... 10

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Delaware law answers the three questions presented for Mr. Jones, so that Light Field Lab, Inc. remains amenable to suit and to judgment, though the forfeiture of its charter on February 12, 2026 has withdrawn its power to take part in this action, the Order to Show Cause should be discharged, and his claims against it should not be dismissed.
2. Whether, only if the Court is left uncertain whether Delaware intends a forfeited corporation to remain amenable to suit, the questions presented should be certified to the Supreme Court of Delaware in the form lodged with the motion, and decision on the Order to Show Cause deferred until that Court has acted.
3. Whether Mr. Jones should be granted any and all other relief the Court deems just and proper.

**I. INTRODUCTION**

This action was filed on June 17, 2025 (Dkt. 1 at 1). On February 12, 2026, the charter of Light Field Lab, Inc. ("LFL") was forfeited under 8 Del. C. § 136(b) for failure to designate a registered agent (Dkt. 63 at 4; Dkt. 82-1, Ex. B-1 at 1; Dkt. 85 at 2 n.1). The Court's Order to Show Cause (the "Order") directed Mr. Jones to show cause "why his claims against LFL should not be dismissed on the ground that LFL, at present, lacks the capacity to be sued" (Dkt. 85 at 3:3-5). He responded, and moved the Court (Dkt. 87, the "motion") to certify three questions to the Supreme Court of Delaware: whether a corporation whose charter is forfeited under § 136(b), and not revived, remains a proper party defendant; whether the answer differs where the action was commenced before the forfeiture; and whether a voidness under 8 Del. C. § 510 changes either answer (Dkt. 87 at 1:22-2:1).

Read on its own terms, *Rivera v. Angkor Cap. Ltd.*, C.A. No. 2022-0671-MTZ, 2024 WL 3873050 (Del. Ch. Aug. 20, 2024), the decision the Order cites and LFL relies on, decided participation, and the decisions of the Supreme Court of Delaware it collects answer the questions for Mr. Jones (see § II.D.4). The questions are open only on the broader reading LFL presses. On that reading no decision of the Supreme Court of Delaware settles them (see § II.D.4), LFL's own positions, which cannot all stand together, leave them open (see § II.D.3), and the State whose law it is should answer them (see § II.D.4).

Dkt. 93 answers none of this. It calls the Order a determination, which it is not (see § II.D.5); it

describes a burden that, on LFL's own premise, could never fall on LFL (see § II.C.2); and it offers this Court's capability, which is not the test (see § II.D.4). The one decision it cites, it quotes short of the clause that applies here (see § II.D.8).

Dkt. 93 is itself filed in LFL's name, on an authority Dkt. 92's premise says LFL cannot give (see § II.A.1). The motion to strike filed with this reply asks that every filing made in LFL's name without authority be struck. If they are, nothing filed in opposition to certification remains.

**II. ARGUMENT**

**A. Dkt. 93 § I (Introduction)**

**1. "Rather than content himself with those five pages" (Dkt. 93 at 2)**

LFL says: "Rather than content himself with those five pages, Plaintiff chose to file yet another motion in this case." Dkt. 93 at 2:5-6. Mr. Jones did not file a motion instead of a response. His response, within the five pages unlike the response filed in the name of LFL, itself asks the Court to certify the question if uncertainty remains whether a forfeited corporation is amenable to suit. Dkt. 86 at 5:16-17. The motion filed with it, for decision together with it, is the petition that request contemplates. Dkt. 87 at 1:12-13, 1:18-19.

Rule 41 lets this Court certify a question on motion, Del. Supr. Ct. R. 41(a)(ii), and names "Any Petition for Certification" among the papers sent up with it. Del. Supr. Ct. R. 41(c)(ii)(A). Invoking that process is no failure to be content with anything.

The motion practice has grown for another reason: counsel keep filing in LFL's name without authority. An attorney acts for a corporation only on its authority (*Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 829 (1824)), and on LFL's own premise none can be given (Dkt. 92 at 4:5-7), so the next paper filed in its name will be no different. Read whole, none of Dkts. 80, 84, 92 and 93 cites a decision holding that counsel may act for a corporation whose charter is forfeited or void, and they misquote or misuse authority they do cite (see §§ II.D.4, II.D.8). Counsel multiply the proceedings directly, by each paper filed without authority, and indirectly, because each such paper obliges Mr. Jones to bring further motions to have it addressed. That conduct is the subject of the sanctions motion filed with this reply. An answer on the merits, beginning with who authorized counsel to act for LFL, would make further such filings unnecessary. Dkt. 93 instead counts Mr. Jones's papers and pounds the table.

**2. The request "if the Court was unsure about the rulings it made" (Dkt. 93 at 2)**

The request concerns no uncertainty about a ruling. Its condition is uncertainty about Delaware's law: "Should the Court be left uncertain whether Delaware's intent and position is that a corporation whose certificate of incorporation has been forfeited remains amenable to suit." Dkt. 87 at 1:5-6. The Order made no ruling on that question. It posed it, stating what appears and directing cause to be shown (see § II.D.5). The motion asks the Court to defer decision on the Order to Show Cause until the Supreme Court of Delaware has acted. *Id.* at 1:8-9. And Mr. Jones asks for certification only if, with the law and precedent now before it, the Court still finds the question open on the reading of *Rivera* that LFL presses while arguing in a manner that seems afraid of how Delaware would rule (see § II.D.4).

**3. The motion as brought "presumably in hopes" of a favorable answer (Dkt. 93 at 2)**

For the motive it attributes, LFL cites the motion as a whole, and no passage of it. Dkt. 93 at 2:7-8. The motion states its reasons (see § II.D.1), and why the question is open: "Whether a corporation whose certificate has been forfeited remains a proper party defendant, amenable to a judgment entered against it, has not been decided by the Supreme Court of Delaware in light of Rivera." Dkt. 87 at 3:17-19. None of those reasons is a prediction of who will win.

The motive LFL attributes concedes the point. Mr. Jones could hope for a different answer from Delaware only if Delaware might reject LFL's reading, and if it might, the question is not conclusively determined. An open question of Delaware statutory construction that the Supreme Court of Delaware has not settled is what certification is for (see § II.D.4).

Which party Delaware's answer favors is beside the point. Certification exists so that the answer will be Delaware's: the State whose law it is says how that law applies, which the Supreme Court has explained saves resources and builds cooperation between federal and state courts. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 77 (1997) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). Certification is not a choice of forum for the parties' dispute, which remains in this Court. It puts a question of Delaware law to the court Delaware designates to answer it.

**B. Dkt. 93 § II (Legal Standard)**

**1. The motion "selectively quotes" Rule 41 and omits "the full legal standard" (Dkt. 93 at 2, 3)**

LFL says: "Plaintiff only selectively quotes from Rule 41, not setting forth the full legal standard

required to certify a question to the Delaware Supreme Court." Dkt. 93 at 2:13-15. It says it again later: "Plaintiff does not even include the full legal standard in his briefing." *Id.* at 3:16. The motion quotes the Rule throughout. It quotes Rule 41(a)(ii) for the Court's power to certify (Dkt. 87 at 1:15-17), and then sets out the standard: "Rule 41(b) sets one requirement, states one disqualifying condition, and identifies reasons that illustrate when certification should be accepted. Each is taken in turn." *Id.* at 2:3-4. It quotes the disqualifying condition (*id.* at 2:17-18); the illustration it relies on, and the Rule's statement that its illustrations are not a closed list (*id.* at 3:9-11, 3:19-21); the requirement that the important and urgent reasons be stated with particularity, followed by those reasons (*id.* at 3:23-25); and the condition that this Court not have decided the questions (*id.* at 3:28-4:2).

LFL's own recitation of the standard (Dkt. 93 at 2:17-21), which numbers Rule 41(a)(ii) as Rule 41(ii), omitting subdivision (a), lists only criteria the motion meets: no final judgment has been entered, the motion states the important and urgent reasons (see § II.D.1), and this Court has not decided the questions (see § II.D.2).

**2. Footnote 1: the local rule "says nothing regarding certifying" (Dkt. 93 at 2 n.1)**

LFL's footnote says of Civil Local Rule 7-2: "It says nothing regarding certifying questions of law to the Court of another state, so presumably Plaintiff relies on it only insofar as it permits him to make any motion in this Court." *Id.* at 2 n.1. That is exactly the use the motion makes of it, and the one this Court's rules provide: a request for an order may be presented by "[a] duly noticed motion pursuant to Civil L.R. 7-2." Civil L.R. 7-1(a)(1). The power to certify on motion is Delaware's grant (Del. Supr. Ct. R. 41(a)(ii); see § II.C.2), and the motion says so: "This petition is that motion, brought in this Court under Civil Local Rule 7-2." Dkt. 87 at 1:18-19. The footnote concedes what it insinuates.

**C. Dkt. 93 § III (Certification Process and Framework)**

**1. The Court's act, and the burden called "slight" (Dkt. 93 at 2-3)**

LFL is right that only this Court can certify, by filing a certification that meets Delaware's requirements. Dkt. 93 at 2:24-26. That is why the motion lodged a proposed certification in the form the Rule prescribes, completed at the Form's insertions. Dkt. 87 at 4:6-7. "Nothing in it requires drafting by the Court." *Id.* at 4:11. What remains for the Court is to decide whether to certify and, if it does, to sign.

Nor did the motion say, as Dkt. 93 has it, that the burden on the parties and the Court would be

*slight* (Dkt. 93 at 3:1-2). The sentence that uses the word concerns the briefing order the certification recommends, that Mr. Jones brief first, as appellant. Dkt. 87 at 4:12-14. “The burden that order imposes is slight.” *Id.* at 4:15. Dkt. 93 drops the reference to that order, and makes the sentence one about certification generally. Nor would the briefing itself be a burden: the positions are already briefed here (see § II.C.4).

**2. Local counsel, pro hac vice admission and a fee for “both parties” (Dkt. 93 at 3)**

LFL says certification would require both parties to retain local counsel, move for admission pro hac vice and pay the fee, Dkt. 93 at 3:3-5, and to brief the question again in Delaware. *Id.* at 3:12-13. Each is an act LFL would take through counsel. Dkt. 92’s premise is that LFL’s corporate powers are inoperative (Dkt. 92 at 4:5-7) and that “LFL’s appearance through counsel does not restore those powers.” *Id.* at 2:13-14. On that premise LFL cannot take the burden on, in Delaware or here. Given this, is counsel claiming that LFL intends to revive? Either way, the burden is no reason against certifying.

Nor, on counsel’s own account, could LFL pay for any of it. Two days before Dkt. 93, counsel told the Court that “LFL is no longer operating,” *id.* at 2:17, and that Mr. Jones had not explained what meaningful recovery he could obtain. *Id.* at 2:17-19. Six weeks earlier they had said that nothing alleged suggested LFL or its trustee “will be unable to pay him should the lawsuit turn out in his favor,” citing only LFL’s certification (Dkt. 84 at 7:19-22), which names only one entity, The Hartford Insurance Group, Inc. (“Hartford”), with its employment practices liability claims division (Dkt. 59 at 2:6-7). A cost LFL cannot pay is not a burden on LFL. On counsel’s own showing, then, any recovery may have to be paid by Hartford, an entity with an interest of its own, for a party that on Dkt. 92’s premise can authorize nothing. LFL has never said who pays for its defense or who directs it. Asked who pays, counsel called the request one for “confidential, proprietary, and irrelevant information.” Dkt. 61 at 3:3. Mr. Jones objected: “LFL’s certification (Dkt. 59) identifies Hartford as an interested entity but does not describe the ‘connection and interest’ as required by L.R. 3-15(c)(2).” Dkt. 62 at 6:5-6. The Court denied his motion as moot on the certifications filed (Dkt. 64 at 1:13-17), without reaching the omission. Counsel’s answer since has been that LFL “had already submitted” a certification naming Hartford. Dkt. 80 at 3 n.1. The omission is still live, and the motion to disqualify takes it up. Whatever cost falls on

counsel is self-inflicted: they keep filing in LFL's name without authority (see § II.A.1).

LFL assumes Mr. Jones's counsel is not admitted in Delaware. Dkt. 93 at 3 n.2. Rule 71 requires Delaware counsel only to move an attorney's admission pro hac vice, Del. Supr. Ct. R. 71(a), (c); it places nothing on a party, and certification adds nothing. Mr. Jones's representation is his choice and will be lawful; he may appear pro se. Del. Supr. Ct. R. 12(a)(i), (c); *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936, 1990 WL 168276, at *1 (Del. 1990) (TABLE). LFL, a corporation, may not. *Transpolymer*, 1990 WL 168276, at *1.

The need for forum counsel is a burden LFL itself imposed on Mr. Jones. It sued him in this District (*Light Field Lab, Inc. v. Jones*, No. 4:23-cv-05344-YGR (N.D. Cal.) ("YGR")), pleading that he was a citizen and resident of Washington. YGR Dkt. 1 ¶ 2. When he noted that "my attorney at the time was in Washington State and thus unable to appear in this court," YGR Dkt. 22 at 3:27 (quoting his motion), LFL answered: "Counsel's location is irrelevant; Mr. Jones's threats to bring claims in any forum are sufficient." *Id.* at 4:5-6. A burden LFL imposed on its opponent, and called irrelevant to its own claim, is no reason against a procedure Delaware's rules provide.

Nor does certification depend on anything LFL does in Delaware. A United States District Court "may, on motion or sua sponte, certify" a question of law to the Supreme Court of Delaware, Del. Supr. Ct. R. 41(a)(ii), and the clerk sends the certification on, Del. Supr. Ct. R. 41(c)(ii), with "Any response to the Petition for Certification." Del. Supr. Ct. R. 41(c)(ii)(B). LFL's opposition goes with it, so the question reaches Delaware contested. And the Supreme Court of Delaware has accepted questions from a certifying court that had appointed amicus curiae to brief the opposing side. *Hanson v. Morton*, 67 A.3d 437, 440 (Del. 2013).

**3. Rule 71, Delaware's rules of professional conduct, "no mere formality" (Dkt. 93 at 3)**

Dkt. 93 adds that Delaware counsel would ensure Delaware's rules are followed, and that counsel of record would have to learn Delaware's rules of professional conduct, no mere formality because States weigh confidentiality against disclosure differently. Dkt. 93 at 3:6-11. Knowing and following a court's rules is a duty of the profession, owed in every court, not a burden of certification. Dkt. 93 shows counsel know it. They have not met it: each paper they file in LFL's name asserts an authority their own premise says LFL cannot give (see § II.A.1). And an example that names no rule of

either State, and no difference between them, shows no burden.

**4. The parties "would be required to fully brief the matter in Delaware" (Dkt. 93 at 3)**

Dkt. 93 says that the parties would have to brief the matter in full in Delaware, though this Court has "already directed briefing on the matter," and that the case would presumably be on hold, citing only Rule 71. *Id.* at 3:12-14. Rule 71 governs admission pro hac vice, Del. Supr. Ct. R. 71(a); neither it nor Rule 41 stays this action, and only the decision on the Order to Show Cause would wait (Dkt. 87 at 1:8-9). Briefing in Delaware follows acceptance (Del. Supr. Ct. R. 41(c)(v)), and LFL's own clause shows it would be slight: the positions are already briefed. If LFL's arguments are as strong as it claims, it need only copy them; if they need much more, that suggests LFL doubts them, and so doubts that the question is settled (see § II.A.3). Mr. Jones has no such doubt about his own.

**5. That "this case would presumably be on hold" (Dkt. 93 at 3)**

Dkt. 93 says: "Defense counsel is aware of no important or urgent reason that the Delaware Supreme Court must decide a question of law that this Court is equally capable of deciding." Dkt. 93 at 3:20-21. Dkt. 92 had urged "the importance of resolving the threshold capacity issue before requiring further litigation." Dkt. 92 at 2:20-21; *see id.* at 5:10-11.

Dkt. 93 also objects that, if the question were certified, "this case would presumably be on hold until the Delaware Supreme Court is able to hear the matter." Dkt. 93 at 3:13-14. That is the pause LFL itself asked for two days earlier: no further litigation until the threshold question is answered. On LFL's own account, then, the question is important and must be answered now, and the law that answers it is Delaware's: it asks for dismissal "because Delaware law governs LFL's capacity to be sued" (Dkt. 92 at 4:5). LFL's objection is not to the pause but to who would answer: it wants the question resolved first, under Delaware law, so long as the Supreme Court of Delaware is not the court that resolves it. Who answers is the question of comity (see § II.D.4), and LFL's own positions leave the Delaware question open (see § II.D.3).

**D. Dkt. 93 § IV (Plaintiff Fails to Justify Certification)**

**1. An "important and urgent reason for an immediate determination" (Dkt. 93 at 3)**

Dkt. 93 § IV repeats the charge answered in § II.B.1. It adds that the motion does not address whether there is an important and urgent reason for an immediate determination. Dkt. 93 at 3:16-18. The

motion has a subsection on exactly this, headed "D. The reasons for an immediate determination are urgent." Dkt. 87 at 3:22. It then states them: "The answers decide whether Jones's claims against Light Field Lab, Inc. proceed in this action or are dismissed, and the same questions arise in every action against a Delaware corporation whose certificate of incorporation has been forfeited or has become void, so the answers reach well beyond this case." *Id.* at 3:25-28. And among the Rule's own illustrations of a reason to accept certification is this one: "The question of law relates to the constitutionality, construction or application of a statute of this State which has not been, but should be, settled by the Court." Del. Supr. Ct. R. 41(b)(iii). LFL's own filings make those reasons urgent (see § II.C.5) and leave the question open (see § II.D.3), and capability is no answer to them (see § II.D.4).

**2. Does not address whether this Court "has already decided the question" (Dkt. 93 at 3)**

LFL then says: "Plaintiff does not address whether this Court (the certifying court) has already decided the question in the matter." Dkt. 93 at 3:18-19. The motion addresses it in terms, closing the same subsection: "And the Rule itself is available only while 'the certifying court or entity has not decided the question or questions in the matter' — so an immediate determination is the only determination this Rule permits." Dkt. 87 at 3:28-4:2. And with certification it asks the Court to defer decision on the Order to Show Cause (*id.* at 1:8-9; see § II.A.2), which keeps the condition satisfied: while this Court has not decided the questions, the Rule remains available to it.

**3. Counsel "aware of no important or urgent reason" (Dkt. 93 at 3)**

LFL's own filings supply the urgency (see § II.C.5), and its own positions leave the question open. The ground of record, which Dkt. 92 itself recites, is a § 136(b) forfeiture for failure to appoint a registered agent (Dkt. 63 at 4; Dkt. 82-1, Ex. B-1 at 1; Dkt. 92 at 3:4-5). Mr. Jones's position is that § 510 also applies to LFL, on its unpaid franchise tax. Dkt. 86 at 1:20.

LFL's papers have taken both sides of § 510's application. In August, LFL placed itself outside § 510. It told the Court that under § 510 a violation "may, under certain circumstances at the discretion of the secretary of state," make the charter void (Dkt. 80 at 8:1-2), though the statute voids it unless the Secretary of State has given further time for good cause (8 Del. C. § 510); and it distinguished the decision the Order relies on as one about a corporation declared void by the Governor under § 510 (Dkt. 80 at 7:16-17). Yet Dkt. 92 says that "Section 510 renders its corporate powers inoperative while its

charter remains void" (Dkt. 92 at 4:5-6), and asks for dismissal on that footing (*id.* at 4:5-7; see § II.C.2). The records show a forfeiture under § 136(b), whose consequence Dkt. 92 leaves open (*id.* at 3:17-18); a charter that nonetheless remains void can be void only under § 510, the provision Dkt. 92 names. Its statement that LFL does not concede Mr. Jones's interpretation of the noticed records (*id.* at 3:8-9) does not reach that: it offers no contrary reading, and the same paper states without condition that the charter remains void (*id.* at 2:18-19). Thus, Dkt. 92 concedes that § 510 applies.

Nor does any position LFL has taken give it a way to appear. In August, assuming the forfeiture, LFL told the Court that "Plaintiff's conclusion that LFL could no longer defend itself is not supported by Delaware law." Dkt. 80 at 7:10-11. For that it pointed to the provision for service on a forfeited corporation, as suggesting that the corporation is "still capable of being served, presumably suggesting it remains capable of responding to a lawsuit" (*id.* at 8:11-12). When Mr. Jones relied on that provision, LFL answered that "[t]his conflates service of process with corporate capacity," Dkt. 92 at 4:12-13, and it confined its August argument to the proposition that "forfeiture under Section 136(b), standing alone, does not necessarily prevent a corporation from defending litigation." *Id.* at 4:17-18. LFL's distinction, taken at its word, leaves that argument with nothing under it: a provision for serving a corporation shows that it is amenable to suit, not that it can appear and defend. If § 510 applies, LFL says its powers are inoperative (*id.* at 4:5-7). On neither branch does anything LFL has said supply the authority its counsel exercise each time they file in its name (see § II.A.1). Whether § 510 changes the answer is the third question presented (Dkt. 87 at 1:28-2:1): LFL will neither concede nor abandon its § 510 position, and opposes letting the Supreme Court of Delaware decide it.

If § 510 does not reach LFL, the question is what a § 136(b) forfeiture alone does to amenability. On whether it has § 510's consequences, LFL granted that Mr. Jones "may be correct that a Delaware court has not discussed" it (Dkt. 80 at 7:22), but said that "the reason is far simpler than an issue of first impression—each statute provides the consequences in plain language." *Id.* at 7:23-24. LFL thus allows that no Delaware court may have addressed the question, and offers its own reading of the statutes in place of one. Rule 41(b)(i) asks whether "[t]he question of law is of first instance in this State" (Del. Supr. Ct. R. 41(b)(i)), not whether a party believes it can answer it (see § II.D.4).

The plain language is Mr. Jones's ground, and Dkt. 92 engages none of it. Delaware provides

that "[a]ctions may be brought against any corporation" and that, if the corporation fails to appear, "the plaintiff shall have judgment by default" (10 Del. C. § 3111(a)). It sends process against a forfeited corporation to the Secretary of State (8 Del. C. § 136(c)), and makes that service "as effectual for all intents and purposes" (8 Del. C. § 321(b)). Each is a grant to the plaintiff and the court, not a power conferred on the corporation, and § 510 declares inoperative only "all powers conferred by law upon the corporation" (8 Del. C. § 510). The power § 122(2) grants is to "[s]ue and be sued in all courts and participate, as a party or otherwise," which names being a party only as a role (8 Del. C. § 122(2); Dkt. 86 at 1:18, 2:18-19). Dkt. 92 instead relies on *Rivera* (Dkt. 92 at 4:1-2), faults Mr. Jones's distinction for identifying "no statutory exception preserving the capacity to be sued," and says that §§ 136(c) and 321 "do not expressly determine" the question (*id.* at 4:3-4, 4:15). An exception is needed only if amenability is a power of the corporation, and that is the premise the statutes' text contradicts.

On Mr. Jones's reading the answer on either branch is the same: a forfeiture or a voidness withdraws the corporation's power to take part, not its amenability (see § II.D.4). On LFL's reading, both branches turn on Delaware statutes that the Supreme Court of Delaware has not settled for this question (see § II.D.4).

**4. This Court is "equally capable of deciding" (Dkt. 93 at 3)**

LFL's answer is capability (Dkt. 93 at 3:20-21). Capability is not the test. The Supreme Court has said that "even in diversity cases this Court has further held that while the decrees of 'lower state courts' should be 'attributed some weight . . . the decision [is] not controlling . . .' where the highest court of the State has not spoken on the point." *Comm'r v. Est. of Bosch*, 387 U.S. 456, 465 (1967) (quoting *King v. Ord. of United Commercial Travelers of Am.*, 333 U.S. 153, 158, 160-61 (1948)). The question here is one of Delaware law (Fed. R. Civ. P. 17(b)(2)), and of such a question the same Court has said that "the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Bosch*, 387 U.S. at 465. Delaware provides an instrument by which the question may be put to that court, and it remains available while this Court has not decided the question (see § II.D.2).

Courts able to decide such a question have certified it, and the courts above them have said they

should. The decision Dkt. 92 cites against certification did: in *Kremen v. Cohen* (Dkt. 92 at 6:19-20) the panel wrote, "Although we are quite capable of resolving the issue presented, we should not reach out to grab the question in the first instance." *Kremen v. Cohen*, 325 F.3d 1035, 1038 (9th Cir. 2003). It certified because "the spirit of comity and federalism cause us to seek certification," *id.* The Ninth Circuit has said that, "even when we find the plain language of state law dispositive," "we have an obligation to consider whether novel state-law questions should be certified." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 294 F.3d 1085, 1086 (9th Cir. 2002). It certified in *In re Krause* as well, on whether a corporation whose charter had been revoked could litigate, and said: "We cannot agree that the 'plain language' of section 78.175(2) controls, and we are unaware of any controlling precedent from the Nevada courts on this question." *In re Krause*, 546 F.3d 1070, 1075, 1077 (9th Cir. 2008). Where federal courts below had declined certification, the Supreme Court said that "the certification requests merited more respectful consideration than they received in the proceedings below." *Arizonans*, 520 U.S. at 78. And the Supreme Court of Delaware, of a decision of this District applying Delaware law, said: "We pause to note that our certification procedure might have aided the court in Aaron to seek an answer from this Court to the question whether Warner compelled the result there or is distinguishable." *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 n.49 (Del. 1998).

LFL itself told this District, in the prior action, that Delaware law governed a dispute over its stock options, asserting that "Delaware has the greater interest in enforcing its laws" (YGR Dkt. 46 at 5:15-16). That was said of choice of law, not amenability, but what becomes of a corporation whose charter Delaware has forfeited is a question about Delaware's own creature, and that this Court can answer it is no reason not to let the State with the greater interest do so.

Dkt. 93 cites no Delaware decision at all, and *Rivera*, the one Dkt. 92 relies on, answers none of the three Mr. Jones asks the Court to certify.

The first question concerns a forfeiture under § 136(b) (Dkt. 87 at 1:22-25). *Rivera* concerned a corporation the Governor had proclaimed void for unpaid franchise tax just before the action was filed, 2024 WL 3873050, at *1; it does not consider a forfeiture for failure to designate a registered agent. The question it put and answered was participation: "can a corporation that is void for nonpayment of franchise taxes participate in litigation?" *Id.* It did say: "A void corporation has no power to sue, be

sued, or wind up." *Id.* at *8. But that sentence was written in answering that question; it decided nothing about whether a defendant may be made a party and have judgment entered against it, which is what the first question asks. The Order describes *Rivera* as having held that a corporation whose charter has been declared void has no power to be sued, and on that footing it stated what appears and directed cause to be shown (Dkt. 85 at 2:17-19; see § II.D.5). Dkt. 92 presses that reading (Dkt. 92 at 3:22-23), which carries the sentence beyond what *Rivera* decided.

The second question asks whether the answer differs where the action was commenced before the forfeiture (Dkt. 87 at 1:26-27). In *Rivera* the proclamation came before the action; here the forfeiture came after.

The third asks whether a § 510 voidness changes either answer (*id.* at 1:28-2:1). *Rivera*'s conclusion is that a § 510-void corporation has no winding-up period in which to litigate its remaining claims. *Rivera*, 2024 WL 3873050, at *2. It does not reach a defendant sued before its charter became void.

Read on its own terms, then, *Rivera* leaves the questions to be answered as Mr. Jones answers them: it decided participation, for a corporation void under § 510 before the action was filed. The decisions it collects answer the rest. Of a corporation whose charter had been proclaimed void, the Supreme Court of Delaware said that "the only question for this Court to determine is whether it was competent, legal and proper to make the corporation defendant," *Harned v. Beacon Hill Real Est. Co.*, 84 A. 229, 234, 9 Del. Ch. 411, 421 (Del. 1912), and answered it: "We are clearly of the opinion that it was." *Id.* The Superior Court held the same. *Wax v. Riverview Cemetery Co.*, 24 A.2d 431, 436 (Del. Super. 1942). What *Rivera* faults in those decisions is the premise that voidness worked a dissolution, 2024 WL 3873050, at *7; it did not hold that those corporations could not be made defendants.
Mr. Jones offers *Rivera* for its construction of the statutes, not as displacing the Supreme Court of Delaware's own decisions on the grounds those decisions decided.

The questions are open only on the reading LFL presses, the reading the Order asked the parties to address, which treats *Rivera*'s sentence about being sued as a holding on amenability. On that reading a first-instance construction by the Court of Chancery, in an unreported letter ruling written in response to an order of the Supreme Court of Delaware (*id.* at *2), stands against the results the Supreme Court of

Delaware reached, and that court has not settled which governs: the circumstance Rule 41 names as a reason for certification (Del. Supr. Ct. R. 41(b)(iii); quoted in § II.D.1).

**5. That "in the Order to Show Cause, the Court did determine" (Dkt. 93 at 3)**

Dkt. 93 reads the Order as a determination: "Further, in the Order to Show Cause, the Court did determine that 'it appears LFL is "no longer in existence" as a corporation, and that it lacks the capacity to be sued.'" Dkt. 93 at 3:21-23. The sentence it quotes opens "Under such circumstances, it appears," Dkt. 85 at 2:24, and that opening governs both of its clauses: each states what appears, not what the Court finds. So does the Order's one statement about the authority Mr. Jones relied on: "Northeastern Pharmaceutical's finding to that effect appears to be undermined by recent Delaware authority." *Id.* at 2:14-15. A finding that appears to be undermined has not been held wrong. The Order then only granted judicial notice of the Delaware records, *id.* at 2 n.1, and ordered Mr. Jones to show cause why his claims against LFL should not be dismissed, with leave for LFL to respond (*id.* at 3:3-6). An order to show cause is not a dismissal, and the ground it names is the ground the parties were directed to brief.

Nor did the Order decide which Delaware provision governs LFL's status, or with what consequence. The papers filed in LFL's name have shifted on both. On the fact of forfeiture, which has not changed since February 12, 2026, they moved from unproved in August (Dkt. 80 at 7:8-9) to recognized by the Court on October 20 (Dkt. 92 at 3:4-5). On its consequence, Dkt. 92 treated the question as open. It told the Court that "[t]he Court's Order does not address whether this difference is material" (*id.* at 3:17-18; see § II.D.3) and that "Certification is unnecessary where the Court can resolve the question by applying the relevant Delaware statutes and existing authority" (*id.* at 6:17-18), and it asked the Court to find that "Plaintiff has failed to establish that LFL presently possesses the capacity to be sued" (*id.* at 6:27). Two days later, Dkt. 93 alleged the question determined (Dkt. 93 at 3:21-23), and in its next sentence said that "[t]he parties are already briefing the matter before this Court" (*id.* at 3:24). A question still being briefed has not been determined.

**6. "The parties are already briefing the matter before this Court" (Dkt. 93 at 3)**

That the question is still being briefed is not a reason against certifying. It is the condition on which certifying depends: the Rule is available only while this Court has not decided the question (Del. Supr. Ct. R. 41(a)(ii); see § II.D.2). For the same reason, the presumption against certifying "after

the federal district court has issued a decision" does not arise. *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008). No decision has issued.

**7. Plaintiff's reliance on *Arizonans*, cited to "Dkt. 85, p. 3" (Dkt. 93 at 4)**

Dkt. 85 is the Court's Order to Show Cause, and it does not cite *Arizonans*. The reliance is Mr. Jones's own, in his response to the Order and in the motion (Dkt. 86 at 5:22-24; Dkt. 87 at 2:10-14).

**8. *Arizonans* "was not a case interpreting a simple matter of state law" (Dkt. 93 at 4)**

Dkt. 93 distinguishes *Arizonans* as a case about whether Arizona law conflicted with the Constitution. Dkt. 93 at 4:3-5. Its parenthetical quotes the Court: "Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law." *Id.* at 4:6-7. The Court's sentence does not end where that quotation ends. It continues "for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans*, 520 U.S. at 79. The clause left out is the reason for the warning, and it is the reason that applies here: the construction of Delaware's statutes on which Dkt. 92 relies is a first-instance construction that no reported decision of the Supreme Court of Delaware has reviewed (see § II.D.4). The Court's very next sentence draws the consequence for certification: "'Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when . . . the state courts stand willing to address questions of state law on certification from a federal court.'" *Id.* (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 510 (1985) (O'Connor, J., concurring)). And when the Court faulted the lower courts for declining to certify (see § II.D.4), the reasons it gave began with "Given the novelty of the question and its potential importance to the conduct of Arizona's business," together with the views of the State's Attorney General and of the measure's sponsors. *Id.* at 78. Whether a forfeited Delaware corporation remains a proper defendant is a novel question of Delaware's statutes, and the conduct of Delaware's corporate business is precisely what it concerns. Nor is this a simple matter of state law on LFL's own account (see § II.D.5).

The constitutional question was what made the warning bear heightened attention. It was not the question certification would have answered. What the lower courts failed to obtain was a construction of the State's own measure: "The Arizona Supreme Court was not asked by the District Court or the Court

of Appeals to say what Article XXVIII means." *Id.* at 79. The Court described the procedure in terms of state-law questions (*id.* at 76), and it stated its condition: "Novel, unsettled questions of state law, however, not 'unique circumstances,' are necessary before federal courts may avail themselves of state certification procedures." *Id.* at 79. That is the proposition for which the motion cites the decision (Dkt. 87 at 2:10-14), and the difference Dkt. 93 points to does not touch it.

The law gives that difference no weight. The motion's first quotation from *Arizonans* is the Court's quotation of *Lehman Bros.*, a diversity case on the law of a Florida corporation, in which the Court said of certification: "Here resort to it would seem particularly appropriate in view of the novelty of the question and the great unsettlement of Florida law, Florida being a distant State." *Lehman Bros.*, 416 U.S. at 391. The Ninth Circuit order on which Dkt. 92 relies met the same distinction, drawn by its dissent, and answered it for California: "Although the Arizonans case involved a constitutional question, neither the California rule nor practice requires that the issue be a constitutional one." *Kremen*, 325 F.3d at 1037 n.2. Delaware's own Rule answers it for Delaware: it names the construction of a statute, beside its constitutionality, as a reason to accept certification (Del. Supr. Ct. R. 41(b)(iii); quoted in § II.D.1).

**E. Dkt. 93 § V (Conclusion)**

LFL's request that the Court decline to certify (Dkt. 93 at 4:9-10) rests on the reasons that precede it, and each is answered above.

**III. CONCLUSION**

Mr. Jones respectfully requests that the Court find that LFL remains amenable to suit and to judgment, though the forfeiture of its charter has withdrawn its power to take part in this action, discharge the Order to Show Cause, and decline to dismiss his claims against LFL. Should the Court be left uncertain whether Delaware intends a forfeited corporation to remain amenable to suit, he requests that the Court certify the questions presented to the Supreme Court of Delaware in the form lodged (Dkt. 87-1 at 1) and defer decision on the Order to Show Cause until that Court has acted. The Rule permits certification before final judgment (Del. Supr. Ct. R. 41(a)(ii)); the questions are Delaware's, and their answers reach beyond this defendant (see § II.D.1); and the judicially noticed Delaware records of LFL's status (Dkt. 85 at 2 n.1) supply the facts on which they turn. Mr. Jones further requests any and all other relief the Court deems just and proper.

Dated: October 29, 2026

HENRY | LACEY PC

By /s/ Stephen Henry_____________
STEPHEN F. HENRY
Attorney for Plaintiff