**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES,<br><br>Plaintiff,<br><br>vs.<br><br>LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,<br><br>Defendants, | Case No.: 3:25-cv-05118-MMC<br><br>**PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A REPLY TO DKT. 92**<br><br>**Complaint Filed: June 17, 2025**<br>**Am. Complaint Filed: Sept. 3, 2025**<br>**Second Am. Complaint Filed: July 6, 2026** |

Plaintiff Alan Jones moves under Civil L.R. 7-11 and the Court's Standing Orders (Standing Orders for Cases Assigned to the Honorable Maxine M. Chesney ¶ 7) for leave to file the reply attached as Exhibit A. It answers matters first raised in the response filed in the name of defendant Light Field Lab, Inc. ("LFL") to the Court's Order to Show Cause (Dkt. 92; Dkt. 85). The motion is supported by the Declaration of Stephen F. Henry ("Henry Decl.") and accompanied by a proposed order.

**I. RELIEF REQUESTED**

Mr. Jones asks that the Court:

1. grant him leave to file the reply attached as Exhibit A, limited to a response to (a) Dkt. 92's waiver section, from its heading (Dkt. 92 at 5:13-14) through its last sentence (*id.* at 6:13-14); (b) its statement that LFL does not concede Mr. Jones's interpretation of the records the Court

noticed (*id.* at 3:8-9), and the statements it leaves unqualified that LFL's charter remains void and that Section 510 renders its powers inoperative (*id.* at 2:18-19, 4:5-6); (c) its treatment of *Wax*, *Krapf* and *Northeastern Pharmaceutical* as older authorities (*id.* at 4:8, 5:1-2); (d) its statement that "LFL's appearance through counsel does not restore those powers" (*id.* at 2:13-14); (e) its treatment of recovery as a reason to dismiss (*id.* at 2:16-19, 5:9-10); and (f) its request for dismissal with prejudice (*id.* at 2:22-23, 7:1-2);

2. deem the reply filed as of the date of the order granting leave;
3. defer ruling on the Order to Show Cause until it has considered the reply; and
4. grant any and all other relief the Court deems just and proper.

Seeking leave to answer Dkt. 92 concedes no authority to file it.

No stipulation could be obtained (Henry Decl. ¶¶ 2-3; Civil L.R. 7-11(a)), because no one can agree to one for LFL: no person with power to act for it has been identified, and its charter has been forfeited since February 12, 2026, as the Court has noticed (Dkt. 85 at 2 n.1). The relief sought concerns only Dkt. 92 and the claims against LFL; none is sought against Mr. Karafin or Mr. Bevensee.

**II. REASONS SUPPORTING THE MOTION**

**A. The Order puts the showing on Mr. Jones and gives him no reply**

The Order put the showing on Mr. Jones (*id.* at 3:2-5) and allowed LFL "a responsive brief" (*id.* at 3:5); it provided for nothing after that. So the party that bears the showing has had no reply, and the brief opposing it has had the last word, the reverse of ordinary motion practice. *See* Civil L.R. 7-3(c). The Court has given that reason for leave itself. In *Moore v. Mars Petcare US, Inc.*, "Following Supplemental briefing Ordered by the Court," it granted the party with the burden a surreply: "Because Plaintiff has the burden on class certification, the Court will grant leave for Plaintiff to file a short sur-reply." *Moore v. Mars Petcare US, Inc.*, No. 3:16-cv-07001-MMC, Dkt. 404, slip op. at 1 (N.D. Cal. Feb. 21, 2024). Where this Court sets briefing as the Order did, the party with the showing answers the responsive brief, and the Court calls that paper the reply. In *In re Hard Drive Suspension Assemblies Antitrust Litigation*, having raised a jurisdictional question on its own, the Court allowed the other side a "responsive supplemental brief" and then ordered that "Seagate Plaintiffs shall file any reply, not to exceed four pages in length." *In re Hard Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-

02918-MMC, Dkt. 827, slip op. at 3 (N.D. Cal. Jan. 6, 2023). And it has given leave in the sequence an order to show cause sets: after the defendant had responded to the Court's order and the plaintiffs had replied to that response, the Court gave the defendant a further brief, finding that "good cause for the relief requested has been shown." *Sanchez v. Cap. Contractors Inc.*, No. C-14-2622 MMC, Dkt. 47 (N.D. Cal. Aug. 18, 2014). The Court's Standing Orders permit a procedural change on a showing of good cause. Standing Orders for Cases Assigned to the Honorable Maxine M. Chesney ¶ 7. This motion follows Dkt. 92, filed October 20, 2026, and the Order to Show Cause set no hearing that would have to move.

**B. The Court also gives leave to answer matter a party has had no opportunity to answer**

The Court has also given a party leave to answer matter it had no opportunity to answer, on facts equivalent to these. In *Glass Egg Digital Media v. Gameloft, Inc.*, the reply raised an argument the motion had not made (*Glass Egg Digit. Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC, Dkt. 298, slip op. at 1 (N.D. Cal. Apr. 1, 2022)), a reading of the plaintiff's own allegations (*id.*). "In order to afford Glass Egg an opportunity to respond to the above-referenced new argument," the Court gave leave to file a surreply (*id.* at 2), and the leave decided nothing (*id.* at 2 n.1). Here the paper that framed the question was the Court's own Order, under which Mr. Jones has no reply at all.

In *Amaranto Gonzalez v. Director of U.S. Citizenship & Immigration Services*, the Court denied a motion to strike the reply (*Amaranto Gonzalez v. Dir. of U.S. Citizenship & Immigration Servs.*, No. 24-cv-07948-MMC, Dkt. 35, slip op. at 1 (N.D. Cal. Apr. 3, 2025)) and still gave leave where it was questionable whether the matter was new, given its possible importance to the motion to dismiss (*id.* at 2), "limited to a response to the arguments set forth in the amended reply" (*id.*), and deferred its ruling (*id.*). Here the passages answered are identified, and Dkt. 92 asks that the claims against LFL be dismissed with prejudice (Dkt. 92 at 2:22-23).

The Court gives leave, too, where one side reads the other's papers as saying what they do not (*Stevenson v. City & Cnty. of San Francisco*, No. C-11-4950 MMC, Dkt. 150, slip op. at 2-3 (N.D. Cal. Dec. 10, 2015)), as Dkt. 92 reads Dkt. 86 (Dkt. 92 at 5:17, 6:13-14). The Court does the same where the last brief brings in factual matter the other side has had no chance to answer (*BMMsoft, Inc. v. White Oaks Tech. Inc.*, No. C-09-4562 MMC, Dkt. 27, slip op. at 2 (N.D. Cal. Nov. 24, 2009); *Oppenheimer v.*

*Boulevards New Media, Inc.*, No. C-15-3676 MMC, Dkt. 28, slip op. at 2 (N.D. Cal. Nov. 10, 2015)), as Dkt. 92's franchise-tax premise does (Dkt. 92 at 6:1-2). It has refused a surreply where the reply responded to the opposition rather than raising new legal argument, *Hard Drive Suspension*, No. 19-md-02918-MMC, Dkt. 827, slip op. at 1, and has granted leave only for the sections of a proposed surreply that answered legal arguments first made in the reply. *In re Silicon Image, Inc. Sec. Litig.*, No. C-05-456 MMC, Dkt. 80, slip op. at 1 (N.D. Cal. Jan. 11, 2007). This request is confined to the passages identified in Part I, each first raised in Dkt. 92 (Part II.C), and the reply is attached, sectioned by those passages.

**C. What Dkt. 92 raised that Mr. Jones has had no opportunity to answer**

Each of (a) through (f) was first raised in Dkt. 92, after Mr. Jones's only paper, and Dkt. 94, his reply on Dkt. 87, which answers Dkt. 93, does not reach it.

(a) *Waiver.* Dkt. 86 argued waiver (Dkt. 86 at 5:6-7); the Order does not mention it. Dkt. 92 answers with a theory that capacity is "the separate issue subsequently raised by the Court" (Dkt. 92 at 5:28), an immunity analogy (*id.* at 5:18-19), an account of LFL's own earlier papers (*id.* at 5:25-26), readings of Dkt. 86 (*id.* at 5:17, 6:11-14), and a factual premise, that the question arose "particularly in light of the additional evidence concerning its franchise-tax obligations" (*id.* at 6:1-2), for which Dkt. 92 submits no evidence; Mr. Jones objects to none.

(b) *The reservation.* Dkt. 92 states: "As addressed in its Opposition, Defendant does not concede that Plaintiff's interpretation of these documents are correct [sic]." *Id.* at 3:8-9. The Order took notice of those records on a request it recorded as unopposed (Dkt. 85 at 2 n.1), and the opposition the reservation is attributed to addressed the § 136(b) forfeiture and reserved nothing (Dkt. 80 at 7:1-2).

(c) *Age.* Dkt. 92 discounts *Wax*, *Krapf* and *Northeastern Pharmaceutical* as "Older Authorities" (Dkt. 92 at 4:8, 5:1-2), making age a ground of its own and extending it to *Krapf*, a decision of the Supreme Court of Delaware. The Order questioned *Northeastern Pharmaceutical* alone (Dkt. 85 at 2:14-15). It relied on *Rivera* as recent; it did not discount any authority for its age, and it did not mention *Krapf*.

(d) *Appearance through counsel.* Dkt. 92 states that "LFL's appearance through counsel does not restore those powers" (Dkt. 92 at 2:13-14), a question the Order does not address.

(e) *Recovery.* Dkt. 92 offers recovery as a reason to dismiss, a question it says Mr. Jones has not addressed (*id.* at 2:16-19, 5:9-10), which contradicts the reply filed in LFL's name six weeks earlier, answering the fraudulent-transfer count (Dkt. 84 at 7:19-21). The Order does not mention recovery.

(f) *Dismissal with prejudice.* Dkt. 92's request for dismissal with prejudice (Dkt. 92 at 2:22-23, 7:1-2) exercises in LFL's name the powers it says are inoperative, and the Order proposed no dismissal with prejudice (Dkt. 85 at 3:4).

**III. CONCLUSION**

For these reasons, Mr. Jones respectfully asks that the Court grant him leave to file the reply attached as Exhibit A, limited as stated in Part I; deem it filed as of the date of its order; defer ruling on the Order to Show Cause until it has considered the reply; and grant any and all other relief the Court deems just and proper.

Dated: October 30, 2026

HENRY | LACEY PC

By /s/ Stephen Henry_____________
STEPHEN F. HENRY
Attorney for Plaintiff

# EXHIBIT A

**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN JONES,<br><br>Plaintiff,<br><br>vs.<br><br>LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,<br><br>Defendants, | Case No.: 3:25-cv-05118-MMC<br><br>**PLAINTIFF'S [PROPOSED] REPLY TO LIGHT FIELD LAB, INC.'S RESPONSE TO PLAINTIFF'S RESPONSE TO THE ORDER TO SHOW CAUSE (DKT. 92)**<br><br>**Complaint Filed: June 17, 2025**<br>**Am. Complaint Filed: Sept. 3, 2025**<br>**Second Am. Complaint Filed: July 6, 2026** |

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... 1
**II. ARGUMENT** .......... 1
**A. If the papers filed in LFL's name are LFL's, they waived the objection** .......... 1
**1. "Conflates representation with capacity," and the charge of inconsistency** .......... 2
**2. "Did not address the implications" of Section 510, and no "intentional relinquishment"** 3
**3. "The separate issue subsequently raised by the Court"** .......... 5
**4. "LFL did not previously seek dismissal on that ground"** .......... 5
**B. The non-concession reaches none of LFL's earlier positions** .......... 6
**C. The "additional evidence" was of record from April 1, 2026** .......... 7
**D. The "Older Authorities"** .......... 8
**E. "LFL's appearance through counsel does not restore those powers"** .......... 8
**F. Recovery** .......... 9
**III. CONCLUSION** .......... 10

# TABLE OF AUTHORITIES

## Cases

*Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713 (Del. 1968) .................... 8

*Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835 (7th Cir. 2018) .................... 3, 4, 5, 6

*Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754 (9th Cir. 1999) .................... 2, 3

*Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat.) 174 (1823) .................... 9

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) .................... 5

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370 (2019) .................... 10

*Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738 (1824) .................... 9

*Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998) .................... 3

*Rivera v. Angkor Cap. Ltd.*, C.A. No. 2022-0671-MTZ, 2024 WL 3873050 (Del. Ch. Aug. 20, 2024) .................... 8, 9

*Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996) .................... 2, 6

*West v. Am. Tel. & Tel. Co.*, 311 U.S. 223 (1940) .................... 8

*Wood v. Milyard*, 566 U.S. 463 (2012) .................... 4, 5

## Statutes

10 Del. C. § 3111 .................... 10

## Rules

Fed. R. Evid. 201 .................... 7

## I. INTRODUCTION

This reply answers only what Dkt. 92 raised that Mr. Jones has had no opportunity to answer. He maintains that nothing filed in the name of Light Field Lab, Inc. ("LFL") since its charter was forfeited carries LFL's authority. He submits this reply only because Dkt. 92 has not been struck, and nothing in it concedes an authority to file Dkt. 92.

If the Court were nonetheless to treat the papers filed in LFL's name as LFL's, it would take them whole, and they waived the objection Dkt. 92 presses: in August and September they sought dismissal on the strength of LFL's own forfeiture and reserved nothing (§ II.A). The non-concession Dkt. 92 offers came after that waiver was complete (§ II.B), and the franchise-tax evidence it says made the question new was of record from April 1, 2026 (§ II.C). Either way, the objection is not before the Court. If the Court reaches it, Delaware law answers it for Mr. Jones (Dkt. 86; Dkt. 94 § II.D.4), and nothing Dkt. 92 says of the age of his authorities (§ II.D), of LFL's appearance through counsel (§ II.E) or of recovery (§ II.F) changes that. Only if it remains open on the reading LFL presses should it be certified (Dkt. 87).

## II. ARGUMENT

### A. If the papers filed in LFL's name are LFL's, they waived the objection

Mr. Jones maintains that the papers filed in LFL's name since February 12, 2026 are void and carry none of LFL's authority, and he does not concede that the Court may treat them as LFL's. If the Court were nonetheless to do so, it would take them whole, and before any question of Delaware law there is waiver: those papers waived the objection Dkt. 92 presses before the Order issued, so there would be no such question to decide.

On August 14, 2026, the motion filed in LFL's name asked the Court to dismiss four counts of the Second Amended Complaint (Dkt. 77 at 7:5-6) and incorporated the individual defendants' arguments for dismissal (*id.* at 7:17-20). Their reply, filed four days earlier in support of the motion so incorporated, had argued: "Furthermore, Jones' own recent filings confirm this enterprise was finite—Jones' motion challenging LFL's counsel's authority represented that Light Field Lab's 2026 charter forfeiture resulted in its 'civil death.' Dkt. 75 at 7. This is exactly the type of finite episode that fails RICO's continuity requirement." Dkt. 76 at 19:26-20:1. That is an argument for dismissing the Fifth

Cause of Action, the civil RICO count, one of the four the motion filed in LFL's name sought to dismiss. So that motion relied on LFL's own forfeiture to seek dismissal of a count, and raised no objection that LFL could not be sued. Four days later, the opposition filed in LFL's name took up capacity itself: it invoked Rule 17(b)(2), the capacity rule (Dkt. 80 at 7:4-7), and told the Court that the conclusion that LFL could no longer defend itself is not supported by Delaware law (*id.* at 7:10-11; see Dkt. 94 § II.D.3). On September 4, the reply filed in LFL's name asked that the four counts be dismissed "with prejudice, and without leave to amend." Dkt. 84 at 8:15-16. None of those papers objected that LFL could not be sued, or reserved the objection, and Dkt. 92 says why: "LFL did not previously seek dismissal on that ground. Rather, it opposed Plaintiff's attempt to prevent LFL from defending itself while the litigation continued." Dkt. 92 at 6:3-5. It chose to defend.

If those papers are LFL's, that is waiver. An objection to capacity must be raised in the responsive pleading or in the motion made before pleading, and a defendant that elects to defend on the merits is held to that choice (*Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996); *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir. 1999)).

**1. "Conflates representation with capacity," and the charge of inconsistency**

Dkt. 92 reads the waiver argument as resting on the papers filed in LFL's name opposing Plaintiff's motion on counsel's authority and seeking dismissal (Dkt. 92 at 5:15-16), and says that it "conflates representation with capacity" (*id.* at 5:17) and that "an appearance does not itself establish capacity" (*id.* at 5:21). Dkt. 86 relies on something narrower: that "LFL invoked the rule on a corporation's 'capacity to sue or to be sued,' Dkt. 80 at 7:5, and argued its opposite" (Dkt. 86 at 5:6-7; *see Id.* at 4:27-5:1), and that "[w]ant of capacity is a defense the Rules commit to the party" (*id.* at 5:2-3). Dkt. 86 nowhere says that an appearance restores a corporation's powers or makes it suable, and its waiver argument does not rest on participation alone. Those are the only arguments Dkt. 92 answers, and its qualifiers say so: an appearance does not by itself establish capacity, and "LFL's prior participation does not, by itself, conclusively establish waiver." Dkt. 92 at 6:9-10. Neither answers what Dkt. 86 relies on: that LFL invoked the capacity rule, argued its opposite, and so chose to defend.

Dkt. 92's immunity analogy is offered for the same reading. It says that "Parties routinely appear through counsel to contest threshold barriers to suit; for example, an official may assert immunity from

suit without conceding the action may proceed" (*id.* at 5:17-19), concedes that "[i]mmunity is distinct from corporate capacity" (*id.* at 5:20), and uses the comparison only to show that an appearance does not establish capacity. On its own terms, too, the analogy fails. An official who asserts immunity asks that the claims not be heard. The papers filed in LFL's name asked that they be decided, and dismissed with prejudice. The Ninth Circuit draws that line for a res judicata defense: "If defendants had styled this action as a request for a declaration that any claim of right the Kingsmen might assert to the disputed licensing income is barred by the doctrine of res judicata and cannot be heard on the merits by any court, then they would not face any problem of waiver. But that is not what defendants did." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1322 (9th Cir. 1998). Having asked for a declaration on the merits instead, the defendants there had waived the defense (*id.*). Even a State's immunity from suit is lost when it litigates the merits first and asserts the immunity later (*Hill v. Blind Indus.*, 179 F.3d at 763).

Dkt. 92 says Mr. Jones cannot insist that LFL lacks authority to defend itself while arguing that "LFL's efforts to defend the litigation require the claims against it to proceed" (Dkt. 92 at 6:12-13). He does not argue that. The claims proceed because LFL remains amenable to suit (Dkt. 86 §§ II–III), which owes nothing to any paper filed in LFL's name; waiver removes an objection and supplies no ground for the claims.

Dkt. 92 also calls his position an attempt to "transform LFL's prior defense of this action into a determination that it necessarily retains the capacity to be sued." *Id.* at 6:13-14. Dkt. 86 § V makes no such attempt. It argues that a court may raise a waivable defense only while it is unwaived, and that the defense would fail on the merits even had it been raised. Dkt. 86 at 5:2-4, 5:11. Whether LFL may participate is a question of Delaware law, and whether the Court may now raise a defense argued against in LFL's name is a question of waiver; Dkt. 86 answers each no, and neither answer makes the papers filed in LFL's name the source of its amenability to suit.

**2. "Did not address the implications" of Section 510, and no "intentional relinquishment"**

Waiver is judged objectively: "courts look to litigants' (and their attorneys') words and actions as objective manifestations, rather than asking what parties were thinking when they said or did something." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835, 840 (7th Cir. 2018). The knowledge it requires is narrow: "The requirement that a right be 'known' in this case means only that

defendants had to know that timeliness matters." *Id.* In *Hamer* the appellees had called the appeal timely and later said they meant only jurisdictional timeliness; the objection was waived (*id.*). And the Supreme Court found a deliberate waiver where a State that had shown it understood its limitations defense "deliberately steered the District Court away from the question and toward the merits of Wood's petition." *Wood v. Milyard*, 566 U.S. 463, 474 (2012).

The papers filed in LFL's name show that the point, the authority and the consequence were all known. The motion relied on the forfeiture's consequence as a ground for the relief it sought (§ II.A), and submitted for judicial notice the Second Amended Complaint (Dkt. 77 at 7:6-7), which alleged that "[LFL] is thus a void and forfeited Delaware corporation." SAC ¶ 88. The August 18 opposition did more than invoke Rule 17(b)(2), the rule that decides the question: it distinguished *Rivera* as "a case where the plaintiff in the case, a corporation who had not paid taxes, had been declared by the governor to be void under 8 Del. C. § 510" (Dkt. 80 at 7:15-17); quoted § 510's consequence, that "all powers conferred by law upon the corporation are declared inoperative" (*id.* at 8:3-4); and took the opposite position for LFL: that it was "still capable of being served, presumably suggesting it remains capable of responding to a lawsuit." *Id.* at 8:11-12.

Dkt. 92's own account of that opposition confirms it: "LFL also distinguished forfeiture under Section 136 from void status under Section 510." Dkt. 92 at 5:25. "LFL's papers did not address the implications if the Court determined that Section 510 did apply." *Id.* at 5:25-26.

So § 510 was before the opposition: it quoted § 510's consequence, that all powers become inoperative, and placed LFL outside § 510 (Dkt. 80 at 8:3-4), the defense Dkt. 92 now presents. A ground considered and rejected is a known one, and rejecting it while arguing that LFL could defend itself is a choice not to raise it. Dkt. 92 explains: "Those arguments were directed toward preserving LFL's ability to defend against Plaintiff's claims." Dkt. 92 at 5:27-28. That is the explanation the appellees in *Hamer* gave for their own statements, and it fails here as it failed there: "Yet both sentences are unconditional statements that the appeal is timely. Defendants could have included a caveat that they were discussing only jurisdictional timeliness, but they didn't." *Hamer*, 897 F.3d at 839. The papers filed in LFL's name included caveats wherever counsel chose. The motion disclaimed any admission of the allegations it recited (Dkt. 77 at 8 n.1), and the reply reserved a position in terms: "Defendant

maintains that the argument applies to all causes of action claiming that the patent assignment process was fraudulent." Dkt. 84 at 3 n.1. Counsel who could write those reservations could have written one for this objection.

Dkt. 92 then says: "Nor did LFL's prior opposition constitute an intentional relinquishment of a known capacity objection." Dkt. 92 at 6:2-3. Waiver in litigation does not depend on the litigant's actual preference (*see Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002)). Dkt. 92 adds that Mr. Jones has not established an intentional relinquishment (Dkt. 92 at 6:8-9); its own account states the knowledge and the choice that waiver requires.

**3. "The separate issue subsequently raised by the Court"**

Dkt. 92 says of the earlier papers: "They did not address the separate issue subsequently raised by the Court" (*id.* at 5:28), meaning whether LFL lacks capacity to be sued. That issue was not separate. Rule 17(b)(2) governs it, and the opposition filed in LFL's name on August 18 invoked Rule 17(b)(2) and argued that LFL could still defend itself (Dkt. 80 at 7:4-7, 7:10-11). The franchise-tax evidence Dkt. 92 relies on in the same sentence had been on the record since April 1, 2026 (§ II.C).

That the Court itself asked changes nothing. In *Wood*, the court of appeals itself ordered briefing on timeliness (566 U.S. at 467-68), and still could not rest on a defense the State had deliberately chosen not to press (*id.* at 466); its power to revive a defense reaches forfeited defenses only (*id.* at 471 n.5). In *Hamer*, too, no litigant raised the objection until the court of appeals itself "on review of the docketing statements, ordered the parties to submit jurisdictional memoranda on the timeliness issue." *Hamer*, 897 F.3d at 837. The appellees argued that answering that order preserved the point (*id.* at 838); the court held it waived all the same: "Because defendants actively asserted that the appeal was timely, they cannot now argue otherwise." *Id.* at 840.

**4. "LFL did not previously seek dismissal on that ground"**

Dkt. 92 admits that LFL "did not previously seek dismissal on that ground" (Dkt. 92 at 6:3-4). That admission is a second, independent ground. On August 4, 2026, Mr. Jones moved for an order requiring counsel to demonstrate their authority to appear, because LFL's charter was forfeited (Dkt. 75). Ten days later, on August 14, the motion to dismiss asked the Court to take judicial notice of the Second Amended Complaint (Dkt. 77 at 7:6-7), which alleges that LFL is void and forfeited (see

§ II.A.2). The motion to dismiss did not object that LFL could not be sued. A capacity objection that a party leaves out of a motion it chooses to file is forfeited (*Swaim*, 73 F.3d at 718), and that forfeiture stands apart from the waiver set out above.

**B. The non-concession reaches none of LFL's earlier positions**

Dkt. 92's statement that, as addressed in its opposition, LFL does not concede Mr. Jones's interpretation of the noticed records (Dkt. 92 at 3:8-9) reaches none of the positions taken earlier in LFL's name. It was made on October 20, 2026 (*id.* at 7:4), after the August and September papers. The documents it speaks of are the records the Court noticed (*id.* at 3:6-8). The opposition it invokes, dated August 18, 2026 (Dkt. 80 at 8:17), reserved nothing; it nowhere says that LFL does not concede anything. What it addressed was the proof of the § 136(b) forfeiture and, assuming it, LFL's status (*id.* at 7:1-2). It placed LFL outside § 510: it quoted § 510's consequence, that where the charter is void "all powers conferred by law upon the corporation are declared inoperative," confined § 510 to a corporation that "had been declared by the governor to be void under 8 Del. C. § 510," assigned LFL to § 136(b), and concluded that LFL could defend itself (*id.* at 7:10-11, 7:16-17, 8:3-4), which on its own account of § 510 it could do only if § 510 did not reach LFL. That is why, as Dkt. 92 says, "LFL's papers did not address the implications if the Court determined that Section 510 did apply" (Dkt. 92 at 5:25-26): the opposition had placed LFL outside § 510. Whatever the reservation reaches, Dkt. 92 states without condition that LFL's charter remains void and seeks dismissal on § 510 (*id.* at 2:18-19, 4:5-7). Nor does it reach the sentence opening its own paragraph, which recites without qualification that, as the Court recognized, LFL's charter was forfeited (*id.* at 3:4-5), the forfeiture the opposition had put to proof.

The reservation states no position: it says LFL does not concede the interpretation, but not what the records show instead, or why. A refusal to concede disputes nothing, and the noticed records stand uncontradicted. Nor does it state any bounds. It names nothing it reserves, so any later account of what it reserved would be a justification after the fact; counsel could have stated its limits when they wrote the sentence (*Hamer*, 897 F.3d at 839). And whatever it reserved, the waiver was already complete: by September 4, 2026, when the reply filed in LFL's name asked that four counts be dismissed with prejudice (Dkt. 84 at 8:15-16), there was nothing left for an October reservation to prevent.

**C. The "additional evidence" was of record from April 1, 2026**

Dkt. 92 says the question now before the Court arose "particularly in light of the additional evidence concerning its franchise-tax obligations." Dkt. 92 at 6:1-2. The delinquency was of record from April 1, 2026, when Mr. Jones filed the Delaware entity record showing "Last Annual Report Filed: 2024 Tax Due: $ 194330.40" (Dkt. 63 at 4), which the opposition filed in LFL's name addressed (Dkt. 80 at 5:19-20). The SAC alleged that "As of that record, [LFL] also owed $194,330.40 in unpaid Delaware franchise tax" (SAC ¶ 87), and the motion to dismiss attached it (Dkt. 77 at 7:6-7).

What was new was the later entity record, retrieved August 2, 2026, showing a larger sum due, and the Secretary of State's sealed certificates. Dkt. 85 at 2:1-2. Those were filed ten days before the reply filed in LFL's name asked for dismissal of four claims with prejudice (Dkt. 84 at 8:15-16), and went unopposed (Dkt. 85 at 2 n.1). Neither changed what was known. The April 1 record came from the Division of Corporations' own website, as the later one did, and official records are among the "sources whose accuracy cannot reasonably be questioned" (Fed. R. Evid. 201(b)(2)); the delinquency was beyond reasonable dispute from that day, and the sealed certificates changed only its form; the Court's notice of them recognized the fact and did not create it. So the records cannot explain why the objection comes only now. The delinquency was before counsel when they filed the motion to dismiss, the opposition and the reply; an objection known and not raised is waived (§ II.A.2).

Dkt. 92 does not dispute what those records show; it relies on them for its excuse. It describes LFL as "an entity whose charter remains void" (Dkt. 92 at 2:18-19), and asks for dismissal because "Section 510 renders its corporate powers inoperative while its charter remains void" (*id.* at 4:5-6). Delaware's records show a forfeiture under § 136(b), for failure to designate a registered agent (Dkt. 82-1, Ex. B-1 at 1). Whether such a forfeiture makes a charter void, Dkt. 92 leaves open: it says Delaware law "distinguishes between forfeiture under Section 136(b) and void status under Section 510" (Dkt. 92 at 3:12-13), and that "[t]he Court's Order does not address whether this difference is material" (*id.* at 3:17-18). With the forfeiture's consequence held open, the only footing for saying without condition that LFL's charter is void is § 510, which Dkt. 92 names; under it, Dkt. 92 says, a charter "becomes void under specified circumstances involving unpaid franchise taxes" (*id.* at 3:15). Faced with Mr. Jones's claim that § 510 applies, Dkt. 92 answers only by attacking his distinction between amenability and

participation (*id.* at 3:20, 3:22-23). Dkt. 92 thus concedes that § 510 applies to LFL, and asks for dismissal on it; a reservation that offers no reading of its own does not qualify that unconditional statement (§ II.B).

**D. The "Older Authorities"**

Dkt. 92 places *Wax*, *Krapf* and *Northeastern Pharmaceutical* among the "Older Authorities" (*id.* at 4:8), and says that "Rivera considered the older Delaware authorities treating void corporations similarly to dissolved corporations and questioned the foundation for that approach" (*id.* at 5:1-2). Age is not a ground *Rivera* gave. It found a premise unsupported, that a proclamation of voidness worked a dissolution, and held that premise wrong when those cases were decided: "But then, as now, the statutes distinguished voidness and dissolution." *Rivera v. Angkor Cap. Ltd.*, C.A. No. 2022-0671-MTZ, 2024 WL 3873050, at *7 (Del. Ch. Aug. 20, 2024). The premise's reach is answered in Dkt. 94 § II.D.4 and Dkt. 86 at 3.

A rule's age is part of its authority. The Supreme Court of Delaware said so in the decision Dkt. 92 calls older: "in Delaware it has long been the law that a Delaware corporation is not dead for all purposes following forfeiture of its charter." *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 715 (Del. 1968). A federal court applies that court's decisions whatever their date: "When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). Dkt. 92 relies on no decision of the Supreme Court of Delaware. It offers a letter ruling of the Court of Chancery, which does not purport to overrule *Krapf*, and whose own authorities include a decision of 1910, *Indian Protective Ass'n* ("Indian Protective was affirmed by the United States Supreme Court." *Rivera*, 2024 WL 3873050, at *6), and the Supreme Court of Delaware's 1990 order in *Transpolymer*. If age counted against a decision, it would count against *Rivera*'s foundations too.

**E. "LFL's appearance through counsel does not restore those powers"**

Dkt. 92 is filed in LFL's name by counsel signing as "Attorneys for Defendant LIGHT FIELD LAB, INC." (Dkt. 92 at 7:8), and it asks that "the Court should dismiss Plaintiff's claims against LFL with prejudice" (*id.* at 2:22-23), relief the Order did not propose (Dkt. 85 at 3:4). Asking for relief is the

party's act: a paper filed for a corporation is filed on the corporation's authority, and an appearance by counsel is "received as evidence of his authority" (*Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 830 (1824)). The same counsel had sworn as much two months earlier (Dkt. 77-1 ¶ 1).

Dkt. 92's premise is that LFL has lost the powers through which a corporation acts. It argues that "because Delaware law governs LFL's capacity to be sued and Section 510 renders its corporate powers inoperative while its charter remains void, the Court should dismiss Jones's claims against LFL" (Dkt. 92 at 4:5-7), and that "LFL's appearance through counsel does not restore those powers" (*id.* at 2:13-14). Authority to act in a principal's name exists only while the principal can confer it (*see Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat.) 174, 202 (1823)). And the decision Dkt. 92 relies on says that no one could cause the void corporation before it to bring or defend litigation (*Rivera*, 2024 WL 3873050, at *8).

So Dkt. 92 argues opposites. If its premise is right, no one could authorize the paper that states it, and nothing filed in LFL's name carries authority, the request for dismissal with prejudice included. If the paper carries LFL's authority, the premise is wrong. Dkt. 92 charges Mr. Jones with inconsistency; there is none (§ II.A.1). The inconsistency is Dkt. 92's own: it calls LFL's powers inoperative while exercising them in LFL's name.

Dkt. 92 also relies on the distinction it rejects. It frames the question this way: "The question now is not whether LFL can appear through counsel, but whether Delaware law permits this action to proceed against it." Dkt. 92 at 2:7-8. A page later it calls the same distinction, between participation and amenability to suit, unsupported: "Yet Plaintiff also contends that the statute eliminates only LFL's ability to participate in litigation, preserving its amenability to suit and judgment. … That distinction is unsupported by *Rivera v. Angkor Capital Ltd.*" *Id.* at 3:21-23. That rejection binds it. On Dkt. 92's own reading, *Rivera* draws no line between taking part in litigation and being amenable to it. Then Dkt. 92 cannot take from *Rivera* the consequence it wants, that LFL cannot be sued, and set aside the one *Rivera* states, that "[n]obody was authorized to cause Kalibrr to bring or defend litigation." *Rivera*, 2024 WL 3873050, at *8. Yet Dkt. 92 does both, exercising in LFL's name the power *Rivera* says no one had.

**F. Recovery**

Dkt. 92 offers recovery as a further reason to dismiss, and as bearing on Rule 17(b)(2): "Plaintiff

has not explained what meaningful recovery he expects to obtain by continuing to pursue claims against an entity whose charter remains void" (Dkt. 92 at 2:17-19, 5:9-12). It cites no authority that the prospect of collecting a judgment bears on whether a claim may proceed, and concedes that the point "does not independently establish a lack of Article III jurisdiction" (*id.* at 2:19-20).

The Supreme Court has held that collectability does not bear even on whether a case remains live. Told that the bankruptcy estate had distributed all its assets, leaving nothing to satisfy the judgment, it held the suit live: "courts often adjudicate disputes whose 'practical impact' is unsure at best, as when 'a defendant is insolvent.'" *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 378, 139 S. Ct. 1652, 1661 (2019). "Ultimate recovery on that demand may be uncertain or even unlikely for any number of reasons, in this case as in others. But that is of no moment. If there is any chance of money changing hands, Mission's suit remains live." *Id.* at 377, 139 S. Ct. at 1660. If doubt about collection does not end a case for want of a live controversy, it is no ground to dismiss one that Dkt. 92 concedes is within the Court's jurisdiction. And Delaware conditions judgment against a corporation on service, not on collection (10 Del. C. § 3111(a); Dkt. 86 at 1).

Six weeks before Dkt. 92, answering the fraudulent-transfer count, the reply filed in LFL's name told the Court that "Plaintiff has alleged no facts that suggest that LFL or its trustee will be unable to pay him should the lawsuit turn out in his favor, such that the assignment fraudulently transferred the assets that would otherwise be for that purpose." Dkt. 84 at 7:19-21. It cited LFL's own certification of interested parties (*id.* at 7:21-22), which Dkt. 92 does not mention.

## III. CONCLUSION

For these reasons and those in Dkt. 86, Mr. Jones respectfully requests that the Court find that the papers filed in LFL's name, if treated as LFL's, waived the objection pressed in its name; discharge the Order to Show Cause; and decline to dismiss his claims against LFL, as Dkt. 86 asks (Dkt. 86 at 5:27-28). In the alternative, he requests that the Court decide the questions presented for him on *Rivera*'s own terms, or certify them to the Supreme Court of Delaware as his motion for certification (Dkt. 87) asks. He further requests any and all other relief the Court deems just and proper.

Dated: October 30, 2026

HENRY | LACEY PC

By /s/ Stephen Henry_____________
STEPHEN F. HENRY
Attorney for Plaintiff