**STEPHEN F. HENRY, ESQ.**
**HENRY | LACEY PC**
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@HenryLacey.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ALAN JONES,

Plaintiff,

vs.

LIGHT FIELD LAB, INC., JON KARAFIN, BRENDAN BEVENSEE, and Does 1 to 10,

Defendants,

Case No.: 3:25-cv-05118-MMC

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO STRIKE FILINGS MADE IN THE NAME OF LIGHT FIELD LAB, INC. AND FOR ENTRY OF DEFAULT**

**Date: December 18, 2026**
**Time: 9:00 a.m.**
**Courtroom: 7**

**Complaint Filed: June 17, 2025**
**Am. Complaint Filed: Sept. 3, 2025**
**Second Am. Complaint Filed: July 6, 2026**

## TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION .......... 1

STATEMENT OF ISSUES TO BE DECIDED .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 2

II. BACKGROUND .......... 2

A. LFL's appearance before the forfeiture .......... 2

B. The forfeiture .......... 2

C. The papers filed in LFL's name since the forfeiture .......... 3

D. Who authorized counsel has been asked and never answered .......... 3

E. LFL has not answered the Second Amended Complaint .......... 3

III. ARGUMENT .......... 4

A. Every paper filed in LFL's name since February 12, 2026 was filed without authority and is void .......... 4

B. The Court's inherent power over its docket reaches these papers, and the opportunity to show authority has been given .......... 5

C. With those papers stricken, LFL has failed to plead or otherwise defend, and its default must be entered .......... 9

D. Alternatively, LFL should be ordered to appear through counsel authorized to act for it by a fixed date, failing which its default should be entered .......... 12

E. A forfeiture of LFL's own making is no reason to withhold or set aside a default .......... 14

F. If the Court will not strike the papers now, it should require counsel to demonstrate their authority by a fixed date .......... 16

G. If the Court were to treat the papers filed in LFL's name as LFL's, they bind it, and the capacity objection is waived .......... 16

IV. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## Cases

*Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.*, 155 Cal. App. 2d 46 (1957) .......... 7, 8

*AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. CIV. S-00-113 LKK/JFM (E.D. Cal. Nov. 24, 2008) .......... 20

*Biggs v. Cal. Ins. Guarantee Ass'n*, 126 Cal. App. 3d 641 (1981) .......... 9, 10

*Booth v. Fletcher*, 101 F.2d 676 (D.C. Cir. 1938) .......... 6

*Boyle v. Lakeview Creamery Co.*, 9 Cal. 2d 16 (1937) .......... 9, 11

*Cadle Co. v. World Wide Hosp. Furniture, Inc.*, 144 Cal. App. 4th 504 (2006) .......... 5, 7, 8, 10

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) .......... 12

*Dep't of Water & Power of the City of L.A. v. Anderson*, 95 F.2d 577 (9th Cir. 1938) .......... 6, 7

*Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608 (D.C. Cir. 2024) .......... 5, 7

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038 (N.D. Cal. 2010) .......... 10

*Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305 (2d Cir. 1991) .......... 12, 13

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) .......... 12

*Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993 (9th Cir. 2007) .......... 6, 13, 15

*Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459 (1945) .......... 19

*Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922 (9th Cir. 2004) .......... 15

*Garamendi v. Golden Eagle Ins. Co.*, 116 Cal. App. 4th 694 (2004) .......... 10

*Gar-Lo, Inc. v. Prudential Sav. & Loan Ass'n*, 41 Cal. App. 3d 242 (1974) .......... 9

*Gibble v. Car-Lene Rsch., Inc.*, 67 Cal. App. 4th 295 (1998) .......... 15

*Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754 (9th Cir. 1999) .......... 18, 19

*Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat.) 174 (1823) .......... 4

*In re Christian & Porter Aluminum Co.*, 584 F.2d 326 (9th Cir. 1978) .......... 9, 11

*In re Wayport, Inc. Litig.*, 76 A.3d 296 (Del. Ch. 2013) .......... 14

*IO Grp., Inc. v. GLBT, Ltd.*, No. C-10-1282 MMC, ECF No. 143 (N.D. Cal. Dec. 2, 2011) .......... 11, 13

*Kaufman & Broad Cmtys., Inc. v. Performance Plastering, Inc.*, 136 Cal. App. 4th 212 (2006) .......... 5

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) ............................................ 18, 19
*Lewis v. Russell*, 838 F. Supp. 2d 1063 (E.D. Cal. 2012) .................................................................. 20
*Meredith v. The Ionian Trader*, 279 F.2d 471 (2d Cir. 1960) ................................................................ 5
*Newfield House, Inc. v. Mass. Dep't of Pub. Welfare*, 651 F.2d 32 (1st Cir. 1981) ............................ 19
*Old Fashion Farms v. Hamrick*, 253 Cal. App. 2d 233 (1967) ............................................................ 8
*Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738 (1824) ................................................................. 7
*Palm Valley Homeowners Ass'n, Inc. v. Design MTC*, 85 Cal. App. 4th 553 (2000) ..................... 10, 11
*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) ................................................ 5
*Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927) ............................................................... 5, 6, 7, 16
*Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402 (9th Cir. 2010) .................................................. 5
*Reliance Ins. Co. v. Superior Court*, 84 Cal. App. 4th 383 (2000) ....................................................... 10
*R.H. Stearns Co. v. United States*, 291 U.S. 54 (1934) ......................................................................... 16
*Ringgold Corp. v. Worrall*, 880 F.2d 1138 (9th Cir. 1989) .................................................................. 13
*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ........................................................................... 5
*Ross v. Venezuelan-Am. Indep. Oil Producers Ass'n*, 230 F. Supp. 701 (D. Del. 1964) ...................... 11
*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194 (1993) ......................... 5
*Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42 (9th Cir. 1972) ........................................... 17
*Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996) ............................................................................... 17
*Tchrs.' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654 (Del. Ch. 2006) ....................................................... 14
*TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001) ..................................................... 15
*The King of Spain v. Oliver*, 14 F. Cas. 577 (C.C.D. Pa. 1810) .......................................................... 16
*Timberline, Inc. v. Jaisinghani*, 54 Cal. App. 4th 1361 (1997) ............................................................ 16
*United States v. 2.61 Acres of Land*, 791 F.2d 666 (9th Cir. 1986) .................................................... 8, 9
*United States v. High Country Broad. Co.*, 3 F.3d 1244 (9th Cir. 1993) ........................................... 6, 13
*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085 (9th Cir. 2010) ............................................................................................................................................ 15
*Universitas Educ., LLC v. Granderson*, 98 F.4th 357 (1st Cir. 2024) ................................................... 9
*Weinstock v. Sinatra*, 379 F. Supp. 274 (C.D. Cal. 1974) ............................................................. 11, 15

*Wood v. Milyard*, 566 U.S. 463 (2012) .......... 20

**Statutes**

8 Del. C. § 122 .......... 4
8 Del. C. § 136 .......... 2, 14
8 Del. C. § 312 .......... 14, 17, 21
Cal. Civ. Code § 3517 .......... 16

**Rules**

Cal. R. Prof. Conduct 1.13 .......... 4, 7
Civil L.R. 3-9 .......... 5, 12, 13
Civil L.R. 11-4 .......... 7
Fed. R. Civ. P. 7 .......... 5
Fed. R. Civ. P. 9 .......... 17
Fed. R. Civ. P. 12 .......... 5
Fed. R. Civ. P. 17 .......... 4
Fed. R. Civ. P. 55 .......... 9, 14

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on December 18, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of the above-entitled Court, Plaintiff Alan Jones will and hereby does move the Court for an order striking the papers filed in the name of defendant Light Field Lab, Inc. ("LFL") since its charter was forfeited, and for entry of its default, as stated below.

Plaintiff Alan Jones moves for an order striking, as filings of Light Field Lab, Inc., the papers filed in its name since its charter was forfeited on February 12, 2026, and directing entry of its default under Rule 55(a); or, in the alternative, ordering LFL to appear within fourteen days through counsel authorized to act for it, failing which its default should be entered; or, in the further alternative, ordering counsel to show by declaration within fourteen days who authorized them to act for LFL, failing which the papers are stricken and its default entered; together with any and all other relief the Court deems just and proper. The relief sought is set out in full in the conclusion of the memorandum below and in the [Proposed] Order and the [Alternative Proposed] and [Second Alternative Proposed] Orders filed with this motion.

The motion is based on this notice, the following memorandum of points and authorities, the Declaration of Stephen F. Henry filed with it, the pleadings and papers on file in this action, and such further evidence and argument as may be presented.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the papers filed in LFL's name since its charter was forfeited on February 12, 2026, which no one able to act for LFL has been shown to have authorized, are void and should be stricken as filings of LFL.
2. Whether, those papers being stricken, LFL has failed to plead or otherwise defend, so that its default must be entered under Rule 55(a).
3. Alternatively, whether LFL should be ordered to appear within fourteen days through a member of the bar of this Court authorized to act for it, failing which its default should be entered.
4. In the further alternative, if the papers are not stricken now, whether counsel should be ordered to file within fourteen days a declaration identifying who authorized them to act for LFL after February 12, 2026 and the act by which that person did so, failing which the papers are stricken

and LFL's default is entered.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Every paper filed in LFL's name since its charter was forfeited on February 12, 2026 was filed without authority, and none of them is LFL's (see § III.A). There have been nine, the most recent on October 20 and 22, 2026 (see § II.C). Asked who authorized them, counsel have named no one (see § II.D), and the responses filed in LFL's name concede that its appearance through counsel does not restore its powers (Dkt. 92 at 2:13-14).

The Court's power over its attorneys and its records reaches these papers (see § III.B). Struck, they leave LFL with no appearance, plea or defense, and its default must be entered (see § III.C). LFL has had knowledge of the forfeiture since at least April 1, 2026, and a forfeiture of its own making is no reason to withhold a default (see § III.E). The alternatives are set out at § III.D and § III.F. Mr. Jones does not concede that the Court may treat the papers as LFL's; if it did, they would bind LFL, and they waived the capacity objection Dkt. 92 presses (see § III.G).

LFL remains amenable to suit and to judgment; what the forfeiture took is its power to participate (Dkt. 86; the reply filed with this motion).

## II. BACKGROUND

### A. LFL's appearance before the forfeiture

Mr. Jones filed this action on June 17, 2025 (Dkt. 1 at 1). LFL appeared through counsel on July 21, 2025 (Dkts. 10, 11) and defended: Gordon Rees Scully Mansukhani, LLP was substituted as its counsel on August 15, 2025 (Dkt. 19), and moved to dismiss the complaint and then the first amended complaint (Dkts. 20, 30). The Court decided the second motion on June 9, 2026 (Dkt. 67).

### B. The forfeiture

On February 12, 2026, LFL's charter was forfeited for failure to obtain and designate a registered agent (Dkt. 63 at 4; Dkt. 82-1, Ex. B-1 at 1; *see* 8 Del. C. § 136(b)). The Court has taken judicial notice of the Secretary of State's certificate (Dkt. 85 at 2 n.1).

### C. The papers filed in LFL's name since the forfeiture

Since the forfeiture, nine filings have been made in LFL's name: a notice of appearance (Dkt. 54,

Mar. 13, 2026); a certification of interested entities, a Rule 7.1 disclosure statement, and an opposition to Mr. Jones's motion to compel disclosure of interested parties (Dkts. 59-61, Mar. 25); a motion to dismiss the Second Amended Complaint, with a declaration, a request for judicial notice and a proposed order (Dkts. 77, 77-1 to 77-3, Aug. 14); an opposition to Mr. Jones's motion that counsel demonstrate their authority (Dkt. 80, Aug. 18); a reply in support of the motion to dismiss (Dkt. 84, Sept. 4); a response to the Order to Show Cause (Dkt. 92, Oct. 20); and an opposition to Mr. Jones's motion to certify questions to the Supreme Court of Delaware (Dkt. 93, Oct. 22).

**D. Who authorized counsel has been asked and never answered**

On April 1, 2026, Mr. Jones asked the Court to direct counsel to disclose who had authorized their continued representation of LFL after the forfeiture (Dkt. 62 at 10:8-10). On August 4, he moved for an order requiring counsel to demonstrate their authority to appear (Dkt. 75). The opposition filed in LFL's name relied on the presumption that counsel are authorized and identified no one who had authorized them (Dkt. 80). On October 2, the Court's Order to Show Cause addressed that motion (Dkt. 85 at 1:13-15) and took judicial notice of the Delaware records (*id.* at 2 n.1), without granting or denying it; the motion was terminated on the docket the same day. The response filed in LFL's name says that a corporation whose charter is void loses its statutory powers, and that "LFL's appearance through counsel does not restore those powers" (Dkt. 92 at 2:13-14); it too names no one. Jon Karafin, LFL's co-founder, has since declared under oath that he is its former chief executive officer (Dkt. 76-1 ¶ 1).

**E. LFL has not answered the Second Amended Complaint**

Mr. Jones filed the Second Amended Complaint on July 6, 2026 (Dkt. 68). No answer has been filed in LFL's name. The only paper responding to it in LFL's name is the motion to dismiss filed on August 14 (Dkt. 77), which this motion asks the Court to strike; the Court vacated its hearing in light of the Order to Show Cause (Dkt. 88). (Henry Decl. ¶ 3.)

**III. ARGUMENT**

**A. Every paper filed in LFL's name since February 12, 2026 was filed without authority and is void**

LFL's capacity is governed by the law of Delaware (Fed. R. Civ. P. 17(b)(2)). There a

corporation acts through the powers Title 8 grants it, among them the power to "participate, as a party or otherwise" in a judicial proceeding (8 Del. C. § 122(2)). LFL's charter has been forfeited since February 12, 2026 (see § II.B). It remains amenable to suit and to judgment, but it has lost the power to take part in this action, as Mr. Jones has shown (Dkt. 86) and the reply filed with this motion explains. The response filed in LFL's name concedes the point: "LFL's appearance through counsel does not restore those powers" (Dkt. 92 at 2:13-14). It calls LFL "an entity whose charter remains void" and asks for dismissal because "Section 510 renders its corporate powers inoperative while its charter remains void" (*id.* at 2:18-19, 4:5-6). Delaware's records show a forfeiture under § 136(b), and the response leaves open whether such a forfeiture makes a charter void (*id.* at 3:17-18); by stating without condition that the charter is void, it concedes that § 510, which it names, applies. Its statement that LFL does not concede Mr. Jones's interpretation of the noticed records offers no contrary reading (*id.* at 3:8-9), and it leaves standing the response's own unconditional statements that LFL's charter is void and its corporate powers inoperative. The opposition of August 18 had concluded that LFL could defend itself only by placing it outside § 510, whose consequence it acknowledged leaves a corporation no power to act (Dkt. 80 at 7:10-11, 8:3-4).

Authority to act for another is measured when it is exercised: "the substitute acts by virtue of the authority of his principal, existing at the time the act is performed" (*Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat.) 174, 202 (1823)). Each paper filed in LFL's name since the forfeiture was a separate act that needed authority when it was taken. "An organizational client can only act through individuals who are authorized to conduct its affairs" (Cal. R. Prof. Conduct 1.13 cmt. [1]). Since February 12, 2026 no one has been able to authorize anything for LFL, and no one has been identified as having authorized these filings (see § II.D).

A paper filed in a party's name without its authority is not that party's paper: "filings made by attorneys without the party's consent are a 'nullity'" (*Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 616 (D.C. Cir. 2024) (quoting *Meredith v. The Ionian Trader*, 279 F.2d 471, 473-74 (2d Cir. 1960))), and where the party did not authorize the filing, "there is no petition on which to grant or deny" relief (*Doraleh*, 109 F.4th at 617). California treats a corporation whose powers are suspended the same way: it "may not defend or participate in an action" (*Cadle Co. v. World Wide

*Hosp. Furniture, Inc.*, 144 Cal. App. 4th 504, 513 (2006)), and not even its insurer may answer in its name: "The insurance company may not answer and litigate the lawsuit in the name of the suspended corporation without intervening in the case" (*Kaufman & Broad Cmtys., Inc. v. Performance Plastering, Inc.*, 136 Cal. App. 4th 212, 216 (2006)). The Order's leave to "file a responsive brief" in LFL's name (Dkt. 85 at 3:5) authorized no one to file it. Every paper filed in LFL's name since February 12, 2026 is void.

**B. The Court's inherent power over its docket reaches these papers, and the opportunity to show authority has been given**

Rule 12(f) is not the vehicle: "The court may strike from a pleading" (Fed. R. Civ. P. 12(f)), and none of these papers is a pleading (Fed. R. Civ. P. 7(a)). The power is the Court's own: "the trial court, or this court, has power, at any stage of the case, to require an attorney, one of its officers, to show his authority to appear" (*Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927)). Where the authority is wanting, the remedy runs to what counsel filed: the Supreme Court directed dismissal of the bill "on the ground that the suit was brought by counsel without authority" (*id.* at 321). And a district court "erred when it concluded it was powerless to strike" a paper from its public docket, because its powers extend "to determine what appears in the court's records" (*Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 405 (9th Cir. 2010)). That is the power invoked here: to determine whether a paper that appears in the Court's records as LFL's is LFL's at all. It penalizes no one, so the explicit finding of conduct that "constituted or was tantamount to bad faith," required before the Court sanctions under its inherent power, is not a condition of it (*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980))). "It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel" (*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993); *see* Civil L.R. 3-9(b)), and where a corporation was not represented as the rules require, the Ninth Circuit held that the failure "suffices to support the default judgment against the corporation" (*Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007); *see United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam)). A lawyer without authority to appear for a corporation stands no better: it was for want of that authority that the bill in

*Pueblo* was ordered dismissed (273 U.S. at 321). Were the Court to treat the order sought as a sanction, the record would support the finding a sanction requires: counsel filed in LFL's name after being told on April 1, 2026 that LFL could not authorize them (Dkt. 62 at 3:5-6), and kept filing after the paper filed in LFL's name said its powers were not restored (Dkt. 92 at 2:13-14).

*Booth v. Fletcher* states two conditions on such an order: the challenger must present "substantial proof," "in the form of countervailing evidence," "that authority is lacking, in order to justify, on that ground, an order to strike a pleading from the files"; and the attorney may not be removed "without a hearing, or other opportunity to defend his authority" (101 F.2d 676, 683 (D.C. Cir. 1938)). Both are met. The proof is Delaware's certificate that LFL's charter was forfeited on February 12, 2026, which the Court has judicially noticed (see § II.B), and the response filed in LFL's name, which says that appearing through counsel does not restore its powers (see § III.A). The opportunity has been given. Mr. Jones asked on April 1, 2026 who had authorized counsel, and on August 4 moved for an order that they show their authority. The papers filed in LFL's name in answer identified no one (see § II.D). This noticed motion is a further opportunity. Counsel may answer it in their own right, by declaration or other evidence identifying who authorized them to act for LFL after February 12, 2026. That answer would be counsel's, not a paper of LFL's.

That proof rebuts the presumption the papers filed in LFL's name relied on. They said Mr. Jones must first rebut, by clear and convincing evidence, the presumption that counsel who appear are authorized (Dkt. 80 at 4:23-26). *Department of Water and Power of the City of Los Angeles v. Anderson* assumes that "members of the bar formally appearing for litigants before us and in other federal courts are authorized to so appear," and keeps that assumption until "proof is submitted challenging the truth of such assumption, sufficient to warrant inquiry" (95 F.2d 577, 580 (9th Cir. 1938)); the same opinion describes a presumption as "only a procedural rule of law, placing on the opponent the burden of going forward with the evidence" (*id.* at 583). The proof here is not Mr. Jones's word. It is Delaware's certificate, which the Court has judicially noticed (Dkt. 85 at 2 n.1), and the words of the response filed in LFL's name: that its appearance through counsel does not restore its powers (Dkt. 92 at 2:13-14), and that "Section 510 renders its corporate powers inoperative while its charter remains void" (*id.* at 4:5-6). On any measure, that rebuts the presumption.

Nor must the proof come from LFL. The same papers faulted Mr. Jones for presenting no declaration "from LFL or a person(s) purporting to be LFL" (Dkt. 80 at 5:15-16), relying on *Pueblo* and *Doraleh*. In neither did the challenge come from the client. In *Pueblo* it came in the defendants' answer and motion to dismiss (273 U.S. at 316); in *Doraleh* it was raised by Djibouti, the adverse party (109 F.4th at 614). In *Anderson* the suggestion came from amici curiae (95 F.2d at 580). A declaration from LFL could come only from a person with power to act for it, and on this record there can be none: LFL's corporate powers are inoperative (§ III.A), as the response filed in LFL's name says. No one has offered evidence to the contrary, least of all the lawyers bound to have it before they appeared: "the attorney must receive the authority of the corporation to enable him to represent it" (*Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 829 (1824)), and a lawyer for a corporation represents "the organization itself, acting through its duly authorized directors, officers, employees, members, shareholders, or other constituents" (Cal. R. Prof. Conduct 1.13(a); *see* Civil L.R. 11-4(a)(1)). Nine papers have been filed in LFL's name since the forfeiture, and none identifies anyone who authorized them (§ II.D). The response filed in LFL's name to the Order to Show Cause says that its charter remains void, that its powers are inoperative, and that appearing through counsel does not restore them (§ III.A). The want of a declaration from LFL is therefore no answer to this motion: the reason there can be none is the reason the papers filed in its name should be stricken.

California, the forum State, names the remedy for the same disability. The objection "must be asserted at the earliest opportunity" (*Cadle*, 144 Cal. App. 4th at 511), and once it is, "the appropriate remedy is to strike the corporation's pleadings and refuse to consider its defenses" (*id.* at 513). In *Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.*, the plaintiff "moved to strike all pleadings and evidence of respondent and to enter the default of respondent" (155 Cal. App. 2d 46, 48 (1957)), and the Court of Appeal held that "the trial court should have granted appellants' motion to strike the pleadings of respondent and certainly the trial court had no right to consider the defenses" (*id.* at 50-51). Mr. Jones made the objection on April 1, 2026, within seven weeks of the forfeiture: "This Court retains jurisdiction over this action and all parties, but LFL cannot actively defend or authorize filings on its behalf while its charter remains void" (Dkt. 62 at 3:5-6; see Dkt. 63). California's cases measure the remedy. The power to impose it is this Court's own.

*Cadle* went on to hold: “In entering judgment against the suspended corporation, the trial court imposed too harsh a remedy” (144 Cal. App. 4th at 513). It did not disapprove the strike: “Cadle’s motion was appropriate” (*id.* at 512). What decided the appeal was revival. The corporation there, “whose attorney was clearly caught off guard by Cadle’s revelation” (*id.*), revived: “Hospitality was able to secure a revivor two days after the trial” (*id.* at 513). “By virtue of its revived corporate status, Hospitality is entitled to a reversal” (*id.*). In *United States v. 2.61 Acres of Land*, the corporate defendant, Wawona, moved for a continuance to revive as soon as its suspension was raised (791 F.2d 666, 668 (9th Cir. 1986)), and revived within two weeks (*id.* at 671). The Ninth Circuit held the refusal of that continuance an abuse of discretion and distinguished *Old Fashion Farms v. Hamrick*, which had upheld the refusal of a continuance to a suspended plaintiff whose contract “could not be specifically enforced in any event” and where “there is no indication that plaintiff made any effort to seek revivor” (253 Cal. App. 2d 233, 236 (1967)). It gave two grounds: Wawona was the defendant and “had no choice but to defend the suit,” and it stood a good chance of a better result (*2.61 Acres of Land*, 791 F.2d at 670). Both went to the continuance, not to the disability: “The denial of a continuance is not necessarily an abuse of discretion” (*id.*). The remedy was retrial “with appellant restored to the status of a revived corporation competent to present a defense” (*id.* at 672). Being a defendant earned Wawona time to cure. It did not earn it the power to defend while it was uncured. This record is the opposite. LFL’s counsel were told on the record on April 1, 2026 (Dkt. 62 at 3:5-6), and kept filing. *Cadle*’s corporation stayed in the case only because it revived. LFL has not: more than six months after Mr. Jones raised the forfeiture, the response filed in LFL’s name described LFL as “an entity whose charter remains void” (Dkt. 92 at 2:18-19) and asked the Court to dismiss the claims against it with prejudice (*id.* at 7:1-2). Nothing filed in LFL’s name, or anything else on this record, indicates any intention to cure. The California courts draw that line. In *Gar-Lo, Inc. v. Prudential Savings & Loan Ass’n*, the Court of Appeal distinguished a case in which “this issue had not been raised prior to the making of the motion and an opportunity should be given to pay the taxes and reinstate the corporation,” and dismissed the suspended corporation’s appeal: “In the present case the suspension was raised in the trial court. The corporation has not offered to pay. Instead, it has brought this appeal to establish its claim of a right to litigate without paying its taxes” (41 Cal. App. 3d 242, 244 (1974)). And of a

corporation in that position: "Here we have a corporation which indicates no intention to pay its delinquent franchise taxes. It claims, in effect, that it has acquired an irrevocable license to carry on litigation in this court in defiance of section 23301" (*id.*). The Ninth Circuit adopted that holding and dismissed the appeals of fourteen suspended corporations from the judgment against them (*In re Christian & Porter Aluminum Co.*, 584 F.2d 326, 332 (9th Cir. 1978)).

The rule does not depend on which side of the caption the corporation stands. The corporation in *Gar-Lo* was the plaintiff; the corporations in *Christian & Porter* appealed a judgment against them; in *Boyle v. Lakeview Creamery Co.* and *Biggs v. California Insurance Guarantee Ass'n* it was the defendant (9 Cal. 2d 16, 21 (1937); 126 Cal. App. 3d 641, 643 (1981)). *2.61 Acres of Land* states the rule for both: "It is well-settled that a delinquent corporation may not bring suit and may not defend a legal action" (791 F.2d at 668).

**C. With those papers stricken, LFL has failed to plead or otherwise defend, and its default must be entered**

Rule 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55(a) asks whether the party has itself pleaded or otherwise defended, and the party's own appearances and filings answer it. In *Universitas Education, LLC v. Granderson*, the defendant had "appeared six times total in the case and filed substantive motions challenging the proceedings," so no default could be entered against her, and the default judgment was vacated (98 F.4th 357, 378 (1st Cir. 2024)). The filings that count are the party's own. Conversely, a corporation that cannot act has filed nothing of its own.

Since February 12, 2026, nothing on this docket is LFL's own. No answer to the Second Amended Complaint has been filed in its name (see § II.E). Every paper filed in its name since the forfeiture, the motion to dismiss (Dkt. 77) among them, was filed without authority and is void (see § III.A). Struck as filings of Light Field Lab, Inc., those papers are of no effect as its appearance, plea or defense; the record that they were filed remains. This District has treated a paper filed for a corporation by someone who could not act for it the same way. In *Dr. JKL Ltd. v. HPC IT Education Center*, an answer a non-lawyer filed for a corporation was stricken because he could not appear for it, and default

judgment was entered against a corporation that, "having never been represented by counsel, has never made an appearance recognized under the federal or local rules" (749 F. Supp. 2d 1038, 1048, 1051 (N.D. Cal. 2010)). In *RingCentral, Inc. v. Quimby*, a non-lawyer's letter was held not to be the corporate defendant's: it "does not constitute an appearance or responsive pleading on behalf of TollFreeNumbers.com" (711 F. Supp. 2d 1048, 1054 (N.D. Cal. 2010); Judgment Vacated in Part by *RingCentral, Inc. v. Quimby*, N.D.Cal., April 18, 2011). There the filer was not a lawyer. Here the filers are lawyers whom no one has been able to authorize (see § III.A). In each case, the paper is not the corporation's.

The finding that the papers are not LFL's is the explanation whose absence *Universitas* counted against the default: it says why the papers on this docket are not LFL's defense. A further paper filed in LFL's name without a showing of authority would be void for the same reason, and the relief sought reaches it. Any showing of authority is counsel's to make, in their own right (see § III.B).

The strike comes first, and California's courts take the same order. In *Garamendi v. Golden Eagle Insurance Co.*, where a suspended corporation's answer had never been stricken, the Court of Appeal held: "As long as Rampart's answer remained on file, the court lacked the authority to enter its default" (116 Cal. App. 4th 694, 705 (2004)). Once the pleadings are stricken, *Cadle* names what follows: "the plaintiff may proceed with a default prove-up" (144 Cal. App. 4th at 513). In *Biggs*, the court recounted that, after the defendant's corporate powers were suspended, the plaintiff "successfully moved to strike the previously filed answer and obtained judgment by default" (126 Cal. App. 3d at 643). In *Reliance Insurance Co. v. Superior Court*, on the plaintiffs' motion to strike a suspended corporation's answer (84 Cal. App. 4th 383, 385-86 (2000)), the Court of Appeal said that unless the insurer intervened the plaintiffs "will be able to obtain an unopposed default judgment" (*id.* at 388). And *Palm Valley Homeowners Ass'n, Inc. v. Design MTC* described the default facing a suspended corporation that had done nothing to cure its status as "an otherwise inevitable default judgment" (85 Cal. App. 4th 553, 563 (2000)).

The Supreme Court of California accepted that consequence in terms. It rejected the argument that "because the corporation may not defend, it cannot be sued, or if it can be sued, it must be permitted to defend": "it is not what the statute provides" (*Boyle*, 9 Cal. 2d at 20). It then dismissed the

corporation's appeal from the judgment against it (*id.* at 21). The Ninth Circuit, applying Rule 17(b), dismissed the appeals of suspended corporations from the judgment against them (*Christian & Porter*, 584 F.2d at 331-32). A federal court in this State, applying California law to a Delaware corporation suspended there, denied the corporation leave to answer, explaining that, unless its corporate powers were restored, the consequence on the plaintiff's application would be a default judgment entered against it (*Weinstock v. Sinatra*, 379 F. Supp. 274, 277 (C.D. Cal. 1974)). And in Delaware's own federal court, the Clerk entered a Rule 55(a) default against a Delaware corporation whose charter had been voided, and the court entered judgment on it (*Ross v. Venezuelan-Am. Indep. Oil Producers Ass'n*, 230 F. Supp. 701, 701, 704 (D. Del. 1964)).

Default rests on LFL remaining amenable to suit and to judgment although it has lost the power to participate, which Mr. Jones has shown (Dkt. 86) and the reply filed with this motion explains. *Cadle* reversed its judgment because the corporation had revived. LFL has not (see § III.B).

This Court has declined to enter default immediately against corporate defendants. Granting their counsel's motion to withdraw, it ruled that "plaintiffs have failed to show they are entitled to immediate entry of default; as set forth below, the corporate defendants first will be afforded leave to obtain new counsel" (*IO Grp., Inc. v. GLBT, Ltd.*, No. C-10-1282 MMC, ECF No. 143, slip op. at 1-2 (N.D. Cal. Dec. 2, 2011)). That reason does not reach this record. Leave to obtain new counsel served corporations that had lost their lawyer and could retain another. No one has been able to authorize any counsel to act for LFL since February 12, 2026 (see § III.A), and leave to obtain counsel does nothing for a corporation that can authorize none. Nor is this a record of withdrawal and nothing more. Nine filings have been made in LFL's name without authority (see § II.C). LFL has had knowledge of the forfeiture since at least April 1, 2026 (Dkts. 62-63). And the response filed in its name says that its appearance through counsel does not restore its powers (Dkt. 92 at 2:13-14). The order the Court made there is the alternative sought in § III.D.

The Court should therefore strike the papers, find that no authority to act for LFL after February 12, 2026 has been shown and that the papers are not LFL's appearance, plea or defense, and direct the Clerk to enter LFL's default. The failure Rule 55(a) requires to be shown is shown by declaration (Henry Decl. ¶¶ 2-3). LFL's appearance before the forfeiture (Dkts. 10, 11) does not bar entry. In *Eitel*

*v. McCool* the defendant had appeared, and "the entry of default pursuant to Rule 55(a) was proper"; the appearance meant only that "the district court, not the clerk, was required to enter the default judgment" (782 F.2d 1470, 1471 (9th Cir. 1986)). Mr. Jones will apply to the Court for judgment separately, under Rule 55(b)(2).

**D. Alternatively, LFL should be ordered to appear through counsel authorized to act for it by a fixed date, failing which its default should be entered**

If the Court will not direct entry of LFL's default now, it should order LFL to appear within fourteen days, through a member of the bar of this Court authorized to act for it, and direct that if LFL does not, the Clerk shall enter its default under Rule 55(a).

"A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court" (Civil L.R. 3-9(b)). An appearance by counsel is the corporation's appearance only if counsel acts for it, and since February 12, 2026 no one has been able to give counsel authority to act for LFL (see § III.A). The order asked for therefore requires counsel authorized to act for LFL. The Second Circuit, refusing to let a partner appear for a partnership, gave as one of its reasons that "the record fails to demonstrate that Schuster was authorized to appear for the partnership" (*Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991)).

Where an entity ordered to appear through counsel has not done so, courts of appeals have affirmed its default. *Eagle Associates* continues: "Having determined that the district court properly ordered Eagle to appear through counsel, it was appropriate to enter a default judgment when Eagle willfully disregarded the district court's order" (*id.*). The Second Circuit has since applied that rule to the entry of default against a limited liability company that had answered and litigated: "a Rule 55(a) default was also proper under Eagle Associates and like cases insofar as this defendant withdrew its counsel without retaining a substitute" (*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 130 (2d Cir. 2011)). The Ninth Circuit has affirmed default on the same pattern. In *High Country*, counsel had appeared for the corporation "for the limited purpose of filing an answer and cross-complaint" (3 F.3d at 1245); then "the district court ordered High Country to retain counsel for the duration of the litigation. When High Country failed to do so, the district court entered a default judgment against it; this was perfectly appropriate" (*id.*). On appeal, "Crisler maintains High Country is

'nonexistent' and cannot be sued"; the court answered that "the United States' claim survives the corporation's dissolution," citing an Arizona statute, and affirmed (*id.*). The corporation's claim that it did not exist did not stand in the way of its default. In *Employee Painters' Trust*, the court said: "we have recognized default as a permissible sanction for failure to comply with local rules requiring representation by counsel" (480 F.3d at 998). Civil L.R. 3-9(b) is such a rule. In this District, a corporation was ordered to show cause why default should not be entered against it "for failure to 'otherwise defend' pursuant to Fed. R. Civ. Pro. 55(a) and to retain counsel pursuant to Civ. L.R. 3-9(b)"; when it did not appear, "the Court entered default under Fed.R.Civ.P. 55(a) on November 18, 2009" (*RingCentral*, 711 F. Supp. 2d at 1053). And the Ninth Circuit affirmed default where the district court's order "required that appellants appear with local counsel by October 3, 1986, 'failing which appropriate sanctions, including default or dismissal, may be issued by the Court.'" *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1140 (9th Cir. 1989). The parties "failed to retain new counsel or otherwise appear" (*id.*).

The order asked for is in that form: a fixed date, the appearance required, and the consequence stated. This Court has made such an order, directing corporate defendants "to cause new counsel to file a notice of appearance no later than December 30, 2011; failure to comply will result in entry of default as to any corporate defendant for which a notice of appearance is not timely filed" (*IO Grp.*, No. C-10-1282 MMC, ECF No. 143, slip op. at 2). The reason that order gave its corporations time does not reach this record (see § III.C). Fourteen days is sufficient. LFL has no new lawyer to find, since the counsel filing in its name are before the Court, and it has had knowledge of the forfeiture since at least April 1, 2026 (Dkts. 62-63). Fourteen days is also the period the court allowed in *Eagle Associates*, after warning that a failure to appear through an attorney on the adjourned date would result in a default judgment (926 F.2d at 1307). The order should also provide that any appearance or other paper filed in LFL's name be accompanied by a declaration of counsel identifying the person who authorized it and the act by which that person did so, and that a paper filed without one will not be received as LFL's. That stops the filings listed in § II.C from continuing in the meantime, and puts before the Court the facts it needs to decide whether an appearance made in response is LFL's. A forfeiture of LFL's own making does not excuse a failure to comply (see § III.E). If the period runs without such an appearance, the Clerk should

enter LFL's default without further order.

**E. A forfeiture of LFL's own making is no reason to withhold or set aside a default**

The response filed in LFL's name says that "Plaintiff seeks to continue litigating against LFL while simultaneously depriving it of any meaningful opportunity to defend itself" (Dkt. 92 at 2:4-5). Mr. Jones has not done that; LFL has. It may not lawfully take part in this action (see § III.A), and every step in the record that brought it there is its own. While this action was pending, LFL assigned its assets for the benefit of creditors (SAC ¶ 77). The paper filed in its name says that "Assigning the patents for the benefit of creditors is a process that has proceeded concurrently with this lawsuit" (Dkt. 77 at 12 n.3). Delaware's records, which the Court has noticed, show franchise tax due (Dkt. 85 at 2:1-2). And when its registered agent resigned, LFL designated no successor; in the words of the response filed in its name, "LFL's charter was forfeited pursuant to 8 Del. C. § 136(b) following the resignation of its registered agent and failure to designate a successor" (Dkt. 92 at 3:4-5; see § II.B). Delaware made that LFL's to know. An agent may resign only on a certificate stating "written notice of resignation was given to the corporation at least 30 days prior to the filing of the certificate" (8 Del. C. § 136(a)), and it is the corporation, "[a]fter receipt of the notice of the resignation of its registered agent," that must designate a successor (8 Del. C. § 136(b)). LFL can know only through its officers and directors, and "[i]t is the general rule that knowledge of an officer or director of a corporation will be imputed to the corporation" (*In re Wayport, Inc. Litig.*, 76 A.3d 296, 324 (Del. Ch. 2013) (quoting *Tchrs.' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 671 n.23 (Del. Ch. 2006))). A failure to act is an act. The cure, too, has been within LFL's own power throughout: a corporation whose charter "has become forfeited or void…may at any time procure a revival" (Dkt. 85 at 2:21 (quoting 8 Del. C. § 312(b))). LFL has not used it (see § III.B).

The Court may set aside an entry of default for good cause, and a default judgment under Rule 60(b) (Fed. R. Civ. P. 55(c)). Three factors govern: "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff" (*TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient

reason for the district court to refuse to set aside the default" (*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)). The defaulting party bears the burden (*Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004)). On culpability, the Ninth Circuit has explained: "When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality" (*Mesle*, 615 F.3d at 1093). LFL has litigated this action through counsel since July 2025 (see § II.A). A default that lies in the defaulting party's own hands is not excusable: "The entry of default and the default judgment were squarely within HRG's control" (*Franchise Holding II*, 375 F.3d at 927). A corporation's failure to obtain the counsel the local rules required "certainly cannot be described as 'excusable neglect' given clear notice to Ethan of the need to obtain counsel and Ethan's unexplained delay" (*Emp. Painters' Tr.*, 480 F.3d at 1000). There, the rule itself named default as the consequence, and counsel had given notice of it (see § III.D). The order sought in that section would give the same notice here.

Courts facing a corporation disabled by its own omissions have reached the same result. Denying a suspended corporation leave to answer, a federal court in this State said: "Absent such revival of its corporate powers, however, Trinidad must suffer the consequences of its own act — upon application of the plaintiff, the entry of a default judgment against it" (*Weinstock*, 379 F. Supp. at 277). In reversing an order that had set aside a default judgment against a corporation suspended when it was sued, the California Court of Appeal reasoned that the length of a suspension is "almost entirely within the control of the corporation" (*Gibble v. Car-Lene Rsch., Inc.*, 67 Cal. App. 4th 295, 311 (1998)). "If it neglects to attend to its tax obligations and corporate formalities, or chooses to ignore them, an opposing litigant should not be penalized and the corporation should not be rewarded" (*id.*). "Nor should a suspended corporation be allowed to take advantage of its own failure to designate a registered agent for service of process" (*id.*). And in refusing a suspended corporation the renewal of its judgment, the same court said: "It thus had more than sufficient time to take the necessary curative action yet did nothing" (*Timberline, Inc. v. Jaisinghani*, 54 Cal. App. 4th 1361, 1369 (1997)).

The rule is a general one. A party may not rely on a disability it created; the bar "has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be

permitted to found any claim upon his own inequity or take advantage of his own wrong" (*R.H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934); *see also* Cal. Civ. Code § 3517). A forfeiture of LFL's own making is culpable conduct, and it is no good cause to withhold a default or to set one aside.

**F. If the Court will not strike the papers now, it should require counsel to demonstrate their authority by a fixed date**

Should the Court not strike the papers now, it should require counsel to show their authority to act for LFL. The Court's power to require an attorney to show authority reaches every stage of the case (see § III.B). Papers have continued to be filed in LFL's name, most recently on October 20 and 22, 2026 (Dkts. 92, 93), and the first of them says that appearing through counsel does not restore LFL's powers (see § III.A). *Pueblo*, in words it adopted from Justice Washington, leaves the rest to the Court: "The only question can be, as to the time and manner of calling for the authority, and as to the remedy, which are in the discretion of the Court, and ought to be adapted to the case" (273 U.S. at 319 (quoting *The King of Spain v. Oliver*, 14 F. Cas. 577 (C.C.D. Pa. 1810))). Mr. Jones asks the Court to fix all three: the time, to fourteen days; the manner, to a declaration by counsel identifying who authorized them to act for LFL after February 12, 2026, and the act by which that person did so; and the remedy, if no such declaration is filed in that time, to an order striking the papers filed in LFL's name since February 12, 2026, with LFL's default to follow as § III.C sets out or, in the alternative, the order in § III.D to issue.

**G. If the Court were to treat the papers filed in LFL's name as LFL's, they bind it, and the capacity objection is waived**

Mr. Jones maintains that LFL has lost the power to act in this action, and that every paper filed in its name since February 12, 2026 was filed without authority and is void ab initio (§ III.A). He does not concede that the Court may treat those papers as LFL's. On § III.A nothing in them is LFL's: not the positions they take, not the dismissal they ask for, and not the objection Dkt. 92 now presses, for Dkt. 92 is one of them. What follows is argued only in the alternative, if the Court were nonetheless to treat the papers as LFL's. The Court would then take them whole, and they waived that objection.

A party that would contest capacity must do so "by a specific denial" (Fed. R. Civ. P. 9(a)(2)). In this Circuit "every defense must be raised in the responsive pleading or by motion before pleading. With

the exception of a few specified defenses, any defense not so raised is deemed to have been waived" (*Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 49 (9th Cir. 1972)). *Summers* held a defendant to that rule on the plaintiff's capacity. The Seventh Circuit applies it to a defendant's claim of its own: "Like questions pertaining to personal jurisdiction, those involving capacity must therefore be identified in either a responsive pleading or motion" (*Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996)).

The motion before pleading was the motion to dismiss the Second Amended Complaint filed in LFL's name on August 14, 2026, ten days after Mr. Jones moved on counsel's authority because of the forfeiture (Dkts. 75, 77). It raised no capacity objection, as Dkt. 92 acknowledges: "LFL did not previously seek dismissal on that ground" (Dkt. 92 at 6:3-4). It asked instead that four counts be dismissed (Dkt. 77 at 7:5-6). It also incorporated the individual defendants' arguments for dismissal (*id.* at 7:17-20). One of them was built on LFL's forfeiture: that the forfeiture confirmed the enterprise charged in the RICO count was finite (Dkt. 76 at 19:26-20:1). So the motion filed in LFL's name relied on the forfeiture, and on what it does to LFL, to have a count dismissed, and raised no objection to LFL's capacity. Mr. Jones has never said the enterprise was finite. His motion stated that LFL "remains a party to this action and a valid judgment debtor" (Dkt. 75 at 7:10-11). And Delaware allows a forfeited charter to be revived "at any time" (8 Del. C. § 312(b)). Revival "at any time" has no end. It is the opposite of finite, and a forfeiture that can be reversed at any time cannot make anything finite. Four days after the motion to dismiss, the opposition filed in LFL's name invoked the rule that governs capacity (Dkt. 80 at 7:4-7). It told the Court that "Plaintiff's conclusion that LFL could no longer defend itself is not supported by Delaware law" (*id.* at 7:10-11). Within one week, then, the papers filed in LFL's name used the forfeiture to seek dismissal of a count, and invoked the rule that governs a corporation's capacity to tell the Court that LFL could still defend. They had before them both the forfeiture and the rule that decides its effect, and neither paper objected to LFL's capacity. On September 4 the reply filed in LFL's name asked that the four counts be dismissed "with prejudice, and without leave to amend" (Dkt. 84 at 8:15-16). Those papers qualified what they said where counsel chose to (Dkt. 77 at 8 n.1; Dkt. 84 at 3 n.1). None reserved a capacity objection.

If those papers are LFL's, that is waiver, and a knowing one: they had the forfeiture, used it to

seek dismissal, invoked the rule that governs its effect, and left the objection out of the one motion in which it had to be made. Dkt. 92 resists it by comparison: "an official may assert immunity from suit without conceding the action may proceed" (Dkt. 92 at 5:18-19). The comparison is LFL's own, and it does not help LFL. Even a State, whose immunity from suit the Constitution secures, gets no special treatment once it chooses to litigate: "If a state or state agency elects to defend on the merits in federal court, it should be held to that choice the same as any other litigant" (*Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir. 1999)). Immunity from suit is lost the same way, because "like every other defendant, a state must timely object to the forum or be deemed to have waived its objections. The Eleventh Amendment was never intended to allow a state to appear in federal court and actively litigate the case on the merits, and only later belatedly assert its immunity from suit in order to avoid an adverse result" (*id.* at 763). Dkt. 92 offers no ground on which a corporation objecting to its own capacity could claim more than a State is given.

The Supreme Court has given the reason. A State that invokes a federal court's power over a case and then claims immunity from it asserts both that the court's power extends to the case and that it does not, and "a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results" (*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002)). The waiver does not depend on what the litigant meant: "an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire" (*id.* at 620). That disposes of Dkt. 92's plea: "Nor did LFL's prior opposition constitute an intentional relinquishment of a known capacity objection" (Dkt. 92 at 6:2-3). Nor does it depend on whether the lawyer who litigated held a separate power to waive. *Lapides* held that "whether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law" (535 U.S. at 623), and explained: "A rule of federal law that finds waiver through a state attorney general's invocation of federal-court jurisdiction avoids inconsistency and unfairness. A rule of federal law that, as in *Ford*, denies waiver despite the state attorney general's state-authorized litigating decision, does the opposite" (*id.*). The Court overruled *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459 (1945) "insofar as

it would otherwise apply" (*Lapides*, 535 U.S. at 623). *Lapides* operates on a litigating decision that is the litigant's own. On this alternative the Court has taken the papers filed in LFL's name as that; on § III.A they are not, and nothing is left for *Lapides* to act on. *Lapides* concerned a State that removed, and it noted that "the Eleventh Amendment waiver rules are different when a State's federal-court participation is involuntary" (*id.* at 622). LFL did not choose this forum either; it was sued. So was the State in *Hill*, and the Court of Appeals held it to its election to defend on the merits (179 F.3d at 758). Its reasons reach LFL: "A party knows whether it purports to be an 'arm of the state,' and is capable of disclosing early in the proceedings whether it objects to having the matter heard in federal court." *Id.* Timely disclosure lets the plaintiff and the court act "before the parties and the court have invested substantial resources in the case" (*id.*). A corporation knows whether its charter has been forfeited, and Delaware made LFL's forfeiture its to know (§ III.E). The papers filed in LFL's name made the same election: they asked that four counts be dismissed, and then that they be dismissed "with prejudice, and without leave to amend" (Dkt. 77 at 7:5-6; Dkt. 84 at 8:15-16). Only after the Court's Order to Show Cause did a paper filed in LFL's name contend that "Plaintiff has failed to establish that LFL presently possesses the capacity to be sued," and it asked that the claims be dismissed with prejudice on that ground (Dkt. 92 at 2:22-23, 6:27). That is the course *Hill* condemned: to permit a defendant "to litigate the case on the merits, and then, belatedly claim Eleventh Amendment immunity to avoid an adverse result, would 'work a virtual fraud on the federal court and opposing litigants'" (179 F.3d at 758 (quoting *Newfield House, Inc. v. Mass. Dep't of Pub. Welfare*, 651 F.2d 32, 36 n.3 (1st Cir. 1981))). Prompt assertion, the court explained, "minimizes the opportunity for improper manipulation of the judicial process" (*Hill*, 179 F.3d at 758). Here the objection was held back in papers filed by counsel who have never said who authorized them (§ II.D).

A court in this Circuit chose the sovereign-immunity analogy for a Delaware corporation's claim of its own incapacity, as the stricter test, and held: "In light of the above, waiver of incapacity occurs only in the case of clearly inconsistent conduct of the sort required to waive sovereign immunity" (*AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. CIV. S-00-113 LKK/JFM, slip op. at 16 (E.D. Cal. Nov. 24, 2008)). It found no waiver there because the defendant had made its counterclaims under an express reservation of rights (*id.*, slip op. at 17), and because "Defendant has not engaged in any

conduct analogous to the removal in *Lapides* and the cases it cited, defendant has not proactively asked the court to resolve this case" (*id.*). Here nothing was reserved, and the papers filed in LFL's name asked the Court to resolve four counts with prejudice while telling it that LFL could defend itself. *Lewis v. Russell* found no waiver where the defendant's involvement was "minimal and could not be interpreted as inconsistent with or affirmatively waiving its incapacity defense" (838 F. Supp. 2d 1063, 1070 (E.D. Cal. 2012)). The involvement here was neither.

Dkt. 92 says the earlier papers filed in LFL's name "did not address the separate issue subsequently raised by the Court" (Dkt. 92 at 5:28), "concerning whether LFL presently lacks capacity to be sued" (*id.* at 6:1). The issue is separate under Delaware law. Whether a forfeited corporation remains amenable to suit and judgment is a different question from whether it keeps the power to participate, and Mr. Jones has briefed them as different questions (Dkt. 86 at 1:5-6). But a separate issue is not a new one. Both arise from the same forfeiture, and Rule 17(b)(2) sends both to Delaware law. The opposition filed in LFL's name on August 18 invoked that rule, applied Delaware law to this forfeiture, and answered the participation question, telling the Court that LFL could still defend itself (Dkt. 80 at 7:4-7, 7:10-11). The amenability objection Dkt. 92 now makes was available on the same rule and the same forfeiture, and none of those papers made it. The Order to Show Cause asked the Court's own question (Dkt. 85 at 2:24-3:1); it did not reopen an objection those papers had chosen not to make. A court may not "bypass, override, or excuse" a deliberate waiver (*Wood v. Milyard*, 566 U.S. 463, 466 (2012)).

Dkt. 92 also says that Mr. Jones "cannot reasonably insist that LFL lacks the authority to defend itself while simultaneously arguing that LFL's efforts to defend the litigation require the claims against it to proceed" (Dkt. 92 at 6:11-13). He does not argue that. Waiver removes an objection; it does not supply the ground on which the claims proceed. That ground is that LFL remains amenable to suit (Dkt. 86; the reply filed with this motion), and it owes nothing to any paper filed in LFL's name. On § III.A those papers are void and are stricken. On this alternative they are LFL's and hold it to its waiver. On either, nothing filed in LFL's name obtains the dismissal Dkt. 92 asks for, that "the Court should dismiss Plaintiff's claims against LFL with prejudice" (*id.* at 2:22-23). And were the papers LFL's and the objection preserved, the request would still fail on the law: a corporation that has lost the power to

participate remains amenable to suit and judgment (Dkt. 86 at 1:5-6), and a want of power that revival cures "at any time" (8 Del. C. § 312(b)) is no ground for ending the claims with prejudice.

**IV. CONCLUSION**

For these reasons, Mr. Jones asks the Court to enter an order:

1. Striking, as filings of Light Field Lab, Inc., every paper filed in its name since its charter was forfeited on February 12, 2026: Dkts. 54, 59, 60, 61, 77 (with Dkts. 77-1, 77-2 and 77-3), 80, 84, 92 and 93, and any further paper filed in its name without a showing of authority to act for it. Those papers are of no effect as LFL's appearance, plea or defense, and the record of their filing remains; and terminating the motion to dismiss filed in its name (Dkt. 77);
2. Finding that no authority to act for LFL after February 12, 2026 has been shown, so that those papers are not LFL's appearance, plea or defense;
3. Directing the Clerk, concurrently with that order, to enter LFL's default under Federal Rule of Civil Procedure 55(a);
4. In the alternative to item 3, ordering LFL to appear in this action within fourteen days of the order, through a member of the bar of this Court authorized to act for it, failing which the Clerk should enter its default under Rule 55(a) without further order; and directing that any appearance or other paper filed in LFL's name be accompanied by a declaration of counsel identifying the person who authorized it and the act by which that person did so, a paper filed without one not to be received as LFL's;
5. In the further alternative, if the Court does not strike those papers now, ordering counsel who have filed papers in LFL's name to file, within fourteen days of the order, a declaration identifying who authorized them to act for LFL after February 12, 2026 and the act by which that person did so; and ordering that, if no such declaration is filed in that time, those papers be stricken as in item 1, with LFL's default to be entered as in item 3 or, in the alternative, the order in item 4 to issue; and
6. Granting Mr. Jones any and all other relief the Court deems just and proper.

Mr. Jones will apply separately for judgment against LFL under Rule 55(b)(2).

Dated: November 4, 2026

HENRY | LACEY PC

By /s/ Stephen Henry_____________
STEPHEN F. HENRY
Attorney for Plaintiff